## No. 25-____

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE AMAZON.COM, INC.,

AMAZON.COM, INC., a Delaware corporation,
*Defendant-Petitioner,*

v.

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON,
*Respondent,*

ELIZABETH DE COSTER, *et al.,*
*Real Parties in Interest,*
(No. 2:21-cv-00693-JHC)

DEBORAH FRAME-WILSON, *et al.,*
*Real Parties in Interest,*
(No. 2:20-cv-00424-JHC)

CHRISTOPHER BROWN, *et al.,*
*Real Parties in Interest.*
(No. 2:22-cv-00965-JHC)

ON PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON, NOS. 2:21-CV-00693-JHC,
2:20-CV-424-JHC, AND 2:22-CV-00965-JHC | HONORABLE JOHN H. CHUN

# PETITION FOR WRIT OF MANDAMUS

C. Frederick Beckner III
rbeckner@sidley.com
Peter A. Bruland
pbruland@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
(202) 736-8000

Sean A. Commons
scommons@sidley.com
David R. Carpenter
drcarpenter@sidley.com
Collin P. Wedel
  *Counsel of Record*
cwedel@sidley.com
SIDLEY AUSTIN LLP
350 S. Grand Ave.
Los Angeles, CA 90071
(213) 896-6000

*Counsel for Petitioner Amazon.com, Inc.*

## <u>RULE 26.1 DISCLOSURE STATEMENT</u>

Petitioner Amazon.com, Inc. (NASDAQ: AMZN) has no parent company, and no publicly held corporation owns 10% or more of its stock.

Dated:  May 14, 2025                    Respectfully submitted,

By: */s/ Collin P. Wedel*
    Collin P. Wedel

# **TABLE OF CONTENTS**

RULE 26.1 DISCLOSURE STATEMENT ...................................... i

TABLE OF AUTHORITIES .......................................... iv

INTRODUCTION ................................................... 1

JURISDICTIONAL STATEMENT ................................. 5

RELIEF SOUGHT ................................................ 5

ISSUES PRESENTED ............................................. 5

BACKGROUND ................................................... 6

LEGAL STANDARD................................................ 13

REASONS FOR ISSUING THE WRIT ....................... 15

    I.    THE DISTRICT COURT CLEARLY ERRED IN
        APPLYING RULE 502................................. 15

        A.    It is clear error to require parties to use
            special language to opt out of Rule 502(b)'s
            waiver provisions................................ 16

        B.    It is clear error to artificially limit Rule
            502(b)(1) to asking if a lawyer reviewed a
            document before it was produced...................... 24

            1.    It is clear error to refuse to consider
                the totality of the circumstances that
                might bear on inadvertence.. .................. 24

            2.    It is clear error to treat the fact that
                a privilege review occurred as
                dispositive ................................. 24

            3.    Properly analyzed, the Rule 502(b)
                factors are satisfied .................................. 30

II. THIS CASE RAISES IMPORTANT QUESTIONS ABOUT PRIVILEGE WAIVERS THAT SHOULD BE CLARIFIED TO PROVIDE CONSISTENT STANDARDS, REDUCE UNCERTAINTY, AND LIMIT COSTLY DISPUTES........................................ 32

III. MANDAMUS IS THE ONLY MEANINGFUL RELIEF AVAILABLE TO AVOID PREJUDICE FROM WAIVERS THAT CANNOT BE CORRECTED ON APPEAL........................................ 35

CONCLUSION................................................................ 38

CERTIFICATE OF COMPLIANCE ............................................. 40

CERTIFICATE OF SERVICE ....................................................... 41

STATEMENT OF RELATED CASES........................................... 44

APPENDIX

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adair v. EQT Prod. Co.*, 2012 WL 2526982 (W.D. Va.
June 29, 2012) ............................................................. 29

*Admiral Ins. Co. v. U.S. Dist. Ct.*,
881 F.2d 1486 (9th Cir. 1989) .............................15, 36

*Amobi v. D.C. Dep't of Corr.*,
262 F.R.D. 45 (D.D.C. 2009) ...................................... 30

*Arconic Inc. v. Novelis Inc.*,
2019 WL 911417 (W.D. Pa. Feb. 26, 2019) ............... 18

*In re BankAmerica Corp. Sec. Litig.*,
270 F.3d 639 (8th Cir. 2001) ..................................... 14

*Bauman v. U.S. Dist. Ct.*,
557 F.2d 650 (9th Cir. 1977) ..................................... 35

*Beilstein-Institut Zur Forderung Der Chemischen
Wissenschaften v. MDL Info. Sys., Inc.*,
2006 WL 2578264 (N.D. Cal. Sept. 6, 2006) ........22, 23

*Bell Atl. Tel. Cos. v. FCC*,
131 F.3d 1044 (D.C. Cir. 1997).................................. 20

*BNP Paribas Mortg. Corp. v. Bank of Am.*,
2013 WL 2322678 (S.D.N.Y. May 21, 2013) ............. 17

*Brookfield Asset Mgmt., Inc. v. AIG Fin. Prods. Corp.*,
2013 WL 142503 (S.D.N.Y. Jan. 7, 2013) ................. 21

*Calendar Rsch. LLC v. StubHub, Inc.*,
2019 WL 1581406 (C.D. Cal. Mar. 3, 2019) .............. 23

*Carmody v. Bd. of Trs.*,
893 F.3d 397 (7th Cir. 2018) .................................25, 29

*In re Cavanaugh*,
 306 F.3d 726 (9th Cir. 2002) ................................................. 14

*In re Cement Antitrust Litig.*,
 688 F.2d 1297 (9th Cir. 1982) ............................................... 35

*Clarke v. Am. Com. Nat'l Bank*,
 974 F.2d 127 (9th Cir. 1992) ...........................................27, 28

*Cohen v. U.S. Dist. Ct.*,
 586 F.3d 703 (9th Cir. 2009) ................................................. 14

*Cole v. U.S. Dist. Ct.*,
 366 F.3d 813 (9th Cir. 2004) ................................................. 13

*In re Copley Press, Inc.*,
 518 F.3d 1022 (9th Cir. 2008) ...........................................37, 38

*Credit Suisse v. U.S. Dist. Ct.*,
 130 F.3d 1342 (9th Cir. 1997) ............................................... 14

*FTC v. Amazon, Inc.*,
 2024 WL 3620467 (W.D. Wash. Aug. 1, 2024)......................... 26

*Gray v. Bicknell*,
 86 F.3d 1472 (8th Cir. 1996) ................................................. 29

*Great-W. Life & Annuity Ins. Co. v. Am. Econ. Ins. Co.*,
 2013 WL 5332410 (D. Nev. Sept. 23, 2013) .......18, 21, 22, 23, 24

*Hernandez v. Tanninen*,
 604 F.3d 1095 (9th Cir. 2010) ..................................5, 14, 15, 36

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*,
 115 F.R.D. 308 (N.D. Cal. 1987) ............................................ 18

*Hill v. Xerox Bus. Servs., LLC*,
 59 F.4th 457 (9th Cir. 2023)................................................... 26

*Hopson v. Mayor & City Council of Balt.*,
 232 F.R.D. 228 (D. Md. 2005).................................................. 28

*In re Itron, Inc.,*
    883 F.3d 553 (5th Cir. 2018) ..................................................... 33

*Judson Atkinson Candles, Inc. v.*
    *Latini-Hohberger Dhimantec,*
    529 F.3d 371 (7th Cir. 2008) ..................................................... 31

*Karnoski v. Trump,*
    926 F.3d 1180 (9th Cir. 2019) ..................................................... 5

*In re Kellogg Brown & Root, Inc.,*
    756 F.3d 754 (D.C. Cir. 2014)............................................14, 34

*King Pharm., Inc. v. Purdue Pharma L.P.,* 2010 WL
    2243872 (W.D. Va. June 2, 2010)............................................ 29

*Klamath Water Users Protective Ass'n v. Patterson,*
    204 F.3d 1206 (9th Cir. 1999) ................................................... 21

*Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.,*
    539 F.3d 1039 (9th Cir. 2008) ................................................... 36

*Lockhart v. United States,*
    577 U.S. 347 (2016) ................................................................... 19

*Marrama v. Citizens Bank of Mass.,*
    549 U.S. 365 (2007) ................................................................... 29

*In re Mersho,*
    6 F.4th 891 (9th Cir. 2021)......................................13, 14, 33, 35

*Minadeo v. ICI Paints,*
    398 F.3d 751 (6th Cir. 2005) ..................................................... 31

*Mohawk Indus. v. Carpenter,*
    558 U.S. 100 (2009) ........................................................33, 36, 37

*Morgan v. Sundance, Inc.,*
    596 U.S. 411 (2022) ................................................................... 21

*New Prime Inc. v. Oliveira,*
    586 U.S. 105 (2019) ................................................................... 28

*Njenga v. San Mateo Cnty. Superintendent of Schs.*,
   2010 WL 1261493 (N.D. Cal. Mar. 30, 2010) .......................... 32

*In re Perez*,
   749 F.3d 849 (9th Cir. 2014) ...................................... 5, 36

*Perry v. Schwarzenegger*,
   591 F.3d 1147 (9th Cir. 2010) ....................................... 37

*RIPL Corp. v. Google Inc.*,
   2013 WL 6632040 (W.D. Wash. Dec. 17, 2013) ....................... 23

*Roberts v. Sea-Land Servs. Inc.*,
   566 U.S. 93 (2012) .................................................. 20

*Star Editorial, Inc. v. U.S. Dist. Ct.*,
   7 F.3d 856 (9th Cir. 1993) .......................................... 37

*Tobias v. Dep't of Interior*,
   2024 WL 894925 (D.D.C. Mar. 1, 2024) .............................. 36

*In re U.S. Dep't of Educ.*,
   25 F.4th 692 (9th Cir. 2022) ........................................ 14

*United Physician Grp., LLC v. Leche*,
   742 F. Supp. 3d 1251 (N.D. Ga. 2024) .............................23, 24

*United States v. Doe*,
   155 F.3d 1070 (9th Cir. 1998) ....................................... 26

*United States v. Gonzalez-Melchor*,
   648 F.3d 959 (9th Cir. 2011) ........................................ 26

*United States v. Wells Fargo Bank, N.A.*,
   2015 WL 5051679 (S.D.N.Y. Aug. 26, 2015) .......................... 17

*Valley Broad. Co. v. U.S. Dist. Ct.*,
   798 F.2d 1289 (9th Cir. 1986) ....................................... 33

*Waetzig v. Halliburton Energy Servs., Inc.*,
   145 S. Ct. 690 (2025) ............................................... 28

*In re Williams-Sonoma, Inc.*,
947 F.3d 535 (9th Cir. 2020) ................................................. 5, 14

*In re Zetia (Ezetimibe) Antitrust Litig.*, 2019 WL
6122012 (E.D. Va. July 16, 2019)........................................29, 30

**Statutes**

28 U.S.C. § 1291............................................................... 36

28 U.S.C. § 1292............................................................... 36

**Rules**

Fed. R. Evid. 502(b) ..............................................2, 27, 29, 30, 32

Fed. R. Evid. 502(d) ..................................................2, 25, 37

Fed. R. Civ. P. 26(b) ........................................................ 32

**Other Authorities**

Model Rules of Prof'l Conduct r. 4.4(b) (Am. Bar Ass'n)........... 8, 34

Edwin M. Buffmire, *The (Unappreciated)*
*Multidimensional Benefits of Rule 502(d)*,
79 Tenn. L. Rev. 141 (2011) ..................................... 22

C.D. Cal., *Model Stipulation and*
*Proposed Protective Order* ......................................... 7

D. Haw., *Model Stipulation and*
*Proposed Protective Order* ......................................... 7

N.D. Cal., Forms, *Model Protective Orders* ..................................... 7

Paul W. Grimm et al., *Federal Rule of Evidence 502:*
*Has It Lived Up to Its Potential?*,
17 Rich. J.L. & Tech. 8 (2011)..................................... 23

The Sedona Conference, *Commentary on the Effective*
*Use of Federal Rule of Evidence 502(d) Orders*,
23 Sedona Conf. J. 1 (2022)..................................17, 23

Inadvertent, *American Heritage Dictionary* (4th ed. 2007) .......... 28

Inadvertent*, Black's Law Dictionary* (8th ed. 2004) .................... 28

## INTRODUCTION

Mandamus is necessary to preserve the critical policy objectives and safeguards served by the attorney-client privilege, as directed by Congress and recognized by the courts. The District Court held that human error during electronic document review waived privilege over documents that contain privileged legal advice. That decision contravenes Congress's direction in Federal Rule of Evidence 502, deepens a pair of intra-circuit conflicts, and subjects Amazon to irreparable harm. And its blast radius is not limited to these cases. Documents produced here are being shared with multiple other parties, including the Federal Trade Commission and eighteen states, whose antitrust case to break up Amazon is pending before the same judge. More broadly, if followed by other courts, the decision below would increase the already staggering costs of e-discovery, encouraging more discovery disputes and imperiling privilege for countless other defendants. This Court's immediate guidance is needed.

The underlying issue here is common to all complex litigation. Oversights and inconsistencies are inevitable in the course of reviewing and producing millions of electronic documents. Even when a litigant takes reasonable care, reviewers may overlook privileged communications, or they may err when redacting dense, technical

1

documents. When that happens, parties routinely claw back documents that should not have been produced, without waiving privilege and without the need for judicial intervention.

Interlocking provisions in Rule 502 of the Federal Rules of Evidence preserve privilege and promote efficiency in these circumstances. Rule 502(b) provides a default rule for "inadvertent" disclosure, and Rule 502(d) allows for protective orders that permit no-fault clawbacks and limit the scope of any waivers to one particular lawsuit. The ruling below alters the framework for clawbacks, endangers privilege, deviates from settled norms, and imposes an impossible standard in document-heavy litigation.

*First*, the ruling treats standard language in ESI protocols and protective orders—language that routinely appears in discovery orders in this Circuit and elsewhere—as inadequate to trigger the benefits of Rule 502(d), even if they *expressly reference* Rule 502(d). The decision below purported to follow a minority position requiring protective orders to employ so-called "concrete directives" to invoke Rule 502(d). A7 n.8 & A20. But Rule 502(d) says nothing about "concrete directives," and such a requirement would defeat the purposes of Rule 502, the presumption against waiver, and standard interpretive rules. No one enters a Rule 502 protective order because they *want* to subject clawback requests and potential privilege waivers to Rule 502(b)'s inadvertence test. That is because

2

502(b) is the default rule for parties who never bother to enter into Rule 502 orders in the first place. So it is implausible that any party would enter an agreement to achieve what would have been the default outcome *without* an agreement. But that clearly erroneous presumption drives the decision below—threatening uncertainty for litigants throughout this Circuit.

*Second*, the decision below compounds the threat to privilege by adopting a test for "inadvertent" disclosures that grants *greater* protection to parties who perform *no review at all* than those who incur massive expenses to preserve privilege, but nonetheless make mistakes. It holds that, if a human makes the wrong decision in miscoding a privileged document, the ensuing disclosure is categorically intentional, no matter how obviously harmful the accidental disclosure is to the disclosing party or how much evidence a party supplies to prove a mistake occurred under the "totality of the circumstances." A18. This understanding of "inadvertence" is contrary to the text, purpose, and logic of Rule 502, and alone renders the decision below clearly erroneous.

The combined effect of these errors is to burden litigants with an effectively impossible standard to preserve privilege. As these cases illustrate, this framework means that parties who retain hundreds of attorneys to assist with massive document reviews, like

Amazon did here, will be found to have "intent" when they inevitably disclose privileged materials in error. The order undermines law on privilege waivers and clawbacks, leaving the protection of legal advice subject to the vagaries of human error years after the fact. That, in turn, will chill full and frank discussions—the fundamental policy objective underlying the attorney-client privilege and Rule 502. It also will necessarily multiply the already-astronomical costs of e-discovery and prolong document review and production, as the standard for preserving privilege approaches human impossibility. And the order will almost certainly trigger a wave of disputes, retroactively stripping parties of protections long relied upon when producing documents.

Mandamus review is warranted to correct clear legal error and, in the process, eliminate uncertainty over recurring issues. It is also warranted because the decision below threatens to strip Amazon of protections for core, attorney-client privileged materials— not only in these cases but potentially also in cases brought by the Federal Trade Commission and eighteen states, California, the District of Columbia, and other private plaintiffs. Amazon has no other adequate means of seeking relief to avoid the irreparable harm that would follow from the inability to claw back privileged communications.

## JURISDICTIONAL STATEMENT

This Court has authority under the All Writs Act, 28 U.S.C. § 1651, and Rule 21 of the Federal Rules of Appellate Procedure, to grant mandamus to prevent irreparable harm from adverse discovery rulings in general, *see In re Williams-Sonoma, Inc.*, 947 F.3d 535, 538 (9th Cir. 2020), and in particular to protect privilege in discovery, *see Karnoski v. Trump*, 926 F.3d 1180, 1187, 1203 (9th Cir. 2019); *In re Perez*, 749 F.3d 849, 855–56 (9th Cir. 2014); *Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010).

## RELIEF SOUGHT

Amazon respectfully seeks a writ of mandamus directing the District Court to vacate its April 29, 2025 order, A1, and grant Amazon's motion to claw back documents as privileged.

## ISSUES PRESENTED

1.    Whether it was clear error to hold that Federal Rule of Evidence 502(d)'s no-fault clawback protections against privilege waiver cannot apply, even to a protective order that expressly invokes Rule 502(d), unless the order also explicitly opt outs of each provision of Rule 502(b).

2.    Whether it was clear error to hold that Federal Rule of Evidence 502(b)'s "inadvertence" prong can never be met if a human reviewer makes the wrong decision about coding a privileged document.

5

## BACKGROUND

1. The pertinent facts are undisputed. The underlying cases are a trio of putative antitrust class actions. *See* 2d Am. Consol. Compl. ¶¶ 1–2, No. 21-cv-00693, ECF 126; 3d Am. Compl. ¶¶ 1–2, No. 20-cv-00424, ECF 144-1; 1st Am. Compl. ¶¶ 2–3, No. 22-cv-00965, ECF 100. As is commonly the case in antitrust matters, discovery has been massive: Amazon has produced nearly 14 million pages of discovery after reviewing many multiples of that number. A40. The undertaking has involved more than 160 document reviewers. A62. Discovery in these matters is coordinated with other antitrust suits, including one pending before the same judge. *See infra* pp. 12–13.

As is done routinely in cases around the country, the parties agreed to—and the Court ordered—an Electronically Stored Information (ESI) Protocol to govern their review and production of electronic information. That ESI Protocol provides, *inter alia*:

> Pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding *shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver* by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. Information produced in discovery that is protected as privileged or work product *shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection.*

6

A5 (emphases added). By the ESI Protocol's explicit terms, production does not—and cannot—result in waiver.

In addition to the ESI Protocol, the parties also entered into protective orders, employing the model language supplied by the District Court.[1] *See* A5. The most recent Protective Order here includes a section titled "Inadvertent Production of Privileged or Otherwise Protected Material." *Id.* That section states:

> When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). *This provision is not intended to modify whatever procedure may be established in an e-discovery order or agreement that provides for production without prior privilege review.* This Order invokes the protections afforded by Fed. R. Evid. 502(b). As provided under Fed. R. Evid. 502(b) and 502(d) and subject to the limitations in Fed. R. Evid. 502(a), the disclosure of privileged material in connection with this litigation does not operate as a waiver in this action or any other action by the Producing Party of

---

[1] The Protective Order here uses language employed throughout this Circuit, including in at least 23 other active cases in the Western District of Washington. *See* Amazon Reply at Ex. A, No. 21-cv-00693, ECF 315-1 (listing at least 23 other active cases in Western District of Washington to court orders invoking Rule 502(d) yet lacking "concrete directives" as to each element of 502(b)); *see also, e.g.*, C.D. Cal., *Model Stipulation and Proposed Protective Order*, tinyurl.com/5bzusemr; N.D. Cal., Forms, *Model Protective Orders*, tinyurl.com/ycyt2269; D. Haw., *Model Stipulation and Proposed Protective Order*, tinyurl.com/2tz35jzj.

> any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law.

A5–A6 (emphasis added).

Until recently, Amazon has successfully clawed back documents from time to time under the ESI Protocol *and* Protective Orders, both of which invoke Rule 502(d)'s protection against waiver without the need to prove inadvertence. Amazon did so without objection or threat of a waiver finding. In fact, consistent with ethical guidelines applicable in most jurisdictions, *see, e.g.*, Model Rules of Prof'l Conduct r. 4.4(b) (Am. Bar Ass'n), plaintiffs previously have alerted Amazon to inadvertently disclosed privileged materials and cooperated in clawbacks without asserting waiver. *See* A49.

In early 2024, Amazon began re-reviewing privilege-log entries first provided in the Federal Trade Commission and California cases to determine whether additional documents should be produced in whole or with privilege redactions. Amazon produced documents and amended logs on a rolling basis until January 31, 2025, when the District Court ordered Amazon to complete its re-review by February 25, 2025. A6 n.6 (discussing privilege review history).

In conducting that re-review to narrow privilege assertions, a contract reviewer erroneously designated the three documents at issue here as *not* privileged or missed privileged information that

should have been redacted. A6. All contain sensitive attorney-client communications about regulatory risks and actual or potential litigation, and the District Court did not question whether attorney-client privilege applies. A4 n.2 (assuming without deciding that privilege attached). At no time has Amazon sought to rely on or use these documents as part of its defense. To the contrary, Amazon only learned of the error when plaintiffs used the documents in a class-certification brief, at which point Amazon promptly sought to claw back the documents and strike the offending portions of the brief. *See* A40.

2. Despite prior clawbacks, plaintiffs justified their use of these privileged materials without notice to Amazon by asserting waiver, arguing that these disclosures should be deemed "intentional." A10. Unable to resolve the issue with plaintiffs, Amazon sought the assistance of the District Court under the court-approved ESI Protocol and Protective Order, which authorize Rule 502(d) clawbacks without the need to prove inadvertence. *See* A3. In an abundance of caution, Amazon also explained how these circumstances were the product of inadvertence and thus protected under Rule 502(b) in any event. *See* A8–A12.

3. The District Court assumed that the documents were privileged and held that Amazon had waived that privilege by producing them. A4 n.2. It deemed the ESI Protocol—whose entire purpose

is to protect ESI like the three documents at issue—entirely inapplicable. Misconstruing a sentence in the Protective Order providing that it was "*not* intended to modify whatever procedure may be established in *an e-discovery order* or *agreement that provides for production without prior privilege review*," A79 (emphasis added), the District Court reasoned that the Protective Order *was* intended to supersede any and all prior orders *unless* those orders dealt with "production without prior privilege review"—and, thus, that the Protective Order's inadvertence guidelines negated the protections in the ESI Protocol (even though the ESI Protocol necessarily deals with production *after* review).

The District Court then incorporated the reasoning from an earlier decision in the same case about how to construe the operative provisions in the Protective Order concerning Rule 502. A6. Under that ruling, the court reasoned that the Protective Order (unlike the now-superseded ESI Protocol) did not permit no-fault clawbacks. Instead, taking the minority side in an acknowledged split of authority, the court held that even Protective Orders explicitly seeking to adopt Rule 502(d)'s protections, such as the Protective Order here, must still contain so-called "concrete directives" about each prong of 502(b) to avoid Rule 502(b)'s inadvertence standard

in favor of 502(d)'s no-fault regime. A20 ("Other courts in this Circuit have [required] … protective orders [to] contain 'concrete directives' ….").

Finally, having set aside the ESI Protocol and found the Protective Order did not incorporate Rule 502(d), the District Court held that Amazon could not establish "inadvertence" under Rule 502(b). Under the standard employed in the order below, a disclosure automatically becomes "intentional" even if a reviewer makes a good-faith error about whether to label a document as privileged, A21, so long as the reviewer was conscious of their actions. Eschewing any other factor bearing on what is an obvious mistake, and again expressly taking sides on an issue that has divided courts, the ruling reasons that Rule 502(b)(1) looks "simply" to whether a party "intended" to produce the privileged document. *Id.* ("While Rule 502(b) does not define 'inadvertent,' other courts have developed two approaches to the issue."). In other words, the rule cares only whether any person, at any stage of a complex review process in a massive litigation, engaged in a conscious act that resulted in a document being produced with the wrong privilege designation. It thus ignores whether a reviewer's actions were the result of a mistake or oversight, along with every other indication that a party had no possible reason for wanting to waive privilege. *See* A9–A10. Here, because each of the "documents ha[d] been individually re-

reviewed" by someone, A10, the ruling found it impossible to conclude that "the production of these documents was a mistake." A11.

Under this standard, any attempt to claw back a human-reviewed document is deemed "a strategic decision that [a party] later [came to] regre[t]," *id.* (citation omitted)—as if human error could ever be "strategic." In all events, the order below contains no finding that Amazon sought or could have obtained any "strategic" advantage from producing these privileged documents.

4. The subject matter of these cases overlaps with other pending cases in federal and state courts asserting antirust claims against Amazon. Most notably, the case brought by the Federal Trade Commission and eighteen states is currently pending in the Western District of Washington (also before Judge Chun), No. 2:23-cv-01495. California has brought a case in state court, *see California v. Amazon.com, Inc.*, No. CGC-22-601826 (Cal. Super. Ct.), as has the District of Columbia, *see District of Columbia v. Amazon.com, Inc.*, No. 2021-CA-001775-B (D.C. Super. Ct.). And two sets of private plaintiffs have sued Amazon as well. *See Zulily LLC v. Amazon.com, Inc.*, No. 2:23-cv-1900-JHC (W.D. Wash.); *Mbadiwe, et al. v. Amazon.com, Inc.,* No. 1:22-cv-9542-VSB (S.D.N.Y.).

Because these cases involve overlapping issues, the parties have coordinated document production across cases. In many instances, documents that Amazon produces in the Federal Trade

Commission case are reproduced (as relevant) in these cases and the other antitrust cases. Similarly, documents from the California and D.C. cases can be produced in the Federal Trade Commission and private-party cases. Depositions are coordinated across these cases as well. So a waiver finding here could have potential ramifications in the other coordinated actions.

## LEGAL STANDARD

In determining whether to issue a writ of mandamus, this Court balances five factors:

> (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal…. (3) The district court's order is clearly erroneous as a matter of law. (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules. (5) The district court's order raises new and important problems, or issues of law of first impression.

*In re Mersho*, 6 F.4th 891, 897–98 (9th Cir. 2021) (quoting *Bauman v. U.S. Dist. Ct.*, 557 F.2d 650, 654–55 (9th Cir. 1977)). "[N]ot all factors will be relevant in every case," *id.* at 898, and these factors "should not be mechanically applied," *Cole v. U.S. Dist. Ct.*, 366 F.3d 813, 817 (9th Cir. 2004). A strong showing of just "one factor" can be sufficient grounds for mandamus. *Mersho*, 6 F.4th at 898. In fact, "rarely will a case arise where all these guidelines point in the

13

same direction or where each guideline is even relevant or applicable." *Credit Suisse v. U.S. Dist. Ct.*, 130 F.3d 1342, 1345 (9th Cir. 1997).

Clear error is the touchstone factor. *Mersho*, 6 F.4th at 897–98. Clear error is shown when "the reviewing court is left with a 'definite and firm conviction that a mistake has been committed.'" *Cohen v. U.S. Dist. Ct.*, 586 F.3d 703, 708 (9th Cir. 2009). "[A] decision can still be clearly erroneous in the absence of controlling precedent," *Mersho*, 6 F.4th at 898, including "if the plain text … prohibits the course taken by the district court," *id.*; *In re U.S. Dep't of Educ.*, 25 F.4th 692, 697–98 (9th Cir. 2022) (court can find clear error where "statutory language definitively show[s] … 'that a mistake has been committed.'"); *In re Cavanaugh*, 306 F.3d 726, 731 (9th Cir. 2002) (granting a writ petition because the district court had gone "off the statutory track"); *see Williams-Sonoma*, 947 F.3d at 538 ("when an 'important issue of first impression' is raised, the standard is ordinary error").

This Court and others have repeatedly granted mandamus relief in the face of orders requiring disclosure of privileged attorney-client communications, especially for a "particularly injurious or novel privilege ruling." *Hernandez*, 604 F.3d at 1101; *see also In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760 (D.C. Cir. 2014); *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 644 (8th Cir. 2001);

*Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1495 (9th Cir. 1989). These decisions recognize that mandamus is the only effective way of securing relief from discovery rulings that would require the disclosure of privileged materials. *E.g.*, *Hernandez*, 604 F.3d at 1101.

## REASONS FOR ISSUING THE WRIT

Application of the mandamus factors tips decisively in favor of writ relief. *First*, the ruling below clearly errs by reading 502(d) out of the parties' ESI Protocol and Protective Order, requiring Amazon to meet 502(b)'s inadvertence threshold. It then compounds that clear error by excluding incorrect decisions by human reviewers from the meaning of "inadvertent." *Second*, this case presents an important opportunity for this Court to provide much-needed guidance to lower courts on privilege questions that frequently recur. *Finally,* there is no other form of relief that would allow Amazon to protect its privilege and avoid irreparable harm. Only mandamus will safeguard Amazon's rights and the basic objectives of attorney-client privilege and Rule 502.

## I. THE DISTRICT COURT CLEARLY ERRED IN APPLYING RULE 502.

The ruling below constitutes clear error on multiple levels. After first misinterpreting the parties' Protective Order to negate their ESI Protocol (a result no party would intend), the ruling then

takes the wrong side of two distinct legal issues that have starkly divided lower courts in this Circuit—namely, (i) whether a protective order must express "concrete directives" about each prong of Rule 502(b) to opt in to Rule 502(d)'s no-fault clawback regime; and (ii) whether Rule 502(b)'s inadvertence analysis rests purely on whether even one reviewer decided to produce a document, or whether the totality of the circumstances bears on whether an error occurred. The ruling on both issues goes far beyond the text, purpose, and logic of Rule 502. It is clearly erroneous under any standard—and it threatens the foundational objectives of attorney-client privilege. Mandamus is warranted.

### A. It is clear error to require parties to use special language to opt out of Rule 502(b)'s waiver provisions.

The ruling below clearly erred in holding that neither the parties' ESI Protocol nor their Protective Order functioned to opt out of Rule 502(b)'s inadvertence standard for clawbacks. That ruling subverts the purpose of these orders—*i.e.*, ensuring a no-fault clawback process—and then premises a critical waiver determination on the failure to have included in the Protective Order special language that is not required by precedent or Rule 502's text or purpose.

1. It is an inescapable reality in modern litigation that discovery production "errors—even those involving multiple documents—

16

are inevitable." *United States v. Wells Fargo Bank, N.A.*, 2015 WL 5051679, at *3 (S.D.N.Y. Aug. 26, 2015); *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 2013 WL 2322678, at *8 (S.D.N.Y. May 21, 2013) ("Such errors are, of course, inevitable in complex litigation involving the production of tens of thousands of documents."). That is the entire point of Rule 502(d), which allows a court to "order that the privilege or protection is *not* waived by disclosure connected with the litigation pending before the court."

The Advisory Committee "designed [Rule 502(d)] to enable a court to enter an order, whether on motion of one or more parties or on its own motion, that will allow the parties to conduct and respond to discovery expeditiously, without the need for exhaustive pre-production privilege reviews, while still preserving each party's right to assert the privilege to preclude use in litigation of information disclosed in such discovery." Fed. R. Evid. 502, Advisory Committee's Note to subdivision (d). The provision provides certainty against waiver, guards against the burden and expense of privilege fights, and curtails the volume of information a producing party must review in a digital world, as has been recognized by leading discovery experts and several courts.[2]

[2] The Sedona Conference, *Commentary on the Effective Use of Federal Rule of Evidence 502(d) Orders*, 23 Sedona Conf. J. 1, 7 (2022) ("A Rule 502(d) order provides the parties with greater certainty

Here, just as parties regularly do in most modern litigation involving large-scale document reviews, the parties agreed to language in the ESI Protocols and Protective Orders, expressly invoking Rule 502(d). *See supra* Background.

2. The initial fundamental error below involved holding that the Protective Order actually *nullified* the ESI Protocol, violating settled rules of construction. The Protective Order included express language to make clear that it was *not* modifying the procedures established in the more-specific ESI Protocol. The Protective Order specified that it "is not intended to modify whatever procedure may be established in an e-discovery order or agreement that provides for production without prior privilege review." A79. In other words, the Protective Order does *not* modify prior e-discovery orders like the ESI Protocol. *See Great-W. Life & Annuity Ins. Co. v. Am. Econ. Ins. Co.*, 2013 WL 5332410, at *13 (D. Nev. Sept. 23, 2013) ("An agreed protective order should be given a reasonable or common sense interpretation in light of its purposes." (quotation omitted)).

---

and therefore has greater potential to limit the costs associated with privilege review and retention."); *see also Arconic Inc. v. Novelis Inc.*, 2019 WL 911417, at *3 (W.D. Pa. Feb. 26, 2019) (encouraging "adoption of a Rule 502(d) [order] in every complex civil case"); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 310 (N.D. Cal. 1987) ("expansive waiver doctrine increases the cost of litigation to the parties and increases the number of discovery disputes courts must resolve").

The decision below, however, adopts an atextual reading of the Protective Order that vitiates the protections of the ESI Protocol—thus undermining privilege. The sentence in question provides:

> This provision is not intended to modify whatever procedure may be established in an e-discovery order *or* agreement that provides for production without prior privilege review.

A79 (emphasis added). Under the rule of the last antecedent, the phrase "that provides for production without prior privilege review" clearly modifies the noun "agreement." *Id.*

But the ruling instead reads the phrase as applying to not *just* agreements, but *also* prior "e-discovery order[s]," such as the ESI Protocol. A5. And having adopted this reading, the District Court then held that the Protective Order supersedes *all* prior agreements dealing with clawbacks *other* than those that speak to "production without prior privilege review." A6. Since the ESI Protocol's 502(d) language necessarily deals with production at all stages, that meant that the District Court held the ESI Protocol was abrogated by the less-detailed Protective Order. *See id.*

This aspect of the ruling, in and of itself, is clear error. Under the "rule of the last antecedent," a "limiting clause … should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Lockhart v. United States*, 577 U.S. 347, 351 (2016)

19

(citation omitted). For example, baseball scouts told to find "a defensive catcher, a quick-footed shortstop, or a pitcher from last year's World Champion" team would "confine their search for a pitcher" to the Dodgers but "look more broadly for catchers and shortstops." *Id.* at 351–52.

So too here. Read most naturally, the phrase "that provides for production without prior privilege review" explains what sort of "agreement" the Protective Order leaves untouched. The phrase does not modify both nouns—"e-discovery order" and "agreement"—listed in the preceding clause. That is because e-discovery orders and agreements are not "items that readers are used to seeing listed together." *Id.* at 352. Nor is the unwieldy phrase "that provides for production without prior privilege review" a "concluding modifier that readers are accustomed to applying to each of them." *Id.* Indeed, it is hard to fathom an "e-discovery order" that does *not* address production *after* privilege review—that is one of the key points of such orders—leaving the District Court's interpretation applying to a null set. In other words, this is a textbook case for applying rule of the last antecedent.

What text provides, context confirms. *See Roberts v. Sea-Land Servs. Inc.*, 566 U.S. 93, 101 (2012) ("[L]anguage … cannot be construed in a vacuum. … [W]ords … must be read in their context and with a view to their place in the overall statutory scheme."); *Bell*

*Atl. Tel. Cos. v. FCC*, 131 F.3d 1044, 1047 (D.C. Cir. 1997) ("[T]ex-tual analysis is a language game played on a field known as 'context.' The literal language of a provision taken out of context cannot provide conclusive proof of … intent.").

No party would adopt model language in a protective order if it would eliminate protections under an ESI protocol that had governed document review and production for years. *See Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999) ("preference" must be "given to reasonable interpretations"). It is also not plausible that parties would go to the trouble of exempting themselves from 502(b) in favor of 502(d), only to relinquish their rights obliquely in a subsequent protective order. The whole point of such orders is to simplify and protect against waiver disputes. *Great-W.*, 2013 WL 5332410, at *2 (502(d) applied where producing party "took careful, appropriate steps to protect against production of the privileged documents"); *Brookfield Asset Mgmt., Inc. v. AIG Fin. Prods. Corp.*, 2013 WL 142503, at *1 (S.D.N.Y. Jan. 7, 2013) (502(d) provides for right to claw back "no matter what the circumstances giving rise to their production were"); *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (waiver of contractual right requires proof of "intentional relinquishment or abandonment of a known right"). These errors in how to construe protective orders alone merit mandamus review.

21

3. Having nullified the ESI Protocol, the ruling below commits a further, independent error by interpreting the Protective Order as embracing 502(b)'s inadvertence standard, rather than freeing the parties from that obligation. Relying on an earlier clawback decision, pp. 10–11, *supra*, the District Court held that the Protective Order's reference to Rule 502(b) showed the parties' intent to be *bound by* that rule. Despite the order's references to 502(d), the Court reasoned that it lacked sufficiently "concrete directives" to otherwise opt out of 502(b)'s inadvertence standard. A20.

That interpretation of the Protective Order is also clearly erroneous. Critically, parties do not need to *opt in* to Rule 502(b). Rule 502(b) is the default standard *absent* an agreement. So it is implausible that any party would enter an agreement to achieve what would have been the rule *without* an agreement. *See Great-W.*, 2013 WL 5332410, at *14 (parties would not have "negotiated an agreement that Rule 502(b) applies," since it "applies as a default"); *see also Beilstein-Institut Zur Förderung Der Chemischen Wissenschaften v. MDL Info. Sys., Inc.*, 2006 WL 2578264, at *1 (N.D. Cal. Sept. 6, 2006) (protective order would be "superfluous" if "production of privileged documents would result in waiver to the same extent it would" without a protective order); Edwin M. Buffmire, *The (Unappreciated) Multidimensional Benefits of Rule 502(d)*, 79 Tenn. L.

Rev. 141, 159 (2011) (calling Rule 502(b) "the default rule"). Instead, explicit references to 502(d) should suffice to demonstrate an intent to *not* be bound by 502(b). *See* 23 Sedona Conf. J. at 24 (deeming "explicit disclaimer of Rule 502(b)" "unnecessary").

In all events, the ruling below—that 502(d) orders must contain "concrete directives" about each prong of 502(b) before they can be effective, coupled with the application of that notion to *two* agreements that plainly invoke 502(d)—places the decision on the far edge of a lopsided split among lower courts. A20 (acknowledging the lower court divide on "concrete directives" requirement). In fact, most courts to consider the issue, in the Ninth Circuit and elsewhere, have rejected the "concrete directives" concept.[3]

And with good reason. A "concrete directives" requirement does not appear in the text of Rule 502(b) or 502(d). *See Great-W.*, 2013 WL 5332410, at *12 ("[The] text of the rule does not contain

---

[3] *Calendar Rsch. LLC v. StubHub, Inc.*, 2019 WL 1581406, at *6 (C.D. Cal. Mar. 3, 2019); *Great-W.*, 2013 WL 5332410, at *12; *RIPL Corp. v. Google Inc.*, 2013 WL 6632040, at *3–4 (W.D. Wash. Dec. 17, 2013); *Beilstein-Institut*, 2006 WL 2578264, at *1; *see also United Physician Grp., LLC v. Leche*, 742 F. Supp. 3d 1251, 1258 (N.D. Ga. 2024) ("[No] court in the Eleventh Circuit" has "endorsed or used" such a rule, which has "garnered … criticism from district courts across the country."); Paul W. Grimm et al., *Federal Rule of Evidence 502: Has It Lived Up to Its Potential?*, 17 Rich. J.L. & Tech. 8, 64 (2011) ("[S]ome courts have displayed a misguided reluctance to accept that parties may agree to procedures that would not be deemed reasonable under Rule 502(b)(2) or (3).")

or support such rigid, formulaic requirements."); *United Physician*, 742 F. Supp. 3d at 1258 ("[T]he requirement cannot be found in the text of the FRE 502 itself, and it is arguably in tension with FRE 502(d) and (e), which are intended to assure parties that 'if they exchange privileged information pursuant to a confidentiality order, the court's order will be enforceable."). Nor is it compatible with directions in the Advisory Committee Notes, which contemplate orders that "may provide for return of documents without waiver irrespective of the care taken by the disclosing party." Fed. R. Evid. 502, Advisory Committee's Note to subdivision (d).

The alternative—mandating that parties recite specific language regarding each prong of 502(b)—is burdensome, subject to dispute, and fundamentally at odds with an order that plainly invoked Rule 502(d). There would be no purpose to individually recite these terms *other* than to *extricate* oneself from a 502(b) test, which is what the ESI Protocol and Protective Order already do by embracing Rule 502(d). Imposing this "concrete directives" standard is clear legal error.

### B. It is clear error to artificially limit Rule 502(b)(1) to asking if a lawyer reviewed a document before it was produced.

Mandamus is also warranted because the District Court erred twice over in rejecting Amazon's Rule 502(b) claim. *First*, the court thought it had to determine whether a disclosure was "inadvertent"

*before* considering the totality of the circumstances. That incorrect determination necessarily discarded evidence bearing on factors that are highly relevant to whether the production was inadvertent. *Second*, the court reasoned that Amazon's disclosure could not have been inadvertent so long as any lawyer signed off on the coding that led to the production. That turns Rule 502(b) on its head. "[T]he point of Rule 502(b) is to protect clients' confidences from their lawyers' human errors." *Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 406 (7th Cir. 2018) (cleaned up). The approach below, however, would limit protection to technical glitches and documents that no lawyer ever reviewed. Nothing in the language of Rule 502(b) supports that implausible result.

### 1.  It is clear error to refuse to consider the totality of the circumstances that might bear on inadvertence.

a. The District Court declined to consider relevant context surrounding the disclosure of privileged communications. In its view, Rule 502(b)(1) requires courts to "simply" consider "whether the party intended" to produce a privileged document or "whether the production was a mistake." A9 (citing *FTC v. Amazon, Inc.*, 2024 WL 3620467, at *6 (W.D. Wash. Aug. 1, 2024) (Chun, J.)). That means "first consider[ing] whether disclosure was in fact inadvert-

25

ent"—without regard to the "totality of the circumstances," *Amazon*, 2024 WL 3620467, at *5, and no matter whether those circumstances shed light on the question of inadvertence. Writing off "factors" like the "number of documents reviewed," A10 n.9, the court found that "Amazon does not explain how the production … was a mistake," A11.

b. The District Court's standard and application thereof are both clearly erroneous. Rule 502(b)(1) instructs courts to determine whether a "disclosure" "made in a federal proceeding" was "inadvertent." That necessarily requires a court to draw inferences from the circumstances surrounding a disclosure. Rule 502(b)(1) does not limit the factors that a court may consider in drawing those inferences, nor does it require courts to make a threshold finding before broadening the lens. Instead, courts must consider all circumstances bearing on "inadverten[ce]." Rule 502(b)(1).

The District Court also departed from this Court's waiver precedent. In every other area of law, this Court considers the totality of the circumstances when assessing whether a party waived a right. *See, e.g.*, *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468, 479 (9th Cir. 2023) (assessing "arbitration waiver" based on the "totality of the circumstances" (cleaned up)); *United States v. Gonzalez-Melchor*, 648 F.3d 959, 962 (9th Cir. 2011) (same for waiver of "right to appeal"); *United States v. Doe*, 155 F.3d 1070, 1074 (9th

Cir. 1998) ("Whether there has been a valid waiver [of Fifth Amendment rights] depends on the totality of the circumstances ....."). Despite the overwhelming body of case law that courts should consider all relevant evidence when determining whether there has been a waiver, the District Court here made privilege an outlier.

### 2. It is clear error to treat the fact that a privilege review occurred as dispositive.

a. The ruling below erroneously limits the waiver analysis to a solitary factor. In its view, the disclosure could not have been "inadvertent" because "Amazon downgraded the documents" during privilege "re-review." A11. Since lawyers recoded the documents, albeit incorrectly, the District Court reasoned that Amazon's disclosure must have been "intentional" and "strategic." *Id.* at A10–A11.

b. That finding cannot be squared with the text or purpose of Rule 502(b)(1), nor with the case law interpreting it. Inadvertence under Rule 502(b)(1) cannot be limited to technical glitches or documents that nobody reviewed. Indeed, such a limitation would leave virtually *nothing* that would qualify as an inadvertent disclosure. True glitches are relatively rare in modern large-scale litigation, compared to mistakes about how to code or redact documents. Likewise, a party generally cannot assert privilege without first reviewing documents and justifying each assertion, making production *without* privilege review extraordinarily rare. *See Clarke v.*

*Am. Com. Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) ("[B]lanket assertions of … privilege are 'extremely disfavored.'" (citation omitted)).

Instead, Rule 502(b)(1) covers any "inadvertent" disclosure—and nothing in the Rule suggests that "inadvertent" is limited to only "unconscious" errors. The rule does not define *inadvertent*, so that word "should be interpreted as taking [its] ordinary meaning at the time" Congress adopted it. *New Prime Inc. v. Oliveira*, 586 U.S. 105, 113 (2019) (cleaned up). In 2008, as today, *inadvertent* meant "accidental." *Black's Law Dictionary* 774 (8th ed. 2004); *see also American Heritage Dictionary* 699 (4th ed. 2007) ("Marked by unintentional lack of care."). So Rule 502(b)(1) shields privilege from accidental disclosure—even when the accident stemmed from human error or "lack of care."

The explanatory note on Rule 502(b) confirms this. *See Waetzig v. Halliburton Energy Servs., Inc.*, 145 S. Ct. 690, 696 (2025) (deeming such notes "a reliable source of insight into the meaning of a rule" (citation omitted)). The Advisory Committee cited *Hopson v. Mayor & City Council of Balt.*, 232 F.R.D. 228 (D. Md. 2005), "for a discussion of th[e] case law" preceding Rule 502. And *Hopson*, in turn, relied chiefly on a treatise surveying recent privilege cases. *See id.* at 235–36 nn.14–16 (citing Edna S. Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* (4th

ed. 2001)). Cases cited in that treatise show that courts understood "inadvertence" to cover human errors. *E.g.*, *Gray v. Bicknell*, 86 F.3d 1472, 1482 (8th Cir. 1996) (disclosure was "inadvertent" when paralegals included privileged letters "in the course of responding to document requests").

The earliest cases to apply Rule 502(b) adopt the same approach to inadvertence. *See In re Zetia (Ezetimibe) Antitrust Litig.*, 2019 WL 6122012, at *7 (E.D. Va. July 16, 2019) (collecting cases); *e.g.*, *Adair v. EQT Prod. Co.*, 2012 WL 2526982, at *4 (W.D. Va. June 29, 2012) ("[I]nadvertent production can occur and does occur" even when documents are reviewed "by human eyes"); *King Pharm., Inc. v. Purdue Pharma L.P.*, 2010 WL 2243872, at *2 (W.D. Va. June 2, 2010) (That a document "had been reviewed and partially redacted does not by itself prevent the disclosure from being inadvertent.").

That understanding of "inadvertence" also follows from the purpose of Rule 502(b). Congress adopted Rule 502(b) "to protect clients' confidences from their lawyers' human errors." *Carmody*, 893 F.3d at 406. Limiting the rule to mere technical glitches or unreviewed documents would "fai[l] to give full effect" to Congress's policy choices. *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 372 (2007). Indeed, "[c]oncluding that a lawyer's mistake never qualifies as inadvertent disclosure under Rule 502(b) would gut

29

that rule," creating a "perverse incentive not to have attorneys review documents for privilege." *Amobi v. D.C. Dep't of Corr.*, 262 F.R.D. 45, 54 (D.D.C. 2009). The decision below grappled with none of this.

### 3. Properly analyzed, the Rule 502(b) factors are satisfied.

a. Amazon's disclosure was plainly "inadvertent." Rule 502(b)(1). The documents at issue were initially withheld as part of a *multi-million* document review. A59–61. Then, working on a "tight timeframe," Amazon undertook a "voluminous" "privilege re-review," which required it to analyze tens of thousands of "dense, single-spaced memoranda." A59, A61. Amidst this process—which spanned multiple databases, making it "more difficult to maintain consistency" among "master" documents and duplicates—the documents at issue were "miscoded" and accidentally produced. A60–61. After discovering that mistake, Amazon told plaintiffs the disclosure had been "inadverten[t]," adding that privilege was "clear on the face of each document." A39–40. And it later determined that "near duplicates" of one document had still been withheld. A60; *see Zetia*, 2019 WL 6122012, at *8.

The disclosure was no less inadvertent because lawyers were the ones who made the mistake about how to code or redact the documents for privilege. Lawyers also sign briefs, and nobody

thinks that typos are tactical. *E.g.*, *Minadeo v. ICI Paints*, 398 F.3d 751, 757 n.2 (6th Cir. 2005) (inferring that mistaken citation was an "inadvertent typographical error"). Nor would anyone automatically presume that parties cannot claw back or seal a brief that fails to redact sensitive business or consumer information on the ground that such conduct must have been "tactical" and not "inadvertent."

The "overall volume" and complexity of discovery supports that inference. *Zetia*, 2019 WL 6122012, at *8. "Where discovery is extensive, mistakes are inevitable." *Judson Atkinson Candles, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008); Buffmire, *supra* at 167 ("Inadvertent production of privileged communications is inevitable …."). Here, Amazon has produced 2.6 million documents and undertook a privilege review that e-discovery counsel called "one of the most challenging we have ever faced." A61.

The parties' pre-discovery conduct also reinforces Amazon's inadvertence claim. Under Federal Rule of Civil Procedure 26(b)(5), "[a]greements" regarding privilege issues "may be considered when a court determines whether a waiver has occurred." Fed. R. Civ. P. 26(b)(5) Advisory Committee's Note. Here, the parties anticipated (and provided for) just this situation. *See supra Background*. And nothing cuts the other way. Indeed, plaintiffs do not seriously claim

that Amazon had strategic reasons to (i) withhold the documents, (ii) release them, and then (iii) try to claw them back.

b. Amazon meets the remaining 502(b) criteria, too. Plaintiffs do not deny that Amazon took "reasonable steps to prevent disclosure" and "promptly took reasonable steps to rectify the error." Rule 502(b)(2)–(3). Nor could they. To safeguard privilege, Amazon engaged specialized discovery counsel and roughly 165 contract attorneys who reviewed documents up to twelve hours per day. These reviewers, in turn, followed painstaking "consistency processes" when coding across documents—plainly reasonable steps. A60. And when it discovered the mistake, Amazon sought to claw back the documents within a week. *See* A43. That was prompt and reasonable. *E.g.*, *Njenga v. San Mateo Cnty. Superintendent of Schs.*, 2010 WL 1261493, at \*17 (N.D. Cal. Mar. 30, 2010).

## II. THIS CASE RAISES IMPORTANT QUESTIONS ABOUT PRIVILEGE WAIVERS THAT SHOULD BE CLARIFIED TO PROVIDE CONSISTENT STANDARDS, REDUCE UNCERTAINTY, AND LIMIT COSTLY DISPUTES.

This case presents an opportunity for this Court not only to correct clear legal errors resulting in a loss of privilege, but also to

clear up inconsistencies in how lower courts interpret Rule 502 protective orders and resolve clawback disputes.[4] These questions under Rule 502 impact tens of thousands of litigants across the Ninth Circuit who daily make countless privilege determinations, further weighing in favor of mandamus relief.

Privileges against discovery "serve[] broader public interests in the observance of law and administration of justice" by allowing "clients to make 'full and frank' disclosures to their attorneys, who are then better able to provide candid advice and effective representation." *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 108 (2009) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The benefits of privileges "accrue only if clients remain free from the consequences or the apprehension that a court might order their confidential communications involuntarily disclosed." *In re Itron, Inc.*, 883 F.3d 553, 561 (5th Cir. 2018) (cleaned up). Under the ruling below, however, individuals and businesses cannot be certain whether, despite taking every reasonable precaution, the attorney-

---

[4] "The fourth and fifth *Bauman* factors are often mutually exclusive." *Mersho*, 6 F.4th at 903. Because the fifth factor favors mandamus relief here, the fourth factor is not implicated. *Id.* at 898; *see also Valley Broad. Co. v. U.S. Dist. Ct.*, 798 F.2d 1289, 1292 n.3 (9th Cir. 1986) ("[I]t is difficult to envision a case that involves both an oft-repeated error as well as an issue of law of first impression.").

client privilege will vanish when it arguably is most needed—during litigation—due to what amounts to random human error by a low-level document coder. That would gut the foundational policy objections underlying the privilege.

As then-Judge Kavanaugh recognized, "uncertainty matters in the privilege context," because "an 'uncertain privilege … is little better than no privilege at all.'" *Kellogg*, 756 F.3d at 763 (quoting *Upjohn*, 449 U.S. at 393). The continued uncertainty around Rule 502—which the decision below only exacerbates—will increase the likelihood and stakes of clawback disputes. It has long been the rule that lawyers who receive privileged documents must advise the producing party *before* using them. *See* Model Rules of Prof'l Conduct r. 4.4(b) (Am. Bar Ass'n). Now, however, receiving parties seemingly can refuse to return facially privileged materials, unless the producing party first proves through costly motion practice that the privileged documents were *never* reviewed by a human. Faced with such uncertainty, and the severe consequences of privilege waivers, producing parties will have no choice but to invest even more heavily in the already-costly exercise of large-scale document review.

Relatedly, parties deserve certainty about the rules of construction governing Rule 502 agreements. Although Amazon submits that the answer is clear on the facts here, this Court has not directly answered whether, in cases presenting closer questions,

34

Rule 502 agreements should be subject to the same rules of construction as every other type of agreement, rather than a bespoke "concrete directives" test that defeats the very purpose of invoking Rule 502(d). *Mersho*, 6 F.4th at 903 (granting writ despite "no cases from the Ninth Circuit guiding district courts on how to" definitively resolve certain questions).

Avoiding such uncertainties for future litigants around privilege clawbacks warrants mandamus, particularly given the relative difficulty of pursuing Rule 502 questions on direct review. Indeed, as explained below, all Rule 502 questions concern privilege waivers that are generally unsuited to review after a final judgment. *See In re Cement Antitrust Litig.*, 688 F.2d 1297, 1307 (9th Cir. 1982) (mandamus proper without clear error if "resolution" of the issue "would have a substantial effect on the orderly and efficient administration of the courts").

## III. MANDAMUS IS THE ONLY MEANINGFUL RELIEF AVAILABLE TO AVOID PREJUDICE FROM WAIVERS THAT CANNOT BE CORRECTED ON APPEAL.

The remaining *Bauman* factors ask whether "(1) the party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief [it] desires," and whether "(2) the petitioner will be damaged or prejudiced in a way not correctable on appeal." 557 F.2d at 654. Both factors are easily met given the nature of the privileged material at issue.

Amazon has repeatedly tried and failed to obtain relief below, first invoking the protections under the ESI Protocol and Protective Orders, *see* A14, and then advancing and losing the argument that its production was inadvertent, *see* A4. A discovery ruling is not appealable as a matter of right, and it does not present a question that ordinarily can be certified for appeal. *See* 28 U.S.C. §§ 1291, 1292(a)–(b); *Hernandez*, 604 F.3d at 1101 (noting orders compelling production of privileged documents are "interlocutory and non-appealable"). Nor is the Order appealable under the collateral order doctrine. *Mohawk*, 558 U.S. at 107–13; *Hernandez*, 604 F.3d at 1101.[5]

Furthermore, the damage suffered from the production of privileged and confidential material comes from the disclosure itself, not just the later use of the material in motions practice or at trial. In other words, "disclosure of … privileged information is a harm in and of itself." *Tobias v. Dep't of Interior*, 2024 WL 894925, at *8 n.4 (D.D.C. Mar. 1, 2024); *see also, e.g.*, *Admiral Ins.*, 881 F.2d at 1491 (disclosing attorney-client privileged material would inflict

---

[5] Although a criminal contempt order would be immediately appealable, *Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, 539 F.3d 1039, 1042 (9th Cir. 2008), it is unreasonable to risk severe penalties merely for the chance to obtain review. *See In re Perez*, 749 F.3d at 855 ("Our case law does not require a party … to take such a drastic step in lieu of" mandamus).

prejudice not correctable on appeal); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1157–58 (9th Cir. 2010) (similar under First Amendment privilege); *Star Ed., Inc. v. U.S. Dist. Ct.*, 7 F.3d 856, 859 (9th Cir. 1993) (similar regarding disclosure of reporter's privileged material). Thus, because an order compelling disclosure of privileged documents "conclusively determine[s]" that the information will be provided to the opposing party, such an order is "effectively unreviewable on appeal from a final judgment." *In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008).

Here, the prejudice caused by the ruling below will be multiplied due to the posture of these coordinated cases. Amazon is also defending against the Federal Trade Commission, California, D.C., *Zulily*, and *Mbadiwe* lawsuits, and documents produced here are also produced in those matters. *See supra* Background. A waiver determination could strip the documents of privilege not just in this case, but potentially across multiple cases in light of the coordinated discovery. *Contra* Fed. R. Evid. 502(d) (waiver under 502(d) can be limited to "not [be] a waiver in any other federal or state proceeding."). Indeed, private plaintiffs here could seek to use these documents in the coordinated depositions. Thus, even if Amazon succeeded in an appeal in *this* case, "remanding for a new trial in which the protected material and its fruits are excluded from evidence," *Mohawk*, 558 U.S. at 110, could never undo the prejudice

from public dissemination and use of privileged materials in *other* cases. "Once information is published, it cannot be made secret again." *Copley Press*, 518 F.3d at 1025.

Finally, the order puts Amazon in an untenable position going forward. Amazon is expected to defend itself with one hand tied behind its back. Plaintiffs will remain free to leverage privileged documents, whereas any attempt by Amazon to defuse the documents by putting them in context could be used as grounds for demanding a broader privilege waiver. Either way, Amazon suffers irreparable harm. Mandamus thus is the only viable avenue to afford Amazon meaningful relief.

## CONCLUSION

The Court should issue a writ of mandamus.

Dated:  May 14, 2025                    Respectfully submitted,

By: */s/ Collin P. Wedel*
    Collin P. Wedel

    Sean A. Commons
    scommons@sidley.com
    David R. Carpenter
    drcarpenter@sidley.com
    Collin P. Wedel*
    cwedel@sidley.com
    SIDLEY AUSTIN LLP
    350 S. Grand Ave.
    Los Angeles, CA 91107
    (213) 896-6000

    C. Frederick Beckner III
    rbeckner@sidley.com
    Peter A. Bruland
    pbruland@sidley.com
    SIDLEY AUSTIN LLP
    1501 K Street, NW
    Washington, D.C. 20005
    (202) 736-8000

    *Attorneys for Petitioner Amazon.com, Inc.*

## **CERTIFICATE OF COMPLIANCE**

This brief complies with Ninth Circuit Rules 21-2(c) and 32-3(2) because it contains 8,385 words, excluding the parts of the document exempted by Rules 21(a)(2)(C) and 32(f) of the Federal Rules of Appellate Procedure. The brief also complies with the typeface and typestyle requirements of Rules 32(a)(5)–(6) of the Federal Rules of Appellate Procedure because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: May 14, 2025                    Respectfully submitted,

By: */s/ Collin P. Wedel*
            Collin P. Wedel

## CERTIFICATE OF SERVICE

I certify that on May 14, 2025, I electronically filed the foregoing petition and the following appendix with the Clerk of Court using the CM/ECF system. I have arranged for the following coun-sel to be served via email.

***Counsel for real parties in interest/plaintiffs:***

***De Coster et al v. Amazon.com, Inc,***
**Case No. 2:21-cv-00693-JHC**

Steve W. Berman (steve@hbsslaw.com)
Xiaoyi Fan (kellyf@hbsslaw.com)
Anne F. Johnson (annej@hbsslaw.com)
Barbara Mahoney (barbaram@hbsslaw.com)
Shelby R. Smith (shelby@hbsslaw.com)
Zina Bash (zina.bash@kellerpostman.com)
Jessica Beringer (jessica.beringer@kellerpostman.com)
Alex Dravillas (ajd@kellerpostman.com)
Shane Kelly (shane.kelly@kellerpostman.com)
Warren Postman (wdp@kellerpostman.com)
Roseann Romano (roseann.romano@kellerpostman.com)
Derek W. Loeser (dloeser@kellerrohrback.com)
Aseem Chipalkatti (aseemchipalkatti@quinnemanuel.com)
Alicia Cobb (aliciacobb@quinnemanuel.com)
David LeRay (davidleray@quinnemanuel.com)
Elle Mahdavi (ellemahdavi@quinnemanuel.com)
Maxwell Meadows (maxmeadows@quinnemanuel.com)
Steig D. Olson (steigolson@quinnemanuel.com)
Nicolas Siebert (nicolassiebert@quinnemanuel.com)
Adam B. Wolfson (adamwolfson@quinnemanuel.com)
Garth Wojtanowicz (garthw@hbsslaw.com)

***Frame-Wilson et al v. Amazon.com, Inc,***
**Case No. 2:20-cv-00424-JHC**

Steve W. Berman (steve@hbsslaw.com)
Xiaoyi Fan (kellyf@hbsslaw.com)
Anne F. Johnson (annej@hbsslaw.com)
Barbara Mahoney (barbaram@hbsslaw.com)
Shelby R. Smith (shelby@hbsslaw.com)
Zina Bash (zina.bash@kellerpostman.com)
Jessica Beringer (jessica.beringer@kellerpostman.com)
Shane Kelly (shane.kelly@kellerpostman.com)
Warren Postman (wdp@kellerpostman.com)
Roseann Romano (roseann.romano@kellerpostman.com)
Derek W. Loeser (dloeser@kellerrohrback.com)
Aseem Chipalkatti (aseemchipalkatti@quinnemanuel.com)
Alicia Cobb (aliciacobb@quinnemanuel.com)
David LeRay (davidleray@quinnemanuel.com)
Elle Mahdavi (ellemahdavi@quinnemanuel.com)
Maxwell Meadows (maxmeadows@quinnemanuel.com)
Steig D. Olson (steigolson@quinnemanuel.com)
Nicolas Siebert (nicolassiebert@quinnemanuel.com)
Adam B. Wolfson (adamwolfson@quinnemanuel.com)
Garth Wojtanowicz (garthw@hbsslaw.com)
Matthew Gerend (mgerend@kellerrohrback.com)
Ryan McDevitt (rmcdevitt@kellerrohrback.com)

***Brown et al v. Amazon.com, Inc,***
**Case No. 2:22-cv-00965-JHC**

Steve W. Berman (steve@hbsslaw.com)
Xiaoyi Fan (kellyf@hbsslaw.com)
Anne F. Johnson (annej@hbsslaw.com)
Barbara Mahoney (barbaram@hbsslaw.com)
Shelby R. Smith (shelby@hbsslaw.com)
Zina Bash (zina.bash@kellerpostman.com)
Jessica Beringer (jessica.beringer@kellerpostman.com)
Shane Kelly (shane.kelly@kellerpostman.com)
Roseann Romano (roseann.romano@kellerpostman.com)
Aseem Chipalkatti (aseemchipalkatti@quinnemanuel.com)

Alicia Cobb (aliciacobb@quinnemanuel.com)
Aaron Lawrence (aaronlawrence@quinnemanuel.com)
David LeRay (davidleray@quinnemanuel.com)
Elle Mahdavi (ellemahdavi@quinnemanuel.com)
Maxwell Meadows (maxmeadows@quinnemanuel.com)
Steig D. Olson (steigolson@quinnemanuel.com)
Nicolas Siebert (nicolassiebert@quinnemanuel.com)
Adam B. Wolfson (adamwolfson@quinnemanuel.com)
Garth Wojtanowicz (garthw@hbsslaw.com)

The District Court will be provided a copy of this petition as required by Federal Rule of Appellate Procedure 21(a).

Dated: May 14, 2025                    Respectfully submitted,

By: */s/Collin P. Wedel*
    Collin P. Wedel

## **STATEMENT OF RELATED CASES**

There are no related cases under Circuit Rule 28.2-6.

Dated:  May 14, 2025                          Respectfully submitted,

By: */s/ Collin P. Wedel*
Collin P. Wedel

# APPENDIX

Order Denying Motion to Claw Back Documents (Apr. 29, 2025),
*De Coster v. Amazon.com, Inc.*, No. 2:21-cv-00693-JHC (ECF 329)[1] .... A1

Order Granting Motion to Compel (Mar. 25, 2025),
*De Coster v. Amazon.com, Inc.*, No. 2:21-cv-00693-JHC (ECF 302)[2] .. A14

Declaration of Amy J. Mauser in Support of
Amazon's Motion to Claw Back Documents (Mar. 25, 2025),
*De Coster v. Amazon.com, Inc.*, No. 2:21-cv-00693-JHC (ECF 297)[3] .. A35

Declaration of Robert D. Keeling in Support of
Amazon's Motion to Claw Back Documents (Mar. 17, 2025),
*De Coster v. Amazon.com, Inc.*, No. 2:21-cv-00693-JHC (ECF 298)[4] .. A58

Amended Stipulated Protective Order (July 29, 2024),
*De Coster v. Amazon.com, Inc.*, No. 2:21-cv-00693-JHC (ECF 169)[5] .. A63

---

[1] The *De Coster* Clawback Order was cross-entered in *Frame-Wilson* and *Brown. See* Order, *Frame-Wilson et al. v. Amazon.com, Inc.,* No. 2:20-cv-00424-JHC (ECF 312); Order, *Brown et al. v. Amazon.com, Inc.,* No. 2:22-cv-00965-JHC (ECF 185).

[2] The *De Coster* Order to Compel was cross-entered in *Frame-Wilson* and *Brown. See* Order, *Frame-Wilson et al. v. Amazon.com, Inc.,* No. 2:20-cv-00424-JHC (ECF 294); Order, *Brown et al. v. Amazon.com, Inc.,* No. 2:22-cv-00965-JHC (ECF 170).

[3] The Mauser Declaration filed in *De Coster* was cross-filed in *Frame-Wilson* and *Brown. See* Declaration, *Frame-Wilson et al. v. Amazon.com, Inc.,* No. 2:20-cv-00424-JHC (ECF 288); Declaration, *Brown et al. v. Amazon.com, Inc.,* No. 2:22-cv-00965-JHC (ECF 166).

[4] The Keeling Declaration filed in *De Coster* was cross-filed in *Frame-Wilson* and *Brown. See* Declaration, *Frame-Wilson et al. v. Amazon.com, Inc.,* No. 2:20-cv-00424-JHC (ECF 289); Declaration, *Brown et al. v. Amazon.com, Inc.,* No. 2:22-cv-00965-JHC (ECF 167).

[5] The *De Coster* Protective Order is materially identical to the Protective Orders in *Frame-Wilson* and *Brown. Compare* Order, *De Coster et al. v. Amazon.com, Inc.*, No. 2:21-cv-00693-JHC (ECF 169) *with* Order, *Frame-Wilson et al. v. Amazon.com, Inc.,*

Order Granting Stipulated Motion Regarding Discovery
of Electronically Stored Information (Mar. 10, 2023),
*De Coster v. Amazon.com, Inc.*, No. 2:21-cv-00693-JHC (ECF 66)[6] .... A85

No. 2:20-cv-00424-JHC (ECF 179), *and* Order, *Brown et al. v. Amazon.com, Inc.,* No. 2:22-cv-00965-JHC (ECF 82).

[6] The *De Coster* ESI Protocol is materially identical to the ESI Protocols in *Frame-Wilson* and *Brown. Compare* Order, *De Coster et al. v. Amazon.com, Inc.*, No. 2:21-cv-00693-JHC (ECF 66) *with* Order, *Frame-Wilson et al. v. Amazon.com, Inc.,* No. 2:20-cv-00424-JHC (ECF 91), *and* Order, *Brown et al. v. Amazon.com, Inc.,* No. 2:22-cv-00965-JHC (ECF 60).

1

2

3                                  UNITED STATES DISTRICT COURT
                                  WESTERN DISTRICT OF WASHINGTON
4                                          AT SEATTLE

5    ELIZABETH DE COSTER *et al.*, on behalf of        CASE NO. 2:21-cv-00693-JHC
     themselves and all others similarly situated,
6
                         Plaintiffs,                    ORDER
7
            v.
8
     AMAZON.COM, INC., a Delaware corporation,
9
                         Defendant.
10

11   DEBORAH FRAME-WILSON, *et al.*, on behalf        CASE NO. 2:20-cv-00424-JHC
     of themselves and all others similarly situated,
12
                         Plaintiffs,
13
            v.
14
     AMAZON.COM, INC., a Delaware corporation,
15
                         Defendant.
16

17   CHRISTOPHER BROWN, *et al.*, on behalf of
     themselves and all others similarly situated,
                                                       CASE NO. 2:22-cv-00965-JHC
18
                         Plaintiffs,
19
            v.
20
     AMAZON.COM, INC., a Delaware
     corporation,
21
                         Defendant.
22

23

24

ORDER - 1

**A001**

# I

## INTRODUCTION

This matter comes before the Court on Amazon's Motion to Claw Back Privileged Material and Strike References Thereto from Plaintiffs' Class Certification Motion.  Case No. 21-693, Dkt. # 296; Case No. 20-424, Dkt. # 287; Case No. 22-965, Dkt. # 165.  The Court has reviewed the materials filed in support of and in opposition to the motion, pertinent portions of the record, and the applicable law.  The Court finds oral argument unnecessary.  For the reasons below, the Court DENIES the motion.

# II

## BACKGROUND

Plaintiffs brought antitrust class action lawsuits against Amazon claiming various violations of the Sherman Act.  Case No. 21-693, Dkt. # 126 (redacted); Case No. 20-424, Dkt. # 165 (redacted); Case No. 22-965, Dkt. # 100.  On February 20, 2025, Plaintiffs in *Frame-Wilson* filed their Motion for Class Certification.  Case No. 20-424, Dkt. # 266 (sealed).  Amazon says that within a week of receiving Plaintiffs' motion, it emailed Plaintiffs to claw back Exhibit 68 (CAAGLit-AMZ_10780239), Exhibit 69 (CAAGLit-AMZ_03029869), and Exhibit 94 (CAAGLit-AMZ_10631781).[1]  Amazon asked Plaintiffs to "destroy all copies of these documents, delete them from any and all litigation support or other databases in [their] possession, and expunge them from any work product reflecting the contents of the documents."

---

[1] Amazon also clawed back all copies of Exhibit 68 that had been produced to Plaintiffs: CAAGLit-AMZ_03033686, CAAGLit-AMZ_03034000, CAAGLit-AMZ_03034028, CAAGLit-AMZ_106377333, CAAGLit-AMZ_10695061, and CAAGLit-AMZ_10804172.  *See* Case No. 21-693, Dkt. # 298 at 3 ¶ 11; Case No. 20-424, Dkt. # 289 at 3¶ 11; Case No. 22-965, Dkt. # 167 at 3 ¶ 11.

Also, Robert D. Keeling's declaration asserts that Amazon now seeks to claw back three documents like Exhibit 94 that "were incorrectly produced with inconsistent redactions."  Case No. 21-693, Dkt. # 298 at 3 ¶ 9; Case No. 20-424, Dkt. # 289 at 3¶ 9; Case No. 22-965, Dkt. # 167 at 3 ¶ 9.  Amazon provides no other information about these documents, and this Order does not address them.

ORDER - 2

1   Case No. 21-693, Dkt. # 296 at 8; Case No. 20-424, Dkt. # 287 at 8; Case No. 22-965, Dkt. # 165

2   at 8 (internal quotation omitted).  Amazon also requested that Plaintiffs "remove any reference to

3   the above documents from their class certification papers and re-file a new version that contains

4   no reference to the above three documents."  Case No. 21-693, Dkt. # 296 at 8; Case No. 20-424,

5   Dkt. # 287 at 8; Case No. 22-965, Dkt. # 165 at 8 (internal quotation omitted).  Plaintiffs

6   responded that they believed the company had waived privileged over these documents.  Case

7   No. 21-693, Dkt. # 296 at 9; Case No. 20-424, Dkt. # 287 at 9; Case No. 22-965, Dkt. # 165 at 9.

8   The parties met and conferred and did not resolve the issue.  Case No. 21-693, Dkt. # 296 at 9;

9   Case No. 20-424, Dkt. # 287 at 9; Case No. 22-965, Dkt. # 165 at 9.

### III

#### DISCUSSION

12          Generally, a party waives privilege with respect to a document if they produce it.  *United*

13   *States v. Sanmina Corp.*, 968 F.3d 1107, 1116–17 (9th Cir. 2020).  Federal Rule of Evidence

14   502(b) provides that disclosure does not waive privilege when it is (1) inadvertent; (2) the

15   privilege holder "took reasonable steps to prevent disclosure;" and (3) the privilege holder took

16   prompt, reasonable steps to correct the error.  *See* Fed. R. Evid. 502(b)(1) – (3).  And Federal

17   Rule of Evidence 502(d) provides that a federal court may order that the privilege is not waived

18   by disclosure.  "[W]aiver of any privilege [i]s the threshold issue" when determining whether a

19   clawed back document is privileged.  *In re Qualcomm Litig.*, No. 3:17-CV-108-GPC-MDD,

20   2018 WL 6617294, at *4 (S.D. Cal. Dec. 18, 2018).  The party asserting privilege bears the

21   burden of proving that privilege is not waived.  *Id.*

22          Amazon contends that the Electronically Stored Information (ESI) Protocol governs this

23   dispute, and that the parties did not intend to override the protections of Federal Rule of

24   Evidence 502*(d)*.  Case No. 21-693, Dkt. # 296 at 9–10; Case No. 20-424, Dkt. # 287 at 9–10;

ORDER - 3

1  Case No. 22-965, Dkt. # 165 at 9–10.  But the company says that even if the parties' Protective

2  Order (instead of the ESI protocol) governs this dispute, the Court is compelled to reach the

3  same result.  Case No. 21-693, Dkt. # 296 at 9–10; Case No. 20-424, Dkt. # 287 at 9–10; Case

4  No. 22-965, Dkt. # 165 at 9–10.  In the alternative, Amazon argues that even if Rule 502(d) does

5  not control the treatment of these documents, Amazon's handling of the documents satisfies the

6  Rule 502*(b)* requirements.  Case No. 21-693, Dkt. # 296 at 12; Case No. 20-424, Dkt. # 287 at

7  12; Case No. 22-965, Dkt. # 165 at 12.[2]

8  A.    Whether the ESI Protocol or the Protective Order Applies to the Disputed Documents

9      Amazon contends that the parties' ESI Protocol contains a Rule 502(d) provision that

10  expressly protects against waiver of privilege if a party produces privileged information during

11  discovery.  Case No. 21-693, Dkt. # 296 at 10; Case No. 20-424, Dkt. # 287 at 10; Case No. 22-

12  965, Dkt. # 165 at 10.  They say that the ESI Protocol governs "the exchange of electronically-

13  stored information between the parties" while the Protective Order "generally concern the

14  confidentiality of information produced by parties and non-parties."  Case No. 21-693, Dkt. #

15  315 at 3–4; Case No. 20-424, Dkt. # 304 at 3–4; Case No. 22-965, Dkt. # 180 at 3–4.

16     Plaintiffs respond that Amazon previously told the Court that the Protective Order, not

17  the ESI protocol, controls the waiver analysis.  Case No. 21-693, Dkt. # 311 (sealed) at 9; Case

18  No. 20-424, Dkt. # 300 (sealed) at 9; Case No. 22-965, Dkt. # 176 (sealed) at 9 (citing Case No.

19  21-693, Dkt. # 292 (sealed) at 7; Case No. 20-424, Dkt. # 284 (sealed) at 7; Case No. 22-965,

20

21  [2] The central issue before the Court is whether Amazon has waived privilege over the disputed
   documents.  The parties briefly discuss whether these documents are privileged.  Case No. 21-693, Dkt. #
   296 at 7; Case No. 20-424, Dkt. # 287 at 7; Case No. 22-965, Dkt. # 165 at 7 ("[T]he details of the

22  documents are not material to this Motion because Plaintiffs have not disputed that they contain
   privileged information…").  *See also* Case No. 21-693, Dkt. # 311 (sealed) at 14 n.5; Case No. 20-424,
   Dkt. # 300 (sealed) at 14 n.5; Case No. 22-965, Dkt. # 176 (sealed) at 14 n.5 ("Contrary to Amazon's

23  representation, Plaintiffs have consistently contested Amazon's privilege designation.").  But since
   Amazon's motion centers on whether the company is procedurally entitled to claw back these documents,

24  the Court assumes, without deciding, that these documents are privileged.

ORDER - 4

Dkt. # 162 (sealed) at 7).[3]  They also say that, based on the language of the Protective Order, the

ESI Protocol only allows for the return of documents produced without a prior privilege review.

Case No. 21-693, Dkt. # 311 (sealed) at 10; Case No. 20-424, Dkt. # 300 (sealed) at 10; Case No.

22-965, Dkt. # 176 (sealed) at 10.

On February 28, 2023, the Honorable Richard A. Jones approved of the parties' ESI

Protocol in *Frame*-Wilson.  Case No. 20-424, Dkt. # 91.  The Protocol states

> Pursuant to Fed. R. Evid. 502(d), the production of any documents in this
> proceeding shall not, for the purposes of this proceeding or any other federal or
> state proceeding, constitute a waiver by the producing party of any privilege
> applicable to those documents, including the attorney-client privilege, attorney
> work-product protection, or any other privilege or protection recognized by law.
> Information produced in discovery that is protected as privileged or work product
> shall be immediately returned to the producing party, and its production shall not
> constitute a waiver of such protection.

Case No. 20-424, Dkt. # 91 at 8.[4]

More than a year later, on July 29, 2024, this Court approved the parties' Amended

Protective Order, which contains a section titled "**Inadvertent Production of Privileged or**

**Otherwise Protected Material**."  Case No. 20-424, Dkt. # 179 at 17 (emphasis in original).[5]

This section states,

> When a Producing Party gives notice to Receiving Parties that certain inadvertently
> produced material is subject to a claim of privilege or other protection, the
> obligations of the Receiving Parties are those set forth in Federal Rule of Civil
> Procedure 26(b)(5)(B). This provision is not intended to modify whatever
> procedure may be established in an e-discovery order or agreement that provides
> for production without prior privilege review.  This Order invokes the protections
> afforded by Fed. R. Evid. 502(b). As provided under Fed. R. Evid. 502(b) and

---

[3] In its March 11, 2025 letter, Amazon requested to claw back two documents that Plaintiffs selected for in camera review. Amazon said that it applied insufficient redactions to the documents. *See* Case No. 21-693, Dkt. # 292 (sealed); Case No. 20-424, Dkt. # 284 (sealed); Case No. 22-965, Dkt. # 162 (sealed).  The Court declined Amazon's request.  *See* Case No. 21-693, Dkt. # 302 at 5–10; Case No. 20-424, Dkt. # 294 at 5–10; Case No. 22-965, Dkt. # 170 at 5–10.

[4] The ESI Protocols in *De Coster* and *Brown* contain identical provisions.  *See* Case 21-693, Dkt. # 66 at 7–8; Case No. 22-695, Dkt. # 60 at 7–8.

[5] The Amended Protective Orders in *De Coster* and *Brown* contain identical provisions.  Case No. 21-693, Dkt. # 169 at 17; Case No. 22-965, Dkt. # 82 at 17–18.

ORDER - 5

**A005**

502(d) and subject to the limitations in Fed. R. Evid. 502(a), the disclosure of privileged material in connection with this litigation does not operate as a waiver in this action or any other action by the Producing Party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law.

*Id.*

The Amended Protective Order is more specific than the ESI Protocol and addresses the treatment of privileged documents "inadvertently" produced. The only restriction is that the provision does not modify "whatever procedure may be established in an e-discovery order or agreement that provides for production *without prior privilege review*." *See id.* (emphasis added). Thus, the Amended Protective Order applies to documents that the producing party reviewed for privilege.

The three documents at issue were produced during Amazon's months-long privilege re-review.[6] Exhibit 68 (CAAGLit-AMZ_10780239) was fully withheld on April 13, 2024, and produced in full on January 28, 2025.[7] Case No. 21-693, Dkt. # 298 at 3 ¶ 10; Case No. 20-424, Dkt. # 289 at 3 ¶ 10; Case No. 22-965, Dkt. # 167 at 3 ¶ 10. Exhibit 69 (CAAGLit-AMZ_03029869) was fully withheld on April 13, 2023, and produced in full on October 29, 2024. Case No. 21-693, Dkt. # 298 at 2 ¶ 8; Case No. 20-424, Dkt. # 289 at 2 ¶ 8; Case No. 22-965, Dkt. # 167 at 2 ¶ 8. Exhibit 94 (CAAGLit-AMZ_10631781) was fully withheld on October

---

[6] In August 2024, Plaintiffs filed a Motion to Compel Production of Documents from Amazon's Privilege Logs and For Appointment of a Special Master. Case No. 21-693, Dkt. # 189 (sealed); Case No. 20-424, Dkt. # 186 (sealed); Case No. 22-965, Dkt. # 89 (sealed). In response, Amazon stated that it was in the process of re-reviewing the challenged privilege log entries and would be completing its review by mid-October 2024. *See* Case No. 21-693, Dkt. # 203 at 14–15 (sealed); Case No. 20-424, Dkt. # 197 at 14–15 (sealed); Case No. 22-965, Dkt. # 103 at 14–15 (sealed). By November 2024, Amazon had yet to complete its privilege re-review. On January 31, 2025, the Court held a hearing in which Plaintiffs renewed their motion and the parties presented their arguments on the outstanding discovery issues to the Court. Case No. 21-693, Dkt. # 277; Case No. 20-424, Dkt. # 256; Case No. 22-965, Dkt. # 148. The Court then ordered Amazon to complete its re-review of every document withheld as privileged and provide a final privilege log to Plaintiffs by February 25, 2025. *Id.*

[7] Six other copies of Exhibit 68 were also produced to Plaintiffs. *See* Case No. 21-693, Dkt. # 298 at 3 ¶ 11; Case No. 20-424, Dkt. # 289 at 3 ¶ 11; Case No. 22-965, Dkt. # 167 at 3 ¶ 11.

ORDER - 6

20, 2023, and produced to Plaintiffs with redactions on October 28, 2024.  Case No. 21-693, Dkt. # 298 at 3 ¶ 9; Case No. 20-424, Dkt. # 289 at 3¶ 9; Case No. 22-965, Dkt. # 167 at 3 ¶ 9.  Thus, the Amended Protective Order applies to these documents.

B.    The Protective Order & Rule 502(b)

In its March 25, 2025 Order, the Court determined that the parties' Protective Order did not "articulate the desire" to forgo the Rule 502(b) waiver analysis.  *See* Case No. 21-693, Dkt. # 302 at 7; Case No. 20-424, Dkt. # 294 at 7; Case No. 22-965, Dkt. # 170 at 7.  The Court said that "[n]o reasonable reading of the [Amended Protective] Order supports Amazon's contention that it allows a party to claw back a document under any circumstances."  *Id.*[8]  Thus, the Court applies the Rule 502(b) waiver standard to Amazon's claw back requests.

1.    Rule 502(b) exception to waiver

As stated above, when a party discloses a privileged document, that "disclosure does not operate as a waiver" if "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error."  Fed. R. of Evid. 502(b)(1) – (3).  Each of the requirements

---

[8]Amazon disagrees with the Court's previous determination and says that the reference to Rule 502(b) in the Amended Protective Order "was not meant to supplant the specific agreement following it that 'disclosure does not operate as a waiver.'"  *See* Case No. 21-693, Dkt. # 315 at 4 n.3; Case No. 20-424, Dkt. # 304 at 4 n.3; Case No. 22-965, Dkt. # 180 at 4 n.3.  But the Protective Order states, "This Order *invokes the protections afforded by Fed. R. Evid. 502(b)*."  Case No. 21-693, Dkt. # 169 at 17; Case No. 20-424, Dkt. # 179 at 17; Case No. 22-965, Dkt. # 82 at 17–18.  And the following sentence also invokes Rule 502(b).  *Id.* ("*As provided under Fed. R. Evid. 502(b)* and 502(d) and subject to the limitations in Fed. R. Evid. 502(a)…").

In the case cited by Amazon, the district court stated, "it goes without saying that parties must adequately articulate the desire to supplant analysis under Rule 502(b) in any agreement under Rule 502(d) or (e)."  *Great-W. Life & Annuity Ins. Co. v. Am. Econ. Ins. Co.*, No. 2:11-CV-02082-APG, 2013 WL 5332410, at *13 (D. Nev. Sept. 23, 2013).  The court reasoned that "[a]n agreed protective order 'should be given a reasonable or common sense interpretation in light of its purposes.'"  *Id.* (quoting *Koninklijke Philips Electronics N.V. v. KXD Tech., Inc.*, No. 2:05–cv–01532–RLH–GWF, 2007 WL 2407038 *2 (D. Nev. Aug. 16, 2007)).  Here, a reasonable reading of the Protective Order is that Rule 502(b) applies given the explicit invocation of the "protections afforded by Rule 502(b)."

ORDER - 7

1   of Rule 502(b) is "separate and should not be conflated in the analysis[.]"  *Datel Holdings Ltd. V.*

2   *Microsoft Corp.*, No. C-09-05535 EDL, 2011 WL 866993, at *2 (N.D. Cal. Mar. 11, 2011).

3   "The disclosing party has the burden of proving that the elements of the rule have been met."

4   *Columbia Cmty. Credit Union v. Chicago Title Ins. Co.*, No. C09-5290RJB, 2009 WL 10688219,

5   at *4 (W.D. Wash. Dec. 22, 2009).

6         Amazon contends that the disclosure was "inadvertent" given that its privilege re-review

7   "was enormous and exceedingly difficult."  Case No. 21-693, Dkt. # 296 at 13; Case No. 20-424,

8   Dkt. # 287 at 13; Case No. 22-965, Dkt. # 165 at 13.  Amazon says that its disclosure of Exhibit

9   68 was inadvertent because "[t]he document was not reviewed seven times by seven different

10  reviewers; rather a single reviewer could review a document and make a mistake, and that

11  mistake would be replicated across other versions of the same document based on consistency

12  review."  Case No. 21-693, Dkt. # 296 at 13–14; Case No. 20-424, Dkt. # 287 at 13–14; Case

13  No. 22-965, Dkt. # 165 at 13–14 (internal citation omitted).  As to Exhibits 69 and 94, Amazon

14  asserts that "[t]he fact that a small number of documents were mistakenly downgraded to not

15  privileged or downgraded to redacted, even though they were initially and correctly denoted as

16  fully privileged, only establishes that a reviewer made a mistake in reviewing complex, dense,

17  single-spaced documents day in and day out—not intentionality."  Case No. 21-693, Dkt. # 296

18  at 14; Case No. 20-424, Dkt. # 287 at 14; Case No. 22-965, Dkt. # 165 at 14 (internal citation

19  omitted).  Amazon says that the declaration of its discovery counsel, Robert Keeling, "set[s]

20  forth the circumstances surrounding the production of each of the three documents, and why the

21  production of each was inadvertent."  Case No. 21-693, Dkt. # 296 at 14; Case No. 20-424, Dkt.

22  # 287 at 14; Case No. 22-965, Dkt. # 165 at 14.

23         Plaintiffs respond that "the Keeling Declaration includes only *conclusory assertions* that

24  are completely at odds with Amazon's representations that it reviewed each document word-by-

ORDER - 8

**A008**

word, employed sophisticated quality control measures, and conducted investigations to make privilege determinations." Case No. 21-693, Dkt. # 311 (sealed) at 11; Case No. 20-424, Dkt. # 300 (sealed) at 11; Case No. 22-965, Dkt. # 176 (sealed) at 11 (emphasis in original). They say that Amazon does not mention "any technical glitches or other extraordinary facts to suggest the documents were produced *by accident*." Case No. 21-693, Dkt. # 311 (sealed) at 12; Case No. 20-424, Dkt. # 300 (sealed) at 12; Case No. 22-965, Dkt. # 176 (sealed) at 12 (emphasis in original). As for Exhibits 68 and 69, Plaintiffs say that no fact suggests that the production of these documents was anything but a judgment call. Case No. 21-693, Dkt. # 311 (sealed) at 12; Case No. 20-424, Dkt. # 300 (sealed) at 12; Case No. 22-965, Dkt. # 176 (sealed) at 12. As for Exhibit 94, they say that there is no evidence that the redactions were mistakenly applied. Case No. 21-693, Dkt. # 311 (sealed) at 12; Case No. 20-424, Dkt. # 300 (sealed) at 12; Case No. 22-965, Dkt. # 176 (sealed) at 12. As for the duplicates of Exhibit 68, Plaintiffs say that Amazon does not explain how the "master" coded document was "inadvertently miscoded." Case No. 21-693, Dkt. # 311 (sealed) at 12; Case No. 20-424, Dkt. # 300 (sealed) at 12; Case No. 22-965, Dkt. # 176 (sealed) at 12. They say that Amazon reviewed multiple copies "*specifically* to make a privilege determination and *intentionally* marked the documents for production over several months." Case No. 21-693, Dkt. # 311 (sealed) at 12–13; Case No. 20-424, Dkt. # 300 (sealed) at 12–13; Case No. 22-965, Dkt. # 176 (sealed) at 12–13 (emphasis in original).

While Rule 502(b) does not define "inadvertent," other courts have developed two approaches to the issue. *See T&W Holding Co., LLC v. City of Kemah, Texas*, 641 F. Supp. 3d 378, 382 (S.D. Tex. 2022); *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, No. 14-60268-CIV, 2015 WL 1565310, at *8 (S.D. Fla. Apr. 8, 2015). Under the first approach, a court simply looks to "whether the party intended a privileged or work-product protected document to be produced or whether the production was a mistake.'" *T&W Holding Co., LLC*, 641 F. Supp. 3d

at 382.  Previously, this Court adopted the first approach.  *See* Case No. 21-693, Dkt. # 302 at 9; Case No. 20-424, Dkt. # 294 at 9; Case No. 22-965, Dkt. # 170 at 9 ("The Court adopts [the first] approach because it aligns with other courts in the Circuit as well as the structure and purpose of Rule 502(b)."); *see also F.T.C. v. Amazon.com, Inc.*, No. 2:23-CV-00932-JHC, 2024 WL 3620467, at *6 (W.D. Wash. Aug. 1, 2024) (same).[9]

Amazon's production of the documents at issue was intentional.  For context, during the January 31, 2025 hearing, Amazon represented to the Court that 80 lawyers have been working on this privilege re-review and "[t]hey have put in 14,000 hours."  Case No. 21-693, Dkt. # 279 (sealed) at 27:13–17; Case No. 20-424, Dkt. # 258 (sealed) at 27: 13–17; Case No. 22-965, Dkt. # 149 (sealed) at 27:13–17.  The company also said, "These documents have been individually re-reviewed. Sometimes that requires many meetings to figure out the context of the document, especially with dual-purpose documents."  Case No. 21-693, Dkt. # 279 (sealed) at 27:13–17; Case No. 20-424, Dkt. # 258 (sealed) at 27: 13–17; Case No. 22-965, Dkt. # 149 (sealed) at 27:13–17.  In its March 11, 2025 letter to the Court, Amazon stated

> Over 200 lawyers, including outside counsel from five law firms, participated in the re-review in various roles—including first-level re-review, quality control and consistency, and privilege logging—which covered nearly 140,000 privilege log entries across bespoke privilege logs prepared in other contexts. Amazon's review included a document's full family, other branches of an email chain, and related background. Amazon also biased in favor of redacting portions of a document instead of fully withholding documents, as noted above—a more time-consuming process.

Case No. 21-693, Dkt. # 292 (sealed) at 8; Case No. 20-424, Dkt. # 284 (sealed) at 8; Case No. 22-965, Dkt. # 162 (sealed) at 8.

---

[9] Under the second approach, the court looks at factors along with a party's subjective intent, "including the total number of documents reviewed, the procedures used to review the documents before production, and the actions of the producing party after discovering that the documents had been produced."  *See T&W Holding Co., LLC*, 641 F. Supp. 3d at 382.

ORDER - 10

**A010**

Amazon downgraded the documents during this comprehensive re-review of its privilege logs. Case No. 21-693, Dkt. # 298 at 2–3 ¶¶ 8–10; Case No. 20-424, Dkt. # 289 at 2–3 ¶¶ 8–10; Case No. 22-965, Dkt. # 167 at 2–3¶¶ 8–10. And Amazon does not explain how the production of these documents was a mistake. For example, with respect to Exhibit 94, Keeling's declaration simply says that the document was "inadvertently downgraded" to "privilege redact" a year after it was originally withheld in full. Case No. 21-693, Dkt. # 298 at 3 ¶ 9; Case No. 20-424, Dkt. # 289 at 3¶ 9; Case No. 22-965, Dkt. # 167 at 3 ¶ 9; *see also* Case No. 21-693, Dkt. # 296 at 14; Case No. 20-424, Dkt. # 287 at 14; Case No. 22-965, Dkt. # 165 at 14 (Amazon's motion generally describes "a small number of documents [that] were mistakenly downgraded to not privileged or downgraded to redacted…").[10]

As the Court stated previously, "When a party makes a strategic decision that it later regrets, such as redacting a document rather than withholding it completely as privileged, it cannot later claim inadvertence to shield itself from the consequences of its own judgment call." *See* Case No. 21-693, Dkt. # 302 at 9–10; Case No. 20-424, Dkt. # 294 at 9–10; Case No. 22-965, Dkt. # 170 at 9–10 (quoting *F.T.C. v. Amazon.com, Inc.*, 2024 WL 3620467, at *6); *see also New Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, No. CV 12-526 MV/GBW, 2017 WL 10606787, at *10 (D.N.M. Feb. 17, 2017), *report and recommendation adopted*, No. 1:12-CV-00526 MV/GBW, 2017 WL 10606786 (D.N.M. Feb. 17,

---

[10] The Court notes that these documents were downgraded and produced to Plaintiffs *before* Amazon produced its final privilege logs on February 25, 2025, and February 28, 2025. Case No. 21-693, Dkt. # 312 (sealed) at 5–6 ¶¶ 11, 17, 20; Case No. 20-424, Dkt. # 301 (sealed) at 5–6 ¶¶ 11, 17, 20; Case No. 22-965, Dkt. # 177 (sealed) at 5–6 ¶¶ 11, 17, 20. For example, Exhibit 64 was originally logged as wholly privileged on October 20, 2023, and later downgraded to privilege redact on October 28, 2024. Case No. 21-693, Dkt. # 298 at 3 ¶ 9; Case No. 20-424, Dkt. # 289 at 3¶ 9; Case No. 22-965, Dkt. # 167 at 3 ¶ 9. These documents remained logged as downgraded in Amazon's final logs produced on February 25, 2025, and February 28, 2025. Case No. 21-693, Dkt. # 312 (sealed) at 5–6 ¶¶ 11, 17, 20; Case No. 20-424, Dkt. # 301 (sealed) at 5–6 ¶¶ 11, 17, 20; Case No. 22-965, Dkt. # 177 (sealed) at 5–6 ¶¶ 11, 17, 20.

ORDER - 11

**A011**

1    2017) (reasoning that the defendant's production of documents was not inadvertent when the

2    defendant repeatedly represented to the court that it "carefully reviewed each document" and

3    employed multiple levels of privilege review before logging the documents) (internal quotation

4    omitted).

5        Amazon cites *Epic Games, Inc. v. Apple Inc.*, to support its contention that the disclosure

6    of the documents was inadvertent.  Case No. 20-cv-05640-YGR (TSH), 2025 U.S. Dist. LEXIS

7    34007, *12 (N.D. Cal. Feb. 25, 2025).  In *Epic Games*, the court allowed Apple to claw back

8    several documents that it had re-reviewed for privilege and produced with redactions.  *Id.* at *13.

9    According to Apple, these documents were substantially similar to a document that the Special

10   Master in that case found to be privileged.  *Id.* at *10.  The court appears to have adopted the

11   second approach to inadvertence—i.e., the court looked at Apple's subjective intent, "including

12   the total number of documents reviewed, the procedures used to review the documents before

13   production, and the actions of the producing party after discovering that the documents had been

14   produced."  *See T&W Holding Co., LLC*, 641 F. Supp. 3d at 382.  The court flagged that "Apple

15   used a large team of reviewers to make privilege calls on a large number of documents[.]"  *Epic

16   Games, Inc.*, 2025 U.S. Dist. LEXIS 34007, *13.  In that case, Apple had re-reviewed 54,000

17   thousand documents within "a few weeks."  *Id.* at *11.  By contrast, Amazon re-reviewed about

18   100,000 documents over an eight-month period.

19       Thus, the Court does not conclude that the production of Exhibit 68 (and the six duplicate

20   copies), Exhibit 69, and Exhibit 94 was inadvertent. [11]

21

22   _____

        [11] Because Amazon has failed to meet its burden for one of the requirements under Rule 502(b),
23   the Court need not address the other two elements.  *See* Case No. 21-693, Dkt. # 302 at 10 n.5; Case No.
     20-424, Dkt. # 294 at 10 n.5; Case No. 22-965, Dkt. # 10 n.5 (citing *Maxtena, Inc. v. Marks*, 289 F.R.D.
24   427, 446 (D. Md. 2012) ("Because Maxtena has failed to meet its burden with respect to at least one of
     the required elements of Rule 502(b), there is no need to address the other two prongs.").

ORDER - 12

## IV

### CONCLUSION

For these reasons, the Court DENIES Amazon's motion.

Dated this 29th day of April, 2025.

John H. Chun
United States District Judge

ORDER - 13

1

2

3                           UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
4                                    AT SEATTLE

5   ELIZABETH DE COSTER *et al.*, on behalf of      CASE NO. 2:21-cv-00693-JHC
    themselves and all others similarly situated,
6
                            Plaintiffs,             ORDER
7
              v.
8
    AMAZON.COM, INC., a Delaware corporation,
9
                            Defendant.
10

11  DEBORAH FRAME-WILSON, *et al.*, on behalf       CASE NO. 2:20-cv-00424-JHC
    of themselves and all others similarly situated,
12
                            Plaintiffs,
13
              v.
14
    AMAZON.COM, INC., a Delaware corporation,
15
                            Defendant.
16
    CHRISTOPHER BROWN, *et al.*, on behalf of
17  themselves and all others similarly situated,
                                                    CASE NO. 2:22-cv-00965-JHC
18                          Plaintiffs,

19            v.

20  AMAZON.COM, INC., a Delaware
    corporation,
21
                            Defendant.
22

23

24

    ORDER - 1

                                        **A014**

# I

## INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion to Compel Production of Documents from Amazon's Privilege Logs and For Appointment of a Special Master.  Case No. 21-693, Dkt. # 189 (sealed); Case No. 20-424, Dkt. # 186 (sealed); Case No. 22-965, Dkt. # 89 (sealed).  Previously, the Court granted Plaintiffs' request for in camera review of up to 100 documents.  Case No. 21-693, Dkt. # 277; Case No. 20-424, Dkt. # 256; Case No. 22-965, Dkt. # 148.  This Order discusses the results of the Court's in camera review and next steps for the parties.

# II

## BACKGROUND

Plaintiffs brought these antitrust class action lawsuits against Amazon claiming various violations of the Sherman Act.  Case No. 21-693, Dkt. # 126 (redacted); Case No. 20-424, Dkt. # 165 (redacted); Case No. 22-965, Dkt. # 100.  Plaintiffs moved to compel production of all documents with what they say were unsubstantiated privilege claims, asserting that Amazon's privilege logs were deficient and that the company had improperly withheld hundreds of thousands of documents as privileged.  Case No. 21-693, Dkt. # 189 (sealed); Case No. 20-424, Dkt. # 186 (sealed); Case No. 22-965, Dkt. # 89 (sealed).  Amazon responded that it was in the process of re-reviewing the challenged privilege log entries and would be completing its review by mid-October 2024.  *See* Case No. 21-693, Dkt. # 203 at 14–15 (sealed); Case No. 20-424, Dkt. # 197 at 14–15 (sealed); Case No. 22-965, Dkt. # 103 at 14–15 (sealed).  Because Plaintiffs' claims appeared premature, the Court denied Plaintiffs' motion without prejudice.  Case No. 21-693, Dkt. # 218 (sealed); Case No. 20-424, Dkt. # 207 (sealed); Case No. 22-965, Dkt. # 111

ORDER - 2

**A015**

1  (sealed).  The Court instructed Plaintiffs to contact the Court to schedule an in-person hearing if

2  Amazon's re-review did not resolve their discovery issues.  *Id.*

3     By November 2024, Amazon had yet to complete its privilege re-review.  On January 31,

4  2025, the Court held a hearing in which Plaintiffs renewed their motion and the parties presented

5  their arguments on the outstanding discovery issues to the Court.  Case No. 21-693, Dkt. # 277;

6  Case No. 20-424, Dkt. # 256; Case No. 22-965, Dkt. # 148.  The Court then ordered Amazon to

7  complete its re-review of every document withheld as privileged and provide a final privilege log

8  to Plaintiffs by February 25, 2025.  *Id.*  The Court permitted Plaintiffs to identify up to 100

9  documents from Amazon's final privilege log for in camera review.  *Id.*  On March 6, 2025,

10  Plaintiffs identified 100 documents for in camera review, and Amazon provided these documents

11  to the Court.[1]

12     Amazon has identified four types of documents for which it claims attorney-client

13  privilege or work-product protection.  *See* Case No. 21-693, Dkt. # 292 (sealed); Case No. 20-

14  424, Dkt. # 284 (sealed); Case No. 22-965, Dkt. # 162 (sealed).  Category 1 documents are

15  described as communications that include a direct provision of legal advice or direct request for

16  legal advice.  *Id.*  Category 2 documents are described as communications that convey legal

17  advice or a request for legal advice.  *Id.*  Category 3 documents are described as communications

18  in which the primary purpose is to convey legal advice.  *Id.*  Category 4 documents are described

19

20

21  [1] When Amazon provided the in camera documents to the Court, it attached a letter further
    explaining its privilege determinations.  Case No. 21-693, Dkt. # 292 (sealed); Case No. 20-424, Dkt.
22  # 284 (sealed); Case No. 22-965, Dkt. # 162 (sealed).  Plaintiffs then submitted a brief to the Court
    responding to the arguments raised in Amazon's letter.  Case No. 21-693, Dkt. # 294 (sealed); Case No.
23  20-424, Dkt. # 286 (sealed); Case No. 22-965, Dkt. # 164 (sealed).  Amazon then filed a brief in response
    to Plaintiffs' brief.  Case No. 21-693, Dkt. # 299 (sealed); Case No. 20-424, Dkt. # 291 (sealed); Case No.
    22-965, Dkt. # 168 (sealed).  Because the parties' briefing addresses issues before the Court related to
24  these discovery matters, the Court considers the arguments raised in the briefs.

ORDER - 3

1   as attorney work-product or the collecting of information to provide legal advice.[2]  *Id.*  Amazon

2   is producing to Plaintiffs 15 of the 100 documents identified for in camera review.[3]  *Id.*  The

3   company also seeks to claw back two documents—Documents 37 (No. 0020387) and 38 (No.

4   0035414)—asserting that it applied insufficient redactions to the documents.

### III

### DISCUSSION

A.   Legal Standards

      The attorney-client privilege "protects confidential communications between attorneys

and clients, which are made for the purpose of giving legal advice."  *United States v. Richey*, 632

F.3d 559, 566 (9th Cir. 2011).  When a communication has more than one potential purpose, a

court considers "whether the *primary purpose* of the communication is to give or receive legal

advice."  *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021) (emphasis added); *see also TCL*

*Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No.

SACV1400341JVSDFMX, 2016 WL 6922075, at *2 (C.D. Cal. May 26, 2016) ("Courts

generally agree that the privilege applies only if the primary or predominate purpose of the

communication is to seek legal advice or assistance.").  "A dual-purpose communication can

only have a single 'primary' purpose."  *Greer v. Cnty. of San Diego*, 127 F.4th 1216, 1224 (9th

Cir. 2025) (quoting *In re Grand Jury*, 23 F.4th at 1091.  And privilege claims "must be made

and sustained on a question-by-question or document-by-document basis; a blanket claim of

---

[2] Amazon also identifies documents that contain redactions and documents that have a "change in production status" (i.e., documents it has produced to Plaintiffs, documents that have technical errors, or documents it seeks to claw back).  *See* Case No. 21-693, Dkt. # 292 (sealed); Case No. 20-424, Dkt. # 284 (sealed); Case No. 22-965, Dkt. # 162 (sealed).

[3] Amazon will produce Documents 3 (No. 0000332), 12 (No. 0045842), 31 (AMZ_CAAG_00007917), 33 (AMZ_CAAG_00007921), 36 (AMZ_CAAG_00046146), 39 (No. 0022367), 40 (No. 0022362), 45 (No. 0008981), 60 (No. 0000979), 67 (No. 0004255), 77 (No. 0032021), 78 (No. 0005682), 88 (AMZ_CAAG_00015084), 97 (AMZ_CAAG_00086334), 98 (AMZ_CAAG_00086580).  Thus, the Court need not review these documents.

ORDER - 4

1   privilege is unacceptable. The scope of the privilege should be 'strictly confined within the

2   narrowest possible limits.'" *United States v. Christensen*, 828 F.3d 763, 803 (9th Cir. 2015)

3   (quoting *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983)).

4           The work-product doctrine "is not a privilege but a qualified immunity protecting from

5   discovery documents and tangible things prepared by a party or [their] representative in

6   anticipation of litigation." *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Ariz.*, 881 F.2d 1486,

7   1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)). The doctrine "protects 'certain materials

8   prepared by an attorney acting for [their] client in anticipation of litigation.'" *Hernandez v.

9   Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010). When a document serves a "dual purpose" (i.e.,

10  when it was not prepared solely for litigation), the court considers whether "'the document can

11  be fairly said to have been prepared or obtained because of the prospect of litigation.'" *Richey*,

12  632 F.3d at 568 (quoting *In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt. (Torf)*, 357

13  F.3d 900, 907 (9th Cir. 2004). Under the "because of" standard, the court looks at the totality of

14  the circumstances to determine whether the "'document was created because of anticipated

15  litigation, and would not have been created in substantially similar form but for the prospect of

16  litigation.'" *Id.* (quoting *Torf*, 357 F.3d at 908).

17  B.      Amazon's Request to Claw Back Documents 37 and 38

18          Generally, a party waives privilege with respect to a document if they produce it. *United

19  States v. Sanmina Corp.*, 968 F.3d 1107, 1116–17 (9th Cir. 2020). Federal Rule of Evidence

20  502(b) provides that disclosure does not waive privilege when it is (1) inadvertent; (2) the

21  privilege holder "took reasonable steps to prevent disclosure;" and (3) the privilege holder took

22  prompt, reasonable steps to correct the error. *See* Fed. R. Evid. 502(b)(1) – (3). And Federal

23  Rule of Evidence 502(d) provides that a federal court may order that the privilege is not waived

24  due to production. "[W]aiver of any privilege [i]s the threshold issue" when determining

ORDER - 5

1    whether a clawed back document is privileged. *In re Qualcomm Litig.*, No. 3:17-CV-108-GPC-

2    MDD, 2018 WL 6617294, at *4 (S.D. Cal. Dec. 18, 2018). The party asserting privilege bears

3    the burden of proving that privilege is not waived. *Id.*

4        Plaintiffs contend that Amazon cannot show that the disclosure of the two documents was

5    inadvertent. Case No. 21-693, Dkt. # 294 (sealed) at 9–11; Case No. 20-424, Dkt. # 286 (sealed)

6    at 9–11; Case No. 22-965, Dkt. # 164 (sealed) at 9–11. They say that the Protective Order

7    invokes the protections afforded by Rule 502*(b)* and Amazon may not claw back documents it

8    *intentionally* produced to Plaintiffs. *Id.*

9        Amazon responds that the parties did not intend to override the protections of Federal

10   Rule of Evidence 502*(d)*. Case No. 21-693, Dkt. # 299 (sealed) at 3–4; Case No. 20-424, Dkt.

11   # 291 (sealed) at 3–4; Case No. 22-965, Dkt. # 168 (sealed) at 3–4. The company says that it did

12   not waive privilege because the Protective Order controls the treatment of documents produced

13   during discovery in these cases. *Id.*

14       1.    The Protective Order

15       Rule 502(d) allows a federal court to "order that the privilege or protection is not waived

16   by disclosure connected with the litigation pending before the court—in which event the

17   disclosure is also not a waiver[.]" The Protective Order

18       invokes the protections afforded by Fed. R. Evid. 502(b). As provided under Fed.
         R. Evid. 502(b) and 502(d) and subject to the limitations in Fed. R. Evid. 502(a),
19       the disclosure of privileged material in connection with this litigation does not
         operate as a waiver in this action or any other action by the Producing Party of any
20       privilege applicable to those documents, including the attorney-client privilege,
         attorney work-product protection, or any other privilege or protection recognized
21       by law.

22

23

24

ORDER - 6

1   Case No. 21-693, Dkt. # 169 at 17; Case No. 20-424, Dkt. # 179 at 17; Case No. 22-965, Dkt.

2   # 82 at 17–18.[4]

3          Other courts in this Circuit have reasoned that while Rule 502 permits "parties to modify

4   individualized protective orders, unless those modifications contain 'concrete directives'

5   regarding each prong of Rule 502(b), the prongs of Rule 502(b) remain the standard for

6   evaluating a claw back request [p]articularly when the modifying language is not sufficiently

7   clear and adequate, the prongs of Rule 502(b) control." *United States v. United Health Grp.,*

8   *Inc.*, No. CV 16-8697 FMO (SSx), 2020 WL 10731257, at *3 (C.D. Cal. Nov. 9, 2020) (citing

9   *Great-W. Life & Annuity Ins. Co. v. Am. Econ. Ins. Co.*, No. 2:11-CV-02082-APG, 2013 WL

10  5332410, at *13 (D. Nev. Sept. 23, 2013) ("It goes without saying that parties must adequately

11  articulate the desire to supplant analysis under Rule 502(b) in any agreement under Rule 502(d)

12  or (e)")); *see also Brown v. Google LLC*, No. 20CV03664YGRSVK, 2022 WL 12039375, at *5–

13  6 (N.D. Cal. Oct. 20, 2022).

14         The Protective Order, approved of by this Court, does not "articulate the desire" to forgo

15  the Rule 502(b) waiver analysis.  No reasonable reading of the Order supports Amazon's

16  contention that it allows a party to claw back a document under any circumstances.  The Order

17  expressly "invokes the protections afforded by Fed. R. Evid. 502(b)."  Case No. 21-693, Dkt.

18  # 169 at 17; Case No. 20-424, Dkt. # 179 at 17; Case No. 22-965, Dkt. # 82 at 17–18.  Thus, the

19  Rule 502(b) waiver standard still applies to the parties' claw back requests.

20

21

22

23         ────────────────
       [4] The Amended Stipulated Protective Orders across the three cases have identical language

24  regarding the "Inadvertent Production of Privileged or Otherwise Protective Material."  Case No. 21-693,
    Dkt. # 169 at 17; Case No. 20-424, Dkt. # 179 at 17; Case No. 22-965, Dkt. # 82 at 17–18.

ORDER - 7

**A020**

2.    Rule 502(b) exception to waiver

As stated above, when a party discloses a privileged document, that "disclosure does not operate as a waiver" if "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error."  Fed. R. of Evid. 502(b)(1) – (3).  Each of the requirements of Rule 502(b) "are separate and should not be conflated in the analysis[.]"  *Datel Holdings Ltd. V. Microsoft Corp.*, No. C-09-05535 EDL, 2011 WL 866993, at *2 (N.D. Cal. Mar. 11, 2011). "The disclosing party has the burden of proving that the elements of the rule have been met." *Columbia Cmty. Credit Union v. Chicago Title Ins. Co.*, No. C09-5290RJB, 2009 WL 10688219, at *4 (W.D. Wash. Dec. 22, 2009).

Plaintiffs assert that Amazon cannot show inadvertence because the company intentionally produced the documents to Plaintiffs in redacted form after its privilege re-review. Case No. 21-693, Dkt. # 294 (sealed) at 9–11; Case No. 20-424, Dkt. # 286 (sealed) at 9–11; Case No. 22-965, Dkt. # 164 (sealed) at 9–11.  They say that Amazon has adduced no facts that would show that the production of these documents was accidental.  *Id.*  Amazon does not address Plaintiffs' argument about inadvertence.  *See generally* Case No. 21-693, Dkt. # 299 (sealed) at 3–4; Case No. 20-424, Dkt. # 291 (sealed) at 3–4; Case No. 22-965, Dkt. # 168 (sealed) at 3–4.

While Rule 502(b) does not define "inadvertent," other courts have developed two approaches to the issue.  *See T&W Holding Co., LLC v. City of Kemah, Texas*, 641 F. Supp. 3d 378, 382 (S.D. Tex. 2022); *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, No. 14-60268-CIV, 2015 WL 1565310, at *8 (S.D. Fla. Apr. 8, 2015).  Under the first approach, the court simply looks to "whether the party intended a privileged or work-product protected document to be produced or whether the production was a mistake.'"  *T&W Holding Co., LLC*, 641 F. Supp.

ORDER - 8

**A021**

3d at 382.  Under the second, the court looks at factors along with a party's subjective intent, "including the total number of documents reviewed, the procedures used to review the documents before production, and the actions of the producing party after discovering that the documents had been produced." *Id.*

Other district courts in the Ninth Circuit have adopted the first approach.  *See, e.g.*, *B&G Foods N. Am., Inc. v. Embry*, No. 2:20-CV-0526 KJM DB, 2024 WL 922900, at *2 (E.D. Cal. Mar. 4, 2024) ("An 'inadvertent disclosure' is simply where the work-product protected document was produced as the result of a mistake."); *Datel Holdings Ltd.*, 2011 WL 866993, at *2 ("[I]nadvertence under the first prong does not turn on the reasonable steps taken to prevent mistaken disclosure addressed in the second prong.").  The Court adopts this approach because it aligns with other courts in the Circuit as well as the structure and purpose of Rule 502(b).  *See Coburn Grp., LLC v. Whitecap Advisors LLC*, 640 F. Supp. 2d 1032, 1038 (N.D. Ill. 2009) ("[T]he structure of Rule 502 suggests that the analysis under subpart (b)(1) is intended to be much simpler, essentially asking whether the party intended a privileged or work-product protected document to be produced or whether the production was a mistake.").

Amazon's production of Documents 37 and 38 was intentional.  Plaintiffs say that Document 37 was produced with redactions on February 25, 2025, and Document 38 was produced with redactions on August 9, 2024, and then re-produced to Plaintiffs with fewer redactions on January 29, 2025.  Case No. 21-693, Dkt. # 294 (sealed) at 8; Case No. 20-424, Dkt. # 286 (sealed) at 8; Case No. 22-965, Dkt. # 164 (sealed) at 8.  Amazon intentionally produced these documents with specific redactions after completing a comprehensive re-review of its privilege logs.  "When a party makes a strategic decision that it later regrets, such as redacting a document rather than withholding it completely as privileged, it cannot later claim inadvertence to shield itself from the consequences of its own judgment call."  *F.T.C. v. Amazon.com, Inc.*, No. 2:23-CV-00932-JHC,

ORDER - 9

2024 WL 3620467, at *6 (W.D. Wash. Aug. 1, 2024); *see also T&W Holding Co., LLC*, 641 F. Supp. 3d at 383 ("Kemah's lawyers made a conscious decision to identify certain documents as those they may rely on in this case, and they cannot now run away from that decision claiming mistake or inadvertence.").[5]

C.     Communications Involving Amazon's In-House Counsel

Most of the documents submitted to the Court for in camera review are communications involving Amazon's in-house counsel.  In-house attorneys often serve multiple functions in a corporation.  They "may be involved intimately in the corporation's day to day business activities and frequently serve as integral players in business decisions or activities."  *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002).  The attorney-client privilege does not extend to an in-house attorney's *business* advice and "[c]orporations may not conduct their business affairs in private simply by staffing a transaction with attorneys."  *Id.* (citing *Matter of Fischel*, 557 F.2d 209, 211 (9th Cir. 1977)); *Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 866 (N.D. Cal. 2019) ("Communications with in-house counsel may relate to business rather than legal matters, and in-house counsel's business advice is not protected by attorney-client privilege.").

Even when an in-house attorney leads a discussion or takes an active role in a meeting, this does not necessarily make the entire communication privileged.  For example, Documents 86 (AMZ_CAAG_00015117) and 87 (AMZ_CAAG_0015492) are internal email chains, including non-attorney employees and in-house attorneys, about Amazon's "talking points" in response to a New York Times article about Amazon's acquisition of Whole Foods Market.

---

[5] Because Amazon has failed to meet its burden for one of the requirements under Rule 502(b), the Court need not address the other two elements.  *See, e.g.*, *Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 446 (D. Md. 2012) ("Because Maxtena has failed to meet its burden with respect to at least one of the required elements of Rule 502(b), there is no need to address the other two prongs.").

1    These communications, in which in-house attorneys actively take part, concern public relations

2    matters such as potential responses to reporters.  Even though the email chain contains

3    statements like "***confirming privileged and confidential***" and "seeking legal advice" there

4    is no discernable request for legal advice or any legal analysis in the emails.  When the primary

5    purpose of the document relates to business operations rather than giving or receiving legal

6    advice, it is not protected by the attorney-client privilege.  *See Oracle Am., Inc. v. Google, Inc.*,

7    No. C-10-03561-WHA DMR, 2011 WL 3794892, at *4 (N.D. Cal. Aug. 26, 2011) ("In-house

8    counsel may act as integral players in a company's business decisions or activities, as well as its

9    legal matters. When attempting to demonstrate that an internal communication involving in-

10   house counsel deserves privileged status, a party therefore 'must make a clear showing that the

11   speaker made the communication[ ] for the purpose of obtaining or providing *legal* advice.'"

12   (quoting *ChevronTexaco Corp.*, 241 F. Supp. 2d at 1076) (alteration and emphasis in original).

13        Amazon's in-house counsel sometimes provide input on memoranda prepared by non-

14   attorney employees.  For example, Document 22 (No. 002647) is a memorandum drafted by

15   three non-attorney employees about updates to Amazon's third-party seller business, including

16   the growth of the "Fulfilled by Amazon" program, expanding Amazon's advertising program,

17   and the growth of global sales.  One of the non-attorney employees shared the memorandum

18   with in-house attorney Katherine Wax, who reviewed and edited the document.  The

19   memorandum has a footer that says, "Amazon.com Privileged & Confidential," but the

20   memorandum concerns business matters and Wax's edits to the document are mainly stylistic

21   and grammatical.  The edits do not reflect any legal analysis or advice.  There is also no request

22   for legal advice in the document.  Thus, this memorandum is not privileged.  Business

23   memoranda shared with in-house attorneys are not privileged unless the party asserting privilege

24   can show that the communications involving in-house counsel were made for the primary

ORDER - 11

**A024**

1    purpose of providing or obtaining legal advice.  Communications concerning advertising,

2    business competitors, the business' financial priorities, and so on are not privileged.  *See Dewitt*

3    *v. Walgreen Co.*, No. 4:11-CV-00263-BLW, 2012 WL 3837764, at *4 (D. Idaho Sept. 4, 2012)

4    ("The mere fact that in-counsel reviewed and revised a document does not necessarily make the

5    documents privileged or protected by the work-product doctrine."); *In re Avandia Mktg., Sales*

6    *Pracs. & Prods. Liab.*, No. 07-MD-01871-CMR, 2009 WL 4807253, at *2 (E.D. Pa. Oct. 2,

7    2009), *report and recommendation adopted sub nom. In re Avandia Mktg., Sales Pracs. &*

8    *Prods. Liab. Litig.*, No. 07-MD-01871, 2009 WL 4641707 (E.D. Pa. Dec. 7, 2009) ("[T]he fact

9    that an attorney (as well as many non-attorneys) reviewed an otherwise non-privileged document

10   does not transform that document into a privileged one.").

11   D.    Attorney Work-Product

12         In its letter to the Court, Amazon asserts that "many" of the documents at issue are

13   protected by the work-product doctrine.  Case No. 21-693, Dkt. # 292 at 6 (sealed); Case No. 20-

14   424, Dkt. # 284 at 6 (sealed); Case No. 22-965, Dkt. # 162 at 6 (sealed).  But as Plaintiffs point

15   out, Amazon asserted work product claims only in its amended privilege log for five documents

16   in the in camera sample.[6]  Plaintiffs contend that because Amazon delayed raising these work-

17   product claims, they have waived that protection.  Case No. 21-693, Dkt. # 294 (sealed) at 15–

18   16; Case No. 20-424, Dkt. # 286 (sealed) at 15–16; Case No. 22-965, Dkt. # 164 (sealed) at 15–

19   16 (citing *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142,

20   1149 (9th Cir. 2005)).  Amazon counters that waiver is not automatic, and courts have permitted

21   parties to alter the asserted basis for privilege on a document-by-document basis in connection

22

23   _____

     [6] Amazon's February 25, 2025 Privilege Log asserts work-product protection over Documents 7
24   (No. 0001677), 10 (No. 0022819), 17 (No. 0016280), 28 (AMZ_CAAG_000107250) and 100
     (AMZ_CAAG_00005410).

ORDER - 12

1    with an in camera review.  Case No. 21-693, Dkt. # 299 (sealed) at 6; Case No. 20-424, Dkt. #

2    291 (sealed) at 6; Case No. 22-965, Dkt. # 168 (sealed) at 6 (citing *In re Google RTB Consumer*

3    *Priv. Litig.*, No. 21-CV-02155-YGR (VKD), 2024 WL 3642191, at *3 (N.D. Cal. Aug. 1, 2024)).

4            In *Burlington Northern*, the Ninth Circuit determined that there is no per se waiver of

5    privilege when a party fails to produce their privilege log within the 30-day time limit under

6    Federal Rule of Civil Procedure 34.  408 F.3d at 1149.  Other courts have said that "*Burlington*

7    *Northern* broadly addresses how district courts should evaluate a claim of waiver arising from a

8    failure to raise a timely, valid claim of privilege."  *Mi Familia Vota v. Fontes*, 344 F.R.D. 496,

9    520 (D. Ariz. 2023); *see also Munguia-Brown v. Equity Residential*, 337 F.R.D. 509, 515 (N.D.

10   Cal. 2021) ("The Ninth Circuit's decision in *Burlington* seems to envision a responding party

11   that announces its privilege objection early but then makes it hard for that claim to be evaluated

12   by delaying service of its privilege log for a long time.").  The Ninth Circuit stated that courts

13   should determine whether privilege is waived on a case-by-case basis and consider the factors

14   below,

15           the degree to which the objection or assertion of privilege enables the litigant
         seeking discovery and the court to evaluate whether each of the withheld documents
16       is privileged (where providing particulars typically contained in a privilege log is
         presumptively sufficient and boilerplate objections are presumptively insufficient);
17       the timeliness of the objection and accompanying information about the withheld
         documents (where service within 30 days, as a default guideline, is sufficient); the
18       magnitude of the document production; and other particular circumstances of the
         litigation that make responding to discovery unusually easy (such as, here, the fact
19       that many of the same documents were the subject of discovery in an earlier action)
         or unusually hard.

20   *Burlington N. & Santa Fe Ry. Co.*, 408 F.3d at 1149.  It also said that these factors should be

21   considered as part of a "holistic reasonableness analysis . . . to forestall needless waste of time

22   and resources, as well as tactical manipulation of the rules and the discovery process."  *Id.*

23

24

ORDER - 13

**A026**

1    The circumstances here warrant a conclusion of waiver. Amazon claimed work-product

2  protection in its amended privilege log for only five of the documents in the in camera sample,

3  yet it is now asserting in its correspondence to the Court that work-product protection applies to

4  dozens more documents in the in camera sample. *See* Case No. 21-693, Dkt. # 292 (sealed);

5  Case No. 20-424, Dkt. # 284 (sealed); Case No. 22-965, Dkt. # 162 (sealed); *see also See* Case

6  No. 21-693, Dkt. # 289-1 (sealed); Case No. 20-424, Dkt. # 281-1(sealed); Case No. 22-965,

7  Dkt. # 161-1 (sealed). Amazon also fails to show or explain how these documents qualify for

8  work-product protection. For example, Amazon asserts work-product protection over Document

9  No. 85 (AMZ_CAAG_00081435), an email written by a non-attorney employee and sent to

10  other non-attorney employees and in-house attorneys summarizing a team meeting about

11  "Uncompetitive 3P Offers." This emailed summary was drafted by a non-attorney and there are

12  no discernable legal strategies or impressions in this document. There is also no indication that

13  this document was prepared in anticipation of litigation. *See NextEra Energy Mktg., LLC v.*

14  *Macquarie Energy LLC*, No. 1:22-CV-01345-VM, 2024 WL 2048518 (S.D.N.Y. May 8,

15  2024)("[T]he work product doctrine does not automatically protect any document just because an

16  in-house counsel was an author, recipient, or custodian.").

17    Thus, the Court considers only the five work-product protection claims that Amazon

18  raised in its amended privilege log. Amazon has waived work-product protection over all other

19  documents in the in camera sample.

20  E.    Results of the Court's In Camera Review & Next Steps

21    Having reviewed Amazon's explanatory notes, cover letter, and the parties' supplemental

22  briefing, the Court determines that 54 out of the 85 documents reviewed in camera must be

23  produced to Plaintiffs in full or with some redactions. Of these 54 documents, 19 contain some

24  privileged material or attorney-work product, but the scope of the designation was too broad.

Thus, about 63 % of the documents submitted for in camera review must be provided to Plaintiffs in their entirety or with appropriate redactions.

    1.    Withheld documents to be produced to Plaintiffs in full:

- Document 1 (No. 0016589)
- Document 5 (No. 0005752)
- Document 8 (No. 0014621)
- Document 11 (No. 0053715)
- Document 20 (No. 0001328)
- Document 22 (No. 0002647)
- Document 28 (AMZ_CAAG_00010725)
- Document 34 (AMZ_CAAG_00013395)
- Document 35 (AMZ_CAAG_00041575)

    2.    Documents to be reproduced to Plaintiffs *without* any redactions:

- Document 10 (No. 0022819)
- Document 37 (No. 0020387)
- Document 38 (No. 0035414)
- Document 41 (No. 0022580)
- Document 46 (No. 0022471)
- Document 47 (No. 0052449)
- Document 51 (No. 0035963)
- Document 57 (No. 0000762)
- Document 58 (No. 0004153)
- Document 59 (No. 0021007)

ORDER - 15

**A028**

1   • Document 61 (No. 0030406)

2   • Document 65 (No. 0000203)

3   • Document 73 (No. 0012115)

4   • Document 74 (No. 0013218)

5   • Document 76 (No. 0012315)

6   • Document 79 (AMZ_CAAG_00009878)

7   • Document 82 (AMZ_CAAG_00005894)

8   • Document 83 (AMZ_CAAG_00067067)

9
    • Document 85 (AMZ_CAAG_00081435)
10
    • Document 86 (AMZ_CAAG_00015117)
11
    • Document 87 (AMZ_CAAG_00015492)
12
    • Document 90 (AMZ_CAAG_00029357)
13
    • Document 92 (AMZ_CAAG_00090826)
14
    • Document 93 (AMZ_CAAG_00085985)
15
    • Document 94 (AMZ_CAAG_00086062)
16
    • Document 96 (AMZ_CAAG_00086331)
17

18   3.   Documents to be produced to Plaintiffs *with* some redactions:

19   • Document 4 (No. 0000505) [Redact only the question posed by non-attorney
     Jensen Vessels to in-house attorney Michael Norvell in the November 3, 2022
20   9:06 A.M. email and Norvell's response in the November 3, 2022 9:24 A.M.
     email.]
21
     • Document 16 (No. 0016270) [Redact only the question posed by in-house
22   attorney Michael Norvell in the April 5, 2023 7:49 P.M. email.]

23

24

ORDER - 16

**A029**

1    • Document 18 (0000496) [Redact only in-house attorney Michael Norvell's
2    comments ## 3, 5 ("Page 2 comments") 6, 8 ("Page 3 comments") and 9
     ("Page 4 comments").].

3    • Document 19 (No. 0000506) [Redact only the question posed by Jensen
     Vessels to in-house attorney Michael Norvell in the November 3, 2022 9:06
4    A.M. email and Norvell's response in the November 3, 2022 9:24 A.M.
     email.]

5
     • Document 21 (No. 0002120) [Redact only in-house attorney Matthew
6    Foman's comment # 1 ("Page 2 comments").]

7    • Document 23 (No. 0003639) [Redact only the second paragraph on pg. 2
     under the "Hotly Debated Topics" heading and the paragraph(s) under the
8    "Legal's Recommendation" heading on pgs. 3, 5.]

9    • Document 24 (No. 0003791) [Redact only in-house attorney Titus Potter's
10   comments ## 30 ("Page 6 comments"), 33, 34 ("Page 7 comments").]

11   • Document 44 (No. 0019582) [Remove the redactions on pg. 4 and the first
     sentence on pg. 9. Amazon may keep the remaining redactions in this
12   document.]

13   • Document 50 (No. 0035948) [Remove the redactions to the first sentence in
     non-attorney Elissa Quinby's email dated March 16, 2019 12:53 A.M.
14   Amazon may keep the remaining redactions in this document.]

15   • Document 53 (No. 0024260) [Remove the redactions to non-attorney
16   Dharmesh Meta's August 5, 2021 6:26 P.M. email. Amazon may keep the
     remaining redactions in this document.]

17
     • Document 54 (No. 0026612) [Remove the redactions to the email sent by non-
18   attorney Chad Brown in the February 11, 2021 2:01 P.M. email to in-house
     attorney Ashley Nelson. Amazon may redact only Brown's question to
19   Nelson.]

20   • Document 55 (No. 0003190) [Remove the redactions to non-attorney Mike
21   Miller's May 20, 2020 8:47 A.M. email. Remove the redactions to non-
     attorney Chris Cunningham's May 20, 2020 9:10 A.M. email. Remove the
22   redactions to in-house counsel Christine Sam's May 20, 2020 9:12 A.M.
     email. Amazon may keep the remaining redactions in this document.]
23
     • Document 56 (No. 0030425) [Remove the redactions to pg. 2. Amazon may
24   keep the remaining redactions in this document.]

ORDER - 17

**A030**

- Document 62 (No. 0029989) [Remove the redactions to non-attorney Namrata Shah's July 21, 2022 2:17 P.M. email.  Remove the redactions to Namrata Shah's October 21, 2022 3:42 A.M. email.  Amazon may keep the remaining redactions in this document.]

- Document 63 (No. 0029615) [Remove the redactions to pgs. 2–4, 6, and 7.  Amazon may keep the remaining redactions in this document.]

- Document 64 (No. 0029652) [Remove the redactions to pg. 3.  Amazon may keep the remaining redactions in this document.]

- Document 66 (No. 0001187) [Remove the redactions to non-attorney Christa Glenn's December 8, 2020 2:01 P.M. email.  Remove the redactions to non-attorney Mike Miller's December 8, 2020 2:25 P.M. email.  Remove the redactions to Mike Miller's December 8, 2020 4:14 P.M. email.  Remove the redaction to the question in Mike Miller's December 8, 2020 5:37 P.M. email.  Remove the redactions to Christa Glenn's December 8, 2020 8:47 P.M. email.  Remove the redactions to non-attorney Ian Simpson's December 8, 2020 8:59 P.M. email.  Amazon may keep the remaining redactions in this document.]

- Document 70 (No. 0039126) [Remove redactions to in-house attorney Ben Garry's comment on pg. 4.  Amazon may keep the remaining redactions in the document.]

- Document 80 (AMZ_CAAG_00015041): [Remove redactions to in-house attorney Gustave Hottegindre's January 27, 2020 2:02 P.M. email.  Remove redactions to Gustave Hottegindre's January 27, 2020 5:21 P.M. email.  Remove redactions to "high level comments" Nos. 1–2 in Gustave Hottegindre's January 28, 2020 12:00 P.M email.  Remove redactions to Gustave Hottegindre's January 28, 2020 2:42 P.M. email.  Remove redactions to Gustave Hottegindre's January 28, 2020 3:08 P.M. email.  Remove redactions to Gustave Hottegindre's January 28, 2020 3:30 P.M. email.  Remove redactions to in-house attorney Gustave Hottegindre's January 30, 2020 10:38 A.M. email.  Amazon may keep the remaining redactions in the document.]

4.    Documents that need not be reproduced to Plaintiffs:

- Document 2 (No. 0000744)

- Document 6 (No. 0000386)

- Document 7 (No. 0001677)

- Document 9 (No. 0021029)
- Document 13 (No. 0022790)
- Document 14 (No 0016559)
- Document 15 (No. 0009059)
- Document 17 (No. 0016280)
- Document 25 (No. 0009062)
- Document 26 (AMZ_CAAG_00000931)
- Document 27 (AMZ_CAAG_00000114)
- Document 29 (AMZ_CAAG_00011772)
- Document 30 (AMZ_CAAG_00002519)
- Document 32 (AMZ_CAAG_00027214)
- Document 42 (No. 0009068)
- Document 43 (No. 0018407)
- Document 48 (No. 0014224)
- Document 49 (No. 0026804)
- Document 52 (No. 0024156)
- Document 68 (No. 0022228)
- Document 69 (No. 0042568)
- Document 71 (No. 0001283)
- Document 72 (No. 0050626)
- Document 75 (No. 0051509)
- Document 81 (AMZ_CAAG_00001234)
- Document 84 (AMZ_CAAG_00002336)

ORDER - 19

1      • Document 89 (AMZ_CAAG_00016780)

2      • Document 91 (AMZ_CAAG_00023500)

3      • Document 95 (AMZ_CAAG_00090800)

4      • Document 99 (AMZ_CAAG_00018833)

5      • Document 100 (AMZ_CAAG_00005410)

6      The Court's in camera review shows that Amazon improperly designated operational,

7  business, and strategic documents as attorney-client communications or attorney-work product.

8  For many of these communications, in-house attorneys are simply copied on emails.  Even where

9  an in-house attorney actively takes part in a conversation, most of the communications involve

10  public relations matters, technical/operational issues, strategic goals for the company, customer

11  expectations, or regulatory demands, not requests for or the provision of legal advice.  Many

12  documents over which Amazon asserted attorney-work product do not appear to have been

13  prepared in anticipation of litigation or contain discernable legal strategies.

14      Neither party has provided a practical approach to resolve their disagreements about the

15  potentially thousands of disputed privilege log entries across these three cases without imposing

16  an unreasonable burden on the Court.  In this Order, the Court has articulated the legal standards

17  the parties are to apply to their privilege and work-product claims and provided guidance for

18  addressing any remaining privilege disputes.  That said, unless the parties' future disputes

19  require assessing only a limited number of privilege log entries or documents, the Court is

20  inclined to refer the parties to a special master from private practice.  The Court is also amenable

21  to assessing the costs of retaining the special master against the parties in proportion to their

22  success (or lack thereof) on the merits of their claims of privilege or work-product protection.

23  For example, a party who prevails on 70% of the disputed privilege claims will have to pay only

24  30% of the special master's fees and expenses.

ORDER - 20

**A033**

1

## IV

2

### CONCLUSION

3
        The Court ORDERS Amazon to produce the documents as set forth above by April 8,

4
2025.

5
        Dated this 25th day of March, 2025.

6

7
                                        John H. Chun
                                        _____

8
                                        John H. Chun
                                        United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER - 21

1

The Honorable John H. Chun

2

3

4

5

6

7                      UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF WASHINGTON

8                            AT SEATTLE

9

| | |
|---|---|
| ELIZABETH DE COSTER, *et al.*, on behalf of themselves and all other similarly situated,<br><br>                    Plaintiffs,<br><br>   v.<br><br>AMAZON.COM, INC., a Delaware corporation,<br><br>                    Defendant. | **DECLARATION OF AMY J. MAUSER IN SUPPORT OF AMAZON'S MOTION TO CLAW BACK PRIVILEGED MATERIAL AND STRIKE REFERENCES THERETO FROM PLAINTIFFS' CLASS CERTIFICATION MOTION**<br><br>Case No. 2:21-cv-00693-JHC |
| DEBORAH FRAME-WILSON, et al.,<br><br>                    Plaintiffs,<br><br>   v.<br><br>AMAZON.COM, INC., a Delaware corporation,<br><br>                    Defendant. | Case No. 2:20-cv-00424-JHC |
| CHRISTOPHER BROWN, et al.,<br><br>                    Plaintiffs,<br><br>   v.<br><br>AMAZON.COM, INC., a Delaware corporation,<br><br>                    Defendant. | Case No. 22-cv-00965-JHC |

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

I, Amy J. Mauser, declare as follows:

1.      I am an attorney at the law firm Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for Defendant Amazon.com, Inc. ("Amazon").  Unless otherwise noted, the matters set forth herein are true and correct to the best of my knowledge and, if called as a witness, I could testify competently thereto.

2.      I submit this declaration in support of Amazon's Motion to Claw Back Privileged Material and Strike References Thereto from Plaintiffs' Class Certification Motion (the "Motion").

3.      On March 10, 2025, the parties met-and-conferred via videoconference regarding the issues raised in the Motion.  The attendees for Amazon were myself, Andrew Topal, and Mark Weiner; for Plaintiffs, Barbara Mahoney, Anne Johnson, Max Meadows, and Jessica Beringer.

4.      Attached as Exhibit A is a true and correct copy of an email chain with the subject "Claw Back Request" between myself and Plaintiffs' counsel dated February 27, 2025, to March 5, 2025.

5.      Attached as Exhibit B is a true and correct copy of an email chain with the subject "inadvertent production" between myself and Plaintiffs' counsel dated July 26, 2023, to July 28, 2023.

6.      Attached as Exhibit C is a true and correct copy of an email chain with the subject "Potential inadvertently produced documents" between myself and Plaintiffs' counsel dated May 16, 2024, to May 22, 2024.

7.      Attached as Exhibit D is a true and correct copy of an email chain with the subject "Frame Wilson v. Amazon - potentially inadvertently produced document" between myself and Plaintiffs' counsel dated February 11, 2025, to February 17, 2025.

8.      Attached as Exhibit E is the court's order in *Epic Games, Inc.* v. *Apple, Inc.*, Case No. 20-cv-05640-YGR (TSH), in the United States District Court for the Northern District of California dated February 25, 2025.

DECLARATION OF AMY J. MAUSER ISO AMAZON'S
MOTION TO CLAW BACK
(2:21-CV-00693-JHC, 2:20-CV-00424-JHC, 2:22-CV-00965-JHC) - 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    I declare under penalty of perjury that the foregoing is true and correct.

2    Executed this 17th day of March, 2025 in Washington, D.C.

3

4                                    */s/ Amy J. Mauser*
                                    Amy J. Mauser

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DECLARATION OF AMY J. MAUSER ISO AMAZON'S
MOTION TO CLAW BACK
(2:21-CV-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC) - 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# EXHIBIT A

**From:** Mauser, Amy
**Sent:** Wednesday, March 5, 2025 6:30 PM
**To:** Barbara Mahoney <barbaram@hbsslaw.com>; Jessica Beringer <jessica.beringer@kellerpostman.com>; Britt
DeVaney <bdevaney@redgravellp.com>; Branden Weber <branden.weber@kellerpostman.com>; Robert D. Keeling
<rkeeling@redgravellp.com>; Anne F. Johnson <ANNEJ@hbsslaw.com>; Zina Bash <zina.bash@kellerpostman.com>;
Steve Berman <Steve@hbsslaw.com>; aliciacobb <aliciacobb@quinnemanuel.com>; Max Meadows
<maxmeadows@quinnemanuel.com>; Robert Haegele <Robert@hbsslaw.com>; Jed Birmingham
<jed.birmingham@kellerpostman.com>; Alex Dravillas <ajd@kellerpostman.com>; Roseann Romano
<roseann.romano@kellerpostman.com>; Shane Kelly <shane.kelly@kellerpostman.com>; Kelly Fan
<kellyf@hbsslaw.com>; Redgrave Amazon-FTC <redgraveamazonftc@redgravellp.com>; johngoldmark@dwt.com;
MaryAnnAlmeida@dwt.com
**Cc:** Dunn, Karen L <kdunn@paulweiss.com>; Dearborn, Meredith <mdearborn@paulweiss.com>; Garrett, Ruby
<RJGarrett@paulweiss.com>; Topal, Andrew <atopal@paulweiss.com>
**Subject:** RE: Claw Back Request

Barbara,

　　　Plaintiffs' counsel do not dispute that the documents Amazon clawed back last week contain privileged
information.  Nor do Plaintiffs dispute that, before they chose to cite and quote from these three documents in support
of their class certification motion in *Frame-Wilson*, they were on notice that they were using privileged information in
support of their motion.

　　　The privileged content of the three documents is clear on the face of each  document.  The documents contain
attorney-client and work product communications relating to:  (1) an antitrust investigation by the U.S. Department of
Justice and "Amazon's best defenses to allegations" that the agreements at issue were anticompetitive and the actions
Amazon could take "to mitigate the risks of regulatory intervention," *Frame-Wilson* Class Certification Motion, Ex. 68; (2)
antitrust advice on the anticipated response of antitrust regulatory agencies to pricing changes, *id.*, Ex. 69; and (3)
antitrust advice related to European regulators response to proposed pricing changes in light of ongoing investigations,
as well as Amazon's "defenses" and strategy in response.  *Id.*, Ex. 94.

　　　We have serious concerns that Plaintiffs are intentionally and selectively choosing which documents to raise
with us.  It's significant that Plaintiffs' approach to the three documents that Amazon clawed back departs from how

1

**A039**

they have previously handled what appeared to be inadvertently produced privileged information. In the past, consistent with the applicable ethical rules and the ESI Protocol, Plaintiffs' counsel emailed us to identify documents that appeared as if they contained privileged information, and asked if the information constituted inadvertently produced privileged information. For example:

- 2/11/25 email from J. Beringer ("We write regarding a recently produced document with the Bates label CAAGLit-AMZ_10775579. Please let us know whether this document was inadvertently produced without redactions.").
- 5/16/24 email from D. Backman ("We identified in the course of our document review three documents that may be partially privileged: CAAGLit-AMZ_02528021; CAAGLit-AMZ_01756163; and CAAGLit-AMZ_01755965. Please confirm whether Amazon intentionally or inadvertently produced these documents and whether it is claiming privilege over any portion of these documents.").
- 7/26/23 email from B. Mahoney ("We identified the attached document in the course of our document review. Please confirm whether Amazon inadvertently produced this document and whether it is claiming privilege over any portion of this document.").

Plaintiffs' counsel attempts to justify their different approach as to these three documents by arguing waiver. But if Plaintiffs' counsel truly believed that Amazon was choosing to waive privilege on documents that are clearly privileged on their face, Plaintiffs' counsel could (and should) have asked to confirm Amazon's position on those documents *before* using them (as they have repeatedly done with other documents). Regardless, the scope of the production that Amazon has made to Plaintiffs—and the relatively small number of documents that Amazon has clawed back—do not support any finding of waiver. Amazon has produced to Plaintiffs more than 2.6 million documents, consisting of close to 14 million pages, with Amazon producing documents with privileged information redacted rather than withholding documents in their entirety, where feasible. As Plaintiffs are well aware, preparing redactions, and ensuring their consistency, across this volume of documents is objectively challenging. Notwithstanding the volume of documents produced, Amazon has clawed back a relatively small number of documents. The inadvertent production of several copies of a privileged document was largely the result of manual and automated consistency processes. These processes are necessarily imperfect, but reasonable under the circumstances of Amazon's effort to get Plaintiffs documents, including documents downgraded from its privilege logs, as expeditiously as possible. "Inadvertent production of a relatively low proportion of documents in a large production under a short timetable due to mistake should be and usually is excused." *Datel Holdings Ltd.* v. *Microsoft Corp.*, 2011 WL 866933, at *4 (N.D. Cal. 2011) (citing *Kandel* v. *Brother Int'l Corp.*, 683 F. Supp. 2d 1076, 1085-86 (C.D. Cal. 2010)); *see also Transamerica Computer Co., Inc.* v. *Int'l Bus. Machs. Corp.*, 573 F.3d 646, 649 (9th Cir. 1978) (no waiver where producing party inadvertently produced "a small number of documents" among more than 17 million pages in an "accelerated" discovery process).

In addition, Amazon acted promptly in sending a claw back letter. The relevant time period runs not from production, but from when Amazon learned that the documents were inadvertently produced. *E.g., Aramony* v. *United Way of Am.*, 969 F. Supp. 226, 237 (S.D.N.Y. 1997) ("The period after the producing party realizes that privileged information has been disclosed is the relevant period for measuring whether the privilege has been waived."). Amazon received Plaintiffs' class certification motion the evening of Thursday, February 20, and, promptly after completing its review of the motion and the voluminous exhibits it cited, sent its claw back request on Wednesday, February 26.

As we are sure you aware, the ESI Protocols in these cases also do not support a finding of waiver. The applicable provision of the ESI Protocol in *Frame-Wilson*, *De Coster*, and *Brown* provides:

Pursuant to Fed. R. Evid. 502(e), the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law.

Plaintiffs' response to Amazon's claw back request is also in violation of the ESI Protocol and the requirements of Washington States Rules of Professional Responsibility 4.4(b)—both of which require the immediate return of any inadvertently produced privileged information. For the avoidance of doubt, the applicable provision of the ESI Protocol in *Frame-Wilson*, *De Coster*, and *Brown* provides:

Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection.

Similarly, Professional Responsibility Rule 4.4(b) provides:

A lawyer who receives a document or electronically stored information relating to the representation of the lawyer's client and knows or reasonably should know that the document or electronically stored information was inadvertently sent shall promptly notify the sender.

Here, Plaintiffs' counsel not only failed to notify Amazon as to the production of inadvertently produced privileged information, they affirmatively used that privileged information in a court filing, without providing any advance notice to Amazon. Further, after Amazon clawed back these documents, Plaintiffs are apparently refusing to destroy or return the privileged information in clear violation of the ESI Protocol in these actions.

We request that Plaintiffs provide times this week when they are available for a meet and confer. If Plaintiffs do not agree to the relief that Amazon has requested by Monday, March 10—the return or destruction of all copies of the documents and associated work product, and the refiling of their *Frame-Wilson* class certification motion without references to the cited documents—Amazon will have no choice but to seek all appropriate relief from the Court.

Amy

**Amy J. Mauser** | Partner
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
2001 K Street, NW | Washington, DC 20006-1047
+1 202 223 7371 (Direct Phone) | +1 202 615 6841 (Cell)
+1 202 379 4077 (Direct Fax)
amauser@paulweiss.com | www.paulweiss.com

**From:** Barbara Mahoney <barbaram@hbsslaw.com>
**Sent:** Friday, February 28, 2025 9:53 AM
**To:** Mauser, Amy <amauser@paulweiss.com>; Jessica Beringer <jessica.beringer@kellerpostman.com>; Britt DeVaney <bdevaney@redgravellp.com>; Branden Weber <branden.weber@kellerpostman.com>; Robert D. Keeling <rkeeling@redgravellp.com>; Anne F. Johnson <ANNEJ@hbsslaw.com>; Zina Bash <zina.bash@kellerpostman.com>; Steve Berman <Steve@hbsslaw.com>; aliciacobb <aliciacobb@quinnemanuel.com>; Max Meadows <maxmeadows@quinnemanuel.com>; Robert Haegele <Robert@hbsslaw.com>; Jed Birmingham <jed.birmingham@kellerpostman.com>; Alex Dravillas <ajd@kellerpostman.com>; Roseann Romano <roseann.romano@kellerpostman.com>; Shane Kelly <shane.kelly@kellerpostman.com>; Kelly Fan <kellyf@hbsslaw.com>; Redgrave Amazon-FTC <redgraveamazonftc@redgravellp.com>; johngoldmark@dwt.com; MaryAnnAlmeida@dwt.com
**Cc:** Dunn, Karen L <kdunn@paulweiss.com>; Dearborn, Meredith <mdearborn@paulweiss.com>; Garrett, Ruby <RJGarrett@paulweiss.com>; Topal, Andrew <atopal@paulweiss.com>
**Subject:** RE: Claw Back Request

Amy,
There was no ethical violation, and we take issue with Amazon's cavalier and unfounded accusation of misconduct. Throughout this litigation, Plaintiffs have consistently and in good faith called to Amazon's attention

documents that Plaintiffs had reason to suspect could have been inadvertently produced. It was, in fact, Plaintiffs' diligence in raising approximately 16,000 documents that Plaintiffs believed that Amazon may have inadvertently produced to them that kicked off the nearly two years of disputes over Amazon's privilege logs and uncovered Amazon's extensive misuse of the attorney-client privilege designations. Given Amazon's systematic practice of adding attorneys and "privileged" designations to tens of thousands of documents that have no actual basis for such a designation, Plaintiffs can hardly be faulted for not knowing which documents Amazon actually intends to assert privilege over. This is especially true where—like with the three documents here—Amazon re-reviewed a specific document, confirmed that it was not privileged (or was only partially privileged) and affirmatively identified it as so to Plaintiffs by designating the document "not privileged" or "redacted and produced," when producing the document in full or in part.

Previously, when Plaintiffs have raised concerns that Amazon had inadvertently produced privileged documents, Amazon represented that it reviewed each document individually and made individualized determinations as to whether they were privileged. *See, e.g.*, Oct. 10, 2024 Letter from A. Mauser to B. Mahoney (regarding Oct. 10, 2024 Email from S. Kelly to A. Mauser, *et al.*). The three documents submitted with our February 20 class certification brief, which Amazon now wants to claw back, were listed on either the "not privileged" or the "redacted and produced" tabs of Amazon's January 30 privilege log and remained so designated on the February 25, 2025 log, served the day before you made your clawback demand. Plaintiffs acted properly in relying on privilege logs that reflect Amazon's review and QC efforts—efforts Amazon described to the Court as "very sophisticated [] to make sure we're getting to the right result." Jan. 31, 2025 Hrg. Tr. at 35:19-20; Email from R. Keeling to J. Beringer (Jan. 25, 2025) (stating Amazon's January 29 log will "reflect all of the re-review and QC that Amazon has completed to date"). Further, Amazon told Plaintiffs in meet-and-confers that they were cross-checking similar documents to ensure consistency across their re-review. In other words, after Amazon carefully reviewed (and *re-reviewed*) each of these documents (and their duplicates on the logs for consistency), Amazon intentionally withdrew privilege claims over them. Amazon maintained its position that these documents are not privileged on the February 25 log—produced five days *after* Amazon received Plaintiffs' class certification motion. Under these circumstances, Amazon waived privilege (in fact, it expressly *disavowed* any claim of privilege) and it does not have a right to reassert it.

A brief overview of Amazon's handling of each document confirms that Amazon intentionally withdrew its claim of privilege for each of the three documents:

1. Exhibit 69 appears to have initially been produced as a slip sheet in May 2023. Then, as part of its re-review process, Amazon fully produced the document and identified it on the "Not Privileged and Produced" tab of the 10/29 log. The document has remained produced for nearly four months, and continues to be identified on the "Not Privileged – Frame" tab of the 2/25 log.
2. Amazon produced *seven* copies of Exhibit 68 and has logged six of them on the "not privileged" tab of its log, after its extensive rereview (one copy was produced but not logged at all). Exhibit 68 itself was re-reviewed and produced on January 30 and was identified on the "Not Privileged – CAAG" tab of the 1/30 Log. It remains on that tab on the 2/25 log.
3. Exhibit 94 was initially fully withheld. Then, a part of its re-review process, Amazon produced the document with redactions and logged it on the "Redacted and Produced" tab of the 10/29 Log. The document remained on the "Redacted and Produced – Frame" tab of both the 1/29 Log and the 2/25 Log.

Downgrading documents, as Amazon has done, is intentional, not inadvertent. "When a party makes a strategic decision that it later regrets [like withdrawing claims of complete privilege] it cannot later claim inadvertence to shield itself from the consequences of its own judgment call." *FTC v. Amazon.com, Inc.*, 2:23-cv-00932-JHC, ECF No. 179 at 11-12 (W.D. Wash. Aug. 01, 2024) (Chun, J.) (holding production is intentional and waiver applies where documents were previously withheld as privileged—for example after a re-review and production with redactions); *see also Brown v. Google LLC*, 20CV03664YGRSVK, 2022 WL 12039375, at *5–6 (N.D. Cal. Oct. 20, 2022) (production was intentional when producing party initially claimed the document was privileged, produced it in redacted form, and later tried to claw it back). Taking Amazon at its word that it has "looked hard at each of these documents in re-review, and that review has been completed," (Jan. 31, 2025 Hrg. Tr. at 33:10-11), Plaintiffs are entitled to rely on the results of Amazon's re-review and use documents Amazon intentionally produced to Plaintiffs in support of their case, without asking Amazon—yet

again—whether Amazon's privilege determinations are final. In fact, it would be unreasonable for Plaintiffs to assume Amazon's production of documents it re-reviewed and downgraded was anything other than an intentional withdrawal of any privilege assertion.

In terms of next steps, we will agree not to look at these exhibits until March 3, but as set forth above we have satisfied the requirements for finding waiver; Amazon cannot use the claw back process to "shield itself from the consequences of its own judgment call." *FTC v. Amazon.com, Inc.*, 2:23-cv-00932-JHC, ECF No. 179 at 11-12.  If Amazon has any legal authority that suggests its express and intentional withdrawal of privilege assertions over these documents was somehow not an intentional waiver, we ask that Amazon provide it, along with proposed full privilege log entries, including any proposed redactions, and a fulsome justification for re-asserting privilege over these documents after intentionally releasing its claim of privilege.  Given that the brief is under seal, we see no prejudice to Amazon in waiting until the parties have conferred over Amazon's asserted privilege claims to determine next steps, if any, as to our brief.

Best regards,
Barbara

--

**Barbara Mahoney** | Hagens Berman Sobol Shapiro LLP | (206) 268-9308

**From:** Mauser, Amy <amauser@paulweiss.com>
**Sent:** Thursday, February 27, 2025 3:18 AM
**To:** Jessica Beringer <jessica.beringer@kellerpostman.com>; Britt DeVaney <bdevaney@redgravellp.com>; Branden Weber <branden.weber@kellerpostman.com>; Robert D. Keeling <rkeeling@redgravellp.com>; Anne F. Johnson <ANNEJ@hbsslaw.com>; Barbara Mahoney <barbaram@hbsslaw.com>; Zina Bash <zina.bash@kellerpostman.com>; Steve Berman <Steve@hbsslaw.com>; aliciacobb <aliciacobb@quinnemanuel.com>; Max Meadows <maxmeadows@quinnemanuel.com>; Robert Haegele <Robert@hbsslaw.com>; Jed Birmingham <jed.birmingham@kellerpostman.com>; Alex Dravillas <ajd@kellerpostman.com>; Roseann Romano <roseann.romano@kellerpostman.com>; Shane Kelly <shane.kelly@kellerpostman.com>; Kelly Fan <kellyf@hbsslaw.com>; Redgrave Amazon-FTC <redgraveamazonftc@redgravellp.com>; johngoldmark@dwt.com; MaryAnnAlmeida@dwt.com
**Cc:** Dunn, Karen L <kdunn@paulweiss.com>; Dearborn, Meredith <mdearborn@paulweiss.com>; Garrett, Ruby <RJGarrett@paulweiss.com>; Topal, Andrew <atopal@paulweiss.com>
**Subject:** Claw Back Request

Dear Counsel,

As part of our initial review of Plaintiffs' Motion for Class Certification and supporting papers in *Frame-Wilson*, which we received on Thursday, February 20, 2025 at 7:18 PM ET, Plaintiffs cite and quote three documents that Amazon inadvertently produced; each document contains information subject to the attorney-client privilege and/or work product protection.  The documents are:

(1)  CAAGLit-AMZ_03029869 (Ex. 69);
(2)  CAAGLit-AMZ_10631781 (Ex. 94); and
(3)  CAAGLit-AMZ_10780239 (Ex. 68), as well as the following copies of Ex. 68:  CAAGLit-AMZ_03033686; CAAGLit-AMZ_03034000; CAAGLit-AMZ_03034028; CAAGLit-AMZ_10637733; CAAGLit-AMZ_10695061; CAAGLit-AMZ_1078023; CAAGLit-AMZ_10804172.

In accordance with applicable federal law and the protective orders and ESI protocols in these cases, **Amazon requests that Plaintiffs destroy all copies of these documents, delete them from any and all litigation support or other databases in your possession, and expunge them from any work product reflecting the contents of the documents.  Amazon similarly requests that Plaintiffs remove any reference to the above documents from their class**

**certification papers and re-file a new version that contains no reference to the above three documents.**  The use of clearly privileged information in Plaintiffs' class certification motion is inconsistent with Rule 4.4(b) of the Washington State Rules of Professional Responsibility, which provides:  "A lawyer who receives a document or electronically stored information relating to the representation of the lawyer's client and knows or reasonably should know that the document or electronically stored information was inadvertently sent shall promptly notify the sender."  *See also Hur v. Lloyd & Williams, LLC*, 25 Wash. App. 2d 644, 650 (2023) (ethical rules "require a recipient of inadvertently disclosed information subject to a claim of privilege to notify the sender and either return, sequester, or destroy the materials").  Notwithstanding the clearly privileged nature of the information in the above documents, Plaintiffs used the documents in their class certification motion without first notifying Amazon.

Where appropriate, Amazon will make a replacement document production with the privileged material properly identified as redacted and promptly provide full privilege log entries for these documents.

Amazon expressly reserves all rights, including but not limited to identifying additional inadvertently produced material and seeking relief from the Court, and does not waive any objections, arguments, or protections.

Please let us know no later than Friday, February 28 whether Plaintiffs will agree to destroy these three documents and re-file their class certification papers removing all reference to these documents.

Thanks,

Amy

**Amy J. Mauser** | Partner
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
2001 K Street, NW | Washington, DC 20006-1047
+1 202 223 7371 (Direct Phone) | +1 202 615 6841 (Cell)
+1 202 379 4077 (Direct Fax)
amauser@paulweiss.com | www.paulweiss.com

This message is intended only for the use of the Addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately.

PRIVILEGED & CONFIDENTIAL: This e-mail message (and any attachments) is for the exclusive use of the intended recipient(s) and likely contains confidential and privileged information. It is the property of the law firm Hagens Berman Sobol Shapiro LLP. Do not disseminate this email, its content, or any attachments without approval of Hagens Berman. If you are not the intended recipient, please do not read, distribute, or take any other action in reliance upon this message. If you have received this email in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.

# EXHIBIT B

**From:** Mauser, Amy
**Sent:** Friday, July 28, 2023 5:58 PM
**To:** 'Barbara Mahoney'
**Cc:** Jessica Beringer ; aliciacobb@quinnemanuel.com; Steve Berman ; Robert Haegele
**Subject:** RE: inadvertent production

Barbara,

We appreciate your bringing this document to our attention. I have confirmed that Amazon is not claiming privilege for this document.

Amy


**Amy J. Mauser** | Counsel
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
2001 K Street, NW | Washington, DC 20006-1047
202 223 7371 (Direct Phone) | 202 615 6841 (Cell)
202 379 4077 (Direct Fax)
amauser@paulweiss.com | www.paulweiss.com

---

**From:** Barbara Mahoney <barbaram@hbsslaw.com>
**Sent:** Wednesday, July 26, 2023 9:58 AM
**To:** Mauser, Amy <amauser@paulweiss.com>
**Cc:** Jessica Beringer <jessica.beringer@kellerpostman.com>; aliciacobb@quinnemanuel.com; Steve Berman <Steve@hbsslaw.com>; Robert Haegele <Robert@hbsslaw.com>
**Subject:** inadvertent production

Hi Amy,
We identified the attached document in the course of our document review. Please confirm whether Amazon inadvertently produced this document and whether it is claiming privilege over any portion of this document. If so, please provide the facts necessary to sustain a claim of privilege.

---

Thank you,
Barbara
--
**Barbara Mahoney, Senior Counsel**
HB SWEDEN AB (MALMÖ)

# HAGENS BERMAN

Hagens Berman Sobol Shapiro LLP
Seattle, WA
(206) 268-9308
barbaram@hbsslaw.com

News | Cases | Twitter | Facebook

---

PRIVILEGED & CONFIDENTIAL: This e-mail message (and any attachments) is for the exclusive use of the intended recipient(s) and likely contains confidential and privileged information. It is the property of the law firm Hagens Berman Sobol Shapiro LLP. Do not disseminate this email, its content, or any attachments without approval of Hagens Berman. If you are not the intended recipient, please do not read, distribute, or take any other action in reliance upon this message. If you have received this email in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.

# EXHIBIT C

| | |
|---|---|
| **From:** | Daniel Backman <Daniel.Backman@kellerpostman.com> |
| **Sent:** | Wednesday, May 22, 2024 9:02 PM |
| **To:** | Mauser, Amy |
| **Cc:** | Goodman, Martha; Goldmark, John; Smith, Kyle; Barbara Mahoney; Anne F. Johnson; Steve Berman; Zina Bash; Alicia Cobb; steigolson@quinnemanuel.com; Max Meadows; Jed Birmingham |
| **Subject:** | RE: Potential inadvertently produced documents |

Amy,

Plaintiffs have destroyed the listed documents and any copies thereof, consistent with the Protective Order and the Federal Rules. Please let us know when we can expect the redacted documents and accompanying privilege log entries.

Thank you,
Daniel

**Daniel Backman**
Associate
Keller | Postman
1101 Connecticut Avenue, N.W., Suite 1100 | Washington, D.C. 20036
202-918-1123 | Email | Bio | Website

---

**From:** Mauser, Amy
**Sent:** Friday, May 17, 2024 3:35 PM
**To:** Daniel Backman
**Cc:** Goodman, Martha ; Goldmark, John ; Smith, Kyle ; Barbara Mahoney ; Anne F. Johnson ; Steve Berman ; Zina Bash ; Alicia Cobb ; steigolson@quinnemanuel.com; Max Meadows ; Jed Birmingham
**Subject:** RE: Potential inadvertently produced documents

Daniel,

Thank you for bringing these documents to our attention.

We confirm that Amazon intended to produce **CAAGLit-AMZ_01755965**, and we are not seeking to claw it back.

The documents bearing Bates numbers **CAAGLit-AMZ_01756163, CAAGLit-AMZ_02528021, CAAGLit-AMZ_00254907,** and **CAAGLit-AMZ_01756139** each contain privileged information and were inadvertently produced.

We ask that Plaintiffs destroy or return the above-listed documents, including all copies, notes, and/or summaries thereof, within three business days; and confirm the completion of such destruction to us in writing. The material is not be used for any further purpose.

Amazon will produce a version of the four clawed-back documents with the appropriate redactions and privilege log entries for these documents.

If you have any questions, please let us know. Amazon reserves all rights to claw back any additional documents discovered that were inadvertently produced and subject to any privileges or protections from disclosure.

Amy

**Amy J. Mauser** | Counsel
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
2001 K Street, NW | Washington, DC 20006-1047
+1 202 223 7371 (Direct Phone) | +1 202 615 6841 (Cell)
+1 202 379 4077 (Direct Fax)
amauser@paulweiss.com | www.paulweiss.com

---

**From:** Daniel Backman <Daniel.Backman@kellerpostman.com>
**Sent:** Thursday, May 16, 2024 10:13 AM
**To:** Mauser, Amy <amauser@paulweiss.com>
**Cc:** Goodman, Martha <mgoodman@paulweiss.com>; Goldmark, John <johngoldmark@dwt.com>; Smith, Kyle <ksmith@paulweiss.com>; Barbara Mahoney <barbaram@hbsslaw.com>; Anne F. Johnson <ANNEJ@hbsslaw.com>; Steve Berman <Steve@hbsslaw.com>; Zina Bash <zina.bash@kellerpostman.com>; Alicia Cobb <aliciacobb@quinnemanuel.com>; steigolson@quinnemanuel.com; Max Meadows <maxmeadows@quinnemanuel.com>; Jed Birmingham <jed.birmingham@kellerpostman.com>
**Subject:** Potential inadvertently produced documents

Amy,

We identified in the course of our document review three documents that may be partially privileged: CAAGLit-AMZ_02528021; CAAGLit-AMZ_01756163; and CAAGLit-AMZ_01755965. Please confirm whether Amazon intentionally or inadvertently produced these documents and whether it is claiming privilege over any portion of these documents. If so, please provide the facts necessary to sustain a claim of privilege and overlays with redactions as appropriate.

Thank you,
Daniel

Daniel Backman
Associate
Keller | Postman
1101 Connecticut Avenue, N.W., Suite 1100 | Washington, D.C. 20036
202-918-1123 | Email | Bio | Website

This message is intended only for the use of the Addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately.

# EXHIBIT D

**From:** Britt DeVaney <bdevaney@redgravellp.com>
**Sent:** Monday, February 17, 2025 2:27 PM
**To:** Jessica Beringer <jessica.beringer@kellerpostman.com>; Robert D. Keeling <rkeeling@redgravellp.com>; Mauser, Amy <amauser@paulweiss.com>; Garrett, Ruby <RJGarrett@paulweiss.com>
**Cc:** Barbara Mahoney <barbaram@hbsslaw.com>; aliciacobb <aliciacobb@quinnemanuel.com>; Anne F. Johnson <ANNEJ@hbsslaw.com>; maxmeadows <maxmeadows@quinnemanuel.com>; Shane Kelly <shane.kelly@kellerpostman.com>; Branden Weber <branden.weber@kellerpostman.com>; Robert Haegele <Robert@hbsslaw.com>; steve <steve@hbsslaw.com>; Redgrave Amazon-FTC <redgraveamazonftc@redgravellp.com>
**Subject:** RE: Frame Wilson v. Amazon - potentially inadvertently produced document

Hi Jessica,

Thank you for bringing this to our attention. This document was inadvertently produced without redactions, and we will follow up with clawback communications.

Thanks,
Britt

**BRITT DEVANEY**
COUNSEL | **REDGRAVE LLP** | (P) 312.438.7946
bdevaney@redgravellp.com
CONFIDENTIALITY STATEMENT: This email message and any attachments are confidential and may be subject to the attorney-client or other applicable privileges. If you are not the intended recipient, please immediately reply to the sender and delete the message and any attachments. Thank you.

**From:** Jessica Beringer <jessica.beringer@kellerpostman.com>
**Sent:** Tuesday, February 11, 2025 1:10 PM
**To:** Robert D. Keeling <rkeeling@redgravellp.com>; Britt DeVaney <bdevaney@redgravellp.com>; Mauser, Amy <amauser@paulweiss.com>; Garrett, Ruby <RJGarrett@paulweiss.com>
**Cc:** Barbara Mahoney <barbaram@hbsslaw.com>; aliciacobb <aliciacobb@quinnemanuel.com>; Anne F. Johnson <ANNEJ@hbsslaw.com>; maxmeadows <maxmeadows@quinnemanuel.com>; Shane Kelly <shane.kelly@kellerpostman.com>; Branden Weber <branden.weber@kellerpostman.com>; Robert Haegele

<Robert@hbsslaw.com>; steve <steve@hbsslaw.com>
**Subject:** [EXTERNAL] Frame Wilson v. Amazon - potentially inadvertently produced document

Counsel:

We write regarding a recently produced document with the Bates label CAAGLit-AMZ_10775579. Please let us know whether this document was inadvertently produced without redactions.

Thank you,
Jessica

**Jessica Beringer**
Partner

Keller | Postman

312.280.5788 | Email | Website

# EXHIBIT E

1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    EPIC GAMES, INC.,                          Case No.  20-cv-05640-YGR   (TSH)

8                    Plaintiff,

9            v.                                 **DISCOVERY ORDER**

10   APPLE INC.,                                Re: Dkt. No. 1257

11                   Defendant.

12

13           The parties have a dispute concerning Apple's clawback of two documents.  ECF No.

14   1257.  By way of background, as part of its re-review process, Apple redacted two documents

15   (APL-EG_00120646 and APL-EG_00135890) and submitted them and its proposed redactions for

16   review by the Special Masters, who upheld the privilege claims for the redactions in both

17   documents.  Apple was then obligated to produce those redacted documents to Epic by February

18   18, 2025.  ECF No. 1252 at 1 ¶ 1.  Instead, on February 16, 2025, Apple clawed back both

19   documents in their entirety because, according to Apple, they were materially similar to a third

20   document (APL-EG_00162520) that Apple withheld in full and which the Special Masters found

21   to be privileged.  The Court later upheld Apple's claim of privilege over '520.  ECF No. 1251

22   (Entry 1471).  The present dispute is not over the merit of the present clawback, i.e., whether '646

23   and '890 are in fact privileged as a whole, but over whether Apple is procedurally entitled to make

24   this clawback at all.

25           The Court thinks that Apple may do this.  The ESI Order states that "[p]ursuant to Fed. R.

26   Evid. 502(d), the production of a privileged or work-product-protected document is not a waiver

27   of privilege or protection from discovery in this case or in any other federal or state proceeding,

28   consistent with the Protective Orders entered in the actions."  ECF No. 245 § 11.  The protective

United States District Court
Northern District of California

**A055**

1    order further states that "[t]he production without manual review of any privileged or otherwise

2    protected document or ESI, whether inadvertent or otherwise, is not and shall not be deemed a

3    waiver or impairment of any claim of privilege or protection arising under the attorney-client

4    privilege, the protection afforded to work-product materials, or any other privilege or protection

5    from discovery, in these cases or in any other federal or state proceeding, as long as the Producing

6    Party follows the procedure in Section 12.2," governing clawbacks.  ECF No. 274 ¶ 12.1.

7         For the moment, we can set aside two technical arguments that the parties do not make.

8    Epic does not appear to be arguing that paragraph 12.1 in the protective order limits non-waiver to

9    productions made "without manual review."  (Apple acknowledges that it did manually review

10   '646 and '890 before providing them to the Special Masters.)  And Apple does not advance the

11   argument that it never made a "production" of '646 and '890 because it never produced them to

12   Epic (which it didn't).  Rather, Epic argues that Apple is not entitled to make a clawback of

13   documents that it deliberately decided to produce in redacted form.  Apple doesn't dispute that

14   general proposition but argues that the production was inadvertent.  Apple argues that it re-

15   reviewed about 54,000 documents for claims of privilege in the span of a few weeks with a team

16   of about a hundred reviewers, and it simply made inconsistent privilege calls.  Thus, the dispute as

17   teed up by the parties is whether Apple's production of '646 and '890 in redacted form was

18   deliberate or inadvertent.  *See* ECF No. 274 ¶ 12.3 (protective order allows a party to clawback

19   any "inadvertently produced" discovery material).

20        This isn't the first time that Apple has made inconsistent privilege calls in its re-review

21   process.  *See* ECF No. 1139 at 9 (noting that Apple both produced and withheld Entry 307 and

22   produced Entry 1577 with and without redactions).  The Court does not think that in a document

23   review of this size, inconsistent privilege calls, without more, amount to the deliberate production

24   of the version that was produced.  That doesn't make any sense.  After all, the fact that Apple also

25   *withheld* a document that (it says) is materially similar suggests the production was a mistake.

26   Epic argues that Apple's production was deliberate because it reviewed '646 and '890 twice, first

27   concluding they were entirely privileged, and then concluding they were only partially privileged.

28   While that is true, Apple also reviewed '520 twice, and both times concluded it was entirely

United States District Court
Northern District of California

2

**A056**

privileged.  Thus, assuming the documents are materially similar, the withholding of '520 casts

doubt on the deliberateness of producing '646 and '890 in redacted form.

Further, and leaving aside whether '646 and '890 are in fact materially similar to '520, the

clawback right in the protective order and Rule 26(b)(5)(B) exists because people make mistakes.

Epic cites no authority for the proposition that inadvertence does not include an intentional but

mistaken decision by a human document reviewer.  The question, after all, is whether *Apple*

deliberately produced a document, not whether one particular document reviewer deliberately

decided these documents should have been redacted rather than withheld in full.  Apple used a

large team of reviewers to make privilege calls on a large number of documents, and a mistake

does not mean that the company deliberately produced the document.

Accordingly, the Court **ORDERS** that Apple is procedurally entitled to make this

clawback.  Not having seen '646 and '890, the Court expresses no view on the merits of Apple's

claim of privilege.  Rather, as discussed at the hearing, Apple has submitted or will submit its

privilege claim over these two documents to the Special Masters for their review.

**IT IS SO ORDERED.**

Dated: February 25, 2025

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California

3

**A057**

The Honorable John H. Chun

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

| | |
|---|---|
| ELIZABETH DE COSTER, *et al.*, on behalf of themselves and all other similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>AMAZON.COM, INC., a Delaware corporation,<br><br>                    Defendant. | **DECLARATION OF ROBERT D. KEELING IN SUPPORT OF AMAZON'S MOTION TO CLAW BACK PRIVILEGED MATERIAL AND STRIKE REFERENCES THERETO FROM PLAINTIFFS' CLASS CERTIFICATION MOTION**<br><br>Case No. 2:21-cv-00693-JHC |
| DEBORAH FRAME-WILSON, et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>AMAZON.COM, INC., a Delaware corporation,<br><br>                    Defendant. | Case No. 2:20-cv-00424-JHC |
| CHRISTOPHER BROWN, et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>AMAZON.COM, INC., a Delaware corporation,<br><br>                    Defendant. | Case No. 22-cv-00965-JHC |

DECLARATION OF ROBERT D. KEELING - 1
(2:21-CV-00693-JHC, 2:20-CV-00424-JHC, 2:22-CV-00965-JHC)

A058

I, Robert D. Keeling, declare as follows:

1.      I am an attorney admitted to practice law in the District of Columbia and a member in good standing of the District of Columbia Bar.  I received a J.D. from the University of Virginia School of Law in 2000, and a B.S. from James Madison University in 1996.

2.      I am a partner at the law firm Redgrave LLP ("Redgrave"), which focuses on Information Law, including eDiscovery, information governance, records and information management, data protection, and privilege issues.

3.      Amazon.com, Inc. ("Amazon") has retained Redgrave as discovery counsel in this case and in related Amazon matters, and Redgrave is assisting Amazon with discovery issues in this case, including privilege review and logging.

4.      In making this declaration, I do not intend to—and am not authorized to—waive any applicable privilege or protection from discovery, including the attorney-client privilege and the work product protection.

5.      Plaintiffs attached three documents to their Motion for Class Certification that were inadvertently produced to Plaintiffs and that Amazon seeks to claw back as privileged, including the documents identified by Bates CAAGLit-AMZ_03029869 (Ex. 69), CAAGLit-AMZ_10631781 (Ex. 94), and CAAGLit-AMZ_10780239 (Ex. 68).

6.      Each of the documents Amazon seeks to claw back was produced as part of Amazon's privilege re-review. During the re-review process, Amazon evaluated privilege for a voluminous set of documents on a tight timeframe in compliance with applicable standards and the Court's orders.

7.      My understanding of the production history of each document is explained below.

8.      Document CAAGLit-AMZ_03029869 (Ex. 69) was initially correctly coded as wholly privileged and withheld in full on April 13, 2023. *See* Dec. 1, 2023 Privilege Log ID AMZ_CAAG_00064822.  This document was inadvertently produced in full on October 29, 2024. *See* Oct. 29, 2024 Privilege Log ID AMZ_CAAG_00064822.

9.    Document CAAGLit-AMZ_10631781 (Ex. 94) was initially correctly coded as wholly privileged and withheld in full. *See* Oct. 20, 2023 Privilege Log ID AMZ_CAAG_00027005. This document was inadvertently downgraded to privilege redact and produced with redactions on October 28, 2024. *See* Oct. 28, 2024 Privilege Log ID AMZ_CAAG_00027005. This document does not have any true duplicates and thus was not affected by any consistency reviews. Amazon seeks to claw back three similar documents that were incorrectly produced with inconsistent redactions.

10.    Document CAAGLit-AMZ_10780239 (Ex. 68) was initially correctly coded as wholly privileged and withheld in full. *See* Aug. 13, 2024 Privilege Log ID 0042533. This document was inadvertently produced in full on January 28, 2025. *See* Jan. 28, 2025 Privilege Log ID 0042533. Four near duplicates of this document were correctly withheld as privileged and appear on Amazon's privilege log.

11.    In addition, Amazon seeks to claw back as privileged six duplicate copies of the document identified by Bates CAAG Lit-AMZ_10780239 (Ex. 68), including the following: CAAGLit-AMZ_03033686; CAAGLit-AMZ_03034000; CAAGLit-AMZ_03034028; CAAGLit-AMZ_10637733; CAAGLit-AMZ_10695061; and CAAGLit-AMZ_10804172.

12.    The duplicate documents to Bates CAAGLit-AMZ_10780239 (Ex. 68) that Amazon inadvertently produced were part of a consistency review process that contributed to the inadvertent production.

13.    As part of its privilege review, Amazon conducts a variety of consistency processes to ensure that duplicate, near-duplicate documents, and email threads are coded consistently across the production populations. These consistency processes include both automated and manual workflows.

14.    Typically, the consistency process uses a "master" coded document to propagate that same coding onto the same or similar documents, either through an automated or manual propagation process. However, in rare cases, the "master" document is inadvertently miscoded. When this occurs, the consistency review can propagate inadvertent miscoding onto duplicate or

1   near-duplicate documents. That is what happened with the duplicate documents to Bates

2   CAAGLit-AMZ_10780239. Specifically, two of the duplicates had the mistaken coding

3   automatically applied. I understand that the other duplicates had coding manually changed to

4   match one or more of the "master" document as part of manual processes to conform coding.

5       15.     These manual consistency processes typically do not involve separate and

6   independent determinations of privilege for the impacted documents. Instead, coding is changed

7   in more of a ministerial process to make coding consistent across duplicates or email threads.

8       16.     Maintaining consistency of privilege calls, including detailed redactions of lengthy

9   and complex documents, is particularly difficult in large-volume cases such as this one. In addition,

10  many of these documents are housed in different databases, which further complicates the process

11  and makes it more difficult to maintain consistency.

12      17.     Further, the privilege review in this case has also been challenging because

13  document productions and privilege logs produced to Plaintiffs have largely been re-productions

14  from related Amazon matters, including the FTC investigation and the CA AG litigation. With

15  respect to the FTC investigation, those privilege logs were prepared by prior counsel and under

16  different discovery protocols and orders. These issues, as well as the review of thousands of dense,

17  single-spaced memoranda drafted across more than a decade of a complex and changing regulatory

18  and legal environment, has made this privilege review one of the most challenging we have ever

19  faced.

20      18.     Amazon additionally seeks to claw back two documents that Plaintiffs selected for

21  *in camera* review. Order, *Frame-Wilson*, Case No. 2:20-cv-00424 (Feb. 3, 2025), Dkt. 256. Both

22  of these documents (numbers 37 and 38) were inadvertently produced with insufficient redactions.

23  Specifically, CAAGLit-AMZ_14203537 and CAAGLit-AMZ_14211238 are emails where

24  privileged language was inadvertently not redacted.

25      19.     I understand that Amazon has produced approximately 2.6 million documents to

26  private plaintiffs. I understand that Amazon has previously clawed back 28 documents that were

27

produced as part of the re-review. Accordingly, Amazon has clawed back only .001% percent of the documents produced to Plaintiffs.

20.    Amazon has used a large contract attorney team to assist with the document review in this matter. At its height, the contract attorney team consisted of approximately 165 reviewers. According to the contract attorney team provider, the reviewers were allowed to review up to 12 hours per day, and up to 60 hours per week.


I declare under penalty of perjury that the foregoing is true and correct.

Executed this 17th day of March, 2025, in Washington, D.C.


_____

Robert D. Keeling

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ELIZABETH DE COSTER, *et al.*, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., a Delaware corporation,<br><br>Defendant. | Case No. 2:21-cv-00693-JHC<br><br>**AMENDED STIPULATED PROTECTIVE ORDER** |

AMENDED STIPULATED PROTECTIVE ORDER
CASE NO. 2:21-CV-00693-JHC

**A063**

Plaintiffs Elizabeth De Coster, Maya Gold, John Mariane, Osahon Ojeaga, Megan Smith, Robert Taylor, Kenneth David West, and Emma Zaballos, and Defendant Amazon.com, Inc. jointly stipulate and agree to the entry of a protective order as described below:

**1.   PURPOSES AND LIMITATIONS**

Discovery in this action is likely to involve production of confidential, proprietary, or private information for which special protection may be warranted. Accordingly, the parties hereby petition the Court to enter the following Protective Order. The parties acknowledge that this agreement is consistent with LCR 26(c). It does not confer blanket protection on all disclosures or responses to discovery, the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles, and it does not presumptively entitle parties to file confidential information under seal. The availability of protection pursuant to this Protective Order does not preclude a party from withholding information protected by any applicable privilege. Nothing in this Protective Order shall restrict in any way the right of a Producing Party to disclose or make use of its own documents or Discovery Material.

**2.   DEFINITIONS**

2.1   <u>Challenging Party</u>: A Party or Non-Party that challenges the designation of information or items under this Order.

2.2   <u>Competitive Decision-Making</u>: Participation in decision-making regarding a firm's business operations, including the development or implementation of competitive strategies, business plans, and third-party negotiations, or other decisions made in light of similar corresponding information about a competitor, except when such participation is for the purpose of rendering legal advice as to litigation or antitrust issues.

2.3   <u>Counsel (without qualifier)</u>: Outside Counsel of Record, In-House Counsel, and their support staff.

2.4   <u>Designating Party</u>: the producing Party or Non-Party designating documents or information as Protected Information under this Order.

AMENDED STIPULATED PROTECTIVE ORDER - 1
CASE NO. 2:21-CV-00693-JHC

**A064**

2.5     <u>Discovery Material</u>: All items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.6     <u>Expert</u>: A person with specialized knowledge or experience in an area pertinent to the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, (2) is not a past or current employee of a Party or of a Party's competitor, and (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

2.7     <u>Industry Expert</u>: An Expert whose specialized knowledge or experience derives from personal experience in the industries and markets pertinent to the litigation and who satisfies the other criteria for the definition of Expert.

2.8     <u>In-House Counsel</u>: Attorneys (and their support staff, including legal secondees and economists) who are employees or contractors of a Party and whose responsibilities include overseeing, working on, or supporting this action. In-House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.9     <u>Non-Party</u>: Any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.10     <u>Outside Counsel of Record</u>: Attorneys who are retained to represent or advise a Party to this action.

2.11     <u>Party</u>: Any Party to this action, including all its officers, directors, employees, consultants, retained Experts, and Outside Counsel of Record (and their support staff).

2.12     <u>Producing Party</u>: A Party or Non-Party that produces Discovery Material in this action. To the extent Amazon reproduces to Plaintiffs Discovery Material originally produced by a Non-Party in any other action, Amazon is a "Receiving Party" and not a "Producing Party" of Non-Party Discovery Material.

2.13     <u>Protected Material</u>: Any Discovery Material that is designated as "Confidential" or "Highly Confidential—Attorneys' Eyes Only."

AMENDED STIPULATED PROTECTIVE ORDER - 2
CASE NO. 2:21-CV-00693-JHC

1       2.14   <u>Receiving Party</u>: A Party that receives Discovery Material from a Producing
2   Party.

3   **3.    PROTECTED MATERIAL**

4       3.1   <u>"CONFIDENTIAL" Material</u>: Documents and tangible things that may be
5   produced or otherwise exchanged 1) that the Designating Party reasonably believes contain,
6   describe, or disclose sensitive, non-public, confidential information, such as (a) court records,
7   whether in this District or other courts, currently maintained under seal; (b) information subject
8   to a non-disclosure or confidentiality agreement; (c) employee personnel information; (d) a Non-
9   Party's commercially sensitive information, trade secrets, or competitive or strategic initiatives
10  that are not readily ascertainable and for which the Designating Party has taken reasonable steps
11  to maintain confidentiality, and (e) personal identifying information subject to redaction under
12  Local Civil Rule 5.2, or 2) the Designating Party's own commercially sensitive information, such
13  as (a) financial or accounting information; (b) commercially sensitive internal communications
14  or information; and (c) business negotiations, transactions, and dealings with Non-Parties.

15      3.2   <u>"HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" Material</u>:
16  Extremely sensitive materials that qualify as "CONFIDENTIAL" and that the Designating Party
17  reasonably believes contain highly sensitive business or personal information, the disclosure of
18  which to another Party or Non-Party would create a risk of competitive or commercial
19  disadvantage to the Designating Party.

20      3.3   This Order does not envision the production of source code or object code. Should
21  the Parties agree to source code discovery, they will enter a separate stipulated source code
22  supplement to this Order.

23  **4.    SCOPE**

24      The protections conferred by this agreement cover not only Protected Material (as
25  defined above), but also (1) any information copied or extracted from Protected Material; (2) all
26  copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony,
27  conversations, or presentations by Parties or their Counsel, Non-Parties, and/or Experts that
28  might reveal Protected Material.

AMENDED STIPULATED PROTECTIVE ORDER - 3
CASE NO. 2:21-CV-00693-JHC

However, the protections conferred by this agreement do not cover information that is in the public domain or becomes part of the public domain through trial or otherwise.

**5.      ACCESS TO AND USE OF PROTECTED MATERIAL**

5.1      <u>Basic Principles</u>. A Receiving Party may use Protected Material that is disclosed or produced by a Producing Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Protected Material may be disclosed only to the categories of persons and under the conditions described in this agreement. Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this agreement.

5.2      <u>Disclosure of "CONFIDENTIAL" Material</u>. Unless otherwise ordered by the Court or permitted in writing by the Producing or Designating Party, a Receiving Party may disclose any Confidential Material only to:

(a)      the Receiving Party's Outside Counsel of Record in this action, including employees, vendors, and consultants of Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation;

(b)      the Receiving Party's In-House Counsel, who have no involvement in Competitive Decision-Making, and to whom disclosure is reasonably necessary for the purpose of litigating this Action;

(c)      Experts, professional jury or trial consultants, and their employees and staff, to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)      the Court, court personnel, and court reporters and their staff;

(e)      copy, imaging, document management, and electronic discovery services retained by Counsel to assist in the management of Confidential Material and who execute the "Acknowledgement and Agreement to Be Bound" attached as Exhibit A, provided that counsel for the Party retaining such services instructs the service not to disclose any Confidential Material to third parties and to immediately return all originals and copies of any Confidential Material;

AMENDED STIPULATED PROTECTIVE ORDER - 4
CASE NO. 2:21-CV-00693-JHC

(f)      during their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the Court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Confidential Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this agreement; and

(g)      the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

5.3      Disclosure of "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" Material. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any Highly Confidential—Attorney's Eyes Only Material only to:

(a)      the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation;

(b)      Experts, professional jury or trial consultants, and their employees and staff, to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and, with respect to an Industry Expert, has been subject to the procedure in Section 5.7;

(c)      the Court, court personnel, and court reporters and their staff;

(d)      the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

(e)      employees of the Producing Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Agreement to Be Bound by Protective Order" attached as Exhibit A;

(f)      copy, imaging, document management, and electronic discovery services retained by Counsel to assist in the management of Highly Confidential-Attorney's Eyes Only Material and who execute the "Agreement to Be Bound by Protective Order" attached as Exhibit

1   A, provided that counsel for the Party retaining such services instructs the service not to disclose

2   any Highly Confidential Material to third parties and to immediately return all originals and

3   copies of any Highly Confidential Material;

4           (g)     the following four (4) In-House Counsel who Amazon certifies are not

5   involved in Competitive Decision-Making and are not reasonably likely to become involved in

6   Competitive Decision-Making, including:

7               1.     Nate Sutton;

8               2.     Bryson Bachman;

9               3.     Cristina Fernandez; and

10              4.     Caroline Jones.

11          (h)     additional In-House Counsel substituted for an individual listed in Section

12   5.3(g): (i) who have no involvement in Competitive Decision-Making; (ii) to whom disclosure is

13   reasonably necessary for the litigation of this Action; (iii) who have been disclosed under Section

14   5.4 of this Order; and (iv) who is not subject to an objection by a Designating Party under

15   Section 5.4, unless the Court overrules such objection.

16          5.4     Procedure for Identifying Designated In-House Counsel Pursuant to Section

17   5.3(h). Unless otherwise agreed to in writing by the Designating Party or otherwise ordered by

18   the Court, material designated "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY"

19   can be disclosed to Designated In-House Counsel of the Receiving Party contemplated by

20   Section 5.3(h) and not identified in Section 5.3(g) only after:

21          (a)     The Receiving Party notifies the Designating Party of: (i) the name(s) of

22   the additional Designated In-House Counsel; (ii) the title and a general description of the

23   responsibilities of those Designated In-House Counsel; (iii) a certification that (1) the Designated

24   In-House Counsel are not involved in Competitive-Decision-Making; and (2) it is not reasonably

25   foreseeable that the Designated In-House Counsel will become involved in Competitive

26   Decision-Making.

27

28

AMENDED STIPULATED PROTECTIVE ORDER - 6
CASE NO. 2:21-CV-00693-JHC

(b)     If the Designating Party fails to object within twenty-one (21) days, the Receiving Party may disclose "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" material to the Designated In-House Counsel identified pursuant to Section 5.4(a).

(c)     If the Designating Party objects, it must do so in writing and set forth in detail the grounds on which the objection is based. Upon a written request by the Receiving Party, the Receiving Party and Designating Party shall meet and confer on the objection to try to resolve the objection. Except by agreement of both the Receiving Party and the Designating Party, such meet and confer should be conducted promptly, and, in any event, within no later than ten (10) days of the written request from the Receiving Party. If the Receiving Party and the Designating Party are unable to reach a resolution after a good faith effort to meet and confer, then either Party may seek an appropriate order following the applicable procedures for such requests from the court. A good faith effort to confer requires a face-to-face meeting or telephone conference.

5.5     Competitive Decision-Making Bar. Any In-House Designated Counsel who receives material designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" shall be prohibited from engaging in any Competitive Decision-Making relating to such material, including taking any new role that would require Competitive Decision-Making relating to such material, for two (2) years after (a) the In-House Counsel no longer has access to such material; or (b) final disposition of this Action, as defined in Section 12, whichever is earlier.

5.6     Disclosure of HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY Material to In-House Counsel Based on Need. Defendant may at any time before the trial of this Action request disclosure of HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY material to additional In-House Counsel not identified in Section 5.3 of this Order by consent of the Designating Party who made such designation or motion with the Court. Defendant shall provide a written notice to the Designating Party and all Parties to this Action stating with particularity the need for such disclosure. Defendant must meet and confer with the Designating Party to try to resolve the matter by agreement within 7 days of the written notice. If no

AMENDED STIPULATED PROTECTIVE ORDER - 7
CASE NO. 2:21-CV-00693-JHC

**A070**

1  agreement is reached, Defendant may file a motion with the Court. Defendant will not disclose

2  any HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY material to its In-House

3  Counsel pending resolution of the dispute. If the Court finds that the designated In-House

4  Counsel has a particularized need for access to the HIGHLY CONFIDENTIAL—

5  ATTORNEYS' EYES ONLY material that outweighs the risk of harm to the Designating Party

6  or the public interest, Defendant will be able to disclose the HIGHLY CONFIDENTIAL—

7  ATTORNEYS' EYES ONLY material to its designated In-House Counsel notwithstanding

8  Section 5.

9         5.7    Procedures for Approving or Objecting to Disclosure to Industry Expert of

10  Materials Designated "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY."

11             (a)    Unless otherwise ordered by the Court or agreed to in writing by the

12  Designating Party, a Party that seeks to disclose to an Industry Expert any material that has been

13  designated "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" first must make a

14  written disclosure to the Designating Party that (1) identifies the general categories of "HIGHLY

15  CONFIDENTIAL—ATTORNEYS' EYES ONLY" information that the Receiving Party seeks

16  permission to disclose to the Industry Expert, (2) sets forth the full name of the Industry Expert

17  and the city and state of his or her primary residence, (3) attaches a copy of the Industry Expert's

18  current resume, (4) identifies the Industry Expert's current employer(s), (5) identifies each

19  person or entity from whom the Industry Expert has received compensation or funding for work

20  in his or her areas of expertise or to whom the Industry Expert has provided professional

21  services, including in connection with a litigation, at any time during the preceding four years,

22  and (6) identifies (by name and number of the case, filing date, and location of court) any

23  litigation in connection with which the Industry Expert has offered expert testimony, including

24  through a declaration, report, or testimony at a deposition or trial, during the preceding four

25  years. If the Industry Expert believes that any of the information sought through part (6) of this

26

27

28

AMENDED STIPULATED PROTECTIVE ORDER - 8
CASE NO. 2:21-cv-00693-JHC

**A071**

1  disclosure is subject to a confidentiality obligation to a third party, then the Expert should

2  indicate the confidential matters with as much detail as possible.

3          (b)      A Party that makes a written disclosure and provides the information

4  specified in the preceding respective paragraphs may disclose the subject "HIGHLY

5  CONFIDENTIAL—ATTORNEYS' EYES ONLY" Material to the identified Industry Expert

6  unless, within seven days of delivering the request, the Party receives a written objection from

7  the Designating Party.

8          (c)      A Party that receives a timely written objection must meet and confer with

9  the Designating Party to try to resolve the matter by agreement within three days of the written

10  objection. If no agreement is reached, the Party seeking to make the disclosure to the Industry

11  Expert may file a motion as provided in Local Civil Rule 7 seeking permission from the Court to

12  do so, or may use the expedited joint motion procedure set forth in Local Civil Rule 37(a)(2).

13  Any such motion must describe the circumstances with specificity, set forth in detail the reasons

14  why the disclosure to the Industry Expert is reasonably necessary, assess the risk of harm that the

15  disclosure would entail, and suggest any additional means that could be used to reduce that risk.

16  In addition, any such motion must be accompanied by a competent declaration describing the

17  Parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet

18  and confer discussions) and setting forth the reasons advanced by the Designating Party for its

19  refusal to approve the disclosure.

20      In any such proceeding, the Party opposing disclosure to the Industry Expert shall bear

21  the burden of proving that the risk of harm that the disclosure would entail (under the safeguards

22  proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Industry

23  Expert.

24          (d)      Nothing in this Section modifies the ordinary deadlines for expert

25  disclosures under the Federal Rules and this Court's orders.  Testifying experts not receiving

26  HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY materials shall be disclosed by the

27  deadline established by the Court.  Testifying Industry Experts receiving HIGHLY

28  CONFIDENTIAL—ATTORNEYS' EYES ONLY materials shall be disclosed consistent with

AMENDED STIPULATED PROTECTIVE ORDER - 9
CASE NO. 2:21-CV-00693-JHC

1   this Section. Consulting Industry Experts receiving HIGHLY CONFIDENTIAL—

2   ATTORNEYS' EYES ONLY materials are not required to be disclosed prior to any applicable

3   deadlines contained within the Federal Rules.

4        5.5   Filing Protected Material. Before filing Protected Material or discussing or

5   referencing such material in court filings, the filing Party shall confer with the Designating Party,

6   in accordance with Local Civil Rule 5(g). Any motion to seal filed by the Receiving Party, where

7   a Designating Party must make the showing required by Local Civil Rule 5(g)(3)(B) in response

8   to the motion, must be noted for consideration no earlier than the fourth Friday after filing. A

9   Party who seeks to maintain the designation must satisfy the requirements of Local Civil Rule

10  5(g)(3)(B), even if it is not the Party filing the motion to seal. Failure to satisfy this requirement

11  will result in the motion to seal being denied, in accordance with the strong presumption of

12  public access to the Court's files.

13       5.6   Disclosure of Protected Material at Hearings or Trial: Any person receiving

14  Protected Material shall not reveal or discuss such information at any pre-trial hearing or hearing

15  open to individuals not otherwise authorized to receive Protected Material except as follows: In

16  the event a person receiving Protected Material intends to use Protected Material in any

17  proceeding open to individuals not entitled to receive Protected Materials, such person shall, at

18  least 14 days in advance, move to seal the proceeding or give the person that produced the

19  Protected Material written notice. In the latter case, the Producing and Receiving Parties shall

20  thereafter meet and confer to determine whether the Protected Material can be so used. If they

21  cannot reach agreement, the person who produced the Protected Material may file a motion to

22  seal the proceeding. If, however, the party seeks to use the Protected Material at a hearing for

23  which it had fewer than 21 days' advance notice, the Producing and Receiving Parties will meet

24  and confer within a reasonable time before the hearing.

25  **6.    DESIGNATING PROTECTED MATERIAL**

26       6.1   Exercise of Restraint and Care in Designating Material for Protection. Each Party

27  or Non-Party that designates information or items for protection under this agreement must take

28  care to limit any such designation to specific material that qualifies under the appropriate

AMENDED STIPULATED PROTECTIVE ORDER - 10
CASE NO. 2:21-CV-00693-JHC

1   standards. The Designating Party must designate for protection only those parts of material,

2   documents, items, or oral or written communications that qualify, so that other portions of the

3   material, documents, items, or communications for which protection is not warranted are not

4   swept unjustifiably within the ambit of this agreement.

5        Mass, indiscriminate, or routinized designations are prohibited. Designations that are

6   shown to be clearly unjustified or that have been made for an improper purpose (*e.g.*, to

7   unnecessarily encumber or delay the case development process or to impose unnecessary

8   expenses and burdens on other parties) expose the Designating Party to sanctions.

9        If it comes to a Designating Party's attention that information or items that it designated

10  for protection do not qualify for protection, the Designating Party must promptly notify all other

11  parties that it is withdrawing the mistaken designation.

12       6.2    Manner and Timing of Designations. Except as provided in section 6.2 (a) below,

13  or as otherwise stipulated or ordered, Discovery Material that qualifies for protection under this

14  agreement must be clearly so designated before or when the material is disclosed or produced.

15            (a)    Information in documentary form: (*e.g.*, paper or electronic documents

16  and deposition exhibits, but excluding transcripts of depositions or other pretrial or trial

17  proceedings), the Designating Party must affix the word(s) "CONFIDENTIAL" or "HIGHLY

18  CONFIDENTIAL—ATTORNEY'S EYES ONLY" to each page that contains Protected

19  Material. If only a portion or portions of the material on a page qualifies for protection, the

20  Producing Party also must clearly identify the protected portion(s) (*e.g.*, by making appropriate

21  markings in the margins). With respect to documents containing Protected Material produced in

22  native format, the Designating Party shall include the appropriate designation in the manner

23  agreed to pursuant to the Parties' ESI protocol.

24            (b)    Testimony given in deposition or in other pretrial or trial proceedings: The

25  Parties and any participating Non-Parties must identify on the record, during the deposition,

26  hearing, or other proceeding, all protected testimony, without prejudice to their right to so

27  designate other testimony after reviewing the transcript. Any Party or Non-Party may, within 30

28  days after receiving the transcript of the deposition or other pretrial proceeding, designate

AMENDED STIPULATED PROTECTIVE ORDER - 11
CASE NO. 2:21-CV-00693-JHC

portions of the transcript, or exhibits thereto, as confidential. Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as Protected Material and the level of protection being asserted by the Designating Party. The Designating Party shall inform the court reporter of these requirements. Until the expiration of the 30-day period for designation, any deposition transcript shall be treated as if it had been designated "HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY" in its entirety, unless otherwise agreed. However, upon a showing of good cause by the Party seeking to rely on the transcript, e.g., for use in a scheduled filing with the Court, the Parties agree to shorten the designation period to 15 days or in appropriate circumstances fewer.

(c)     If a Party or Non-Party desires to protect confidential information at trial, the issue should be addressed during the pre-trial conference.

(d)     Other tangible items: The Producing Party must affix in a prominent place on the exterior of the container or containers in which the information or item is stored the words "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY."  If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

6.3     Inadvertent Failures to Designate. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this agreement for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to ensure that the material is treated in accordance with the provisions of this agreement.

**7.     CHALLENGING CONFIDENTIALITY DESIGNATIONS**

7.1     Timing of Challenges. Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to

challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed. A Party challenging a designation must provide the Bates number or otherwise clearly and unmistakably identify each item (if a Bates number is unavailable) of Protected Material being challenged.

7.2     <u>Meet and Confer</u>. The Parties must make every attempt to resolve any dispute regarding confidential designations without Court involvement. Any motion regarding confidential designations or for a protective order must include a certification, in the motion or in a declaration or affidavit, that the movant has engaged in a good faith meet and confer conference with other affected parties in an effort to resolve the dispute without court action. The certification must list the date, manner, and participants to the conference. A good faith effort to confer requires a face-to-face meeting or a telephone conference.

7.3     <u>Judicial Intervention</u>. If the parties cannot resolve a challenge without Court intervention, the Designating Party may file and serve a motion to retain confidentiality under Local Civil Rule 7(b) and in compliance with Local Civil Rule 5(g), if applicable, or may request that the Parties follow the expedited joint motion procedure set forth in Local Civil Rule 37(a)(2). The burden of persuasion in any such motion shall be on the Designating Party. Frivolous challenges, and those made for an improper purpose (*e.g.*, to harass or impose unnecessary expenses and burdens on other parties) may expose the challenging Party to sanctions. All Parties shall continue to maintain the material in question as confidential until the court rules on the challenge.

**8.     NON-PARTY PROTECTED MATERIAL**

8.1     <u>Non-Party Discovery Material Requested from a Party</u>. In the event that a Party is required, by a valid discovery request or Court order, to produce Discovery Material from a Non-Party in this Action where the Party is subject to a statutory or other legal obligation, or an agreement with the Non-Party, to maintain such Discovery Material on a confidential basis, then the Party shall promptly, but in any event no later than fourteen (14) days after receiving a valid discovery request or Court order: (i) notify in writing the Requesting Party and the Non-Party that some or all of the Discovery Material requested in subject to a statutory or other legal

AMENDED STIPULATED PROTECTIVE ORDER - 13
CASE NO. 2:21-CV-00693-JHC

obligation, or an agreement between the Producing Party and the Non-Party, to maintain the information on a confidential basis; and (ii) provide the Non-Party with a copy of this Order, and the relevant discovery request(s) or Court order. The Non-Party shall have twenty-one (21) days to either (i) consent to the disclosure of the requested Discovery Material subject to designations that the Non-Party may make in accordance with the procedures set forth in Section 6; or (ii) notify the Requesting Party, in writing, that the Non-Party objects to disclosure of the requested Discovery Material. If any Non-Party receiving such notice fails to object within twenty-one (21) days, the Producing Party may not withhold the production of such Discovery Material on the basis of any confidentiality obligation to the Non-Party. If the Non-Party objects, it must do so in writing and set forth in detail the grounds on which the objection is based. The Requesting Party and the Non-Party shall meet and confer on the objection to try to resolve the objection. Except by agreement of both the Requesting Party and the Non-Party, such meet and confer should be conducted promptly, and, in any event, within no later than ten (10) days of the written request from the Requesting Party. If the Requesting Party and the Non-Party are unable to reach a resolution after a good faith effort to meet and confer, then either the Requesting Party or the Non-Party may seek any appropriate order following the applicable procedures for such requests from the Court.

8.2     <u>Discovery Material Produced by a Non-Party</u>. To the extent a Non-Party agrees to produce or is ordered to produce Discovery Material in this Action, the Non-party shall be protected by the remedies and relief available under this Order. The Non-Party shall have twenty-one (21) days from receiving a copy of this Order to object to this Order. If the Non-Party objects, it must do so in writing and set forth in detail the grounds on which the objection is based. The Parties and the Non-Party shall meet and confer on the objection to try to resolve the objection. Except by the unanimous agreement of Plaintiffs, Defendant and the Non-Party, such meet and confer should be conducted promptly, and, in any event, within no later than ten (10) days of the written request from the Non-Party. If the Parties and the Non-Party are unable to reach a resolution after a good faith effort to meet and confer, then any of them may seek any appropriate order following the applicable procedures for such requests from the Court.

AMENDED STIPULATED PROTECTIVE ORDER - 14
CASE NO. 2:21-CV-00693-JHC

**9.    PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY," that Party must:

(a)    promptly notify the Designating Party in writing and include a copy of the subpoena or court order;

(b)    promptly notify in writing the Party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this agreement. Such notification shall include a copy of this agreement; and

(c)    cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order from the court from which the subpoena or order issued, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its Protected Material, and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

**10.    UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL**

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this agreement, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized access or disclosure, (b) investigate and report to Designating Party the scope of and circumstances of the unauthorized access or disclosure, (c) take immediate and reasonable steps to rectify the unauthorized access or disclosure, including using its best efforts to retrieve all

**A078**

unauthorized copies of the Protected Material and instituting additional security to prevent any further access or disclosure, (d) comply with all obligations under applicable laws relating to unauthorized access or disclosure, including security breach notification laws and other applicable laws, (e) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (f) request that such person or persons execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

**11.    INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL**

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order or agreement that provides for production without prior privilege review. This Order invokes the protections afforded by Fed. R. Evid. 502(b). As provided under Fed. R. Evid. 502(b) and 502(d) and subject to the limitations in Fed. R. Evid. 502(a), the disclosure of privileged material in connection with this litigation does not operate as a waiver in this action or any other action by the Producing Party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law.

**12.    NON-TERMINATION AND RETURN OF DOCUMENTS**

Unless otherwise ordered or agreed in writing, within 60 days after the termination of this action, including all appeals, each Receiving Party must destroy all Protected Material, including all copies, extracts, and summaries thereof.

The Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60-day deadline that affirms that the Receiving Party has used reasonable efforts to destroy copies, abstracts, compilations, summaries, or any other format reproducing or capturing any of the Protected Material.

AMENDED STIPULATED PROTECTIVE ORDER - 16
CASE NO. 2:21-CV-00693-JHC

1    Notwithstanding this provision, Counsel are entitled to retain one archival copy of all

2  documents filed with the Court, trial, deposition, and hearing transcripts, correspondence,

3  deposition and trial exhibits, expert reports, attorney work product, and consultant and expert

4  work product, even if such materials contain Protected Material. Any such archival copies that

5  contain or constitute Protected Material remain subject to this Protective Order.

6    Even after final disposition of this litigation, the confidentiality obligations imposed by

7  this agreement shall remain in effect until a Designating Party agrees otherwise in writing or a

8  court orders otherwise.

9    IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

10  DATED: July 26, 2024                    Respectfully submitted,

11

12                                          HAGENS BERMAN SOBOL SHAPIRO LLP

13                                          By /s/ Steve W. Berman
                                            Steve W. Berman (WSBA No. 12536)
14                                          By /s/ Barbara A. Mahoney
                                            Barbara A. Mahoney (WSBA No. 31845)
15                                          1301 Second Avenue, Suite 2000
                                            Seattle, WA 98101
16                                          Telephone: (206) 623-7292
                                            Facsimile:  (206) 623-0594
17                                          E-mail:  steve@hbsslaw.com
                                                     barbaram@hbsslaw.com

18                                          Anne F. Johnson (pro hac vice)
19                                          594 Dean Street, Suite 24
                                            Brooklyn, NY 11238
20                                          Telephone: (718) 916-3520
                                            E-mail:  annej@hbsslaw.com

21                                          KELLER POSTMAN LLC

22                                          Zina G. Bash (pro hac vice)
23                                          111 Congress Avenue, Suite 500
                                            Austin, TX 78701
24                                          Telephone: (512) 690-0990
                                            E-mail:  zina.bash@kellerpostman.com

25                                          Warren D. Postman (pro hac vice)
26                                          Albert Y. Pak (pro hac vice)
                                            1101 Connecticut Ave., N.W, Suite 1100
27                                          Washington DC 20036
                                            Telephone: (202) 918-1123
28                                          E-mail:  wdp@kellerpostman.com
                                                     albert.pak@kellerpostman.com

AMENDED STIPULATED PROTECTIVE ORDER - 17
CASE NO. 2:21-cv-00693-JHC

**A080**

Jessica Beringer (*pro hac vice*)
Shane Kelly (*pro hac vice*)
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
Telephone: (312) 741-5220
E-mail:  jessica.beringer@kellerpostman.com
            shane.kelly@kellerpostman.com

*Interim Co-Lead Counsel for Plaintiffs and the
proposed Class*

KELLER ROHRBACK L.L.P.

By:____/s/ *Derek W. Loeser*_____
Derek W. Loeser (WSBA No. 24274)
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Facsimile:  (206) 623-3384
E-mail:dloeser@kellerrohrback.com

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By:     /s/ *Alicia Cobb*_____
Alicia Cobb, WSBA # 48685
1109 First Avenue, Suite 210
Seattle, WA 98101
Telephone: (206) 905-7000
E-mail:  aliciacobb@quinnemanuel.com

Steig Olson (*pro hac vice*)
Maxwell P. Deabler-Meadows (*pro hac vice*)
Nicolas Siebert (*pro hac vice*)
David Du LeRay (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
E-mail:  steigolson@quinnemanuel.com
            davidleray@quinnemanuel.com
            nicolassiebert@quinnemanuel.com
            maxmeadows@quinnemanuel.com

Adam B. Wolfson (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
E-mail:  adamwolfson@quinnemanuel.com

*Interim Executive Committee for Plaintiffs and the
proposed Class*

AMENDED STIPULATED PROTECTIVE ORDER - 18
CASE NO. 2:21-CV-00693-JHC

**A081**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP


By:___*/s/ John A. Goldmark*_____
    John A. Goldmark, WSBA #40980
MaryAnn Almeida, WSBA #49086
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: (206) 622-3150
Email: JohnGoldmark@dwt.com
Email: MaryAnnAlmeida@dwt.com

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

Karen L. Dunn (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Amy J. Mauser (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
Kyle Smith (*pro hac vice*)
2001 K Street, NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7300
Email: kdunn@paulweiss.com
Email: wisaacson@paulweiss.com
Email: amauser@paulweiss.com
Email: mgoodman@paulweiss.com
Email: ksmith@paulweiss.com

*Attorneys for Defendant Amazon.com, Inc.*

AMENDED STIPULATED PROTECTIVE ORDER - 19
CASE NO. 2:21-CV-00693-JHC

**A082**

1

## **ORDER**

2          Based on the foregoing, IT IS SO ORDERED.

3

4     DATED: July 29, 2024.

5                                                        _____
                                                         John H. Chun
6                                                        UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED STIPULATED PROTECTIVE ORDER - 20
CASE NO. 2:21-cv-00693-JHC

**EXHIBIT A**

**ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

I, _____ [print or type full name], of

_____ [print or type full address], declare under penalty of

perjury that I have read in its entirety and understand the Protective Order that was issued by the

United States District Court for the Western District of Washington on [date] in the case of *De*

*Coster, et al. v. Amazon.com, Inc.*, Case No. 2:21-cv-00693-JHC. I agree to comply with and to be

bound by all the terms of this Protective Order and I understand and acknowledge that failure to

so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly

promise that I will not disclose in any manner any information or item that is subject to this

Protective Order to any person or entity except in strict compliance with the provisions of this

Order.

I further agree to submit to the jurisdiction of the United States District Court for the

Western District of Washington for the purpose of enforcing the terms of this Protective Order,

even if such enforcement proceedings occur after termination of this action.


Date: _____

City and State where sworn and signed:

_____

Printed name: _____

Signature: _____

AMENDED STIPULATED PROTECTIVE ORDER - 21
CASE NO. 2:21-CV-00693-JHC

**A084**

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ELIZABETH DE COSTER, *et al.*, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., a Delaware corporation,<br><br>       Defendant. | Case No. 2:21-cv-00693-RSM<br><br>**STIPULATED MOTION AND ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br><br>NOTE ON MOTION CALENDAR:<br>March 9, 2023 |

STIP. ORD. REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
CASE NO. 2:21-CV-00693-RSM

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

**A085**

1   Plaintiffs Elizabeth De Coster, Maya Gold, John Mariane, Osahon Ojeaga, Megan Smith,

2   Robert Taylor, Kenneth David West, and Emma Zaballos, and Defendant Amazon.com, Inc.

3   jointly stipulate and agree to the entry of an order regarding discovery of electronically stored

4   information ("ESI") and to abide to the following provisions regarding ESI in this matter:[1]

5   **A.       General Principles**

6       1.      An attorney's zealous representation of a client is not compromised by conducting

7   discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate

8   in facilitating and reasonably limiting discovery requests and responses raises litigation costs and

9   contributes to the risk of sanctions.

10      2.      As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P.

11  26(b)(1) must be applied in each case when formulating a discovery plan. To further the

12  application of the proportionality standard in discovery, requests for production of ESI and

13  related responses should be reasonably targeted, clear, and as specific as possible.

14  **B.       ESI Disclosures**

15      Within 45 days of entry of this Order, or at a later time if agreed to by the parties, each

16  party shall disclose:

17      1.      <u>Custodians.</u> The custodians most likely to have discoverable ESI in their

18  possession, custody, or control. The custodians shall be identified by name, title, connection to

19  the instant litigation, and the type of the information under the custodian's control.

20      2.      <u>Non-custodial Data Sources.</u> A list of non-custodial data sources (*e.g.*, shared

21  drives, servers), if any, likely to contain discoverable ESI.

22      3.      <u>Third-Party Data Sources.</u> A list of third-party data sources, if any, likely to

23  contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud

24  storage) and, for each such source, the extent to which a party is (or is not) able to preserve

25  information stored in the third-party data source.

26

27  _____

[1] Judge Jones entered the same terms in the related action, *Frame-Wilson v. Amazon*, Case No. 2:20-cv-00424-RAJ.

28  STIP. ORD. REGARDING DISCOVERY OF - 1
ELECTRONICALLY STORED INFORMATION
CASE NO. 2:21-cv-00693-RSM



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

4.      Inaccessible Data. A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

5.      Foreign data privacy laws. Nothing in this Order is intended to prevent either party from complying with the requirements of a foreign country's data privacy laws, *e.g.*, the European Union's General Data Protection Regulation (GDPR) (EU) 2016/679. The parties agree to meet and confer before including custodians or data sources subject to such laws in response to any ESI or other discovery request.

**C.      ESI Discovery Procedures**

1.      On-site inspection of electronic media. Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2.      Search methodology. The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

a.      Prior to running searches:

i.      The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. The producing party may provide unique hit counts for each search query, including hit counts by custodian, provided that it can be done with minimal burden.

ii.      The requesting party is entitled to, within 21 days of the producing party's disclosure of hit counts as described in Section 2(a)(i) above, add no more than 20 search terms or queries to those disclosed by the producing party absent a showing of good cause or



1   agreement of the parties. If any additional search term or query produces a disproportionate

2   number of hits, the parties agree to meet and confer in good faith.

3                          iii.     The following provisions apply to search terms / queries of the

4   requesting party. Focused terms and queries should be employed; broad terms or queries, such as

5   product and company names, generally should be avoided. A conjunctive combination of

6   multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as

7   a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer"

8   or "system") broadens the search, and thus each word or phrase shall count as a separate search

9   term unless they are variants of the same word. The producing party may identify each search

10  term or query returning overbroad results demonstrating the overbroad results and a counter

11  proposal correcting the overbroad search or query.

12              b.      After production: Within 45 days of the producing party notifying the

13  receiving party that it has substantially completed the production of documents responsive to a

14  Request for Production of Documents, the receiving party may request no more than 20

15  additional search terms or queries. The immediately preceding section (Section C(2)(a)(iii))

16  applies.

17              c.      Upon a reasonable request, a party producing data will produce data

18  dictionaries relevant for such data to the extent such dictionaries exist.

19      3.      Format.[2]

20              a.      ESI will be produced to the requesting party with searchable text, in a

21  format set forth in Appendix A.

22              b.      Unless otherwise agreed to by the parties, files that are not easily

23  converted to image format, such as spreadsheet, database, and drawing files, will be produced in

24  native format.

---

[2] Documents that are not produced in the first instance in this litigation, i.e., documents that were previously
produced in other matters, shall be produced pursuant to the ESI protocols governing the format of document
productions in those other matters or the format of document productions in those other matters, provided that those
re-productions are in a reasonably useful format and provided that the Producing Party informs all other Partiers,
prior to or at the time of production, that the production will be in a nonconforming format. The Parties reserve the
right to object to a nonconforming format.

STIP. ORD. REGARDING DISCOVERY OF - 3
ELECTRONICALLY STORED INFORMATION
CASE NO. 2:21-cv-00693-RSM



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

1          c.     Each document image file shall be named with a unique number (Bates

2 Number). Documents produced in native format will be assigned a Bates Number and be

3 produced with a corresponding load file. File names should not be more than twenty characters

4 long or contain spaces. When a text-searchable image file is produced, the producing party must

5 preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted

6 below) and, where applicable, the revision history.

7          d.     If a document is more than one page, the unitization of the document and

8 any attachments and/or affixed notes shall be maintained as they existed in the original

9 document.

10          e.     The full text of each electronic document shall be extracted ("Extracted

11 Text") and produced in a text file. The Extracted Text shall be provided in searchable ASCII text

12 format (or Unicode text format if the text is in a foreign language) and shall be named with a

13 unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding

14 production version of the document followed by its file extension).

15     4.     <u>De-duplication.</u> The parties may de-duplicate their ESI production across

16 custodial and non-custodial data sources after disclosure to the requesting party, and the

17 duplicate custodian information removed during the de-duplication process tracked in a

18 duplicate/other custodian field in the database load file. If processing and production is done on a

19 rolling basis, an updated Duplicate Custodians field with additional values shall be provided in

20 an overlay. The producing party shall identify whether the overlay replaces previously produced

21 fields for a file or supplements them.

22     5.     <u>Email Threading.</u> The parties may use analytics technology to identify email

23 threads and need only produce the unique most inclusive copy and related family members and

24 may exclude lesser inclusive copies. Upon reasonable request, the producing party will produce a

25 less inclusive copy or missing metadata, if, for example, a threaded email cuts off

26 to/from/cc/subject line/date information.

27     6.     <u>Metadata fields.</u> The parties agree to the metadata fields set forth in Appendix A.

28

STIP. ORD. REGARDING DISCOVERY OF - 4
ELECTRONICALLY STORED INFORMATION
Case No. 2:21-cv-00693-RSM



1        7.      <u>Hard-Copy Documents.</u> The parties agree to the production of hard copies in the

2  manner set forth in Appendix A

3  **D.      Preservation of ESI**

4        The parties acknowledge that they have a common law obligation, as expressed in Fed.

5  R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information

6  in the party's possession, custody, or control. With respect to preservation of ESI, the parties

7  agree as follows:

8        1.      Absent a showing of good cause by the requesting party, the parties shall not be

9  required to modify the procedures used by them in the ordinary course of business to back-up

10  and archive data; provided, however, that the parties shall take reasonable and proportional steps

11  to preserve all discoverable ESI in their possession, custody, or control.

12       2.      The parties will supplement their disclosures in accordance with Fed. R. Civ. P.

13  26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure

14  where that data is created after a disclosure or response is made (unless excluded under Sections

15  (D)(3) or (E)(1)-(2)).

16       3.      The Parties agree that only unique, non-duplicative sources of relevant

17  Documents need to be preserved.

18       4.      Absent a showing of good cause by the requesting party, the categories of ESI

19  that need not be preserved include but are not limited to:

20              a.      Deleted, slack, fragmented, or other data only accessible by forensics.

21              b.      Random access memory (RAM), temporary files, or other ephemeral data
22                      that are difficult to preserve without disabling the operating system.

23              c.      On-line access data such as temporary internet files, history, cache,
                        cookies, and the like.

24              d.      Data in metadata fields that are frequently updated automatically, such as
25                      last-opened dates (see also Section (E)(5)).

26              e.      Interim automatically saved drafts, as opposed to drafts saved by a user.

27              f.      Dynamic fields of databases or log files that are not retained in the usual
28                      course of business.

STIP. ORD. REGARDING DISCOVERY OF - 5
ELECTRONICALLY STORED INFORMATION
CASE NO. 2:21-cv-00693-RSM


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

**A090**

g.    Back-up data that are duplicative of data that are more accessible elsewhere.

h.    Server, system or network logs.

i.    Data remaining from systems no longer in use that is unintelligible on the systems in use.

j.    Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**E.    Privilege**

1.    A producing party shall create a privilege log of all documents or categories thereof fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. Privilege logs will be produced to all other parties no later than 45 days after delivering a production unless an earlier deadline is agreed to by the parties.

2.    Redactions need not be logged so long as the basis for the redaction is clear on the face of the redacted document.

3.    With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

4.    Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

5.    Pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding,

STIP. ORD. REGARDING DISCOVERY OF - 6
ELECTRONICALLY STORED INFORMATION
CASE NO. 2:21-cv-00693-RSM



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1   constitute a waiver by the producing party of any privilege applicable to those documents,

2   including the attorney-client privilege, attorney work-product protection, or any other privilege

3   or protection recognized by law. Information produced in discovery that is protected as

4   privileged or work product shall be immediately returned to the producing party, and its

5   production shall not constitute a waiver of such protection.

6   **F.        Non-Party Discovery**

7           1.        A Party that issues a non-party subpoena (the "Issuing Party") shall include a

8   copy of this ESI Protocol with the subpoena.

9           2.        The Issuing Party shall be responsible for producing any Documents obtained

10  under a subpoena to all other Parties.

11          3.        If the Non-Party production is not Bates-stamped, the Issuing Party shall endorse

12  the Non-Party production with unique prefixes and Bates numbers prior to producing them to all

13  other Parties.

14

15          IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

16  DATED: March 9, 2023                    Respectfully submitted,

17                                          HAGENS BERMAN SOBOL SHAPIRO LLP

18                                          By ____/s/ Steve W. Berman_____
                                            Steve W. Berman (WSBA No. 12536)
19                                          By ___/s/ Barbara A. Mahoney_____
                                            Barbara A. Mahoney (WSBA No. 31845)
20                                          1301 Second Avenue, Suite 2000
                                            Seattle, WA 98101
21                                          Telephone: (206) 623-7292
                                            Facsimile: (206) 623-0594
22                                          steve@hbsslaw.com
                                            barbaram@hbsslaw.com
23
24                                          KELLER POSTMAN LLC
25
                                            Zina G. Bash (pro hac vice)
26                                          111 Congress Avenue, Suite 500
                                            Austin, TX, 78701
27                                          Telephone: (512) 690-0990
                                            E-mail: zina.bash@kellerpostman.com
28
    STIP. ORD. REGARDING DISCOVERY OF - 7
    ELECTRONICALLY STORED INFORMATION
    CASE NO. 2:21-cv-00693-RSM



**A092**

Warren D. Postman (pro hac vice)
Albert Y. Pak (pro hac vice)
1100 Vermont Avenue, N.W., 12th Floor
Washington DC, 20005
Telephone: (202) 918-1123
E-mail: wdp@kellerpostman.com
E-mail: albert.pak@kellerpostman.com
Jessica B. Beringer (pro hac vice)
150 N. Riverside, Suite 4100
Chicago, IL, 60606
Telephone: (312)-741-5220
Email: Jessica.beringer@kellerpostman.com

*Interim Lead Counsel for Plaintiffs*

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By:___*/s/ Alicia Cobb*_____
Alicia Cobb, WSBA # 48685
1109 First Avenue, Suite 210
Seattle, WA 98101
Telephone: (206) 905-7000
Email: aliciacobb@quinnemanuel.com

Steig D. Olson (pro hac vice)
David D. LeRay (pro hac vice)
Nic V. Siebert (pro hac vice)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Email: steigolson@quinnemanuel.com

Adam B. Wolfson (pro hac vice)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Email: adamwolfson@quinnemanuel.com



1    KELLER ROHRBACK L.L.P.

2    By:___/s/ Derek W. Loeser_____
     Derek W. Loeser (WSBA No. 24274)
3    1201 Third Avenue, Suite 3200
     Seattle, WA 98101-3052
4    Telephone: (206) 623-1900
     Facsimile: (206) 623-3384
5    Dloeser@kellerrohrback.com

6    *Plaintiffs' Executive Committee Members*

7    DAVIS WRIGHT TREMAINE LLP

8    By:___/s/ John A. Goldmark_____
9    John A. Goldmark, WSBA #40980
     MaryAnn Almeida, WSBA #49086
10   920 Fifth Avenue, Suite 3300
     Seattle, WA 98104-1610
11   Ph: (206) 622-3150; Fax: (206) 757-7700
12   E-mail:  JohnGoldmark@dwt.com
     E-mail:  MaryAnnAlmeida@dwt.com

13

14   PAUL, WEISS, RIFKIND, WHARTON &
     GARRISON LLP

15   Karen L. Dunn (pro hac vice)
16   William A. Isaacson (pro hac vice)
     William B. Michael (pro hac vice)
17   Amy J. Mauser (pro hac vice)
     Martha L. Goodman (pro hac vice)
18   Kyle Smith (pro hac vice)
19   2001 K Street, NW
     Washington, D.C.  20006-1047
20   Telephone:  (202) 223-7300
     Facsimile:   (202) 223-7420
21   E-mail:  kdunn@paulweiss.com
     E-mail:  wisaacson@paulweiss.com
22   E-mail:  wmichael@paulweiss.com
     E-mail:  amauser@paulweiss.com
23   E-mail:  mgoodman@paulweiss.com
24   E-mail:  ksmith@paulweiss.com

25   *Attorneys for Defendant Amazon.com, Inc.*

26

27

28
     STIP. ORD. REGARDING DISCOVERY OF - 9
     ELECTRONICALLY STORED INFORMATION
     CASE NO. 2:21-CV-00693-RSM



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1

## <u>ORDER</u>

2

Based on the foregoing, IT IS SO ORDERED.

3

4

DATED this 10th day of March, 2023.

5

6

7

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2023, a true and correct copy of the foregoing was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

*/s/ Steve W. Berman*
Steve W. Berman


1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

**APPENDIX A**

**PRODUCTION FORMAT PROTOCOL**

**I.     DEFINITIONS**

**G.     The following definitions and terms shall apply in this APPENDIX A:**

1.     "Document" carries its broad meaning consistent with Fed. R. Civ. P. 34 and includes ESI and hard copy/paper material. A draft or non-identical copy is a separate Document within the meaning of this term.

2.     "ESI" means electronically stored information, and carries a broad meaning consistent with Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001.

3.     "Extracted Text" means the text extracted from a Native File, and includes all header, footer, and document body information.

4.     "Load File" means a load utilization file, which is an electronic file containing information identifying a set of paper-scanned images or processed ESI, and containing: (i) an indication of which individual pages or files constitute each Document, including attachments, and links to the Static Images associated with each Document; (ii) links to any Native Files, where native files are being produced, including attachments, associated with each Document; and (iii) data relevant to each individual Document, including extracted and user-created Metadata and coded data.

5.     "Metadata" means: (i) information associated with or embedded in a Native File that does not constitute the primary content region of the file; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

6.     "Native File" or "Native Format" refers to ESI that is produced in the format in which it was maintained (e.g., an Excel document produced in .xls format would be produced in native format).

7.     "OCR" means the optical character recognition file that is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents text searchable using appropriate software.

8.     "Producing Party" means the party producing Documents in response to any request for production of documents pursuant to Fed. R. Civ. P. 34(a) or for any other reason.

9.     "Receiving Party" means the party receiving a production of Documents in response to any request for production of document(s) pursuant to Fed. R. Civ. P. 34(a) or for any other reason.

-1-

10.    "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard document review systems. Tagged Image File Format (TIFF) and Portable Document Format (PDF) images are examples of Static Images.

## II.    OVERVIEW

**A.    The production format has four main components.**

1.    A directory containing images of every page of every Document in the production, Bates-numbered sequentially.

2.    A directory containing Native Files for a subset of the Documents, each file named with the Bates number of the first page of the Document it represents and the confidentiality designation being used, with no additional text beyond this, and with the same extension as the original Native File type of the Document.

3.    A directory containing OCR or Extracted Text files, one file per Document, each file named with the Bates number of the first page of the Document it represents with no additional text beyond this, followed by ".txt" suffix.

4.    A Load File containing Bates ranges and Metadata for each Document.

## III.    FORMAT FOR PRODUCTION

**A.    Commencement of Production.**

The production of Documents shall proceed at such time, place, and in such sequence as allowed under the Federal Rules of Civil Procedure, as agreed to by the parties, or permitted by the Court.

**B.    General Format of Production.**

Documents that are produced in these proceedings, whether originally stored in paper or electronic form, shall be produced in electronic image form, in the manner described in Section III.C., below, where reasonably feasible. Notwithstanding the foregoing provisions of this paragraph, the parties reserve the right to request that an alternative format or method of production be used for certain Documents, if such Documents are not susceptible to production in the format or methods of production addressed herein. In that event, the parties will meet and confer to discuss alternative production requirements, concerns, formats, or methods.

**C.**   **Production Format.**

All documents shall be produced in the following formats when reasonably feasible:

1.   <u>Electronic Production of Paper Documents</u>. Documents that are maintained in paper format shall be scanned as document level PDF files or black and white images at 300 x 300 dots per inch (DPI) or greater resolution, in single-page Group IV TIFF format, and shall reflect the full and complete information contained in the original Document. Hard copy Documents shall be produced with associated OCR files at the same time that the PDF or TIFF files are produced and with a Load File that includes at least the following Metadata fields: Begin Bates; End Bates; Begin Family; End Family; Pages; TextPath; Placeholder; File Extension; Custodian; All Custodians; Confidentiality; and Redacted, as those fields are described in Section IV, below. When subjecting physical documents to an OCR process, the settings of the OCR software shall maximize text quality over process speed. Any settings such as "auto-skewing" or "auto-rotation," should be turned on when documents are run through the process. Paper Documents that contain fixed notes shall be scanned with the notes affixed, if it can be done so in a manner so as not to obstruct other content on the document. If the content of the Document is obscured by the affixed notes, the Document and notes shall be scanned separately.

2.   <u>Production of Electronically Stored Information (ESI)</u>. Unless otherwise specified, Document images shall be generated from electronic Documents in a set of document level PDF or single page Group IV TIFF images that reflect the full and complete information contained on the original Document. In the event a Document is redacted, the Producing Party shall withhold the redacted text for that Document. The failure to withhold such text for a redacted Document by a Producing Party shall not be deemed a waiver of the privilege associated with that Document.

3.   <u>File Structure</u>. The Producing Party shall produce the following sets of files with each production.

   a.   <u>Load File</u>.

      (1)   Each production has one load file, in "Concordance" style .DAT format.

      (2)   Values must be enclosed by þ (ASCII Decimal 254).

      (3)   Values must be separated by the "Device Control 4" character, ASCII decimal 20.

      (4)   First line must contain the column/field names (set forth in Section IV, below).

-3-

(5)     The fields Begin Bates and End Bates must be present, and the first fields listed in the load file.

(6)     The field NativePath must be present if native files are included in the document production.

(7)     Each subsequent row must contain the Metadata for one Document.

(8)     Every row must have the same number of columns/fields (empty values are acceptable).

(9)     Text must be encoded in UTF-8.

(10)    File should be placed in the root directory or a directory labeled "DATA."

b.      OCR and Extracted Text Files (.TXT Files).

(1)     A single text file for each Document containing all the Document's pages, in text.

(2)     Pages separated by form feed character (decimal 12, hex 0xC).

(3)     Filenames should be of the form: <Bates num>.txt, where <Bates num> is the Bates number of the first page of the Document.

(4)     Text must be encoded in UTF-8.

(5)     Files should be placed in a directory labeled "TEXT."

c.      Image Files.

(1)     Document level PDF or Single-page Group IV TIFF images for each Document, containing all images for that document.

(2)     Filenames should be of the form: <Bates num>.<ext>, where <Bates num> is the BATES number of the first page of the document (i.e., the "Begin Bates" number), and <ext> is the appropriate extension for the image format (.pdf or .tiff).

(3)     Files should be placed in the "IMAGES" subdirectory.

4.      Illegible Documents. Documents that cannot be read because of imaging or formatting problems, or because they are password-protected, shall be promptly identified by the Receiving Party. The Producing Party and the Receiving Party shall meet and confer to attempt to resolve problem(s).

-4-

**A100**

5.    Native Format Documents. The parties recognize that it may be appropriate for certain Documents to be produced in Native Format, such as spreadsheets, engineering drawings, presentations or slides, and audio and video files. In all cases, unless there is no textual content, an OCR or Extracted Text file shall be produced along with the Native File. The Receiving Party may request that the Producing Party produce additional file types of electronic Documents in Native Format where the converted image format distorts or causes the information to be improperly displayed, or for which there is no visual representation, such as audio files. Prior to producing any confidential information as defined in any applicable Protective Order entered herein in Native Format, the Producing Party and the Receiving Party shall meet and confer to establish additional procedures, to the extent necessary, for the protection of information contained in Native Files.

a.    Excel and Access Databases. To the extent that responsive documents exist in Excel or another database program, documents shall be produced in Native Format unless the document needs to be redacted. To the extent that the document format constitutes a database created or maintained in Access or another software program, Documents shall be produced in their Native Format, where reasonably feasible. If a database is based upon proprietary software, the parties shall meet and confer regarding the format of production, which shall be a reasonably feasible format, to enable review by the Receiving Party. An image placeholder shall be provided for each document produced in Native Format. Each placeholder shall contain the phrase "DOCUMENT PRODUCED IN NATIVE FORMAT," or something similar, and shall contain the Bates number corresponding to the native file.

b.    PowerPoint Presentations (PPT). PPT presentations should be produced in Native Format (e.g., as .PPT files). PPT presentations shall also be produced in full document PDF or single-page TIFF format, along with speaker notes. The linked native file name should also match the Begin Bates field with the appropriate file extension. Any hidden slides or speakers notes should be included in PPT presentations.

c.    Audio and Video Data. Parties should make best efforts to ensure care is taken for collection and production of any responsive audio and/or video data, and to preserve any Metadata that may be associated with those items. These data types may be stored in audio or video recordings, voicemail text messaging, and related/similar technologies.

d.    Word Documents (or similar). Microsoft Word documents (.DOC, .DOCX, or substantially similar non-Microsoft file formats) should be produced in full document PDF or single-page TIFF format for each Document, containing all images for that document, and should be imaged in a manner that captures tracked changes and comments. To the extent a Receiving Party believes the converted image format distorts, omits, or causes information to be improperly displayed, the Receiving Party may

request the Document in Native Format and the Producing Party shall meet and confer to attempt to resolve the problem(s).

e.      To the extent the Producing Party produces a Document in Native Format, the following specifications apply:

(1)     Filenames must be unique in the production, unless the content is identical. Files should be named for the starting Bates number of the associated Document.

(2)     The filename must retain the file extension corresponding to the original Native Format (*e.g.*, an Excel 2003 spreadsheet's extension must be .xls).

6.      <u>Color</u>. For any non-native documents, production will be in color where color is material to the understanding of the document or parts thereof (e.g., pie and bar charts) or documents that need to be produced in color can be produced in native format. Otherwise, non-native document images may be produced in black and white.

7.      <u>Production Media</u>. A Producing Party may produce Documents electronically (via secure FTP, for example), or on an external hard drive, DVD, CD-ROM, or such other readily accessible computer or electronic media as the Producing Party and the Receiving Party may hereafter agree upon (the "Production Media"). Production Media should be labeled on its face with the production date, the production volume, the Bates range contained on the Production Media, and any confidentiality notation that may be required by the Protective Order entered in this case. Where not practicable to label Production Media on its face, a letter or email with the required information should be provided. If the Producing Party encrypts or "locks" the production, the Producing Party shall include, under separate cover, instructions regarding how to decrypt the files, and any necessary passwords.

8.      <u>Document Unitization</u>. When scanning paper documents into Document images as described in Section III.C.1., they shall be unitized in a manner so as to maintain the Document(s) and any attachments as they existed in their original state, as reasonably feasible. Any applicable folder structure information should also be provided. Responsive attachments to e-mails stored shall be produced contemporaneously and sequentially immediately after the parent e-mail.

9.      <u>Duplicates</u>. A Producing Party who has more than one identical copy of an electronic Document (i.e., the Documents are actual duplicates) need only produce a single copy of that Document. For avoidance of doubt, a Producing Party may de-duplicate actual duplicate documents across custodians, but all custodians should be identified in the All Custodians field.

10.     <u>Bates Numbering</u>. Each Producing Party shall Bates number its production(s) as follows:

-6-

**A102**

    a.    Each Bates number should consist of a unique identifier consisting of a prefix, followed by nine numbers (*e.g.*, ABC000000001). The prefix should be substantially similar for all pages produced by the same Producing Party throughout this litigation. Each page of a Document must have its own Bates number, and Bates numbers should be sequential.

    b.    Document Images. Each page of a produced Document shall have a legible, unique page identifier (Bates number) electronically "burned" onto the image at a location that does not unreasonably obliterate, conceal, or interfere with any information from the source Document. No other legend or stamp should be placed on the document other than a confidentiality designation (where applicable), a privilege designation, or a redaction notification (where applicable). For confidential documents the confidentiality designation shall be "burned" onto each Document's image at a location that does not unreasonably obliterate or obscure any information from the source Document.

    c.    Native Format Documents. In order to preserve the integrity of any Native Format Documents that will be produced, no Bates number, confidentiality legend or redaction information should be added to the content of the Native Format Document. Each native should have an individual Bates number assigned.

If documents cannot be rendered to a readable PDF or TIFF format, and the document needs to be redacted for personally identifiable information or privileged content, the native documents may be redacted by creating a new copy of the native document and inserting "Redacted" or similar language where the protected content is located. In that circumstance, a pristine copy of the original native file will be kept and the party will identify documents redacted in native format in the production cover letter and in the Redacted metadata field.

## IV.    METADATA FIELDS

**A.    For scanned hard copy documents, the Producing Party will provide the Metadata fields below.**

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Begin Bates | The production Bates number associated with the first page of a Document. |
| End Bates | The production Bates number associated with the last page of a Document. |
| BeginFamily | Begin Bates number of first page of the parent Document of family of attachments. |
| EndFamily | End Bates number of the last page of last attachment to a family of Documents. |

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Pages | Total number of pages in the Document. |
| TextPath | Link to text file for the document. |
| Placeholder | Identifies a Document has a placeholder image due to technical difficulties with production. The Parties will negotiate alternative production, or otherwise make available for physical inspection, should one be requested by any of the Parties. If a placeholder image is included for privilege reasons, the Producing Party must appropriately identify which ports of the hard copy document have been withheld for privilege. |
| File Extension | The extension of the file. |
| Custodian | Identification of the custodian(s) from whom the file was sourced. |
| All Custodians | Identification of all custodians of the document. |
| Confidentiality | Confidentiality designation. |
| Redacted | (Y/N) field that identifies whether the document is redacted. |
| Production Volume | Production volume number (*e.g.*, VOL001, VOL002, etc.). |
| Producing Party | Name of party producing the Document. |

**B.**    **For ESI and documents that were originally stored in electronic format, all fields below should be provided, to the extent reasonably feasible. Unless otherwise agreed by the parties, the field-naming conventions shall be as stated below, and shall be consistently applied across all productions:**

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Begin Bates | The production Bates number associated with the first page of a Document. |
| End Bates | The production Bates number associated with the last page of a Document. |
| BeginFamily | Begin Bates number of the first page of parent Document of family of attachments. |
| EndFamily | End Bates number of the last page of last attachment to a family of Documents. |
| AttachCount | Number of document attachments. |
| AttachNames | Native file names of each individual attachment, separated by semicolons. |
| Custodian | Identification of the custodian(s) from whom the file was sourced. |
| All Custodians | Identification of all custodians who the producing party agreed to produce and where a duplicate of the Document was de-duplicated when processing the documents. |
| File Path | The file path from which the document was collected |
| All Paths | Identification of all file paths for duplicate copies. |
| Author | Author field extracted from the Metadata of a Document or other creator identified for the Document. |
| From | From field extracted from the Metadata of an email message. |

-8-

**A104**

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| To | To field extracted from the Metadata of an email message. |
| Cc | Cc field extracted from the Metadata of an email message. |
| Bcc | Bcc field extracted from the Metadata of an email message. |
| Pages | Total number of pages in the Document. |
| Date Received | Datetime received (MM/DD/YYYY HH/MM/SS). |
| Date Sent | Datetime sent (MM/DD/YYYY HH/MM/SS). |
| Date Created | Datetime created (MM/DD/YYYY HH/MM/SS). |
| Date Modified | Datetime that a Document was last modified (MM/DD/YYYY HH/MM/SS). |
| Last Modified By | Identification of person(s) who last modified a Document. |
| Message Id | Unique Message Id. |
| In Reply To | Message ID of email that instant email is in reply to. |
| Title | Title field value extracted from the Metadata of the Native File. |
| Subject | Subject line extracted from an email, e-document or e-attachment. |
| Filename | The full name of the Native File. |
| File Extension | The extension of the file. |
| File Size | The size of the file in bytes. |
| MD5 Hash | The MD5 hash value of a Document. |
| Document Type | Document type. |
| Application | Name of the application used to open the file. |
| NativePath | The relative path to the native file for this Document. |
| TextPath | The relative path to the text file for this Document. |
| Redacted | Whether a Document has redactions (Y/N). |
| Placeholder | Whether a Document has a placeholder image (Y/N). |
| Confidentiality | Level of Confidentiality assigned. |
| Track Changes | Document has track changes (Y/N). |
| Hidden Content | Identifies documents with hidden content (*i.e.*, hidden rows, columns, sheets, or slides). |
| Speaker Notes | Document has speaker notes (Y/N). |
| Has Comments | Indicates there are comments in the document. |
| Production Volume | Production volume number (*e.g.*, V001, V002, etc.). |
| Producing Party | Name of party producing the Document. |

-9-

**A105**