No. 25-3099

# United States Court of Appeals
# for the Ninth Circuit

IN RE: AMAZON.COM, INC.

AMAZON.COM, INC., a Delaware corporation,

*Defendant-Petitioner,*

– v. –

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON,

*Respondent.*

ELIZABETH DE COSTER, *et al.*,
(No. 2:21-cv-00693-JHC)

*Real Parties in Interest,*

DEBORAH FRAME-WILSON, *et al.*,
(No. 2:20-cv-00424-JHC)

*Real Parties in Interest,*

CHRISTOPHER BROWN, *et al.*,
(No. 2:22-cv-00965-JHC)

*Real Parties in Interest.*

ON PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT OF WASHINGTON, NOS. 2:21-CV-00693-JHC,
2:20-CV-424-JHC, AND 2:22-CV-00965, HONORABLE JOHN H. CHUN

## REAL PARTIES IN INTEREST-PLAINTIFFS' ANSWER
## TO PETITION FOR WRIT OF MANDAMUS

WARREN D. POSTMAN
KELLER POSTMAN LLC
1101 Connecticut Ave NW, Suite 1100
Washington, D.C. 20036
Tel.: (202) 918-1870
wdp@kellerpostman.com

STEVE W. BERMAN
*Counsel of Record*
HAGENS BERMAN SOBOL
  SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Tel.: (206) 623-7292
steve@hbsslaw.com

*Attorneys for Real Parties in Interest*
*(For Continuation of Appearances See Inside Cover)*

DAVID M. COOPER
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
295 Fifth Avenue, 9th Floor
New York, New York 10016
Tel.: (212) 849-7000
davidcooper@quinnemanuel.com

ADAM B. WOLFSON
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
adamwolfson@quinnemanuel.com

*Attorneys for Real Parties in Interest*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................... ii

INTRODUCTION ...............................................................................1

BACKGROUND ................................................................................3

    A.    The Applicable Protective Order And ESI Protocol Were Heavily Negotiated And Invoke Rule 502(b). ............................4

    B.    Amazon Has Systematically And Egregiously Abused The Attorney-Client Privilege. .............................................................7

    C.    Amazon Conceded Below That The Protective Order Governs Claw Backs Of Inadvertently Produced Documents.......12

    D.    The District Court Enforces The Protective Order Again.............13

    E.    Amazon Continues To Claw Back Documents Based On Yet Another Theory. .............................................................................14

STANDARD OF REVIEW ...............................................................15

ARGUMENT ....................................................................................16

I.   The District Court Did Not Clearly Err In Applying Rule 502 In Accordance With The Plain Language Of The Stipulated Protective Orders. ...........................................................................16

    A.    The District Court Did Not Clearly Err In Interpreting Its Own Discovery Orders As Applying Rule 502(b) To Claw Backs. .......17

    B.    The District Court Did Not Commit Clear Error In Finding Documents Were Not Inadvertently Produced Under Rule 502(b). ..........................................................................................24

II.  The Court Need Not Reach The Remaining Factors, But They Do Not Support Mandamus Relief. ..................................................31

CONCLUSION ................................................................................33

CERTIFICATE OF COMPLIANCE..................................................35

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re AIG Specialty Ins. Co.*,
　No. 21-71120, 2021 WL 5906144 (9th Cir. Dec. 14, 2021) ............................31

*Amobi v. D.C. Dep't of Corrs.*,
　262 F.R.D. 45, 53 (D.D.C. 2009) ......................................................................28

*In re Anonymous Online Speakers*,
　661 F.3d 1168 (9th Cir. 2011) ..........................................................1, 15, 16, 17

*In re Arizona*,
　528 F.3d 652 (9th Cir. 2008) ............................................................................19

*B&G Foods N. Am., Inc. v. Embry*,
　No. 2:20-cv-0526 KJM DB, 2024 WL 922900 (E.D. Cal. Mar. 24,
　2024) ..................................................................................................................28

*Barnhart v. Thomas*,
　540 U.S. 20 (2003) .............................................................................................22

*Bauman v. U.S. Dist. Court*,
　557 F.2d 650 (9th Cir. 1977) ......................................................................16, 19

*Beilstein-Institut Zur Forderung der Chemischen Wissenschaften v.
　MDL Info. Sys., Inc.*,
　No. C 04-05363 SI, 2006 WL 2578264, at *1 (N.D. Cal. Sept. 6,
　2006) ..................................................................................................................21

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*,
　408 F.3d 1142 (9th Cir. 2005) ..........................................................................15

*Campbell v. United States*,
　365 U.S. 85 (1961) .............................................................................................24

*Chaly-Garcia v. United States*,
　508 F.3d 1201 (9th Cir. 2007) ..........................................................................20

ii

*Cheney v. U.S. Dist. Court*,
542 U.S. 367 (2004) ........................................................................15

*Coburn Grp., LLC v. Whitecap Advisors LLC*,
640 F. Supp. 2d 1032 (N.D. Ill. 2009) ...........................................28

*Datel Holdings Ltd. v. Microsoft Corp.*,
No. C-09-05535 EDL, 2011 WL 866993 (N.D. Cal. Mar. 11, 2011) ...............28

*FTC v. Amazon.com, Inc.*,
No. 2:23-cv-00932-JHC, 2024 WL 3620467 (W.D. Wash. Aug. 1, 2024) ........................................................................13

*FTC v. Amazon.com, Inc.*,
No. 2:23-cv-00932-JHC (W.D. Wash. May 5, 2025), Dkt. 286 .................11, 12

*FTC v. Amazon.com, Inc.*,
No. 2:23-cv-01495-JHC (W.D. Wash. Feb. 13, 2024), Dkt. 160 ........................7

*Garner v. Amazon.com, Inc.*,
No. C21-0750RSL, 2024 WL 4266665 (W.D. Wash. Sept. 23, 2024) ........................................................................11

*Great-W. Life & Annuity Ins. Co. v. Am. Econ. Ins. Co.*,
No. 2:11-cv-02082-APG-CWH, 2013 WL 5332410 (D. Nev. Sept. 23, 2013) ........................................................................20, 21

*In re Han Yong Kim*,
571 F. App'x 556 (9th Cir. 2014) ...................................................19

*Hanson v. Wells Fargo Home Mortg., Inc.*,
No. C13-0939JLR, 2013 WL 5674997 (W.D. Wash. Oct. 17, 2013) ...............27

*Lockhart v. United States*,
577 U.S. 347 (2016) ..................................................................22, 23

*Mohawk Indus., Inc. v. Carpenter*,
558 U.S. 100 (2009) ........................................................................31

*Pac. Coast Steel v. Leany*,
No. 2:09-cv-02190-KJD-PAL, 2011 WL 4704217 (D. Nev. Oct. 4, 2011) ........................................................................27

iii

*Perry v. Schwarzenegger*,
  591 F.3d 1147 (9th Cir. 2010) ...................................................16, 31

*Sleep Number Corp. v. Young*,
  No. 20-cv-1507 (NEB/ECW), 2021 WL 5644322 (D. Minn. Dec.
  1, 2021) ..............................................................................28, 29

*State v. Amazon.com, Inc.*,
  No. CGC-22-601826 (Cal. Sup. Ct. Apr. 28, 2023), Dkt. 132 ............7

*Taylor & Lieberman v. Fed. Ins. Co.*,
  681 F. App'x 627 (9th Cir. 2017) ..........................................22, 23

*Uber Techs., Inc. v. U.S. Jud. Panel on Multidistrict Litig.*,
  131 F.4th 661 (9th Cir. 2025) ............................................15

*United States v. Nguyen*,
  465 F.3d 1128 (9th Cir. 2006) ............................................27

*In re Walsh*,
  15 F.4th 1005 (9th Cir. 2021) ..........................................15, 16

*Weil v. Investment/Indicators, Res. & Mgmt., Inc.*,
  647 F.2d 18 (9th Cir. 1981) ..............................................24

*Wolpert v. Branch Banking Trust & Co.*,
  No. 3:19-CV-138-TRM-DCP, 2023 WL 2731083 (E.D. Tenn.
  Mar. 30, 2023)..............................................................29

## Other Authorities

Advisory Comm. Notes Fed. R. Evid. 502(b) .......................................27

Fed. R. Civ. P. 26(b)(5)(B) ...............................................................17

Fed. R. Evid.
  502....................................................................................22
  502(b)........................................ 3, 5, 12, 17, 18, 19, 22, 24, 27
  502(d)..................................................................................17

S. Rep. No. 110-264 (2008) ..............................................................28

iv

## INTRODUCTION

This Court has "repeatedly emphasized that the writ of mandamus is an extraordinary remedy limited to extraordinary causes," and "[t]his limit on our mandamus power is particularly salient in the discovery context." *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) (cleaned up). This petition concerns a discovery ruling based on the District Court's plain reading of the Protective Orders negotiated and entered in Plaintiffs' cases, and straight-forward application of the law under those Orders. It falls far short of the extraordinarily high bar for mandamus.

In an attempt to invent legal questions worthy of mandamus review, Amazon mischaracterizes the District Court's order. But none of the legal issues Amazon raises are actually at issue here.

*First*, Amazon claims that the District Court wrongly required "concrete directives" to depart from Rule 502(b), but the District Court never adopted that standard. Rather, the District Court held that Rule 502(b) applied because that is the only "reasonable reading" of the Protective Orders, which were negotiated and agreed upon between the parties. Pet'r's A7 n.8, A20. Amazon cannot and does not dispute that the District Court is entitled to give a "reasonable reading" to its own Protective Orders. Nor does Amazon provide any explanation for why the Protective Orders explicitly invoke Rule 502(b), other than the explanation the District Court

1

provided: it was adopting Rule 502(b).  The District Court's ruling that an explicit invocation of Rule 502(b) is controlling rather than (as Amazon suggests) meaningless is not clear error.  In addition, interpreting the protective order language here is unlikely to implicate other cases because, contrary to Amazon and its amici's suggestion, protective orders rarely invoke Rule 502(b).  Indeed, the language at issue was a departure from the model order in that District, as the District Court highlighted in its answer to the Petition.

*Second*, Amazon claims that the District Court wrongly decided inadvertence by looking at whether there was a "mistake" rather than looking at the totality of the circumstances.  However, Amazon itself argued below that "mistake" was the correct test and did not raise any totality-of-the-circumstances argument.  Thus, Amazon's primary legal argument on this issue was waived.  Moreover, the District Court found that the production was intentional based on Amazon's failure to put forward evidence or actual explanation as to why it produced the documents.  Under any standard, intentional production is not inadvertent, and a party cannot meet its burden to show inadvertence without evidence or explanation for the supposed mistake.

In sum, the District Court's ruling followed from Amazon's own choices.  Amazon chose to engage in egregious abuse of the attorney-client privilege, where employees were instructed to cloak routine business documents in privilege by

2

marking them "privileged and confidential," including attorneys in the "to line" of emails, and starting emails with fake requests for legal advice before addressing the true intended recipients.  Next, Amazon negotiated a protective order that departed from the model order in the Western District of Washington by stating: "This Order invokes the protections afforded by Fed. R. Evid. 502(b)," and deleting the language from the model order setting forth a stand-alone 502(d) term.  Pet'r's A79.  Then, Amazon grossly over-designated documents as privileged, and facing possible sanctions for privilege abuse, it chose to try to assuage the concerns by conducting a nearly year-long privilege re-review, and producing approximately 100,000 documents based on that re-review—upwards of 80% of the documents previously listed on its privilege logs, including the documents at issue in the underlying decision.  Amazon may regret its choices after seeing the documents it produced cited in Plaintiffs' class-certification motion, but regret is not a legal basis for mandamus.  And because Amazon is disrupting ongoing depositions by sending improper claw back notices almost daily and refusing to make showings of inadvertent production under the Protective Orders, Plaintiffs respectfully request that this Court deny the Petition as soon as possible.

## BACKGROUND

Real Parties in Interest are plaintiffs in three class actions alleging various antitrust violations pending before the District Court.  These actions are engaged in

3

coordinated discovery with other antitrust actions against Amazon brought by the FTC, the State of California, and various other states. Amazon asserts "the pertinent facts are undisputed," Pet. 6, but its Petition relies on misrepresentations of those facts. The relevant facts are set forth below.

**A.   The Applicable Protective Order And ESI Protocol Were Heavily Negotiated And Invoke Rule 502(b).**

At the heart of Amazon's petition is the claim that "[n]o one enters a Rule 502 protective order because they *want* to subject claw back requests and potential privilege waivers to Rule 502(b)'s inadvertence test." Pet. 2. However, that is exactly what the parties here did. From the beginning, the parties acknowledged that the Protective Order will "contain[] procedures for handling inadvertent production of privileged information and other privilege waiver issues." Real Parties in Interest Appendix ("RPI") A-200. The Western District of Washington's model protective order only referenced Rule 502(d).[1] *See* RPI A-23-24. Yet in 2022, the parties negotiated a draft protective order that modified the model protective order by specifically invoking Rule 502(b) in the provision addressing inadvertently produced documents, and removing other language that would have set forth a 502(d) order. *See* RPI A-151. The parties exchanged edits to the proposed protective

---

[1] The model in place at the time the orders were entered here is available at: https://web.archive.org/web/20220515053633/https://www.wawd.uscourts.gov/sites/wawd/files/ModelStipulatedProtectiveOrder.pdf.

4

order and maintained the addition of Rule 502(b). *Id.* Amazon's own redline to the then-model order shows that the Protective Order reflects the invocation of Rule 502(b) and the intentional striking of the 502(d) order included at the end of the model protective order. RPI A-151, A-154; *see also* RPI A-98 n.1.

Further, in negotiating the ESI protocol, Amazon proposed adding the following language to the Western District of Washington's model protocol: "The provisions of Fed. R. Evid. 502(b) are inapplicable to the disclosure of such information." *Frame-Wilson* Dkt. 320 at 3. But Plaintiffs rejected the change, *id.*, and Amazon did not propose any further edits to this section, *see* RPI A-188-89 (redline of Amazon's proposed ESI protocol to model).

The parties agreed on the provisions in the Protective Order and ESI Protocol governing claw backs, which invoked Rule 502(b) and struck the model protective order's separate Rule 502(d) provision, but did not agree on certain other provisions in those documents. The parties submitted those other disputed Protective Order and ESI Protocol provisions to the District Court[2] simultaneously. RPI A-93 *et seq.* The Court then entered the final Protective Order and ESI Protocol on February 27 and 28, 2023, respectively. RPI A-77 *et seq.* (Protective Order) & *Frame-Wilson* Dkt.

---

[2] The judges at the time were Judge Richard A. Jones and Judge Ricardo S. Martinez. After the Protective Orders and ESI Protocols were entered in the *Frame-Wilson* and *De Coster* cases, they were transferred to Judge Chun, who was presiding over the *Brown* case.

5

91 (ESI Protocol).[3]  Days later, the parties submitted a proposed Protective Order and ESI Protocol in the related *De Coster* action;[4] the redline to the model protective order shows the same intentional changes to invoke Rule 502(b) and strike the Rule 502(d) order.  RPI A-270, A-275.

After the Protective Orders and ESI Protocols were entered in *Frame-Wilson* and *De Coster*, the parties reaffirmed in a separate discovery stipulation that "the Parties' stipulated Protective Order[] contain[ed] procedures for handling the inadvertent production of privileged information and other privilege waiver issues" while "the Parties' stipulated ESI Protocol . . . addresses preservation, search, and production requirements," not privilege.  RPI A-241-42.

Finally, in *Brown* (another related action), the parties again invoked Rule 502(b) and struck the model's Rule 502(d) order to align the Protective Order with those entered in *Frame-Wilson* and *De Coster*.  RPI A-226.

Subsequent amendments of the Protective Orders have maintained the controlling language invoking Rule 502(b) across Plaintiffs' cases; neither the Protective Orders nor the ESI Protocols have been modified to disclaim Rule 502(b).[5]  Even after discovery in Plaintiffs' cases was coordinated with the Federal

---

[3] The *Frame-Wilson* ESI Protocol is materially identical to the one entered in *DeCoster*, which is included in Amazon's appendix at A85.

[4] The judge at the time was Judge Ricardo S. Martinez, prior to transfer of the case to Judge Chun.

[5] Judge Chun entered the Amended Protective Orders in all three cases.

6

Trade Commission and the State of California's lawsuits against Amazon, nothing changed. *See, e.g.*, *Frame-Wilson* Dkt. 172 (ordering Amazon to coordinate discovery with the FTC case, without modifying Protective Orders); *Frame-Wilson* Dkt. 178 *et seq.* (maintaining operative 502(b) language while amending Protective Order "[t]o facilitate the coordination of fact discovery in the instant case with fact discovery in [the FTC and CA AG litigation]").

By contrast, the Protective Order in the FTC case (which is pending before Judge Chun in the Western District of Washington and coordinated with Plaintiffs' cases) follows the model order with respect to claw back of inadvertently produced documents. *See* Protective Order, *FTC v. Amazon.com, Inc.*, No. 2:23-cv-01495-JHC (W.D. Wash. Feb. 13, 2024), Dkt. 160. It does not specifically invoke Rule 502(b), and it includes the model protective order's Rule 502(d) order that Plaintiffs and Amazon struck. *Id.* The State of California's ESI Protocol includes language analogous to the federal Rule 502(d). *See State v. Amazon.com, Inc.*, No. CGC-22-601826 (Cal. Sup. Ct. Apr. 28, 2023), Dkt. 132.

## B. Amazon Has Systematically And Egregiously Abused The Attorney-Client Privilege.

Amazon's claim that "the decision below threatens to strip Amazon of protections for core, attorney-client privileged materials," Pet. 4, is another hyperbolic mischaracterization of the facts. Amazon omits that it has systematically attempted to defraud Plaintiffs and regulators by internally cloaking routine business

7

documents in privilege and then withholding those documents in investigations and litigation.

The abuse started from within. To shield materials from production, Amazon employees systematically designated materials "privileged and confidential," and added attorneys in the "to line" of emails along with fake requests for legal advice. *Frame-Wilson* Dkt. 212-2 at 8-9; *id.* at 43-45; *Frame-Wilson* Dkt. 212-3 at 230-33; *Frame-Wilson* Dkt. 242-2 at 8-9. For example, an Amazon email may start a salutation to an attorney, like "Hi Ben – seeking legal advice," only to address the true intended recipients immediately below with no request for legal advice. *E.g.*, *Frame-Wilson* Dkt. 212-2 at 9. Amazon in-house counsel who received these materials tacitly permitted the fake legal requests. *Frame-Wilson* Dkt. 212-3 at 230-34.

Next, Amazon's outside counsel perpetuated the abuse by withholding such non-privileged documents from production and asserting facially inadequate privilege claims for them. *Frame-Wilson* Dkt. 242-2 at 5 ("In short, after a year of Amazon defending its privilege review, it turns out that Amazon has made tens of thousands of false privilege claims, misrepresented who its attorneys are, and still has not produced all relevant non-privileged documents."). Amazon spent months refusing to provide a timely privilege log, and then, once it provided one, the log was wholly inadequate. *Frame-Wilson* Dkt. 212-2 at 7-11.

8

Only after six months of meet and confers, during which Plaintiffs specifically identified over 40,000 deficient privilege log entries, did Amazon start re-reviewing any significant number of withheld documents (but not all). *See Frame-Wilson* Dkt. 212-2 at 31-43 (summarizing negotiations). Throughout this entire period, Amazon insisted that its attorneys had set aside the improper privilege markings and had instead made independent determinations of privilege for every document. *Frame-Wilson* Dkt. 212-3 at 8 ("Amazon's approach to privilege has been to review each document for its substance—without regard to whether a businessperson may have labeled the document 'privileged and confidential,' or whether the document states 'seeking the advice of a lawyer.'").

The documents and privilege log produced from the initial privilege re-review suggested continued, widespread privilege abuse. Plaintiffs therefore moved to compel production of all documents over which Amazon had not established a claim of privilege and sought sanctions for Amazon's systematic privilege over-designations. *Frame-Wilson* Dkt. 212-2 at 2 *et seq*. In response to the motion, Amazon defended its limited re-review, claiming that when completed, it would resolve all of Plaintiffs' concerns. *Frame-Wilson* Dkt. 212-3 at 14. But before the District Court decided the motion, Amazon "voluntarily" agreed to re-review *all* documents withheld in whole or in part on privilege grounds—even those it had *already re-reviewed*. *Id.* at 8, 15-16.

9

When the results of Amazon's continued privilege re-review proved insufficient to resolve Plaintiffs' concerns, Plaintiffs filed a renewed motion. *See Frame-Wilson* Dkt. 242-2 at 2 *et seq*. The parties appeared before the District Court on January 31, 2025. Leading up to the hearing, Amazon produced approximately 61,000 documents from privilege logs it had previously claimed reflected careful, independent review of every document. RPI A-64. At the hearing, counsel for Amazon—both from Paul Weiss and Amazon's specialty e-discovery counsel, Redgrave—vigorously defended the re-review efforts. They said it was a highly complex and challenging review, involving review of every word of every document, taking over 14,000 hours, with multiple layers of review, discussion, and quality control to ensure that Amazon was only withholding truly privileged information. Pet'r's A10-11 (summarizing relevant representations from hearing).

After the hearing, the District Court ordered Amazon to complete its re-review and productions by February 25, 2025, clarified the privilege standard, and allowed Plaintiffs to subsequently identify 100 documents for *in camera* review after receiving Amazon's final privilege log. RPI A-60 *et seq*. The Court also said it would "most likely" grant Plaintiffs attorneys' fees, but instructed Plaintiffs not to file their motion until after the *in camera* review. *Frame-Wilson* Dkt. 258 at 40:14-19.

10

While Amazon represented at the hearing that its privilege re-review was largely complete, with only 23,000 entries left to review, *id.* at 11:11-13, Amazon subsequently downgraded and produced over *61,000* additional documents before the court-ordered deadline, a strategic choice to avoid subsequent adverse findings of over-designation during *in camera* review, RPI A-20. When Amazon de-designated documents during its review, it identified them on its privilege log in tabs titled "Not Privileged" or "Redacted and Produced." RPI A-20 n.1. Amazon fully downgraded as "Not Privileged" *76.1%* of its privilege claims (105,223 out of 138,187) before it was forced to submit a sample for *in camera* review selected from the remaining documents over which it asserted privilege claims. *Id.*

Plaintiffs then identified 100 documents for *in camera* review from Amazon's final privilege log, the majority of which were also found to be over-designated. *See* Pet'r's A16. First, Amazon withdrew its privilege claims for 15 of the 100 documents Plaintiffs identified for the District Court's *in camera* review. Pet'r's A17 & n.3; RPI A-20. Then, the District Court determined that an additional 54 of the remaining 85 documents (63%) were over-designated. Pet'r's A27.

Amazon's conduct here is not the only instance where Amazon has improperly over-designated documents as privileged and withheld them from discovery—with the assistance of in-house and outside counsel. *See, e.g.*, *Garner v. Amazon.com, Inc.*, No. C21-0750RSL, No. C21-075RSL, 2024 WL 4266665 (W.D. Wash. Sept.

11

23, 2024) (finding 80% of 1,365 documents reviewed *in camera* to be non-privileged and improperly cloaked); Pls. Mot. for Sanctions at 3, *FTC v. Amazon.com, Inc*., No. 2:23-cv-00932-JHC (W.D. Wash. Dkt.), Dkt. 286 (seeking sanctions against Amazon following 92% de-designation rate following re-review of 76,500 documents).

### C.  Amazon Conceded Below That The Protective Order Governs Claw Backs Of Inadvertently Produced Documents.

In March 2025, Amazon sought to claw back two documents that it had produced with redactions after its privilege re-review and that Plaintiffs had identified for *in camera* review.  Amazon's motion correctly identified the Protective Order as governing standards for claw backs in Plaintiffs' cases.  RPI A-8.  The District Court determined that under the Protective Order's language invoking Rule 502(b), the inadvertence standard applied; Amazon's redaction and production of the documents after re-reviewing them for privilege was intentional; and thus privilege was waived.  Pet'r's A20 (the "March 25 Order") ("The Protective Order, approved of by this Court, does not 'articulate the desire' to forgo the Rule 502(b) waiver analysis.  No reasonable reading of the Order supports Amazon's contention that it allows a party to claw back a document under any circumstances.  The Order expressly 'invokes the protections afforded by Fed. R. Evid. 502(b).'").

Addressing why Amazon's production of these documents was intentional, the Court explained: "When a party makes a strategic decision that it later regrets, such as redacting a document rather than withholding it completely as privileged, it

cannot later claim inadvertence to shield itself from the consequences of its own judgment call." Pet'r's A22. Amazon did not seek relief from this Order or a similar order by the same Court in another case a year earlier. *FTC v. Amazon.com, Inc.*, No. 2:23-cv-00932-JHC, 2024 WL 3620467 (W.D. Wash. Aug. 1, 2024).

### D. The District Court Enforces The Protective Order Again.

A few days before the Court's March 25 Order, Amazon also attempted to claw back documents cited in the *Frame-Wilson* class certification motion that were produced after Amazon's privilege re-review and identified as "not privileged" on Amazon's "final" re-review privilege log. RPI A-43 *et seq*. Amazon also sought to claw back multiple other copies of these documents that had also been produced. *Id.*

This time, contrary to its position before the District Court just six days earlier (when it had recognized that the Protective Order governed claw backs),[6] Amazon argued instead that the ESI Protocol governed the claw back of these documents. RPI A-48, A-52-54. The District Court denied Amazon's motion. Pet'r's A2 (the "April 29 Order"). The April 29 Order once again explained that the invocation of Rule 502(b) was controlling because that is the only "reasonable reading" of the Protective Order. Pet'r's A7 n.8. The District Court further found that "Amazon's production of the documents at issue was intentional," that Amazon did "not explain

---

[6] In the intervening days, Plaintiffs responded to Amazon's attempt to claw back the documents from the *in-camera* sample by noting the Protective Order invokes Rule 502(b), not Rule 502(d). *See* RPI A-23-24.

13

how the production of these documents was a mistake," and thus Amazon's strategic choice to disclose did not satisfy the inadvertence requirement of Rule 502(b). Pet'r's A10-11.

Amazon seeks mandamus to review the District Court's April 29 Order, but it did not seek reconsideration under the local rules or challenge the District Court's other applications of Rule 502(b).

### E. Amazon Continues To Claw Back Documents Based On Yet Another Theory.

Since the District Court's March 25 Order, Amazon has clawed back hundreds of documents that were produced after extensive privilege review, without attempting to make any showing of inadvertent production. *See Frame-Wilson* Dkt. 320 at 4-7. Amazon's claw back notices come during a tight schedule of dozens of depositions being taken in cases that have been coordinated for fact discovery— forcing Plaintiffs to hold open affected depositions. *Id.* Amazon has based these claw backs not on the Protective Orders in Plaintiffs' cases (as it originally argued before the District Court), and not under the ESI Protocols (as it argues here), but instead on the protective orders and/or ESI protocols in the regulators' cases that have been coordinated with Plaintiffs' cases. *Id.* at 1, 5-7. Plaintiffs have filed a motion to compel production of these documents that is currently pending in the District Court. *See generally id.* Plaintiffs provide this background to reveal

14

Amazon's persistent gamesmanship with respect to the attorney-client privilege and to underscore the need for prompt resolution of Amazon's Petition.

## STANDARD OF REVIEW

"The writ of mandamus is an 'extraordinary' remedy limited to 'extraordinary' causes." *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*, 408 F.3d 1142, 1146 (9th Cir. 2005). Amazon must demonstrate "exceptional circumstances amounting to a judicial usurpation of power, or a clear abuse of discretion." *Uber Techs., Inc. v. U.S. Jud. Panel on Multidistrict Litig.*, 131 F.4th 661, 668 (9th Cir. 2025) (quoting *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004)). Limits on mandamus are especially "salient" in the discovery context because "the courts of appeals cannot afford to become involved with the daily details of discovery." *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) (internal quotes omitted).

This Court has "established a high bar for issuing a writ of mandamus, which requires us to have a firm conviction that the district court misinterpreted the law or committed a clear abuse of discretion." *In re Walsh*, 15 F.4th 1005, 1010 (9th Cir. 2021) (cleaned up). "This standard makes the availability of the writ especially difficult in the discovery context for two important reasons. First, this court is particularly reluctant to interfere with a district court's day-to-day management of its cases. Second, the petitioner must satisfy the burden of showing that his right to issuance of the writ is clear and indisputable." *Id.* (cleaned up).

15

This Court examines multiple factors in evaluating a mandamus petition:

(1) whether the petitioner has no other means, such as a direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in any way not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order is an oft repeated error or manifests a persistent disregard of the federal rules; and (5) whether the district court's order raises new and important problems or issues of first impression.

*Perry v. Schwarzenegger*, 591 F.3d 1147, 1157 (9th Cir. 2010) (citing *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654-55 (9th Cir. 1977)).

Here, consideration of only one factor—whether the district court's order is clearly erroneous as a matter of law—requires denial of the petition. *In re Walsh*, 15 F.4th at 1010. The absence of clear error "is dispositive." *Online Speakers*, 661 F.3d at 1177. The other factors also weigh strongly against mandamus.

## ARGUMENT

### I. The District Court Did Not Clearly Err In Applying Rule 502 In Accordance With The Plain Language Of The Stipulated Protective Orders.

Amazon mischaracterizes the District Court's order to manufacture two purported errors. *First*, Amazon claims the District Court erred by "reading 502(d) out of the parties' ESI Protocol and Protective Order." Pet. 15. Amazon ignores the plain language of the Protective Orders it itself negotiated, which *added* reference to Rule 502(b) to the model order and *removed* the model order's standalone Rule 502(d) order. It cannot be clear error to interpret the District Court's orders

16

according to their plain language. *Second*, Amazon claims the District Court erred in finding that when Amazon produced documents following an extended privilege re-review, it did not do so inadvertently. That fact-intensive inquiry is entrusted to the discretion of the District Court and does not warrant mandamus relief. This Court should deny the Petition because there is no clear error. *See Online Speakers*, 661 F.3d at 1177.

### A. The District Court Did Not Clearly Err In Interpreting Its Own Discovery Orders As Applying Rule 502(b) To Claw Backs.

Rule 502(b) sets forth the rule for when disclosure operates as a waiver:

> The disclosure does not operate as a waiver in a federal or state proceeding if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b). A court can alter that rule: "A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court[.]" *Id.* 502(d). The District Court here correctly found—and certainly did not clearly err in finding—that it had not issued an order that departed from Rule 502(b). The District Court's interpretation of the Protective Orders and ESI Protocols is consistent with the plain language of the orders, the purpose of Rule 502(d), Amazon's previous representations to the District Court, and the parties' intent.

The District Court's interpretation of its own Protective Orders is far from clearly erroneous, as those orders *expressly* invoked Rule 502(b). As detailed *supra*, the District Court entered the heavily negotiated *Frame-Wilson* Protective Order first, and the ESI Protocol one day later. The Protective Order contains a section titled "Inadvertent Production of Privileged or Otherwise Protected Material," which states: "This Order invokes the protections afforded by Fed. R. Evid. 502(b)." Pet'r's A79; *see also supra* pp. 5-6 (noting stipulated orders with the same provision were subsequently entered in *De Coster* and *Brown*). As the District Court explained, "[t]he Order expressly 'invokes the protections afforded by Fed. R. Evid. 502(b),'" and "[t]hus, the Rule 502(b) waiver standard still applies to the parties' claw back requests." Pet'r's A20. That should be the end of the matter: It cannot be clearly erroneous for a District Court to interpret its own orders as applying Rule 502(b) when they explicitly invoke Rule 502(b).

Given the absence of any plausible basis to use mandamus to question the District Court's interpretation of its own orders, Amazon mischaracterizes the District Court as supposedly applying the wrong legal standard for that interpretation. According to Amazon, the District Court improperly required "concrete directives" to "opt out" of Rule 502(b). Pet. 22-23. However, the District Court did no such thing. Its only reference to "concrete directives" was to note that "[o]ther courts" had applied that standard. Pet'r's A20. But it found that Rule 502(b)

18

applied based on the plain language of the Protective Order: "No reasonable reading of the Order supports Amazon's contention that it allows a party to claw back a document under any circumstances. The Order expressly 'invokes the protections afforded by Fed. R. Evid. 502(b).'" *Id.*; *see also* Pet'r's A7 n.8 ("An agreed protective order should be given a reasonable or common sense interpretation in light of its purposes. Here, a reasonable reading of the Protective Order is that Rule 502(b) applies given the explicit invocation of the protections afforded by Rule 502(b).") (cleaned up). Amazon does not suggest, nor could it, that there is legal error in a court adopting the only "reasonable reading" of a protective order based on its plain language.[7]

Even assuming that there was a plausible basis to use mandamus to challenge the District Court's reasonable reading of its orders, the District Court's decision is very well supported.

---

[7] Even if the District Court had applied the "concrete directives" requirement, as Amazon incorrectly insists it did, it does not amount to clear error justifying mandamus relief. As Amazon itself admits, several district courts in this circuit have required "concrete directives." *See* Pet. 23 n.3; *see also id.* at 2 (noting the District Court "follow[ed] a minority position"). There is no precedent from this Court or the Supreme Court precluding application of that standard. As this Court has repeatedly recognized, it is not clear error for a district court to take a side in a split of authority. *See, e.g.*, *Bauman*, 557 F.2d at 660 ("In light of this absence of Supreme Court and Ninth Circuit decision and a split of authority in other jurisdictions, we simply cannot conclude that the district court's order is clearly erroneous as a matter of law as that term is used in mandamus analysis."); *In re Han Yong Kim*, 571 F. App'x 556, 557 (9th Cir. 2014) (similar); *In re Arizona*, 528 F.3d 652, 656-57 (9th Cir. 2008) (similar).

19

*First*, Amazon provides no explanation for the inclusion of Rule 502(b) in the Protective Orders or attempt to give it any meaning, and Amazon only includes this dispositive language in its Petition within a larger block quote. Pet. 7. Rather than directly addressing it, Amazon suggests that it is meaningless because "parties do not need to *opt in* to Rule 502(b)." Pet. 22. This argument is a *non sequitur*. While parties do not have to opt in to Rule 502(b), there is nothing that prevents them from adopting Rule 502(b) in a protective order, as the parties have done here. They negotiated language that departed from the model order to clarify that Rule 502(b) applied here, whereas the model order would otherwise have the parties adopt Rule 502(d). *See supra* pp. 4-7. The District Court's answer to the Petition notes the importance of this distinction, as the parties expressly chose to depart from the model order by invoking Rule 502(b) and deleting the standalone Rule 502(d) order.

While Amazon claims that it is illogical to adopt the default rule, it is entirely reasonable to clarify that Rule 502(b) applies given the potential ambiguity, absent that clarification. Amazon's position is far more illogical, as it would render the Protective Order's reference to Rule 502(b) meaningless. Such an interpretation is highly disfavored. *See Chaly-Garcia v. United States*, 508 F.3d 1201, 1204 (9th Cir. 2007) ("Under federal common law, we presume that every provision was intended to accomplish some purpose, and that none are deemed superfluous." (citation

20

omitted and cleaned up)). The District Court's decision to give meaning to that provision—the only meaning that either side proposes—is not clearly erroneous.

The cases Amazon relies upon are inapposite, as they do not involve interpretations of protective orders that expressly invoked Rule 502(b). *See, e.g.*, *Great-W. Life & Annuity Ins. Co. v. Am. Econ. Ins. Co.*, No. 2:11-cv-02082-APG-CWH, 2013 WL 5332410, at *11 (D. Nev. Sept. 23, 2013) (quoting provisions relating to inadvertent disclosure that do not expressly invoke any part of Rule 502); *Beilstein-Institut Zur Forderung der Chemischen Wissenschaften v. MDL Info. Sys., Inc.*, No. C 04-05363 SI, 2006 WL 2578264, at *1 (N.D. Cal. Sept. 6, 2006) (interpreting a protective order that "explicitly states that the receiving party may not bring a motion to compel based on 'a waiver caused by the inadvertent production.'").

*Second*, Amazon errs in relying on the invocation of Rule 502(d) in the ESI Protocol. The ESI Protocol does not address inadvertent production. And the Protective Order explains how to read the two together. The Protective Order states that "[t]his provision is not intended to modify whatever procedure may be established in an e-discovery order or agreement *that provides for production without prior privilege review*." Pet'r's A79. Thus, the District Court reasonably (and correctly) read the ESI Protocol in conjunction with the Protective Order, requiring application of Rule 502(d) only where documents are produced "without

21

prior privilege review." Pet'r's A6. As the District Court noted, because "[t]he Amended Protective Order is more specific than the ESI Protocol" in that it "addresses the treatment of privileged documents 'inadvertently' produced," Pet'r's A6, it may be presumed that the parties intended for the Protective Order to govern documents inadvertently produced.

Not only does this reading give meaning to the parties' express invocation of Rule 502(b) in the Protective Order—setting a different standard for production *after* privilege review—but it is also consistent with the purpose of Rule 502(d). As Amazon itself notes, Rule 502(d) is intended to protect parties who produce documents "*without* . . . exhaustive pre-production privilege reviews." Pet. 17 (quoting Fed. R. Evid. 502, Advisory Committee's Note to subdivision (d) (emphasis added)). It defies logic that documents produced following an initial privilege review, and then additional months of privilege re-review would enjoy Rule 502(d) protections, despite the parties' express invocation of "the protections afforded by Fed. R. Evid. 502(b)." Pet'r's A79.

Amazon claims the "rule of the last antecedent" required the District Court to treat "*that provides for production without prior privilege review*" as modifying an "agreement" but not "an e-discovery order." Pet. 19-20. However, "the rule of the last antecedent 'is not an absolute and can assuredly be overcome by other indicia of meaning.'" *Lockhart v. United States*, 577 U.S. 347, 352 (2016) (quoting

22

*Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)). "Moreover, where, as here, a clause only has two antecedents, the force of the last antecedent rule diminishes in accordance with ordinary English usage." *Taylor & Lieberman v. Fed. Ins. Co.*, 681 F. App'x 627, 628 (9th Cir. 2017). The rule is also often disregarded where "the listed items are simple and parallel without unexpected internal modifiers or structure." *Lockhart*, 577 U.S. at 352. Indeed, the use of "an" before "order" but not before "agreement" in the ESI protocol strongly indicates that they should be read together, with the subsequent clause modifying both.[8] This is a reasonable interpretation, particularly given that Amazon's preferred interpretation again would make the Protective Order's explicit invocation of Rule 502(b) meaningless.

*Third*, the history of the parties' negotiations confirms that Rule 502(b) applies to inadvertent production of documents reviewed for privilege, as the provision invoking it was *added* by agreement of the parties to the model order. The parties agreed, too, *not* to include language disclaiming Rule 502(b) in the ESI Protocol. *Frame-Wilson* Dkt. 320 at 3; RPI A-158 *et seq*. This makes clear that the parties

---

[8] For instance, Amazon uses the example of "a defensive catcher, a quick-footed shortstop, or a pitcher from last year's World Champion." Pet. 20. But the actual comparison to the language here—stripped of the adjectives, making it two instead of three, and deleting the indefinite article from the second—would be "a catcher or pitcher from last year's World Champion." And the natural interpretation of that phrase would be that, to fit the requirement, the catcher or pitcher should be from last year's World Champion. Likewise, here, to fit the requirement, the order or agreement should provide for production without prior privilege review.

23

intended for one standard to apply where documents were reviewed for privilege (Rule 502(b)) and another to apply where there was no privilege review (Rule 502(d)). Amazon previously agreed with this conclusion. In a March 11, 2025 letter to the District Court in connection with an *in camera* review, Amazon cited the Protective Order as the governing authority for claw backs and waiver. RPI A-8. Amazon presents no rationale for why its own prior position—consistent with the text of the Protective Orders—is now plain error.

###### B. The District Court Did Not Commit Clear Error In Finding Documents Were Not Inadvertently Produced Under Rule 502(b).

The District Court correctly found—and certainly did not clearly err in finding—that Amazon's production was not inadvertent. As the District Court explained and Amazon does not dispute, "[t]he party asserting privilege bears the burden of proving that privilege is not waived." Pet'r's A3; *see also, e.g.*, *Weil v. Investment/Indicators, Res. & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981) ("As with all evidentiary privileges, the burden of proving that the attorney-client privilege applies rests not with the party contesting the privilege, but with the party asserting it. One of the elements that the asserting party must prove is that it has not waived the privilege.") (internal citations omitted); *see also Campbell v. United States*, 365 U.S. 85, 96 (1961) ("[T]he ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary.").

24

Rule 502(b) establishes that disclosure "operate[s] as a waiver" unless "the disclosure is inadvertent." Fed. R. Evid. 502(b)(1). Amazon failed to meet its burden to show that the disclosure was inadvertent here. As the District Court explained, Amazon did not "explain how the production of these documents was a mistake." Pet'r's A11. In its Petition and below, Amazon asserts baldly that the production was "human error," but Amazon does not actually explain (let alone produce evidence to show) *how* this supposed mistake occurred. Amazon never explains why it ultimately designated its documents as non-privileged: it does not say who made the decision to produce the documents, how the decision was made, or whether the decision was subject to review by other attorneys or consultation with Amazon. Amici proffer made-up facts to fill the void, suggesting that Amazon's document reviewers were "fatigued" or "distracted." 9th Circuit Dkt. 4.2 at 20-21. Those facts are nowhere in the record.

Given the absence of evidence of mistake, the District Court found that "Amazon's production of the documents at issue was intentional." Pet'r's A10. And the District Court held that such intentional disclosure does not satisfy the inadvertence requirement: "When a party makes a strategic decision that it later regrets, such as redacting a document rather than withholding it completely as privileged, it cannot later claim inadvertence to shield itself from the consequences of its own judgment call." Pet'r's A11 (quotation marks omitted). Once again, this

should be the end of the matter: A district court's finding that disclosure is intentional, with no evidence to the contrary, does not come close to satisfying the high bar for mandamus review.

Amazon's argument again rests on a fictional legal dispute. According to Amazon, the District Court applied the wrong legal standard by looking at whether the production was a mistake rather than considering the totality of the circumstances. However, Amazon waived this argument by failing to make it before the District Court. Amazon's motion to claw back the documents expressly noted that the District Court had adopted the "mistake" standard in the past, did not object to that standard, and argued simply that the production here was a mistake. RPI A-55 ("[T]his Court has previously held in the case related to Amazon Prime that it would look to whether the party intended a privileged or work-product protected document to be produced or whether the production was a mistake. The inquiry is a simple one: did the disclosure occur by mistake or unintentionally? Here, the production of these three documents—out of 2.6 million—was an unintentional mistake.") (internal citations omitted)). Amazon did not even mention a totality-of-the-circumstances inquiry that it now argues was error not to follow.

The District Court here has consistently applied the mistake approach in Plaintiffs' cases. *See* Pet'r's A10 (citing Mar. 25 Order). Amazon has never objected

to the District Court's application of this approach. Given Amazon's waiver, there is no basis for mandamus.

In any event, Amazon cannot point to a single case or authority that supports its position that courts must apply the totality of the circumstances approach in determining whether documents were inadvertently produced. Instead, Amazon points to cases assessing *other* types of waiver that are governed by the common-law "totality of the circumstances" test. Pet. 26. While Rule 502(b) "was patterned after the common law 'totality of circumstances approach,'" *Hanson v. Wells Fargo Home Mortg., Inc.*, No. C13-0939JLR, 2013 WL 5674997, at *5 (W.D. Wash. Oct. 17, 2013), it is distinctly *not* the common-law approach. For one, some of the common-law factors are encompassed in the three prongs of Rule 502(b), but others are not. *Compare Pac. Coast Steel v. Leany*, No. 2:09-cv-02190-KJD-PAL, 2011 WL 4704217, at *4 (D. Nev. Oct. 4, 2011), *with* Fed. R. Evid. 502(b)(2)–(3). This choice was intentional to provide courts with ample flexibility in assessing inadvertence. *See* Advisory Comm. Notes Fed. R. Evid. 502(b). Only (b)(2) and (b)(3) expressly require a showing that counsel's conduct was "reasonable." Fed. R. Evid. 502(b)(2)–(3). Applying the "totality of circumstances" approach to assess inadvertence under (b)(1) introduces a reasonableness requirement that is not in the text of the rule. Moreover, evaluating all the "totality of circumstances" factors at step one would render (b)(2) and (b)(3) superfluous. *See United States v. Nguyen*,

27

465 F.3d 1128, 1132 (9th Cir. 2006) (avoiding interpretation of Federal Rule of Evidence that would make another rule superfluous).

Given the plain language of Rule 502(b), courts in this Circuit (and outside of it) have applied the same standard that the District Court applied here to determine "inadvertence": a disclosure is inadvertent if the "protected document was produced as the result of a mistake." *B&G Foods N. Am., Inc. v. Embry*, No. 2:20-cv-0526 KJM DB, 2024 WL 922900, at *2 (E.D. Cal. Mar. 24, 2024); *see also Datel Holdings Ltd. v. Microsoft Corp.*, No. C-09-05535 EDL, 2011 WL 866993, at *3 (N.D. Cal. Mar. 11, 2011); *Coburn Grp., LLC v. Whitecap Advisors LLC*, 640 F. Supp. 2d 1032, 1038 (N.D. Ill. 2009); *Amobi v. Dist. of Columbia Dept. of Corrections*, 262 F.R.D. 45, 53 (D.D.C. 2009); *Sleep Number Corp. v. Young*, No. 20-cv-1507 (NEB/ECW), 2021 WL 5644322, at *17-18 (D. Minn. Dec. 1, 2021). The District Court expressly adopted this approach "because it aligns with other courts in the Circuit as well as the structure and purpose of Rule 502(b)." Pet'r's A22.[9] It is not clear error to adhere to the plain language of a federal rule, consistent with ample persuasive authority.

Amazon's only remaining argument is that the District Court supposedly erred in its finding that the disclosure here was intentional, rather than a mistake.

---

[9] This approach is also in line with congressional intent. S. Rep. No. 110-264, at 3 (2008) (noting the new Rule 502 is intended "to limit the consequences of inadvertent disclosure, thereby relieving litigants of the burden that *a single mistake* during the discovery process can cost them the protection of a privilege." (emphasis added)).

28

However, there is no plausible basis to use mandamus to second-guess the District Court's factual finding on this point, especially given Amazon's total lack of evidence to meet its burden. Amazon attempts to manufacture error by claiming that the District Court held that inadvertence *only* covers "mere technical glitches or unreviewed documents" or that "human error" *never* constitutes inadvertence. Pet. 29. The District Court said no such thing. In light of the factual circumstances of this particular case, the District Court concluded that Amazon simply had not shown that the production was inadvertent. Pet'r's A11.

It is well established that an intentional choice to produce a document (as the District Court found), even if a party later regrets that choice, does not constitute inadvertence under Rule 502(b). For example, in *Wolpert v. Branch Banking Trust & Co.*, a district court in Tennessee held that the defendant's disclosure was *not* "inadvertent" when "it first determined that the attorney-client privilege did not apply . . . , but after additional analysis, determined that it did apply." No. 3:19-CV-138-TRM-DCP, 2023 WL 2731083, at *6 (E.D. Tenn. Mar. 30, 2023). As in this case, "[a]lthough Defendant did not originally appreciate the application of privilege to the [document], this does not mean the disclosure was 'inadvertent' in the context of Rule 502(b)." *Id.* Similarly, in *Sleep Number Corporation*, a Minnesota district court concluded disclosure was voluntary where "Defendants . . . were cognizant of the privilege issue, yet produced . . . documents that they now assert are privileged."

29

2021 WL 5644322, at *20.  In that case, the court also noted that "Defendants produced these documents intentionally to avoid a targeted subpoena on their patent prosecution counsel."  *Id.*  Amazon cites no caselaw to the contrary.

Finally, Amazon mischaracterizes the District Court as "treat[ing] the fact of a privilege review . . . as dispositive."  Pet. 27.  Rather, the District Court considered Amazon's extensive privilege re-review (*after* a prior privilege review) in conjunction with the total lack of evidence of mistake:  "Amazon downgraded the documents during this comprehensive re-review of its privilege logs.  And Amazon does not explain how the production of these documents was a mistake."  Pet'r's A11 (internal citation omitted).  Amazon spent more than eight months on privilege re-review.  Pet'r's A12 (comparing this case to *Epic Games, Inc. v. Apple Inc.*, where Apple reviewed 54,000 documents "within a few weeks").  Amazon touted its sophisticated review and quality-control process led by specialized e-discovery counsel.  Pet'r's A10.  There were supposedly "many meetings to figure out the context of" particular documents, all of which were "individually re-reviewed."  *Id.*  It is more than reasonable to conclude that a document produced through this process is intentional when the party producing it proffers no evidence to the contrary.

This conclusion is especially reasonable given that Amazon downgraded the privilege designations of the documents it now seeks to claw back as part of an

30

intentional strategy to narrow the universe of documents that would be reviewed *in camera* by the District Court. There is no clear error in the District Court's finding.

## II. The Court Need Not Reach The Remaining Factors, But They Do Not Support Mandamus Relief.

Because the absence of clear error "is dispositive," *Perry*, 591 F.3d at 1156, the Court need not reach the remaining four factors, namely: whether Amazon has no other means to obtain the desired relief; whether Amazon will be prejudiced; whether the District Court committed "an oft repeated error"; and whether the District Court's order raises new and important problems. *See id.* But those factors, too, fail to justify extraordinary mandamus relief.

Amazon has an alternative means to obtain relief because it can challenge this privilege ruling after final judgment. As the Supreme Court has explained,

> postjudgment appeals generally suffice to protect the rights of litigants and assure the vitality of the attorney-client privilege. Appellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence.

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 109 (2009); *see also, e.g.*, *In re AIG Specialty Ins. Co.*, No. 21-71120, 2021 WL 5906144, at *1 (9th Cir. Dec. 14, 2021) ("Following *Mohawk* . . . , we presume that 'postjudgment appeals generally suffice to protect the rights of litigants and ensure the vitality of the attorney-client privilege.'").

31

Amazon cites cases for the proposition that addressing disclosure of privileged documents after final judgment may be insufficient where the disclosure itself is harmful. But none of those cases deals with the situation where, as here, the disclosure already happened. The question here is whether disclosed documents can be clawed back, such that Plaintiffs cannot rely upon them in the litigation. Just like any other question concerning the exclusion of evidence, this question can and should be resolved after final judgment.

Amazon also does not identify any specific prejudice from not being able to claw back the documents. While Amazon asserts generalized harm from disclosure, as discussed above, Amazon already disclosed the documents. And Amazon fails to show how, if at all, these documents will prejudice its case. Amazon suggests that if it cannot claw back the documents, the assertion of privilege over those documents may be waived in other cases. But this is entirely speculative: there has been no ruling as to waiver in any other case, let alone a showing of how these documents would be prejudicial in those cases.

In addition, there is no "oft repeated error" or new and important problem here. As discussed above, the District Court's ruling is based on the interpretation of distinct (non-model) language in a protective order and the application of Rule 502(b) to the particular facts here. Contrary to Amazon's suggestion, Pet. 32-33, there is no "opportunity for this Court" to "clear up" the proper interpretation of Rule

32

502 protective orders because the legal errors Amazon attempts to manufacture simply do not exist. The District Court rejected Amazon's interpretation of the Protective Order because it was not a "reasonable" reading, and rejected Amazon's assertion of mistake because there was no evidence to support it. This reasoning has no broader application outside this case. At bottom, Amazon agreed to a protective order it regrets. But Amazon's regrets cannot establish an "oft-repeated error" or an "important problem" that justifies mandamus relief.

## CONCLUSION

The Court should deny Amazon's petition for a writ of mandamus.

Dated: June 4, 2025      Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: /s/ *Steve W. Berman*
     Steve W. Berman
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
E-mail: steve@hbsslaw.com

KELLER POSTMAN LLC
By: /s/ *Warren D. Postman*
     Warren D. Postman
1101 Connecticut Avenue, N.W., Suite 1100
Washington, D.C., 20036
Telephone: (202) 918-1123
Email: wdp@kellerpostman.com

QUINN EMANUEL URQUHART
SULLIVAN, LLP

By: /s/ *David M. Cooper*
     David M. Cooper
295 5th Avenue, 9th Floor
New York, NY 10016
Telephone: (212) 849-7000
Email:  davidcooper@quinnemanuel.com

By: /s/ *Adam B. Wolfson*
     Adam B. Wolfson
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Email: adamwolfson@quinnemanuel.com

*Counsel for Real Parties in Interest*

## CERTIFICATE OF COMPLIANCE

I certify that this petition contains 7,887 words and therefore complies with the word limitation established by the Ninth Circuit, because "the word count divided by 280," which equals 28, "does not exceed the designated page limit," 9th Cir. R. 32-3(2), which is 30 pages, 9th Cir. R. 21-2(c).

This petition also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it was prepared in Times New Roman 14-point typeface using Microsoft Office Word.


By: */s/ Steve W. Berman*
Steve W. Berman

# APPENDIX

# APPENDIX: TABLE OF CONTENTS

| Docket Entry | Description | Page |
|---|---|---|
| | ***Frame-Wilson et al. v. Amazon.com Inc., No. 2:20-cv-00424-JHC*** | |
| 296-2 | Amazon's In Camera Review Submission, Plaintiffs' Response, and Amazon's Reply (Redacted) Filed March 25, 2025 | A-1 |
| 287 | Amazon's Motion to Claw Back Privileged Material and Strike Reference Thereto from Plaintiffs' Class Certification Filed March 17, 2025 | A-43 |
| 256 | Order Granting in Part and Denying in Part Plaintiffs' Motion to Compel Production of Documents from Amazon's Privilege Logs and for Appointment of a Special Master Filed February 3, 2025 | A-60 |
| 253 | Joint Status Report Regarding Plaintiffs' Motion to Compel Production of Documents from Amazon's Privileged Logs and for Appointment of a Special Master Filed January 31, 2025 | A-63 |
| 90 | Protective Order Filed February 27, 2023 | A-77 |
| 77 | Joint Statement of Disputes Regarding Discovery Protocols Filed October 14, 2022 | A-93 |
| 77-2 | Exhibit B – [Amazon.com's Proposed] Protective Order, with Redline of Model Protective Order | A-118 |
| 77-4 | Exhibit D – [Amazon.com's Proposed] Order Regarding Discovery of Electronically Stored Information, with Redline of Model ESI Order | A-156 |
| 69 | Joint Status Report and Discovery Plan Filed August 29, 2022 | A-193 |
| | ***Brown et al. v. Amazon.com, Inc., No. 2:22-cv-00965-JHC*** | |
| 49-2 | Exhibit B – Redline of Stipulated Motion and [Proposed] Protective Order Filed October 16, 2023 | A-210 |

i

***DeCoster et al. v. Amazon.com, Inc.,***
**No. 2:21-cv-00693-JHC**

| 88 | Joint Status Report and Discovery Plan<br>Filed May 18, 2023 | A-235 |
| 64-1 | Exhibit 1 – Redline of Stipulated Motion [Proposed] Protective Order in<br>Filed March 9, 2023 | A-254 |

# Exhibit B
# (Redacted)

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

DIRECT DIAL: +1 202 223 7308
EMAIL: KDUNN@PAULWEISS.COM

NEW YORK        SAN FRANCISCO
BRUSSELS        TOKYO
HONG KONG       TORONTO
LONDON          WILMINGTON
LOS ANGELES

March 11, 2025

The Honorable John H. Chun
United States Courthouse
700 Stewart Street, Suite 14134
Seattle, WA 98101-9906

**VIA ECF FILED UNDER SEAL**

Re:    **Amazon's *In Camera* Review Submission**
       ***Frame-Wilson v. Amazon.com, Inc.*, No. 20-cv-00424-JHC**
       ***De Coster v. Amazon.com, Inc.*, No. 21-cv-00693-JHC**
       ***Brown v. Amazon.com, Inc.*, No. 22-cv-00965-JHC**

Dear Judge Chun:

        As the Court directed, Amazon has provided to the Court an electronic binder containing the 100 documents that Plaintiffs selected for *in camera* review, in "full families"—emails and attachments have been provided together—and will hand-deliver to the Clerk's Office hard copies of the binder.  Order, *Frame-Wilson*, Case No. 2:20-cv-00424 (Feb. 3, 2025), Dkt. 256, at (3)–(5). [1]  In the binder, each document is accompanied by a cover sheet that identifies key information from the privilege log, metadata, and the broader production to provide context for the privilege or work-product claim.  Within each document, the names of any active attorneys supporting the privilege or work-product claim are highlighted in blue.  For any documents that were produced with redactions, redacted materials are highlighted in yellow.  Any redactions that Amazon previously made and is now agreeing to remove are highlighted in red.

        Amazon also respectfully requests the Court's permission to submit this letter to aid the Court, which applies the law to the *in camera* review set.  *See Illumina Inc.* v. *BGI Genomics Co., Ltd.*, 2021 WL 2662074, at *3 (N.D. Cal. June 29, 2021) ("Once the Court ordered *in camera* review, there was nothing wrong with Defendants further explaining the basis for their claim of

---

[1]    As described below, the Court need not consider **Documents 3, 12, 31, 33, 36, 39, 40, 45, 60, 67, 77, 78, 88, 97, or 98**.  Nine of these documents had previously been produced to Plaintiffs under different Bates numbers; Amazon has agreed to produce the remaining six (of which only one was previously withheld entirely).  As described below, this error rate is well below the range other courts have found acceptable.

**HIGHLY CONFIDENTIAL**

A-2

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable John H. Chun                                                        2

privilege, in particular for documents where the claim of privilege is not obvious on its face.").

At this point, Plaintiffs have received (as promised, on February 25) a complete privilege log and a comprehensive production of documents well before the start of depositions. Amazon has withheld or redacted only a fraction of the total production—just 1.27%. The close of fact discovery is months away. As the Court will see from its *in camera* review, each of the documents for which Amazon is standing on its claim of privilege is protected by the attorney-client privilege, the work-product doctrine, or both. Plaintiffs also retain the opportunity to make specific challenges to entries on Amazon's privilege log, and we will work diligently with Plaintiffs to resolve them, as we have done throughout these cases. Accordingly, Amazon respectfully submits that the Court should enter an order resolving these issues, and allow the parties to focus on the substantive antitrust questions at issue in these and related litigations.

## I.   THE VAST MAJORITY OF THE 100 DOCUMENTS THAT PLAINTIFFS SELECTED REFLECT PRIVILEGED COMMUNICATIONS OR ATTORNEY WORK PRODUCT, IN WHOLE OR IN PART.

Amazon describes the legal principles that establish that each one of the 85 *in camera* documents that the Court should consider are protected from disclosure. For the Court's convenience, Amazon has also attached a chart to this letter sorting each of the documents into one or more of these categories.

**Category 1:  The documents reflect the advice of lawyers consulted on legal or regulatory risk.**

Many of the documents that Plaintiffs identified contain requests to lawyers for legal advice or responses providing that legal advice. These "confidential communications between attorneys and clients, which are made for the purpose of giving legal advice," are protected from disclosure. *United States* v. *Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020); *United States* v. *Richey*, 632 F.3d 559, 566 (9th Cir. 2011).

For example, in **Document 14**,  In **Document 42**,                                              And, in **Document 27**,                                              The privilege protects these and similar communications.

Notably, many of these communications seek and provide advice on business decisions in light of ongoing legal and regulatory proceedings on topics at issue in these and related cases. During the nearly ten-year period for which Amazon has produced documents in the above-captioned cases, the broad topics addressed in the documents were the topic of regulatory inquiry and, beginning in 2020, active litigation. Specifically, antitrust-related investigations into Amazon's pricing policies started in about 2013 in Europe, focusing on the former Price Parity

**HIGHLY CONFIDENTIAL**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable John H. Chun                                                              3

Provision (PPP) contained in some seller agreements at that time.  *See* Amazon's Opposition to Class Certification Motion, *De Coster*, Case No. 2:21-cv-00693 (Nov. 26, 2024), Dkt. 232, at 5, 7–8 (discussing the former PPP).  Amazon had removed that provision from all third-party seller agreements worldwide by March 2019, *id.*, but nonetheless, private plaintiffs began to bring antitrust cases in 2020, arguing—among other things—that Amazon's separate price <u>competitiveness</u> policies and practices (the Featured Offer, Select Competitor – Featured Offer Disqualification (SC-FOD), the Marketplace Fair Pricing Policy (MFPP), the Amazon Standards for Brands (ASB), and the Seller Code of Conduct (SCC)), together with communications with sellers and other conduct, operate as a "de facto" price parity requirement. *Id.* at 4–16.  Plaintiffs are wrong.  *Id.* (citing Amazon declarations, Dkts. 234–243).  However, in the face of ongoing antitrust proceedings, before any of these matters have ever been properly adjudicated, no matter how unfounded they are and were, day-to-day decisions about those same policies and practices had to be made.

Particularly faced with these novel theories and active litigation and investigations, it is not only entirely lawful, but eminently reasonable and prudent, to consult lawyers for advice.  "In light of the vast and complicated array of regulatory legislation confronting the modern corporation, corporations, unlike most individuals, 'constantly go to lawyers to find out how to obey the law,' particularly since compliance with the [antitrust] law[s] . . . is hardly an instinctive matter." *Upjohn Co.* v. *United States*, 449 U.S. 383, 392 (1981) (internal citations omitted); *see also id.* at 389 (privilege allows "full and frank communication" and promotes "broader public interests in the observance of law and administration of justice"); *Roth* v. *Aon Corp.*, 254 F.R.D. 538, 542 (N.D. Ill. 2009) ("To disallow corporations the space to collectively discuss sensitive information with legal counsel would be to ignore the realities of large-scale corporate operation."); *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, 2017 WL 6757558, at *7 (N.D. Fla. 2017) (in-house counsel in highly regulated industries "frequently are involved in product liability litigation and adversarial challenges by regulatory authorities," including "coordinating the company's legal position, responding to issues from outside counsel and advising the company on legal strategies and actions that should or should not be taken with regard to both business and legal issues. The involvement of attorneys with business teams consisting of non-legal personnel is the norm in many corporations.").

In this complex landscape, it is also unsurprising that, while it may not be obvious on the face of some documents why they are privileged, analysis in context illuminates their privileged nature.  For example, in **Document 8,** ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████.  *See* Brown Decl., *De Coster*, Case No. 2:21-cv-00693 (Nov. 25, 2024), Dkt. 241, at ¶¶ 33–36.  The decision to ██████████████████ implicated deep and ongoing legal analysis and advice, which is why legal was consulted on the strategy document.  As discussed below, should the Court require additional information as to any specific document, Amazon is willing to provide it.

**HIGHLY CONFIDENTIAL**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable John H. Chun                                                                          4

**Category 2: The documents reflect communications <u>about</u> legal advice.**

Communications "between nonlegal employees in which the employees <u>discuss</u> or <u>transmit</u> legal advice given by counsel," discuss a non-attorney's <u>request</u> for legal advice, or discuss their "<u>intent</u> to seek legal advice," are all privileged. *United States* v. *ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002) (emphasis added); *United States ex rel. Schmuckley* v. *Rite Aid Corp.*, 2023 WL 425841, at *2 (E.D. Cal. Jan. 26, 2023) ("the privilege may apply to 'a communication between nonlegal employees in which the employees discuss or transmit legal advice given by counsel,' as well as 'an employee['s] [communication regarding] her intent to seek legal advice about a particular issue.'"); *Garner* v. *Amazon.com, Inc.*, 2024 WL 4266665, at *1 (W.D. Wash. 2024) ("a privileged communication does not lose its protections simply because its substance is shared among non-legal professionals in the client organization … who … need to know its contents.'") (citing cases). For example, in **Document 49, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮** the "legal guidance" behind specific decisions. This is no less privileged than a direct communication between lawyer and client.

**Category 3: The documents' primary purpose is to provide legal advice, even if they also have a business purpose.**

Many of the 100 documents could be classified as dual-purpose, in that they both seek legal advice and also have a business purpose. These dual-purpose documents are protected by attorney-client privilege so long as a <u>primary purpose</u> was the giving or obtaining of an attorney's legal advice. Order, *Frame-Wilson*, Case No. 2:20-cv-00424 (Feb. 3, 2025), Dkt. 256, (Amazon may withhold documents for which "a primary purpose of the communication was to request or provide legal advice"); *see also In re Grand Jury*, 23 F.4th 1088, 1091–92 (9th Cir. 2021); *Staley* v. *Gilead Sciences Inc.*, 2021 WL 4318403, at *2 (N.D. Cal. 2021) ("[L]egal advice on a business decision" is therefore privileged if the advice was "made in confidence and in his or her capacity as an attorney.") (citing cases).

Courts applying the "primary purpose" rule protect documents containing legal advice <u>about</u> business decisions. *See, e.g.*, *Polaris Innovations Ltd.* v. *Kingston Tech. Co., Inc.*, 2017 WL 8220457, at *4 (C.D. Cal. June 16, 2017) ("technical due diligence" on patents was privileged when it was performed both "so that Polaris ultimately could make a business decision (whether to buy the patents and at what price)" and "in furtherance of Polaris's obtaining legal advice (*e.g.*, the strength of the patents, possible infringers)."); *NECA-IBEW Pension Tr. Fund* v. *Precision Castparts Corp.*, 2019 WL 4750251, at *4 (D. Or. 2019) (proxy fight documents, which, while not "categorically legal advice," were made in "the presence of pending litigation," and were privileged because client "solicited legal advice in their communications to outside counsel related to drafting that document.").

Importantly, documents do not lose their privileged status simply because they seek legal input about external-facing talking points or communications. For example, in *Klein* v. *Meta Platforms, Inc.*, 2022 WL 767096, at *3 (N.D. Cal. 2022), the court found that communications about the company's response to a press inquiry on an "an issue that was then the subject of active

**HIGHLY CONFIDENTIAL**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable John H. Chun                                                          5

litigation" were privileged because "the disputed communications as a whole concern the giving and receiving of legal advice regarding Meta's response to the press inquiry" and the statements could be used against Meta as party admissions in litigation. *See also In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 329 F.R.D. 656, 664 (D. Or. 2019) (protecting as work product talking points for use in customer service calls pertaining to data breach litigation).

For example, **Document 1** is —at a time when each of these above-captioned lawsuits was already pending before this Court—

. *Klein*, 2022 WL 767096 at *3 ("the disputed communications as a whole concern the giving and receiving of legal advice regarding Meta's response to the press inquiry"). *See also* **Document 58**

.

**Category 4:  Amazon redacted documents to protect only privileged content.**

Wherever possible, Amazon redacted (not withheld) documents—including dual-purpose documents—to protect only the privileged or work-product portion.  Every document still to be reviewed from **Document 37 to 100** falls into this category.  Even if a "document as a whole addresses predominantly business matters," there is a "long recognized rule that the attorney-client privilege" can still apply "to discrete communications contained within a document." *United States* v. *Chevron Corp.*, 1996 WL 444597, at *2 (N.D. Cal. 1996).  For such documents, it is appropriate to redact parts that contain "legal advice that is incidental to the nonlegal advice that is the predominant purpose of the communication." *Dunsmore* v. *San Diego County Sheriff's Dept.*, 2023 WL 8631663, at *7 (S.D. Cal. 2023).  That is what Amazon has done.

As Amazon's lead e-discovery counsel attested in the related FTC case (which is the source of some of the documents produced here), it is typical for 10–40% of documents in a complex case to be redacted, but in this production, a substantially higher percentage—more than 60%—of potentially privileged documents required redactions.  This resulted in significantly more information being produced to Plaintiffs than if those documents were withheld in their entirety, but also required greater amounts of quality control and review time—a much more complicated review. *See* Keeling Decl., *FTC* v. *Amazon*, Case No. 2:23-cv-01495-JHC (Feb. 20, 2025), Dkt. 420, at ¶ 12(a).

**Category 5:  The documents reflect attorney work product or legal fact gathering.**

Some of the documents reflect information that businesspeople were gathering at the direction of lawyers for the purpose of allowing them to provide legal advice.  For example, in **Document 9,**

**HIGHLY CONFIDENTIAL**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable John H. Chun                                                    6

These documents are also privileged. *See In re Diisocyanates Antitrust Litig.*, 2024 WL 4265185, at *1 (W.D. Pa. 2024) ("In the [case] of a corporate client, privileged communications may be shared by non-attorney employees in order to relay information requested by attorneys"); *accord In re: Abilify (Aripiprazole) Prods. Liab. Litig.,* 2017 WL 6757558, at *5–6; *Garner*, 2024 WL 4266665, at *1 ("In order to promote frank and complete conversations between the client and attorney, the privilege protects not only communications from the attorney that convey legal advice, but also the client's 'giving of information to the lawyer to enable him to give sound and informed advice.'" (citing *Upjohn*)).

Many of these documents are also protected by the work-product doctrine, which protects materials prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative. *U.S.* v. *Richey*, 632 F.3d 559, 567 (9th Cir. 2011). It "extends to documents prepared in anticipation of administrative litigation." *Owens* v. *Wesco Aircraft Hardware Corp.*, 2020 WL 6114916, at *3 (C.D. Cal. Apr. 6, 2020) (collecting cases); *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F. 3d 900, 904–05 (9th Cir. 2004) (documents prepared for EPA investigation were protected work product). It protects not only documents prepared by attorneys, but "documents prepared by a non-attorney client and the client's non-attorney representatives" if prepared in anticipation of litigation. *Intex Recreation Corp.* v. *Bestway (USA), Inc.*, 2023 WL 6193018, at *2 (C.D. Cal. Sept. 8, 2023). For example, **Document 17** ██████████████████████████. Such fact-gathering done at the express, written direction of attorneys for the purpose of ███████████████████ falls squarely within work-product protections.

Notably, as applied to dual-purpose documents, work-product doctrine protects a broader set of materials than attorney-client privilege does. Anything prepared "because of" the prospect of litigation or adversarial regulatory proceedings is work product, not just documents for which the primary purpose was to seek or provide legal advice. *In re Grand Jury*, 23 F.4th at 1091 (broader "because of" test "does not consider whether litigation was a primary or secondary motive behind the creation of a document"). The "because of" test "'considers the totality of the circumstances and affords protection when it can fairly be said that the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation.'" *Id.* at 1091–92.

Again, it is of no moment that the documents may have been prepared for public dissemination while the company was facing adversarial litigation or investigations. For example, an insurer's customer service scripts for responding to inquiries about a data breach are work product because, absent litigation, the scripts "might well have been in a substantially different format" or contained different context. *Premera Blue Cross*, 329 F.R.D. at 664.

**HIGHLY CONFIDENTIAL**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable John H. Chun                                                                          7

**Category 6:  Amazon has changed the production status for a handful of documents.**

> Nine of the documents have already been produced to Plaintiffs.

Nine of the 100 documents (**Documents 3, 31, 33, 36, 45, 60, 78, 97, and 98**) are duplicates of documents that have already been produced, under other Bates numbers.  The duplicates remained on Amazon's log due to a ministerial error.  *Cf. Twin Bridges Waste & Recycling, LLC* v. *Cnty. Waste & Recycling Serv., Inc.*, 2024 WL 3791235, at *2 (N.D.N.Y. 2024) (declining to order production of documents where technical error resulted in the inclusion of an incorrect name on a privilege log).  Because Plaintiffs have already received these documents, the Court need not issue any order concerning these entries.

> Amazon has modified or narrowed the privilege calls and redactions on thirteen of the documents.

In the course of compiling these documents for *in camera* review, Amazon determined that a handful of withheld or previously redacted documents should have been handled differently.  Several of these were ministerial issues.  **Document 10**, for instance, had been slated for production with redactions, but due to a technical issue, the redacted version was not produced.  The version Amazon has submitted *in camera* contains proper redactions.  And in **Documents 12 and 77**, the reviewer appears to have confused a businessperson with an Amazon lawyer with the same name.[2]  After further review, Amazon has modified redactions on **Documents 37, 41, 57, 63, and 73**, and will produce in their entirety to Plaintiffs one document that was previously withheld in full (**Document 12**) and five documents that were previously redacted in part (**Documents 39, 40, 67, 77, 88**).  Amazon has also identified and clawed back documents where the reviewers redacted too <u>little</u>, demonstrating that normal human error can run both in favor of over- and under-disclosure (**Documents 37 and 38**).  Protective Order, *Frame-Wilson*, 2:20-cv-00424 (Feb. 28, 2023), Dkt. 90, at ¶ 10 (no waiver from disclosure of privileged material).

Reviewer error is to be expected in a review of this size.  Revisiting redactions or other calls on just 13% of a hand-selected population of documents is less than the expected rate of error for large document productions <u>generally</u>.  *See Illumina*, 2021 WL 2662074, at *5 (agreeing with privilege claims "about three quarters of the time" is "no indication of a significant pattern of misusing the privilege"); *U.S.* v. *Google*, ECF No. 353, at 61:02–61:13 (where "at least 75 percent of Google's privilege claims . . . were clearly privileged," no conclusion that "Google is acting in bad faith"); *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 2013 WL 8445354, at *4 (E.D. Pa. 2013) (40 percent error rate "is not enough to require a comprehensive review of all of the documents already withheld" because the subset of documents reviewed come "from a larger pool of more than 16,000 withheld attachments").  And it is certainly no cause for concern in a <u>hand-selected</u> population of 100 documents—hardly a random sample.  *See Am. Nat. Bank & Tr. Co. of Chicago* v. *Equitable Life Assur. Soc of U.S.*, 406 F.3d 867, 879 (7th Cir. 2005) ("There is no reason to believe that the twenty documents selected were representative of the entire log.  In fact, it is likely that the sample was unrepresentative because, given the possibility of a windfall,

---

[2] Amazon will re-review its log to ensure that there are no other instances of this confusion.

**HIGHLY CONFIDENTIAL**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable John H. Chun                                                                          8

Emerald had every incentive to cherry-pick the most vulnerable documents."); *Grae* v. *Corr. Corp. of Am.*, 2020 WL 3035915, at *10 (M.D. Tenn. June 5, 2020) (error rate of 20% not from "a random sample, but 20% of the examples specifically selected by the party challenging privilege," did not warrant special master review).

Making privilege determinations is challenging even for courts and attorneys. *SGD Eng'g. Ltd.* v. *Lockheed Martin Corp. Inc.*, 2013 WL 2297175, at *2 (D. Ariz. 2013). Many of the reviewed documents are dual-purpose documents, as noted above, which are an "especially difficult" "area of privilege law," and reasonable lawyers can have "good-faith differences of opinion" over privilege calls. *Am. Nat'l Bank & Tr. Co.*, 406 F.3d at 878–79; *Trading Techs. Int'l, Inc.* v. *eSpeed, Inc.*, 2007 WL 844558, at *1 (N.D. Ill. 2007) ("the lines may be difficult to draw"); *U.S.* v. *Google*, ECF No. 353, at 61:15–61:17 ("the reality is that, given the nature of these documents and the source of them, it's not always going to be clear, crystal clear, from the face of a record" whether the document is privileged).

## II.    AMAZON HAS ACTED IN GOOD FAITH

This privilege review was exceedingly difficult. Amazon has thus far produced 2.6 million documents in these private cases. The documents are often dense, single-spaced memoranda. The production period spans more than a decade, requiring an understanding of the complex and changing regulatory and legal environment to place communications in the proper context. The privilege review in this case has been one of the most challenging that specialized e-discovery counsel has ever faced. *See* Keeling Decl., *FTC* v. *Amazon*, Case No. 2:23-cv-01495-JHC (Feb. 20, 2025), Dkt. 420, at ¶ 12 *et seq.* Despite the challenges, as we informed the Court on January 31, 2025, Amazon has always been, and remains, committed to getting privilege right and ensuring consistency and accuracy in every production to this or any other court or regulator.

Amazon devoted substantial resources to this review. Over 200 lawyers, including outside counsel from five law firms, participated in the re-review in various roles—including first-level re-review, quality control and consistency, and privilege logging—which covered nearly 140,000 privilege log entries across bespoke privilege logs prepared in other contexts. Amazon's review included a document's full family, other branches of an email chain, and related background. Amazon also biased in favor of redacting portions of a document instead of fully withholding documents, as noted above—a more time-consuming process. To look on Amazon's voluntary re-review with suspicion would "effectively penalize counsel for voluntarily revisiting the basis for withholding documents." *Cf. FERC* v. *J.P. Morgan Ventures Energy Corp.*, 914 F. Supp. 2d 5, 9 (D.D.C. 2012).

Moreover, Amazon produced documents regardless of whether the document was labeled "privileged and confidential" and regardless of whether a nonlawyer described a communication as "seeking legal advice." If the document was not privileged or work product, or if it required only minimal redactions to protect the portion of the document that sought or received legal advice, Amazon produced the document. Amazon has withheld or redacted just 1.27% of the 2.6 million documents it has produced, and the instant submission to the Court demonstrates the absence of any "fraudulent privilege-cloaking scheme," Jan. 31, 2025 Hr'g Tr. 7:22–7:25, as they show

**HIGHLY CONFIDENTIAL**

A-9

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable John H. Chun                                                      9

attorneys providing appropriate legal advice on the scope of the attorney-client privilege.  *E.g.* **Documents 42, 68.**

With no "indication of a significant pattern of misusing the privilege," Plaintiffs are not entitled to further relief.  *See Illumina*, 2021 WL 2662074, at \*5.  In addition, Plaintiffs have made no showing of prejudice.  Nor can they, as they have received an amended privilege log well before the start of depositions.  *Cf. Lyons* v. *NBCUniversal Media, LLC*, 2021 WL 4777143, at \*5 (C.D. Cal. July 1, 2021) (no prejudice where party eventually received "adequate privilege log" but complained of "mere delay"); *Tibble* v. *Edison Int'l*, 2008 WL 5600230, at \*2 (C.D. Cal. 2008) (no "cognizable prejudice" where plaintiffs received complete privilege log prior to depositions).  Plaintiffs will have the full opportunity to ask witnesses questions at depositions about those produced documents.  And, to the extent Plaintiffs have additional challenges, Amazon remains committed to continuing to cooperate with Plaintiffs to resolve them in an orderly fashion.

Finally, while Amazon believes the Court can and should uphold Amazon's claim of privilege and work product protection on the face of the materials provided to the Court, Amazon appreciates that viewing isolated documents outside of the context of the larger document production can be challenging.  Should the Court require additional information, Amazon would be happy to provide it *in camera*, subject to a Court order requesting such information to ensure that providing these materials would not waive the applicable privilege or protection.  *See, e.g.*, *Kasza* v. *Browner*, 133 F.3d 1159, 1169 (9th Cir. 1998) ("Elaborating the basis for the claim of privilege through *in camera* submissions is unexceptionable.").

Respectfully Submitted,

*/s/ Karen L. Dunn*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

*/s/ John A. Goldmark*

DAVIS WRIGHT TREMAINE LLP

Enclosures:

Exhibit A

**HIGHLY CONFIDENTIAL**

A-10

Case 2:20-cv-00424-JHC    Document 296-2    Filed 03/25/25    Page 11 of 42

**Exhibit A: Categorical Chart for *In Camera* Documents**

| P's Challenge # | Category 1: Direct Provision of Legal Advice or Direct Requests for Legal Advice | Category 2: Conveying Legal Advice or Request for Legal Advice | Category 3: Primary Purpose of Communication is Legal Advice | Category 4: Redacted | Category 5: Work Product or Collecting Information for Purposes of Providing Legal Advice | Category 6: Change in Production Status | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Already Produced to Plaintiffs | Technical or Other Error | Clawback |
| 001 | ✓ | | | | ✓ | | | |
| 002 | ✓ | ✓ | ✓ | | ✓ | | | |
| 003 | | | | | | ✓ | | |
| 004 | ✓ | | ✓ | | | | | |
| 005 | ✓ | | ✓ | | | | | |
| 006 | ✓ | | ✓ | | ✓ | | | |
| 007 | ✓ | | ✓ | | ✓ | | | |
| 008 | ✓ | ✓ | ✓ | | | | | |
| 009 | ✓ | | ✓ | | ✓ | | | |
| 010 | | | ✓ | ✓ | ✓ | | ✓ | |
| 011 | ✓ | | ✓ | | | | | |
| 012 | | | | | | | ✓ | |
| 013 | ✓ | | ✓ | | ✓ | | | |
| 014 | ✓ | | ✓ | | | | | |
| 015 | | | ✓ | | | | | |
| 016 | ✓ | | ✓ | | ✓ | | | |
| 017 | | | ✓ | | ✓ | | | |
| 018 | ✓ | | ✓ | | | | | |
| 019 | | ✓ | ✓ | | ✓ | | | |
| 020 | ✓ | ✓ | ✓ | | ✓ | | | |
| 021 | ✓ | ✓ | ✓ | | | | | |
| 022 | ✓ | | ✓ | | | | | |
| 023 | ✓ | | ✓ | | | | | |
| 024 | ✓ | | ✓ | | ✓ | | | |
| 025 | ✓ | | ✓ | | | | | |
| 026 | ✓ | | ✓ | | | | | |
| 027 | ✓ | | ✓ | | | | | |
| 028 | | | ✓ | | | | | |
| 029 | ✓ | | ✓ | | | | | |
| 030 | ✓ | | ✓ | | | | | |
| 031 | | | | | | ✓ | | |
| 032 | ✓ | | ✓ | | ✓ | | | |
| 033 | | | | | | ✓ | | |
| 034 | | ✓ | ✓ | | ✓ | | | |
| 035 | | | | | | ✓ | | |
| 036 | | | | | | | ✓ | |
| 037 | ✓ | | ✓ | ✓ | | | | ✓ |
| 038 | | ✓ | ✓ | ✓ | | | | ✓ |
| 039 | | | | | | | ✓ | |
| 040 | | | | | | | ✓ | |

**HIGHLY CONFIDENTIAL**

A-11

Case: 25-3099, 06/04/2025, DktEntry: 14.1, Page 56 of 323

Case 2:20-cv-00424-JHC   Document 296-2   Filed 03/25/25   Page 12 of 42
Exhibit A: Categorical Chart for *In Camera* Documents

| P's Challenge # | Category 1: Direct Provision of Legal Advice or Direct Requests for Legal Advice | Category 2: Conveying Legal Advice or Request for Legal Advice | Category 3: Primary Purpose of Communication is Legal Advice | Category 4: Redacted | Category 5: Work Product or Collecting Information for Purposes of Providing Legal Advice | Category 6: Change in Production Status | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Already Produced to Plaintiffs | Technical or Other Error | Clawback |
| 041 | | ✓ | ✓ | ✓ | ✓ | | ✓ | |
| 042 | ✓ | | ✓ | ✓ | | | | |
| 043 | ✓ | | ✓ | ✓ | | | | |
| 044 | | ✓ | ✓ | | ✓ | | | |
| 045 | | | | | | ✓ | | |
| 046 | ✓ | | ✓ | | | | | |
| 047 | | ✓ | ✓ | ✓ | | | | |
| 048 | | ✓ | ✓ | ✓ | | | | |
| 049 | | ✓ | ✓ | ✓ | | | | |
| 050 | | | | ✓ | | | | |
| 051 | ✓ | | ✓ | ✓ | | | | |
| 052 | | ✓ | ✓ | ✓ | ✓ | | | |
| 053 | ✓ | | ✓ | ✓ | ✓ | | | |
| 054 | ✓ | | ✓ | ✓ | | | | |
| 055 | | ✓ | ✓ | ✓ | ✓ | | | |
| 056 | | ✓ | ✓ | ✓ | | | | |
| 057 | ✓ | | | ✓ | ✓ | | ✓ | |
| 058 | ✓ | | ✓ | ✓ | ✓ | | | |
| 059 | ✓ | | ✓ | | ✓ | | | |
| 060 | | | | | | ✓ | | |
| 061 | ✓ | | | ✓ | | | | |
| 062 | ✓ | | | ✓ | | | ✓ | |
| 063 | | | | ✓ | | | | |
| 064 | | ✓ | | ✓ | | | | |
| 065 | ✓ | ✓ | | ✓ | | | | |
| 066 | | | | ✓ | | | ✓ | |
| 067 | | | | ✓ | | | | |
| 068 | ✓ | | ✓ | ✓ | | | | |
| 069 | ✓ | ✓ | ✓ | ✓ | | | | |
| 070 | | ✓ | ✓ | ✓ | | | | |
| 071 | | ✓ | ✓ | ✓ | | | | |
| 072 | ✓ | | ✓ | ✓ | | | ✓ | |
| 073 | ✓ | | ✓ | ✓ | | | | |
| 074 | | ✓ | ✓ | ✓ | | | | |
| 075 | ✓ | | ✓ | ✓ | | | | |
| 076 | | | ✓ | | | ✓ | | |
| 077 | | | | | | | ✓ | |
| 078 | | ✓ | ✓ | | | | | |
| 079 | ✓ | ✓ | ✓ | ✓ | | | | |
| 080 | | | ✓ | | | | | |

**HIGHLY CONFIDENTIAL**

A-12

Case 2:20-cv-00424-JHC   Document 296-2   Filed 03/25/25   Page 13 of 42

**Exhibit A: Categorical Chart for *In Camera* Documents**

| P's Challenge # | Category 1: Direct Provision of Legal Advice or Direct Requests for Legal Advice | Category 2: Conveying Legal Advice or Request for Legal Advice | Category 3: Primary Purpose of Communication is Legal Advice | Category 4: Redacted | Category 5: Work Product or Collecting Information for Purposes of Providing Legal Advice | Category 6: Change in Production Status | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Already Produced to Plaintiffs | Technical or Other Error | Clawback |
| 081 | ✓ | | | | | | | |
| 082 | | | ✓ | ✓ | | | | |
| 083 | | ✓ | ✓ | ✓ | ✓ | | | |
| 084 | ✓ | | ✓ | ✓ | ✓ | | | |
| 085 | | ✓ | ✓ | ✓ | ✓ | | | |
| 086 | ✓ | | ✓ | ✓ | ✓ | | | |
| 087 | ✓ | | ✓ | ✓ | ✓ | | | |
| 088 | | | | | | | ✓ | |
| 089 | | ✓ | ✓ | ✓ | | | | |
| 090 | ✓ | | ✓ | ✓ | | | | |
| 091 | ✓ | | ✓ | ✓ | ✓ | | | |
| 092 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| 093 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| 094 | | | ✓ | ✓ | ✓ | | | |
| 095 | | | ✓ | | ✓ | | | |
| 096 | | | ✓ | ✓ | | | | |
| 097 | | | | | | ✓ | | |
| 098 | | | | | | ✓ | | |
| 099 | ✓ | | ✓ | ✓ | | | | |
| 100 | ✓ | | ✓ | ✓ | ✓ | | | |

**HIGHLY CONFIDENTIAL**

A-13

A-14

The Honorable John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ELIZABETH DE COSTER *et al.*, on behalf of themselves and all others similarly situated,<br><br>           Plaintiffs,<br><br>   v.<br><br>AMAZON.COM, INC., a Delaware corporation,<br><br>           Defendant. | No. 2:21-cv-00693-JHC |
| DEBORAH FRAME-WILSON *et al.*, on behalf of themselves and all others similarly situated.<br><br>           Plaintiffs,<br><br>   v.<br><br>AMAZON.COM, INC., a Delaware corporation,<br><br>           Defendant. | No. 2:20-cv-00424-JHC<br><br>**RESPONSE TO AMAZON'S LETTER RE: *IN CAMERA* REVIEW**<br><br>**FILED UNDER SEAL** |
| CHRISTOPHER BROWN, *et al.*,<br><br>           Plaintiffs,<br><br>   v.<br><br>AMAZON.COM, INC., a Delaware corporation,<br><br>           Defendant. | No. 2:22-cv-00965-JHC |

RESPONSE TO AMAZON'S LETTER RE: *IN CAMERA* REVIEW
Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC
010888-11/3126800 V1



1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

A-15

**TABLE OF CONTENTS**

Page

I.    AMAZON'S INTENTIONAL DOWNGRADES SHOW ITS PRIVILEGE
      LOG STILL CANNOT BE TRUSTED.............................................................. 1

II.   AMAZON WAIVED PRIVILEGE OVER DOCUMENTS IT
      INTENTIONALLY PRODUCED AFTER ITS PRIVILEGE REREVIEW...................... 4

      A.    Federal Rule of Evidence 502(b) governs claw back of
            inadvertently produced documents in these cases. .................................. 5

      B.    Amazon cannot make a showing of inadvertence.................................... 7

III.  AMAZON'S INTERPRETATION OF PRIVILEGE LAW IS WRONG.......................... 7

      A.    The Ninth Circuit has recently clarified that dual purpose
            communications must have a single primary purpose. ........................... 7

      B.    Ongoing litigation and regulatory scrutiny do not transform every
            communication involving a lawyer into a privileged
            communication................................................................................. 8

      C.    "Fact gathering" is not protected by the attorney-client privilege. ......... 10

IV.   AMAZON ONLY ASSERTED WORK PRODUCT OVER A HANDFUL
      OF DOCUMENTS IN THE SAMPLE, AND ITS CLAIMS ARE
      INSUFFICIENT................................................................................. 11



**TABLE OF AUTHORITIES**

Page(s)

Cases

*Brown v. Google LLC,*
    2022 WL 12039375 (N.D. Cal. Oct. 20, 2022)..........................................................7

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.,*
    408 F.3d 1142 (9th Cir. 2005) ..........................................................................11

*In re California Bail Bond Antitrust Litig.,*
    2025 WL 770338 (N.D. Cal. Mar. 11, 2025)...................................................8, 9

*Chandola v. Seattle Hous. Auth.,*
    2014 WL 4685351 (W.D. Wash. Sept. 19, 2014)...............................................10

*City of Roseville Emps.' Ret. Sys. v. Apple Inc.,*
    2023 WL 5519304 (N.D. Cal. Aug. 25, 2023) .....................................................3

*In re Diisocyanates Antitrust Litig.,*
    2024 WL 3412049 (W.D. Pa. Mar. 28, 2024) .....................................................10

*In re Domestic Drywall Antitrust Litig.,*
    2014 WL 5090032 (E.D. Pa. Oct. 9, 2014)..........................................................10

*Epic Games, Inc. v. Apple Inc.,*
    2024 WL 4947269 (N.D. Cal. Dec. 2, 2024) ........................................................9

*Epic Games, Inc. v. Apple Inc.*
    No. 4:20-cv-05640-YGR, Dkt. 1171 (N.D. Cal. Feb. 4, 2025) .............................3

*Fed. Trade Comm'n v. Abbvie, Inc.,*
    2015 WL 8623076 (E.D. Pa. Dec. 14, 2015) ........................................................8

*Fed. Trade Comm'n v. Amazon.com, Inc.,*
    2024 WL 3620467 (W.D. Wash. Aug. 1, 2024).................................................5, 7

*Fed. Trade Comm'n v. Amazon.com, Inc.,*
    2025 WL 672885 (W.D. Wash. Mar. 3, 2025) .......................................................8

*In re Grand Jury,*
    23 F.4th 1088 (9th Cir. 2021) ............................................................................11

*Greer v. Cnty. of San Diego,*
    127 F.4th 1216 (9th Cir. 2025) .........................................................................7, 8

RESPONSE TO AMAZON LTR RE: *IN CAMERA* REVIEW - ii
Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC
010888-11/3126800 V1

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE     (206) 623-0594 FAX

A-17

*LD v. United Behav. Health*,
   2022 WL 4878726 (N.D. Cal. Oct. 3, 2022)............................................................12

*Ocean Beauty Seafoods LLC v. Alaska*,
   2022 WL 16532799 (W.D. Wash. Oct. 28, 2022) ..................................................10

*Phillips v. C.R. Bard, Inc.*,
   290 F.R.D. 615 (D. Nev. 2013)................................................................................9

*Smith v. Best Buy Stores, L.P.*,
   2017 WL 3484158 (D. Id. Aug. 14, 2017)................................................................6

*Solis v. Milk Specialties Co.*,
   854 F. Supp. 2d 629 (E.D. Wis. 2012).....................................................................9

*Sterling & Wilson Solar Solutions, Inc. v. Fidelity & Deposit Co. of Md.*,
   2025 WL 747511 (E.D. Wash. Mar. 7, 2025)..........................................................11

*Stirratt v. Uber Techs., Inc.*,
   2024 WL 1723710 (N.D. Cal. Apr. 19, 2024) .........................................................10

*United States v. Google LLC*,
   20-cv-03010-APM, Dkt. 353 (D.D.C. May 12, 2022)...............................................2

*United States v. Lipar*,
   2015 WL 7681272 (S.D. Tex. Aug. 30, 2015) ..........................................................2

*Wright v. Allstate Fire & Cas. Ins. Co.*,
   2022 WL 1213444 (W.D. Wash. Apr. 25, 2022).....................................................12

## OTHER AUTHORITIES

Fed. R. Evid. 502 ...........................................................................................................5, 7



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE     (206) 623-0594 FAX

A-18

1    Plaintiffs respectfully file this response to Amazon's March 11 Letter to the Court (Dkt.

2    284) ("Ltr.") regarding the Court's review of purportedly privileged documents and respond to the

3    following issues Amazon raises:

4    *First*, Amazon's prior downgrading of *at least three-quarters* of its original privilege log

5    entries, coupled with the Letter's acknowledgement that Amazon improperly withheld *15%*, and

6    too extensively redacted *another 8%*, of the documents Plaintiffs selected for the Court's *in camera*

7    review from Amazon's "final" log, demonstrates Amazon's privilege abuse. *See* Section I.

8    *Second*, when Amazon downgraded and produced documents from its privilege log during

9    its privilege rereview, it produced them intentionally. Pursuant to the Protective Order in these

10   cases, which specifically invokes the protections of Federal Rule of Evidence 502(b)—not Rule

11   502(d)—the Court should reject Amazon's efforts to claw back two of the redacted documents

12   Plaintiffs selected for the Court's *in camera* review. *See* Section II.

13   *Third,* Amazon has not supported its attorney-client privilege claims. Documents relating

14   to fact-gathering are not privileged. Routine regulatory guidance is also not privileged merely

15   because Amazon's attorneys communicated it or were otherwise "involved." *See* Section III.

16   *Finally*, for the five documents selected for *in camera* review over which Amazon recently

17   asserted work product protection, Amazon waived this privilege by not promptly asserting it, by

18   failing to identify the litigation that purportedly justified its work-product assertion, and by failing

19   to demonstrate that the documents would not otherwise exist in substantially the same form absent

20   the unspecified litigation. *See* Section IV.

21   **I.     AMAZON'S INTENTIONAL DOWNGRADES SHOW ITS PRIVILEGE LOG
              STILL CANNOT BE TRUSTED**

22   The Court ordered Amazon to provide its "final" privilege log, reflecting its privilege

23   rereview by February 25, 2025. *See Frame Wilson*, Dkt. 256, at 2. After the deadline, Amazon

24   produced an amended privilege log on February 28 ("Final Log"). In the Final Log—the product

25   of a months-long rereview—Amazon continues to assert privilege over 32,964 documents.

26

27

28

RESPONSE TO AMAZON LTR RE: *IN CAMERA* REVIEW - 1
Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC
010888-11/3126800 V1



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

A-19

1    Amazon produced the Final Log after representing to the Court that its outside counsel had

2    "looked hard at each of these documents in re-review," Jan. 31, 2025 Hrg. Tr. 33:10-11 (*Frame-*

3    *Wilson* Dkt. 258), and applied "very sophisticated" quality control efforts "to make sure we're

4    getting to the right result." *Id.* at 35:19-20. Amazon dismissed Plaintiffs' concerns with its

5    privilege review process as "generalized suspicion." *Id.* at 33:12. Amazon made these statements

6    the day after producing its January 29 privilege log, which reflected 36,386 withheld and 57,987

7    redacted documents. At that time, all that remained was Amazon's rereview of 23,000 redacted

8    documents on this log. *See id.* at 11:11-13. The volume of additional downgrades from the January

9    29 Log to the Final Log is wholly at odds with Amazon's representations at the hearing. In the 22

10   days between the Court's February 3 Order and Amazon's production of its Final Log, Amazon

11   downgraded over *61,000* documents.

12   Now, through its Letter, Amazon downgrades still *more* documents. Amazon concedes that

13   23 documents in the sample were improperly withheld to some degree and withdraws privilege

14   entirely for 15 of them. *See* Ltr. at 1 n.1 & 7.

15   Amazon's intentional downgrade of 23% of the *in camera* review sample underscores why

16   Plaintiffs cannot trust Amazon's Final Log. Courts have ordered relief for similar (and smaller)

17   overturn rates. *See, e.g., United States v. Google LLC*, 20-cv-03010-APM, Dkt. 353 (D.D.C. May

18   12, 2022) (ordering re-review of 15,000 withheld documents based 12% downgrade rate from 210-

19   document sample); *United States v. Lipar*, 2015 WL 7681272, at *4 (S.D. Tex. Aug. 30, 2015)

20   (noting appointment of special master after withholding party downgraded 25% of challenged

21   documents after self-downgrading 10%), *rev'd on other grounds*, 665 F. App'x 332 (5th Cir.

22   2016).

23   Over the course of its rereview, Amazon has downgraded somewhere between *76-94%* of

24   its privilege claims.[1] While Amazon claims its massive privilege downgrades show "the <u>absence</u>

25   _____

26   [1] The exact number of downgraded documents is difficult to calculate. 18.6% of the documents
     on the Final Log—25,764 out of 138,187—fall into the "Redacted and Produced" tabs, which
27   Amazon has represented could include documents that were initially logged as partially privileged
     and remained so logged throughout the re-review process. However, the logs clearly show that

28

RESPONSE TO AMAZON LTR RE: *IN CAMERA* REVIEW - 2
Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC
010888-11/3126800 V1


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE     (206) 623-0594 FAX

1   of any 'fraudulent privilege-cloaking scheme,'" and that there is "no indication of a significant

2   pattern of misusing the privilege," the numbers speak for themselves. Ltr. at 8-9 (quotation

3   omitted) (emphasis in original). So do the tens of thousands of documents that were withheld and

4   then ultimately produced that contain indicia of privilege-cloaking. Plaintiffs are entitled to

5   additional relief. *See* Order Regarding Evidentiary Hearing and Special Master Review at 3, *Epic*

6   *Games, Inc. v. Apple Inc.* No. 4:20-cv-05640-YGR, Dkt. 1171 (N.D. Cal. Feb. 4, 2025) (noting

7   "[s]anctions are warranted" in light of Apple's downgrade of 56% of its initial privilege claims,

8   even before the special master completes the review of Apple's remaining privilege claims); *City*

9   *of Roseville Emps.' Ret. Sys. v. Apple Inc.*, 2023 WL 5519304, at \*6 (N.D. Cal. Aug. 25, 2023)

10  (ordering *in camera* review of all remaining disputed documents "[i]n light of the large percentage

11  of documents the Court previously found to be non-privileged").

12         Amazon's excuses do not ameliorate concerns that Amazon's Final Log continues to

13  contain improperly withheld material. *First*, Amazon admits that it wrongfully withheld

14  Documents 12 and 77 because its lawyers purportedly confused a businessperson with a lawyer.

15  Ltr. at 7. This vindicates Plaintiffs' concerns that the persons on whom Amazon bases its privilege

16  claims are either not attorneys or not acting primarily for purposes of providing legal advice. *See,*

17  *e.g.*, Supplemental Brief in Support of Plaintiff's Renewed Motion to Compel Production of

18  Documents from Amazon's Privilege Logs and for Appointment of a Special Master, *Frame*

19  *Wilson* Dkt. 226, at 5-6.

20         *Second*, Amazon admits that it had produced at "other Bates numbers" duplicates of nine

21  of the documents it is now downgrading. Ltr. at 7. Amazon provides no specifics regarding the

22  purported "ministerial error" that caused it to improperly withhold these documents. *Id*. It appears

23  that certain Amazon lawyers made the correct privilege calls and produced the documents, while

24  other Amazon lawyers improperly withheld them. Two of the five redacted documents within this

25  set (Documents 60 and 98) contain the type of privilege-cloaking language that Plaintiffs earlier

26  ───────────────

27  76.1% of the documents on the Final Log—105,223 out of 138,187—were fully downgraded as
    "Not Privileged" after initially being withheld (in full or in part).

28



raised with the Court (*e.g.*, "Josh – seeking guidance," followed by "Shrinking thread to address the below questions" (Document 60) and "Heidi, seeking legal counsel" followed by "Hi All" (Document 98)). These documents suggest that Amazon's rereview continued to be infected by its company privilege-cloaking practices.

*Third*, Amazon provides *no excuse* for the other documents it has downgraded "[a]fter further review." Ltr. at 7.

The Court should consider Amazon's intentional downgrades in evaluating additional necessary relief, including Plaintiffs' requests for fees.

## II.     AMAZON WAIVED PRIVILEGE OVER DOCUMENTS IT INTENTIONALLY PRODUCED AFTER ITS PRIVILEGE REREVIEW

As set forth below, Amazon waived privilege with respect to documents it downgraded from its privilege logs because the production of those documents was intentional, not inadvertent. Amazon doesn't get a do-over because it changed its mind again. Amazon seeks to claw back two documents Plaintiffs selected for *in camera* review: Document 37, produced with redactions on February 25, 2025, and Document 38, originally produced with redactions on August 9, 2024, and then produced again with fewer redactions on January 29, 2025. Amazon now claims that "human error" resulted in the application of insufficient redactions to both documents. Ltr. at 7. Amazon notified Plaintiffs of these claw backs only through its March 11 filing.

These claw backs follow a series of other claw backs Amazon has made since February 25 of documents it "inadvertently" downgraded during its privilege rereview. This includes three documents Amazon listed as "Not Privileged" or "Redacted and Produced" on its January 29 Log, and confirmed in its Final Log, that the *Frame Wilson* Plaintiffs cited in their motion for class certification.[2] According to Amazon, Plaintiffs cannot rely on Amazon's representations about whether material is or is not privileged following its privilege rereview, and it may claw back *any*

---

[2] Amazon has accused Plaintiffs of violating ethical rules by not confirming with Amazon that these documents were not privileged before using them and has indicated that it will file a motion for relief.

RESPONSE TO AMAZON LTR RE: *IN CAMERA* REVIEW - 4
Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC
010888-11/3126800 V1


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE     (206) 623-0594 FAX

A-22

material produced through the rereview at *any* time.[3] Amazon's stance is contrary to the Amended

Protective Order and governing law. *See Frame Wilson* Dkt. 179, at ¶ 11.

**A.    Federal Rule of Evidence 502(b) governs claw back of inadvertently produced documents in these cases.**

"Generally, a party waives privilege with respect to a document if they produce it." *Fed.*

*Trade Comm'n v. Amazon.com, Inc.*, 2024 WL 3620467, at *3 (W.D. Wash. Aug. 1, 2024). Federal

Rule of Evidence 502(b) governs "inadvertent disclosure," whereas Rule 502(d) provides that a

"court may order that the privilege or protection is not waived by disclosure connected with the

litigation pending before the court[.]" Fed. R. Evid. 502(b), (d). "Waiver of any privilege is the

threshold issue when determining whether a clawed back document is privileged." *Fed. Trade*

*Comm'n v. Amazon.com*, 2024 WL 3620467, at *3 (cleaned up). Amazon has the "burden of

proving that privilege is not waived." *Id*.

In support of its attempted claw back of Documents 37 and 38, Amazon cites the Protective

Order.[4] Ltr. at 7. The Protective Order, however, does not allow Amazon to claw back documents

it intentionally produced through its privilege rereview. *See Frame Wilson* Dkt. 179. Paragraph 11

of the Protective Order specifically "invokes the protections afforded by *Fed. R. Evid. 502(b)*" in

providing for the claw back of privileged material that has been "inadvertently produced."[5] *Id*. ¶

---

[3] There are many noticed depositions of Amazon witnesses that will be coordinated across three Plaintiffs groups. Amazon's late-stage privilege claim changes will inevitably cause disputes over the documents that may be used in depositions, which may not be discovered until documents are introduced in depositions. Plaintiffs expect this to be a significant issue, given the number of documents that Amazon employees improperly designated with "privileged and confidential" banners, which will undoubtedly create confusion during depositions.

[4] The Protective Order Amazon cites was amended in July 2024 (the amendments are unrelated to this dispute). *See Frame Wilson*, Dkt. 179.

[5] *Frame-Wilson* Dkt. 179, ¶ 11 ("When a Producing party gives notice to Receiving Parties that certain **inadvertently produced material** is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order or agreement that provides for production **without prior privilege review**. **This Order invokes the protections afforded by Fed. R. Evid. 502(b)**. As provided under Fed. R. Evid. 502(b) and 502(d) and subject to the limitations in Fed. R. Evid. 502(a), the disclosure of privileged material in connection with this litigation does not operate as waiver in this action or

---

RESPONSE TO AMAZON LTR RE: *IN CAMERA* REVIEW - 5
Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC
010888-11/3126800 V1


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

11 (emphasis added). This language is not found in this District's Model Protective Order.[6] The Parties departed from the Model Protective Order to purposefully include it here. *See Frame-Wilson* Dkt. 178-2, at 21 (Parties' redline identifying Amended Protective Order's departures from the model protective order in compliance with LCR 26(c)(2)); *id.* Dkt. 77 (joint LCR 37 submission demonstrating the Parties' extensive negotiations concerning the initial protective order); *see also Smith v. Best Buy Stores, L.P.*, 2017 WL 3484158, at *2-4 (D. Id. Aug. 14, 2017) (denying claw back request because the parties' stipulated discovery plan did "not constitute a Rule 502(d) order or Rule 502(e) agreement" and the controlling claw back language did "not indicate a clear desire to protect intentional disclosures").

Consistent with the Parties' intent that Rule 502(b) govern waiver of inadvertently produced documents, the Protective Order intentionally omits the model stand-alone Rule 502(d) Order, including the model's language that "[t]he provisions of Fed. R. Evid. 502(b) do not apply," broad language of disclosure "inadvertent or otherwise," and the catch-all: "This Order shall be interpreted to provide the maximum protection allowed by Fed. R. Evid. 502(d)." *See Frame-Wilson* Dkt. 178-2, at 26. Thus, the reference to Rule 502(d) in the ESI Order has to be understood, consistent with the reference to Rule 502(d) in the Protective Order, as providing for non-waiver only when privileged documents are produced "without prior privilege review." *See Frame Wilson* Dkt. 179 ¶ 11; compare *Frame Wilson* Dkt. 79 § E.5.[7]

Rule 502(b) applies to Amazon's attempts to claw back documents it reviewed for privilege *at least twice*.

---

any other action by the Producing Party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law.") (emphasis added).

[6] *See* Western District of Washington Model Protective Order at 7, https://www.wawd.uscourts.gov/sites/wawd/files/ModelStipulatedProtectiveOrder%20CLEAN_2.1.23.pdf.

[7] "Pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law…" *Frame Wilson* Dkt. 79 § E.5.

RESPONSE TO AMAZON LTR RE: *IN CAMERA* REVIEW - 6
Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC
010888-11/3126800 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE     (206) 623-0594 FAX

A-24

**B.      Amazon cannot make a showing of inadvertence.**

Under Rule 502(b), disclosure waives privilege unless the disclosure was "inadvertent." *Fed. Trade Comm'n v. Amazon.com*, 2024 WL 3620467, at *5. "When a party makes a strategic decision it later regrets, such as redacting a document rather than withholding it completely as privileged, it cannot later claim inadvertence to shield itself from the consequences of its own judgment call." *Id.* at *6.

Amazon cannot show inadvertence because it purposefully produced Documents 37 and 38 after undertaking a privilege rereview: Amazon withheld these documents in full or in part "before identifying" them as "improperly withheld and producing [them] with redactions" or modifying existing redactions. *Id*. These "actions show that [Amazon's] production…was purposeful." *Id.* at *6; *see also Brown v. Google LLC*, 2022 WL 12039375, at *3, 5-6 (N.D. Cal. Oct. 20, 2022) (finding waiver over documents produced in "error" with too few redactions after privilege rereview because production was intentional). Amazon has provided no facts that could show production was an accident.

Because production was not inadvertent, the Court need not consider the second and third prongs of Rule 502(b)—whether Amazon took reasonable steps to prevent disclosure, and whether Amazon took prompt action to claw back the documents. *See* Fed. R. Evid. 502(b)(2), (3); *Fed. Trade Comm'n v. Amazon*, 2024 WL 3620467, at *7. Amazon has not even provided facts to analyze those prongs. Amazon has not revealed when it discovered the documents were inadvertently produced, nor has it provided any specifics about its review of these documents.

**III.      AMAZON'S INTERPRETATION OF PRIVILEGE LAW IS WRONG**

**A.      The Ninth Circuit has recently clarified that dual purpose communications must have a single primary purpose.**

Amazon contends that dual-purpose documents need only have "a primary purpose [of] giving or obtaining of an attorney's legal advice." Ltr. at 4 (emphasis in original). Incorrect; "'a dual-purpose communication can only have a single "primary" purpose.'" *Greer v. Cnty. of San Diego*, 127 F.4th 1216, 1224 (9th Cir. 2025) (quoting *In re Grand Jury*, 23 F.4th 1088, 1091 (9th

1    Cir. 2021)). It is not enough that *a* purpose in drafting a document is legal; it must be *the* primary

2    purpose. And, because Amazon's communications involve in-house counsel, Amazon must make

3    a "clear showing" that "the speaker made the communication for the purpose of obtaining or

4    providing legal advice" for privilege to attach. Mot. to Compel at 8, *Frame-Wilson* Dkt. 186

5    (quotation omitted); *In re California Bail Bond Antitrust Litig.*, 2025 WL 770338, at *3 (N.D. Cal.

6    Mar. 11, 2025).

7    **B.     Ongoing litigation and regulatory scrutiny do not transform every communication
             involving a lawyer into a privileged communication.**

8

9            That Amazon has faced regulatory scrutiny for a decade, and litigation since 2020, does

10   not support its contention that communications involving lawyers and touching on any of the

11   "broad topics" of regulatory scrutiny or litigation must have been made for *the primary purpose*

12   of seeking legal advice, rather than business advice. Ltr. at 2-5. "In the corporate context, almost

13   any act by a business carries the potential for running afoul of some law or regulation or giving

14   rise to a civil action yet the fact of extensive or pervasive regulation does not make the everyday

15   business activities legally privileged from discovery." *Fed. Trade Comm'n v. Abbvie, Inc.*, 2015

16   WL 8623076, at *9 (E.D. Pa. Dec. 14, 2015) (cleaned up). Even if complying with the law or

17   avoiding liability is an overall objective, "[p]rivilege does not descend like a giant fog bank over

18   every document that is in some way connected with an effort to achieve legal compliance." *Fed.*

19   *Trade Comm'n v. Amazon.com, Inc.*, 2025 WL 672885, at *3 (W.D. Wash. Mar. 3, 2025) (quoting

20   *Epic Games, Inc. v. Apple Inc.*, 2024 WL 4947269, at *1 (N.D. Cal. Dec. 2, 2024)). "[W]hat

21   matters is not the ultimate aim of avoiding liability, but rather whether *legal* advice is sought or

22   obtained to achieve that goal." *Greer*, 127 F.4th at 1232 (Koh, J., dissenting in part).

23           In other words, not all documents related to contested policies like Buy Box Suppression

24   that have passed under an attorney's eyes are privileged simply because those policies are impacted

25   by antitrust investigations or pending litigation. If that were the case, it "would effectively

26   immunize most of the industry's internal communications' because everything leaving the

27

28



1    company has to go through the legal department for review, comment and approval." *Phillips v.*

2    *C.R. Bard, Inc.*, 290 F.R.D. 615, 631 (D. Nev. 2013) (quotations omitted).

3        Consider Document 8 (Entry 0014621), which, according to Amazon's log, was a

4    communication from March 16, 2021. Amazon explains that this document concerns ████

5    ████████████████████████████████████████████████████████████████████

6    ██████████████████████████ Ltr. at 3. Amazon represents that because ████████████

7    ████████████████████████████████████████████████████ "legal was

8    consulted on the strategy document." *Id.* But ████████████████████████ does

9    not mean that every *strategy* document surrounding ████████████ was made for

10   the primary purpose of seeking legal advice, even if a lawyer is consulted on it.[8] *Epic Games*, 2024

11   WL 4947269, at *1, *2 ("a business analysis of ways to comply with a legal requirement,"

12   "discussion of status update to comply with a legal requirement combined with a business

13   discussion of potential options for compliance," and a "business proposal made in response to legal

14   advice …[that did] not reveal the content of the advice" were not privileged).

15       *Solis v. Milk Specialties Co.*, 854 F. Supp. 2d 629 (E.D. Wis. 2012), illustrates this point.

16   The court held that it is not legal advice to inform a party that it "can avoid liability by complying

17   with the law" and thus the defendant's plans to improve its National Fire Protection Association

18   standards, prepared at in-house counsel's request, and its in-house counsel's responses to them,

19   were *not privileged. Id.* at 634; *see also In re California Bail Bond Antitrust Litig.*, 2025 WL

20   770338, at *5 ("An attorney's advice does not constitute legal advice simply because it relates to

21   regulatory activity.").

22

---

23      [8] The suggestion that consulting a lawyer was the primary purpose of the communication
24  because of ██████████ (Ltr. at 3) is hard to square with Amazon's position in *Frame
Wilson* and *De Coster* in February 2024, when Plaintiffs sought a 30(b)(6) deposition on topics
25  relating to Buy Box Suppression (which SC-FOD automates). Amazon refused, arguing that it
wasn't on notice that Plaintiffs' claims reached Buy Box Suppression. Amazon would not provide
26  requested discovery unless Plaintiffs amended their Complaints. The same is true for Amazon's
claim that an email from 2022 involving an attorney about ████████████████████
27  ██████ (Document 1) was privileged because these cases were pending. Ltr. at 5.

28



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1    Here, Amazon seeks to justify its privilege designation for Document 27 because it

2  involves ███████████████████████████████████████ Ltr.

3  at 2. But ████████████████████ are *not* privileged to the extent they do not

4  contain "specific legal advice" and are more like business policies. *In re Diisocyanates Antitrust*

5  *Litig.*, 2024 WL 3412049, at *2-3 (W.D. Pa. Mar. 28, 2024) (compelling production of

6  presentations that served as training materials on antitrust compliance policies after *in camera*

7  review, despite the withholding party's claim that the materials "contain[ed] specific legal

8  advice"); *In re Domestic Drywall Antitrust Litig.*, 2014 WL 5090032, at *4 (E.D. Pa. Oct. 9, 2014)

9  (finding a final antitrust compliance policy, based on legal advice, was not privileged).

10  **C.    "Fact gathering" is not protected by the attorney-client privilege.**

11    Amazon inaccurately argues that "documents reflect[ing] information that businesspeople

12  were gathering at the direction of lawyers for the purpose of allowing them to provide legal advice"

13  are protected by the attorney-client privilege. Ltr. at 5-6.

14    Consider the example Amazon provides. Amazon represents that Document 1 involves a

15  request for ███████████████████████████ this factual

16  information is not privileged, even if Amazon's lawyer sought it for unidentified ████████

17  ████████████████████ Ltr. at 5. The attorney-client privilege "extends only to

18  protect the disclosure of communications; it does not protect disclosure of the underlying facts by

19  those who communicated with the attorney." *Ocean Beauty Seafoods LLC v. Alaska*, 2022 WL

20  16532799, at *2 (W.D. Wash. Oct. 28, 2022); *see also Chandola v. Seattle Hous. Auth.*, 2014 WL

21  4685351, at *4 (W.D. Wash. Sept. 19, 2014) ("[F]acts underlying … legal advice are not

22  privileged."). That certain facts may have a legal consequence does not transform them into

23  privileged material. *See Stirratt v. Uber Techs., Inc.*, 2024 WL 1723710, at *5 (N.D. Cal. Apr. 19,

24  2024) (redacted portions of report containing "non-privileged facts and business considerations"

25  were not privileged simply because they "reflected" or were "infused with" legal advice on the

26  "potential legal consequences" of the report's language because "[a]ny legal ramifications

27  reflected by the document are secondary considerations").

28

RESPONSE TO AMAZON LTR RE: *IN CAMERA* REVIEW - 10
Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC
010888-11/3126800 V1



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

A-28

**IV.    AMAZON ONLY ASSERTED WORK PRODUCT OVER A HANDFUL OF DOCUMENTS IN THE SAMPLE, AND ITS CLAIMS ARE INSUFFICIENT**

Amazon claims that "many" of the documents Plaintiffs selected for the Court's *in camera* review—including those regarding fact gathering—are protected by the "work-product doctrine." Ltr. at 5-6. Amazon asserted work product claims for *just five documents* from the 100-document sample and its privilege claim is not supported for any of them. (Documents 7, 10 17, 28, 100 and Entries 0001677, 0022819,[9] 0016280, AMZ_CAAG_00010725,[10] AMZ_CAAG_00005410,[11] respectively). Amazon first asserted a work product claim for Documents 10, 28, and 100 in January or February 2025 – at least five months after first withholding each of them based solely on the attorney-client privilege. Amazon's delay in raising these work product claims has waived that protection. *See* Reply ISO Motion to Compel at 8-9, *Frame-Wilson* Dkt. 203; *see also Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005).

Further, Amazon's log entries do not satisfy its burden. Amazon must show that these documents were created "because of" anticipated or pending litigation and "would not have been created in substantially similar form but for the prospect of that litigation." *In re Grand Jury*, 23 F.4th at 1092 (citation omitted). "Said another way, a dual-purpose document that would have been prepared absent the prospect of litigation is not protected under the work-product doctrine." *Sterling & Wilson Solar Solutions, Inc. v. Fidelity & Deposit Co. of Md.*, 2025 WL 747511 at *3 (E.D. Wash. Mar. 7, 2025) (investigation files were not protected work product because the investigation file would have been created even absent the lawsuit).

Here, three of the five privilege log entries vaguely reference ████████████ ████ ████ ████████ ██ ████ ████ (Entries    0001677,    0016280, AMZ_CAAG_00010725); a fourth entry does not even reference pending or anticipated litigation,

---

[9] First withheld on May 2024.

[10] First withheld on August 2024 Log.

[11] First withheld on July 2024 Log.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1    instead describing the communication as involving legal advice about ███████████

2    ████████████████████████████ the fifth (Entry 0022819) *has no description*

3    *at all (*AMZ_CAAG_00005410). Amazon's log entries do not even identify "what litigation or

4    trial is being referenced," much less that the communications were created *because of* some

5    unspecified litigation. *Wright v. Allstate Fire & Cas. Ins. Co.*, 2022 WL 1213444, at *6 (W.D.

6    Wash. Apr. 25, 2022); *LD v. United Behav. Health*, 2022 WL 4878726, at *9 (N.D. Cal. Oct. 3,

7    2022) ("[A]s to many of the withheld documents it is not clear whether litigation is pending,

8    imminent or merely a possibility, making it impossible to determine whether documents are work

9    product[.]").

10                                          * * * * *

11          Should the Court seek additional briefing on any issues related to the *in camera* submission,

12   Plaintiffs are happy to provide it.

13                              Respectfully submitted,

14                              *I certify that this brief contains 4,162 words, in*
                                *compliance with LCR 7(e)(4)*
15

16   DATED: March 14, 2025          HAGENS BERMAN SOBOL SHAPIRO LLP

17                              By /s/ *Steve W. Berman*
                                   Steve W. Berman (WSBA No. 12536)
18                              By /s/ *Barbara A. Mahoney*
                                   Barbara A. Mahoney (WSBA No. 31845)
19                              1301 Second Avenue, Suite 2000
                                Seattle, WA 98101
20                              Telephone: (206) 623-7292
                                Facsimile:  (206) 623-0594
21                              E-mail: steve@hbsslaw.com
                                        barbaram@hbsslaw.com
22

23                              Anne F. Johnson (*pro hac vice*)
                                594 Dean Street, Suite 24
24                              Brooklyn, NY 11238
                                Telephone: (718) 916-3520
25                              E-mail: annej@hbsslaw.com

26

27

28

RESPONSE TO AMAZON LTR RE: *IN CAMERA* REVIEW - 12
Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC
010888-11/3126800 V1



1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE     (206) 623-0594 FAX

KELLER POSTMAN LLC

Zina G. Bash (*pro hac vice*)
111 Congress Avenue, Suite 500
Austin, TX, 78701
Telephone: (512) 690-0990
E-mail: zina.bash@kellerpostman.com

Jessica Beringer (*pro hac vice*)
Alex Dravillas (*pro hac vice*)
Shane Kelly (*pro hac vice*)
150 North Riverside Plaza, Suite 4100
Chicago, IL 60606
Telephone: (312) 741-5220
E-mail: Jessica.Beringer@kellerpostman.com
        ajd@kellerpostman.com
        shane.kelly@kellerpostman.com

Roseann R. Romano (*pro hac vice*)
1101 Connecticut Avenue, N.W., Suite 1100
Washington, D.C., 20036
Telephone: 202-918-1123
E-mail: Roseann.Romano@kellerpostman.com

*Interim Co-Lead Counsel for Plaintiffs and the proposed Class*

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By:/s/ *Alicia Cobb*
    Alicia Cobb, WSBA # 48685
1109 First Avenue, Suite 210
Seattle, WA 98101
Telephone: (206) 905-7000
Email:  aliciacobb@quinnemanuel.com

RESPONSE TO AMAZON LTR RE: *IN CAMERA* REVIEW - 13
Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC
010888-11/3126800 V1



Steig D. Olson (*pro hac vice*)
David D. LeRay (*pro hac vice*)
Nic V. Siebert (*pro hac vice*)
Maxwell P. Deabler-Meadows (*pro hac vice*)
Elle Mahdavi (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Email:   steigolson@quinnemanuel.com
          davidleray@quinnemanuel.com
          nicolassiebert@quinnemanuel.com
          maxmeadows@quinnemanuel.com
          ellemahdavi@quinnemanuel.com

Adam B. Wolfson (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Email:   adamwolfson@quinnemanuel.com

*Interim Executive Committee for Plaintiffs and the
proposed Class*



1

**CERTIFICATE OF SERVICE**

2

     I hereby certify that on March 14, 2025, a true and correct copy of the foregoing was served

3

on all counsel of record via email.

4

5

                       /s/ *Steve W. Berman*
                       Steve W. Berman

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE     (206) 623-0594 FAX

A-33

A-34

The Honorable John H. Chun

1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ELIZABETH DE COSTER, *et al.*, on behalf of themselves and all other similarly situated, | **AMAZON'S REPLY TO PLAINTIFFS' BRIEF RESPONDING TO AMAZON'S *IN CAMERA* SUBMISSION** |
| Plaintiffs, | |
| v. | **FILED UNDER SEAL** |
| AMAZON.COM, INC., a Delaware corporation, | Case No. 2:21-cv-00693-JHC |
| Defendant. | |
| DEBORAH FRAME-WILSON, et al., | |
| Plaintiffs, | |
| v. | Case No. 2:20-cv-00424-JHC |
| AMAZON.COM, INC., a Delaware corporation, | |
| Defendant. | |
| CHRISTOPHER BROWN, et al., | |
| Plaintiffs, | |
| v. | Case No. 22-cv-00965-JHC |
| AMAZON.COM, INC., a Delaware corporation, | |
| Defendant. | |

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

AMAZON'S REPLY TO PLAINTIFFS' BRIEF
RESPONDING TO AMAZON'S *IN CAMERA* SUBMISSION
(2:21-cv-00693-JHC; 2:20-cv-00424-JHC; 2:22-cv-00965-JHC)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

A-35

1    Plaintiffs misstate the law, twist the facts of Amazon's re-review, and make baseless claims

2  of waiver in breach of the parties' discovery agreement.  Dkt. 285, 286.[1]  Amazon respectfully

3  requests leave to file this short submission in order to correct these errors.

4  **I.    Amazon made only minimal adjustments to its privilege calls for the 100 documents.**

5    Plaintiffs first make false claims about Amazon's decision to change privilege calls on

6  some of the documents selected for *in camera* review.  Amazon did not "improperly with[o]ld" 23

7  of the 100 documents.  Dkt. 286 at 1–4.  Plaintiffs already received copies of nine of those

8  documents.  *Id.* at 3.  The majority of the remaining changes consisted of modest adjustments to

9  redactions, which means Plaintiffs already had access to most of the information in those

10  documents.  *See also* Dkt. 284 at 5 (explaining that redactions are inherently more labor-intensive

11  and thus error-prone).  Only one document out of the 100-document set was downgraded from

12  fully withheld to fully produced.

13    Plaintiffs also misleadingly claim that the two documents where Amazon detected an

14  honest mix-up of two individuals with the same name "vindicates Plaintiffs' concerns that the

15  persons on whom Amazon bases its privilege claims are either not attorneys or not acting primarily

16  for purposes of providing legal advice."  Dkt. 286 at 3.  But this is an easy mistake, not proof of

17  nefarious intent.  In Document 77, for instance, the reviewer confused Amazon's outside counsel

18  at Clifford Chance, Chris Cunningham, with a non-lawyer at Amazon named Chris Cunningham.

19    There is also nothing unusual about re-reviewing privilege calls before submitting

20  documents *in camera*.  *E.g.*, *Lawson* v. *Praxair*, 2021 WL 1207494, at *1 (D.N.J. 2021) (party

21  withdrew some privilege claims after being ordered to produce documents for *in camera* review);

22  *Winfield* v. *City of New York*, 2017 WL 5664852, at *5 (S.D.N.Y. 2017) (city maintained privilege

23  over only 20 documents in an 80 document sample).  In *In re Uber Techs., Inc. Passenger Sexual*

24  *Assault Litigation*, the court declined to find bad faith in downgrading seven out of ten documents

25

26

27  [1] Where docket citations are used in this submission, the numbering references the docket in *Frame-Wilson v. Amazon*, 2:20-cv-424-JHC.

AMAZON'S REPLY TO PLAINTIFFS' BRIEF
RESPONDING TO AMAZON'S IN CAMERA SUBMISSION
(2:21-cv-00693-JHC; 2:20-cv-00424-JHC, 2:22-cv-00965-JHC)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1  selected for *in camera* review, because this hand-selected population was hardly random.  2024

2  WL 5190360, at *8 (N.D. Cal. 2024); *see also*  Dkt. 284 at 7–8 (citing additional authority).

3      Plaintiffs' cited authority is inapposite.  None of Plaintiffs' cases (Dkt. 286 at 2–3) involve

4  a party refining a limited number of redactions, as Amazon has done here.  This case is even farther

5  afield from *Epic Games, Inc.* v. *Apple Inc.*, No. 4:20-cv-05640-YGR, Dkt. 1171 (N.D. Cal. Feb.

6  4, 2025), in which Apple appears to have missed a deadline to re-review documents by the time of

7  an evidentiary hearing—a situation unlike the one before the Court, where Amazon has met every

8  court-ordered deadline, despite enormous logistical difficulty.  Dkt. 284 at 8 (citing Keeling

9  declaration).  *City of Roseville Emps.' Ret. Sys.* v. *Apple Inc.*, 2023 WL 5519304, at *5 (N.D. Cal.

10 2023), also cited by Plaintiffs, is nothing like this case either.  After discovery closed, the

11 defendants conceded that they applied the wrong legal standard, but declined to conduct additional

12 re-review.  Here, by contrast, Amazon re-reviewed its privilege log and produced documents based

13 on its re-review at least five months before the close of fact discovery, applying the proper standard

14 across the board.

15 **II.    Amazon did not waive privilege for downgraded documents.**

16      Plaintiffs renege on a binding agreement by claiming that Amazon waived privilege for all

17 downgraded documents.  Dkt. 286 at 4–7.  This position is expressly foreclosed by the ESI

18 Protocol, which states:  "Pursuant to Fed. R. Evid. 502(d), the production of any documents in this

19 proceeding…shall not constitute a waiver by the producing party[.]"  Dkt. 91 at 8.  The ESI

20 Protocol was agreed to by Plaintiffs and ordered by this Court, and directly controls the treatment

21 of documents in these cases.

22      As Amazon explains in its Motion to Claw Back Privileged Materials and Strike

23 References Thereto From Plaintiffs' Class Certification Motion, Dkt. 287, Plaintiffs' citation of

24 the Protective Orders' invocation of Federal Rule of Evidence 502(b), Dkt. 179 at ¶ 11 is

25 misleading because it is only a partial quote.  The very next sentence cites Rule 502(d) in providing

26 that the "disclosure of privileged material in connection with this litigation does not operate as a

27

AMAZON'S REPLY TO PLAINTIFFS' BRIEF
RESPONDING TO AMAZON'S IN CAMERA SUBMISSION
(2:21-cv-00693-JHC; 2:20-cv-00424-JHC, 2:22-cv-00965-JHC)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

A-37

1   waiver in this action or any other action.*" *Id*. It is thus incorrect that the parties in any way

2   intended to override the protections of Rule 502(d).

3   **III.    Amazon applied the correct legal standards.**

4       **A.    Amazon applied the primary purpose test to dual purpose communications.**

5         Citing to the Ninth Circuit's recent decision in *Greer* v. *Cnty. of San Diego*, Plaintiffs argue

6   that Amazon did not apply the correct legal standard for dual purpose documents. That is wrong.

7   *Greer* does not reflect a change in the applicable legal standard; it quotes the standard articulated

8   in *In re Grand Jury*, which this Court has cited—and Amazon has followed. 127 F.4th 1216,

9   1224–25 (9th Cir. 2025). Consistent with that standard, Amazon withheld documents in their

10  entirety only if the primary purpose of the entire document was to seek or provide legal advice.

11  Where legal advice was not the primary purpose, Amazon determined whether the primary purpose

12  of a portion of the document—such as a paragraph or sentence within it—was privileged or

13  protected work product, and if so, redacted only that portion. This is consistent with prevailing

14  law; Plaintiffs do not argue otherwise. *See* Dkt. 284 at 5 (citing authority).

15
16      **B.    Amazon correctly withheld documents involving regulatory or legal action
        where legal advice was provided to avoid or mitigate legal risk.**

17        Plaintiffs erect a straw man when they argue that "[o]ngoing litigation and regulatory

18  scrutiny do not transform every communication involving a lawyer into a privileged

19  communication," or that "not all documents related to contested policies" are privileged. Dkt. 286

20  at 8–10. That has never been Amazon's position. Instead, Amazon withheld or redacted direct

21  requests to or from lawyers containing or reflecting legal advice on specific decisions that may

22  affect, or be affected by, those ongoing proceedings. *See* Dkt. 284 at 2. Though not always

23  obvious on its face, the context of such communications is important to understand why a particular

24  decision required legal consultation.

25        *Greer*—a case Plaintiffs cite—is instructive. There, the Ninth Circuit reviewed a district

26  court's finding that a document was not privileged because it pertained to "avoiding future legal

27  liability" and therefore had an "'investigative and remedial' purpose." 127 F.4th at 1224–25. The

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    Ninth Circuit found this was "significant legal error[]" because (a) investigation is a "necessary

2    predicate to assessing liability for that past event and thus is not separate from the provision of

3    legal advice," and (b) the defendant "also reasonably wishes to understand not only its liability for

4    what already happened but also options for avoiding future liability-creating incidents." *Id.*

5    Notably, the Ninth Circuit also rejected an allegation of privilege cloaking, refusing to find that

6    there was any "nefarious motive" for adding a legal advisor as it "potentially provides the ability

7    to protect the confidentiality of the discussion under the cloak of the attorney-client privilege." *Id.*

8    at 1225.

9         As *Greer* recognized, it is simply prudent for Amazon businesspeople to add lawyers to

10   communications to bring a "risk/liability perspective to the discussion" when everybody knows

11   that regulators are preparing to open investigations and bring lawsuits on these topics. Where a

12   communication or meeting simply invited—but did not reflect—any actual provision of a

13   "risk/liability perspective,"Amazon produced the document.[2]

14          **C. Amazon's privilege calls related to collection of information for the purpose of
              providing legal advice reflect blackletter Supreme Court law.**

15

16         Plaintiffs misstate the law when they state that "'Fact-gathering' is not protected by the

17   attorney-client privilege." Dkt. 286 at 10. As the Supreme Court explained in *Upjohn Co.* v.

18   *United States*, 449 U.S. 383 395–96 (1981): "A fact is one thing and a communication concerning

19   that fact is an entirely different thing." Good legal advice necessarily involves gathering and

20   discussion of facts in order to apply the law to them. The privilege protects those communications,

21   even though non-privileged facts discussed in those communications may be independently

22   discoverable. *E.g.*, *United States* v. *Rowe*, 96 F.3d 1294, 1296-97 (9th Cir. 1996) (*Upjohn*

23   "make[s] clear that fact-finding which pertains to legal advice counts as 'professional services'");

24

25   _____

     [2] Plaintiffs argue that Document 27 is not privileged because it ████████████████████. Courts have held

26   that training materials are privileged and constitute legal advice when they advise employees how to interact with
     customers and other third parties consistent with applicable laws. *E.g.*, *In re Currency Conversion Antitrust Litig.*,

27   2010 WL 4365548, at *6 (S.D.N.Y 2010); *Valassis Commc'ns, Inc. v. News Corp.*, 2018 WL 4489285, at *3
     (S.D.N.Y. 2018); *McKnight v. Honeywell Safety Prods. USA, Inc.*, 2019 WL 452741, at *2 (D.R.I. 2019).

AMAZON'S REPLY TO PLAINTIFFS' BRIEF
RESPONDING TO AMAZON'S IN CAMERA SUBMISSION
(2:21-cv-00693-JHC; 2:20-cv-00424-JHC, 2:22-cv-00965-JHC)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Garner* v. *Amazon.com, Inc.*, 2024 WL 4266665, at *1 (W.D. Wash. 2024) (the privilege protects not only communications from the attorney that convey legal advice, but also the client's 'giving of information to the lawyer to enable him to give sound and informed advice'"); *Klein* v. *Meta Platforms, Inc.*, 2022 WL 767096, at *3 (N.D. Cal. 2022) (holding disputed communications that included "information that might be considered factual" was privileged where "the disputed communications as a whole concern the giving and receiving of legal advice").  Plaintiffs must seek non-privileged facts through other means, such as non-privileged documents, interrogatories, and depositions. *E.g.*, *Admiral Ins. Co.* v. *U.S. Dist. Ct. for Dist. of Arizona*, 881 F.2d 1486, 1495 & n.5 (9th Cir. 1989) (plaintiffs must seek underlying facts from a non-privileged source).

## IV.    Amazon did not waive work-product protection.

Plaintiffs incorrectly state that Amazon waived work product protection by recently adding work product as an additional basis for claiming privilege as to certain of the documents.  Dkt. 286 at 11–12.  Pursuant to the Ninth Circuit's approach to waiver, courts in this circuit have allowed parties to change the asserted basis for privilege on a document-by-document basis in connection with an *in camera* review.  *See In re Google RTB Consumer Priv. Litig.*, 2024 WL 3642191, at *3 (N.D. Cal. 2024) (explaining that "waiver of privilege or protection does not follow automatically from a party's failure to assert a privilege or protection claim with adequate specificity; rather, the Court must 'make a case-by-case determination, taking into account' several factors, which must be 'applied in the context of a holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process.'" (quoting *Burlington N. & Santa Fe Ry. Co.* v. *U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005)).  For example, the court in *Sidibe* v. *Sutter Health* assessed a defendant's changed bases of privilege claims even when the defendant withdrew its privilege claims for 30% of the documents and changed the asserted basis for 25% in connection with an *in camera* review in.  *See* 2018 WL 783808, at *5 (N.D. Cal. 2018) ("Sutter originally claimed work-product protection for this document, but Sutter's revised submission to the court now asserts attorney-client privilege … The court accepts Sutter's claim that this document is privileged.").

AMAZON'S REPLY TO PLAINTIFFS' BRIEF
RESPONDING TO AMAZON'S IN CAMERA SUBMISSION
(2:21-cv-00693-JHC; 2:20-cv-00424-JHC, 2:22-cv-00965-JHC)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1
<u>Conclusion</u>

2       Amazon has faithfully applied the privilege standards set forth by this Court.  The results

3   speak for themselves: The documents remaining on Amazon's privilege log represent only

4   1.27% of the 2.6 million documents that Amazon has produced, with only 22 percent of the

5   1.27% (or about ¼ of a percentage point of the full production) being fully withheld.  As for the

6   clawbacks, Amazon respectfully requests that the Court enforce its ESI Order to protect those

7   clearly privileged documents.

8

9       DATED this 19th day of March, 2025.

10

11                               DAVIS WRIGHT TREMAINE LLP

12                               */s/ John A. Goldmark*
                                 John A. Goldmark, WSBA #40980
13                               MaryAnn Almeida, WSBA #49086
                                 920 Fifth Avenue, Suite 3300
14                               Seattle, WA  98104-1610
                                 Telephone: (206) 757-8136
15                               Fax: (206) 757-7136
                                 Email: JohnGoldmark@dwt.com
16                               Email: MaryAnnAlmeida@dwt.com

17
                                 PAUL, WEISS, RIFKIND, WHARTON &
18                               GARRISON LLP

19                               */s/ Karen L. Dunn*
                                 Karen L. Dunn (*pro hac vice*)
20                               William A. Isaacson (*pro hac vice*)
                                 Amy J. Mauser (*pro hac vice*)
21                               Kyle Smith (*pro hac vice*)
                                 2001 K Street, NW
22                               Washington, D.C.
                                 Telephone: (202) 223-7300
23                               Fax: (202) 223-7420
                                 E-mail:  kdunn@paulweiss.com
24                               E-mail:  wisaacson@paulweiss.com
                                 E-mail:  amauser@paulweiss.com
25                               E-mail:  ksmith@paulweiss.com

26                               Meredith Dearborn
                                 535 Mission Street, 24th Floor
27                               San Francisco, CA  94105

AMAZON'S REPLY TO PLAINTIFFS' BRIEF
RESPONDING TO AMAZON'S IN CAMERA SUBMISSION
(2:21-cv-00693-JHC; 2:20-cv-00424-JHC, 2:22-cv-00965-JHC)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

Telephone: (628) 432-5100
Fax: (628) 232-3101
E-mail: mdearborn@paulweiss.com

2

3

*Attorneys for Amazon.com, Inc.*

4

*I certify that this memorandum contains 1,955
words, in compliance with the Local Civil Rules.*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

AMAZON'S REPLY TO PLAINTIFFS' BRIEF
RESPONDING TO AMAZON'S IN CAMERA SUBMISSION
(2:21-cv-00693-JHC; 2:20-cv-00424-JHC, 2:22-cv-00965-JHC)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

A-42

1                                                          The Honorable John H. Chun

2

3

4

5

6

7                         UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
8                                  AT SEATTLE

9

| 10 | ELIZABETH DE COSTER, *et al.*, on behalf of themselves and all other similarly situated, | **AMAZON'S MOTION TO CLAW BACK PRIVILEGED MATERIAL AND STRIKE REFERENCES THERETO FROM PLAINTIFFS' CLASS CERTIFICATION MOTION** |

11

12                            Plaintiffs,
            v.

13
      AMAZON.COM, INC., a Delaware          Case No. 2:21-cv-00693-JHC
14    corporation,

15                            Defendant.     **NOTE ON MOTION CALENDAR:**
                                             **April 7, 2025**
16    DEBORAH FRAME-WILSON, et al.,

17                            Plaintiffs,

18          v.                               Case No. 2:20-cv-00424-JHC

19
      AMAZON.COM, INC., a Delaware
20    corporation,

21                            Defendant.
      CHRISTOPHER BROWN, et al.,
22
                              Plaintiffs,
23
24          v.                               Case No. 22-cv-00965-JHC

25    AMAZON.COM, INC., a Delaware
      corporation,
26
                              Defendant.
27

MOTION TO CLAW BACK PRIVILEGED MATERIAL                 Davis Wright Tremaine LLP
(2:21-CV-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC)        LAW OFFICES
                                                          920 Fifth Avenue, Suite 3300
                                                          Seattle, WA  98104-1610
                                                     206.622.3150 main · 206.757.7700 fax

A-43

1

**TABLE OF CONTENTS**

2                                                                    <u>Page</u>

3   I.     INTRODUCTION ...................................................................................... 1

4   II.    BACKGROUND ....................................................................................... 2

5          A.    Factual and Legal Background ..................................................... 2

6          B.    The Privileged Material ............................................................... 3

7   III.   ARGUMENT ............................................................................................ 5

8          A.    Rule 502(d) Governs and Therefore There Is No "Waiver" Analysis ................. 5

9          B.    Even If the Court Applied a Rule 502(b) Analysis, Privilege Has Not
10               Been Waived ................................................................................ 8

11               1.    The Disclosure Was Inadvertent ...................................... 9

12               2.    Amazon Took Reasonable Steps to Prevent Disclosure ......................... 11

13               3.    Amazon Took Prompt Action to Rectify the Error ................................. 12

14  IV.    CONCLUSION ....................................................................................... 13

15

16

17

18

19

20

21

22

23

24

25

26

27

MOTION TO CLAW BACK PRIVILEGED MATERIAL
(2:21-CV-00693-JHC, 2:20-cv-00424-JHC, 2:22-CV-00965-JHC) - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alatortev* v. *JetBlue Airways Corp.,*
   795 Fed. Appx. 503 (9th Cir. 2019) ................................................8

*FTC* v. *Amazon,*
   2024 WL 3620467 (W.D. Wash. 2024) ...........................................9

*Aramony* v. *United Way of Am.,*
   969 F. Supp. 226 (S.D.N.Y. 1997) ................................................12

*Arconic Inc.* v. *Novelis Inc.,*
   2019 WL 911417 (W.D. Pa. 2019) ..................................................5

*Arnett* v. *Bank of Am., N.A.,*
   2013 WL 12321485 (D. Or. 2013) .................................................12

*In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.,*
   2014 WL 4827945 (S.D.N.Y. 2014) ...............................................11

*Beilstein-Institut Zur Förderung Der Chemischen Wissenchaften* v. *MDL Info. Sys.,*
   2006 WL 2578264 (N.D. Cal. 2006) .............................................6, 8

*BMP Paribas Mortg. Corp.* v. *Bank of Am., N.A.,*
   2013 WL 2322678 (S.D.N.Y. 2013) .................................................9

*Brookfield Asset Mgmt., Inc.* v. *AIG Fin. Prods. Corp.,*
   2013 WL 142503 (S.D.N.Y. 2013) ...................................................6

*Calendar Rsch. LLC* v. *StubHub, Inc.,*
   2019 WL 1581406 (C.D. Cal. 2019) .................................................6

*Cincinnati Ins. Co.* v. *Berkshire Refrigerated Warehousing, LLC,*
   2016 WL 11941151 (N.D. Ill. 2016) .................................................9

*Datel Holdings Ltd.* v. *Microsoft Corp.,*
   2011 WL 866993 (N.D. Cal. 2011) ...................................................9

*Frame-Wilson* v. *Amazon,*
   Case No. 2:20-cv-00424-JHC ...........................................................1

*Great-W. Life & Annuity Ins. Co.* v. *Am. Econ. Ins. Co.,*
   2013 WL 5332410 (D. Nev. 2013) .................................................6, 7

MOTION TO CLAW BACK PRIVILEGED MATERIAL
(2:21-CV-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC) - ii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

A-45

*Hewlett-Packard Co.* v. *Bausch & Lomb, Inc.,*
   115 F.R.D. 308 (N.D. Cal. 1987)................................................................5

*Hur* v. *Lloyd & Williams, LLC,*
   25 Wash. App. 2d 644, 650 (2023)............................................................3

*Kan. City Power & Light Co.* v. *Pittsburg & Midway Coal Min. Co.,*
   133 F.R.D. 171 (D. Kan. 1989)................................................................12

*United States* v. *Mallinckrodt, Inc.,*
   227 F.R.D. 295 (E.D. Mo. 2005)..............................................................12

*Njenga* v. *San Mateo County Superintendent of Schools,*
   2010 WL 1261493 (N.D. Cal. 2010).........................................................12

*In re Outpatient Med. Ctr. Emp. Antitrust Litig.,*
   2024 WL 4679083 (N.D. Ill. 2024)............................................................7

*Patagonia, Inc.* v. *Anhesuer Busch, LLC,*
   2020 WL 12048989 (C.D. Cal. 2020).......................................................11

*Rajala* v. *McGuire Woods, LLP,*
   2013 WL 50200 (D. Kan. 2013)................................................................7

*Richards* v. *Jain,*
   168 F. Supp. 2d 1195 (W.D. Wash. 2001)................................................8

*United States* v. *Wells Fargo Bank, N.A.,*
   2015 WL 5051679 (S.D.N.Y. 2015)..........................................................2

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prods. Liab. Litig.,*
   2014 WL 4961490 (S.D. Ill. 2014)...........................................................11

*In re Zetia Antitrust Litig.,*
   2019 WL 6122012 (E.D. Va. 2019)..........................................................11

**Other Authorities**

Fed. R. Evid. 502(d)....................................................................... *passim*

FRE 502(b)...................................................................................... *passim*

Rule 502.................................................................................1, 5, 6

FRE 502(b)(3)........................................................................................12

WRPC 4.4(b)..........................................................................................3, 4

MOTION TO CLAW BACK PRIVILEGED MATERIAL
(2:21-CV-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC) - iii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## I.    INTRODUCTION

This Motion to Claw Back Privileged Material is necessitated by Plaintiffs' refusal to return or destroy, and remove references to, three privileged documents (the "Privileged Material") that were cited and quoted in their February 20, 2025 Motion for Class Certification and supporting papers, Dkts. 266-68 (the "Class Certification Motion"), filed in *Frame-Wilson* v. *Amazon*, Case No. 2:20-cv-00424-JHC.  After receiving the Class Certification Motion, Amazon promptly sought to claw back the three documents and requested that Plaintiffs refile their motion without reference to them and return all copies of the documents and any materials discussing them in their possession.  Plaintiffs refused to comply with the clear directives of the governing Order Regarding Discovery of Electronically Stored Information (*Frame-Wilson*, Dkt. 91, the "ESI Protocol"), Federal Rule of Evidence ("FRE") 502, and the Washington Rules of Professional Conduct ("RPC").  Plaintiffs have not disputed that the three documents are privileged; they argue that Amazon "waived" privilege by producing them.  Declaration of Amy J. Mauser ("Mauser Decl."), Ex. A at 4–5.  Plaintiffs' waiver argument is explicitly foreclosed by the agreed-upon and Court-ordered ESI Protocol, which states:  "Pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding shall not . . . constitute a waiver by the producing party."  Dkt. 91 at 8 (the "Rule 502(d) Order").

Even if the Rule 502(d) Order did not control—and it does—Amazon's handling of the Privileged Material fully satisfies Rule 502(b)'s default provisions: the documents were inadvertently disclosed, Amazon took reasonable steps to prevent disclosure, and it promptly acted to rectify the disclosure.

Thus, under either provision of Rule 502, the Court should direct Plaintiffs to refile their Class Certification Motion without references to the three documents and destroy and/or return all copies of the documents and work product mentioning them.

## II.    BACKGROUND

### A.    Factual and Legal Background

To date, Amazon has produced 2.6 million documents—totaling nearly 13.9 million pages—many of which consist of dense, single-spaced memoranda.  In a production of this magnitude, "errors—even those involving multiple documents—are inevitable." *United States* v. *Wells Fargo Bank, N.A.*, 2015 WL 5051679, at *3 (S.D.N.Y. 2015) (quotation omitted).

It is for this reason that the FRE and the RPC include express safeguards to prevent the improper use of privileged materials.  FRE 502(d) provides that the Court may "order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court."  Here, the parties willingly negotiated and agreed to—and the Court ordered—an ESI Protocol, which provides:

> Pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding **shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver** by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law.  Information produced in discovery that is protected as privileged or work product **shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection**.

Dkt. 91 at 8 (emphases added).  By the ESI Protocol's explicit terms, production does not—and cannot—result in waiver.

Even in the absence of a Rule 502(d) order, the default provisions of FRE 502(b) provide that production of privileged material does not constitute waiver as long as (1) the disclosure was inadvertent, (2) the privilege holder took reasonable steps to prevent disclosure, and (3) the privilege holder took reasonable steps to rectify the disclosure.  Similarly, the Washington Rules of Professional Conduct provide that "[a] lawyer who receives a document or electronically stored information relating to the representation of the lawyer's client and knows or reasonably should know that the document or electronically stored information was inadvertently sent shall

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

promptly notify the sender."  RPC 4.4(b); *see also Hur* v. *Lloyd & Williams, LLC*, 25 Wash. App. 2d 644, 650 (2023) (ethical rules "require a recipient to inadvertently disclosed information subject to a claim of privilege to notify the sender and either return, sequester, or destroy the materials").  All of these safeguards operate to prevent the improper use of privileged material.

Plaintiffs are fully aware of these rules—and, until now, have followed them in this litigation.  On at least three prior occasions, Plaintiffs' counsel proactively contacted Amazon to flag documents that appeared to contain privileged information and sought confirmation as to whether they were inadvertently produced.  *See* Mauser Decl., Ex. B at 2 ("We identified the attached document in the course of our document review.  Please confirm whether Amazon inadvertently produced this document."); Mauser Decl., Ex. C at 2 ("We identified in the course of our document review three documents that may be partially privileged.").  Plaintiffs even notified Amazon of an inadvertently produced document mere days before filing their Class Certification Motion, but did not flag the three clearly privileged documents they used in the Motion.  *See* Mauser Decl., Ex. D at 2.

**B.**     **The Privileged Material**

Despite the governing Rule 502(d) Order, the Federal Rules of Evidence, the Washington Rules of Professional Conduct, and their own past practice, Plaintiffs cited, quoted, and openly discussed three facially privileged documents in their Class Certification Motion.  While the details of the documents are not material to this Motion because Plaintiffs have not disputed that they contain privileged information, at a high level, the documents, each of which is an exhibit to Plaintiffs' Class Certification Motion, are:

Exhibit 68:     A March 30, 2017 document prepared by counsel that addresses legal analysis and considerations concerning a program that Amazon never adopted and an investigation the government never undertook.  Class Cert. Mot. at 23.  Exhibit 68 was originally withheld in full, but thereafter inadvertently produced in full on January 28, 2025.  Decl. of Robert Keeling ("Keeling Decl.") ¶ 10.

1  Exhibit 69**:**    A document that includes notes reflecting legal advice by Amazon's in-

2  house counsel on legal risks related to arguments that antitrust regulators could make.

3  Plaintiffs directly quote the in-house counsel's legal advice concerning the potential

4  responses of regulators to proposed changes in Amazon's business.  Class Cert. Mot. at

5  23.  Exhibit 69 was originally withheld in full, but thereafter inadvertently produced in

6  full on October 29, 2024.  Keeling Decl. ¶ 8.

7  Exhibit 94**:**    A September 2020 document prepared by counsel that contains extensive

8  legal analysis, including potential defenses to regulatory scrutiny and the likelihood of

9  success on appeal in an ongoing litigation in Europe. Class Cert. Mot. at 30, n. 138, 140.

10  Exhibit 94 was initially withheld in full, but then inadvertently produced with limited

11  redactions on October 29, 2024.  Keeling Decl. ¶ 9.

12  Despite the clear privileged nature of these documents—and Plaintiffs' obligations under

13  RPC 4.4(b)—Plaintiffs failed to notify Amazon of the inadvertent disclosure.  Instead, Plaintiffs

14  cited and quoted from all three in their Class Certification Motion, which was filed under seal on

15  February 20, 2025.  Dkt. 266 at 23, 30 & n. 138, 140.  Within one week of receiving that

16  motion—and in full accordance with the Rule 502(d) Order—Amazon's counsel sent Plaintiffs a

17  formal claw back email, requesting that Plaintiffs "destroy all copies of these documents, delete

18  them from any and all litigation support or other databases in your possession, and expunge them

19  from any work product reflecting the contents of the documents."  Mauser Decl., Ex. A at 5.

20  Amazon further requested that "Plaintiffs remove any reference to the above documents from

21  their class certification papers and re-file a new version that contains no reference to the above

22  three documents."  *Id.* at 5-6.

23

24

25

26

27

MOTION TO CLAW BACK PRIVILEGED MATERIAL
(2:21-CV-00693-JHC, 2:20-cv-00424-JHC, 2:22-CV-00965-JHC) - 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    On March 10, 2025, Amazon met and conferred with Plaintiffs.  Plaintiffs claimed that

2  Amazon had "waived" privilege by producing the documents, necessitating this Motion.  *See id.*

3  at 2.[1]

4  **III.   ARGUMENT**

5    The Court should strike the Privileged Material from the Class Certification Motion and

6  order Plaintiffs to return or destroy it.  The documents are indisputably privileged, and Amazon

7  has properly invoked its claw back rights.

8    **A.    Rule 502(d) Governs and Therefore There Is No "Waiver" Analysis**

9    While Rule 502(**b**) sets the default standard for determining when inadvertent disclosure

10  does not constitute waiver in litigation, Rule 502(**d**) goes further—providing that "[a] federal

11  court may order that the privilege or protection is not waived by disclosure connected with the

12  litigation pending before the court."  FRE 502(d).  This provision "is designed to enable a court

13  to enter an order, whether on motion of one or more parties or on its own motion, that will allow

14  the parties to conduct and respond to discovery expeditiously, without the need for exhaustive

15  pre-production privilege reviews, while still preserving each party's right to assert the privilege

16  to preclude use in litigation of information disclosed in such discovery."  FRE 502, advisory

17  committee's note to subdivision (d).  The provision provides the producing party certainty in

18  protecting against waiver, given the burden and expense associated with privilege

19  determinations, and given the volume of information a producing party must review in a digital

20  world.  The Sedona Conference, *Commentary on the Effective Use of Federal Rule of Evidence*

21  *502(d) Orders*, 23 Sedona Conf. J. 1, 7 (2022) ("a Rule 502(d) order provides the parties with

22  greater certainty and therefore has greater potential to limit the costs associated with privilege

23  review and retention"); *see also Arconic Inc.* v. *Novelis Inc.*, 2019 WL 911417, at *3 (W.D. Pa.

24  2019) (encouraging  "adoption of a Rule 502(d) [order] in every complex civil case"); *Hewlett-*

25  ───────────────

26  [1] In the 100 documents submitted for in camera review, Amazon identified two documents with insufficient
   redactions.  Keeling Decl. ¶ 17.  Plaintiffs also argue that Amazon waived privileged as to those documents; that

27  argument fails for the same reasons that their waiver arguments as to the three documents cited in the Class
   Certification Motion fail.

MOTION TO CLAW BACK PRIVILEGED MATERIAL
(2:21-CV-00693-JHC, 2:20-cv-00424-JHC, 2:22-CV-00965-JHC) - 5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   *Packard Co.* v. *Bausch & Lomb, Inc.*, 115 F.R.D. 308, 310 (N.D. Cal. 1987) ("expansive waiver

2   doctrine increases the cost of litigation to the parties and increases the number of discovery

3   disputes courts must resolve").

4        The parties negotiated—and have been operating under for more than two years—an ESI

5   Protocol that expressly contains a Rule 502(d) Order to protect against the waiver of privilege in

6   the event that a party produces privileged information in discovery, and the Court so-ordered the

7   Protocol.  Given the unequivocal terms of the Rule 502(d) Order providing that privilege is not

8   waived by production and requiring protected information to be returned, the only relevant

9   question is whether the documents are privileged—regardless of the circumstances of their

10  production.  *Great-W. Life & Annuity Ins. Co.* v. *Am. Econ. Ins. Co.*, 2013 WL 5332410, at *14

11  (D. Nev. 2013) ("[T]he parties' agreement clearly provides that inadvertently produced

12  documents, upon a determination that the documents are privileged, must be returned without

13  waiver to the disclosing party regardless of the care taken by the disclosing party.").  Here, the

14  three documents are indisputably privileged; Plaintiffs have not asserted otherwise.  Under the

15  ESI Protocol, no further analysis is required.

16       Despite this clear dictate, Plaintiffs have asserted "waiver" by arguing that Amazon has

17  "intentional[ly], not inadvertent[ly]" produced the three documents.  Mauser Decl., Ex. A at 4.

18  When parties enter into a Rule 502(d) Order—as Plaintiffs and Amazon did here—a "waiver"

19  analysis under Rule 502(b) is irrelevant.  *E.g.*, *Great-W. Life & Annuity Ins. Co.*, 2013 WL

20  5332410, at *14 ("Rule 502 contemplates that parties may enter such agreements and that courts

21  will enforce them"; holding no waiver "regardless of the care taken by the disclosing party");

22  *Calendar Rsch. LLC* v. *StubHub, Inc.*, 2019 WL 1581406, at *6 (C.D. Cal. 2019) (even where

23  party conducted no privilege review at all, no waiver by production because "the protections for

24  inadvertently-produced privilege documents set forth in the Protective Order in this case control

25  the outcome here"); *Beilstein-Institut Zur Förderung Der Chemischen Wissenchaften* v. *MDL*

26  *Info. Sys.*, 2006 WL 2578264, at *1 (N.D. Cal. 2006) (waiver argument irrelevant because "a

27  protective order governs the parties' discovery obligations"); *Brookfield Asset Mgmt., Inc.* v. *AIG*

MOTION TO CLAW BACK PRIVILEGED MATERIAL
(2:21-CV-00693-JHC, 2:20-cv-00424-JHC, 2:22-CV-00965-JHC) - 6

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

A-52

1  *Fin. Prods. Corp.*, 2013 WL 142503, at *1 (S.D.N.Y. 2013) ("even if AIG or its counsel had

2  dropped the ball (which they did not), the parties at my urging had entered into a Rule 502(d)

3  stipulation which I so ordered on Feb. 11, 2011 . . . Accordingly, AIG has the right to claw back

4  the minutes, no matter what the circumstances"); *In re Outpatient Med. Ctr. Emp. Antitrust*

5  *Litig.*, 2024 WL 4679083, at *4 (N.D. Ill. 2024) ("In contrast with 502(b), the Rule 502(d) Order

6  entered in this case prevents waiver . . . regardless of whether the disclosure was inadvertent or

7  any efforts were taken to prevent or to rectify the same"); *Rajala* v. *McGuire Woods, LLP*, 2013

8  WL 50200, at *5 (D. Kan. 2013) ("The terms of the Protective Order, and not the default

9  provisions of [FRE 502(b)], govern the handling of inadvertent productions in this case."); *see*

10  *also* The Sedona Conference, *supra*, at 6 ("Unless the Rule 502(d) order contains other

11  limitations on clawbacks, the only challenge a requesting party can typically make to this

12  clawback is whether or not the document is, in fact, privileged.").

13      To circumvent the Rule 502(d) Order, Plaintiffs put forth in their Response to Amazon's

14  Letter Regarding In Camera Review an argument they did not raise in the meet and confer

15  process.  Plaintiffs argue that because the Protective Orders in these cases state, "[t]his Order

16  invokes the protections afforded by Fed. R. Evid. 502(b)," Dkt. 179 at ¶ 11, the parties intended

17  to override the 502(d) Order in the ESI Protocol.  First, the very next-sentence of the Protective

18  Order—like the Rule 502(d) Order—explicitly states that "[t]he disclosure of privileged material

19  in connection with this litigation **does not operate as a waiver** in this action or any other

20  action." *Id.* (emphasis added).  Thus, even if Plaintiffs' argument were valid, it would not

21  support their position.  More importantly, while the Protective Order broadly governs all

22  discovery in these cases, the ESI Protocol—which contains the Rule 502(d) Order—specifically

23  governs the production of ESI between the parties and therefore directly controls the treatment of

24  the documents at issue.  *See Great-W. Life & Annuity Ins. Co.*, 2013 WL 5332410, at *14 (in

25  holding FRE 502(d) applies, noting that "specific provisions control over more general terms.")

26  Furthermore, as a logical matter, Plaintiffs' strained argument that the ESI Protocol's non-waiver

27  protection applies only to documents produced "without privilege review" would lead to absurd

MOTION TO CLAW BACK PRIVILEGED MATERIAL
(2:21-CV-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC) - 7

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

A-53

1  results.  Documents produced without any privilege review would receive greater protection than

2  those inadvertently disclosed after a party invested substantial resources in privilege review,

3  creating perverse incentives for parties to forgo privilege review and simply claw back

4  documents whenever the counterparty attempted to use them.  *See Alatortev* v. *JetBlue Airways*

5  *Corp.*, 795 Fed. Appx. 503, 505 (9th Cir. 2019) (citing "canon that written agreements must be

6  interpreted, if possible, to avoid absurd results").

7         Counsel for the parties are sophisticated and experienced in large-scale document

8  productions, carefully negotiated the ESI Protocol, and agreed that production does not constitute

9  waiver.  A waiver analysis "would render a portion of the [ESI Protocol] entirely

10  superfluous . . . .  This cannot be the result the parties intended."  *MDL Info. Sys.*, 2006 WL

11  2578264, at *1.  And Plaintiffs fully understand the import of the Rule 502(d) Order to which

12  they agreed, as well as binding ethical obligations not to review, and instead return or destroy, a

13  counterparty's privileged material, as they have previously done.  *See* RPC 4.4(b) (requiring

14  attorneys in possession of privileged material to "promptly notify the sender").

15         Plaintiffs' lead counsel at Hagens Berman has previously been disqualified from a

16  litigation due to his failure to sequester and notify a defendant about counsel's possession of the

17  defendant's privileged documents.  *Richards* v. *Jain*, 168 F. Supp. 2d 1195, 1201 (W.D. Wash.

18  2001) (further noting that Plaintiffs' counsel's position that he had no duty not to review

19  defendants' privileged documents "shocks the conscience").  Here, Amazon is only requesting

20  that the agreed-upon Rule 502(d) Order be followed, and the privileged material be returned and

21  removed from Plaintiffs' papers.

**B.      Even If the Court Applied a Rule 502(b) Analysis, Privilege Has Not Been Waived**

24         Even though there is no basis to apply a waiver analysis, if it were applied, Amazon has

25  not waived privilege.  Under FRE 502(b), "disclosure does not operate as a waiver" if "(1) the

26  disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to

27

MOTION TO CLAW BACK PRIVILEGED MATERIAL
(2:21-CV-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC) - 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1  prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error."

2  Amazon meets these conditions.

3          **1.**        **The Disclosure Was Inadvertent**

4        While FRE 502(b) does not define "inadvertent," this Court has previously held in the

5  case related to Amazon Prime that it would look to "whether the party intended a privileged or

6  work-product protected document to be produced or whether the production was a mistake."

7  *FTC* v. *Amazon*, 2024 WL 3620467, at *5 (W.D. Wash. 2024) (quotation omitted) (the "*FTC*

8  Order").  The inquiry "is a simple one: did the disclosure occur by mistake or unintentionally?"

9  *Datel Holdings Ltd.* v. *Microsoft Corp.*, 2011 WL 866993, at *3 (N.D. Cal. 2011).  Here, the

10  production of these three documents—out of 2.6 million—was an unintentional mistake.

11        As Amazon has explained elsewhere, this privilege review was enormous and

12  exceedingly difficult.  The documents are often dense, single-spaced memoranda, and stretch

13  back nearly a decade, across a changing regulatory and legal environment, making the review

14  one of the most challenging privilege reviews that specialized e-discovery counsel has ever

15  faced.  Keeling Decl., ¶¶ 16-17.  Notwithstanding these circumstances, only a small number of

16  privileged documents were produced to Plaintiffs.  "Such errors are, of course, inevitable in

17  complex litigation involving the production of tens of thousands of documents," let alone

18  millions.  *BMP Paribas Mortg. Corp.* v. *Bank of Am., N.A.*, 2013 WL 2322678, at *8 (S.D.N.Y.

19  2013) (quotation omitted) (where documents at issue were one-hundredth of one percent out of

20  1.5 million, a finding of no waiver); *Cincinnati Ins. Co.* v. *Berkshire Refrigerated Warehousing,*

21  *LLC*, 2016 WL 11941151, at *3 (N.D. Ill. 2016) (that documents at issue were "less than one

22  percent of the overall production" supported "that the disclosure was in fact inadvertent").  Here,

23  Amazon's total claw backs in these cases are far less than one percent.  Keeling Decl. ¶ 19.

24        In refusing to destroy the privileged information and refile their brief without citation to

25  the information, Plaintiffs have tried to advance various waiver arguments, but each fails.

26       •   <u>Exhibit 68</u>: Plaintiffs argue that because seven copies of Exhibit 68 were

27            produced, its production must be intentional.  But Plaintiffs misunderstand how

MOTION TO CLAW BACK PRIVILEGED MATERIAL
(2:21-CV-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC) - 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

A-55

document production works.  Through de-duplication and propagation processes, a single human error is likely to be replicated across duplicate documents.  The document was not reviewed seven times by seven different reviewers; rather a single reviewer could review a document and make a mistake, and that mistake would be replicated across other versions of the same document based on consistency review.  Keeling Decl. ¶¶ 12-15.

- Exhibits 69 and 94: Plaintiffs argue that the production of Exhibit 69, which  was originally withheld as privileged, but later downgraded to not privileged, and Exhibit 94, which was originally fully withheld, but then produced with redactions, was intentional.  The fact that a small number of documents were mistakenly downgraded to not privileged or downgraded to redacted, even though they were initially and correctly denoted as fully privileged, only establishes that a reviewer made a mistake in reviewing complex, dense, single-spaced documents day in and day out—not intentionality.  Keeling Decl. ¶¶ 8-9, 14, 17.

Amazon recognizes that this Court has previously held that where documents "were produced with redactions, the Court cannot determine that these disclosures were merely an accident." *FTC* Order at *7.  However, that decision was grounded in the fact that in those circumstances, "Amazon [did] not spend any time in its brief addressing or rebutting the FTC's arguments that its disclosures were inadvertent" and therefore "d[id] not meet its burden of showing that its disclosures . . . were inadvertent." *Id.*  Here, through the accompanying Declaration of Robert Keeling, Amazon has set forth the circumstances surrounding the production of each of the three documents, and why the production of each was inadvertent.  As a Northern District of California court recently held in *Epic Games* v. *Apple, Inc.*, the production of a previously withheld document in redacted form could be inadvertent, 2025 U.S. Dist. LEXIS 34007, at *12-13 (Feb. 25, 2025) (attached as Mauser Decl., Ex. E, at 2).  "The question, after all, is whether *Apple* deliberately produced a document, not whether one particular document reviewer deliberately decided these documents should have been redacted rather than withheld in

full." *Id.* at \*13.  That is also the question here because "the fact that the document was subject

to review prior to production, redacted, and marked as confidential does not establish a lack of

mistake." *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2014

WL 4961490, at \*3 (S.D. Ill. 2014)); *see also Patagonia, Inc.* v. *Anheuser Busch, LLC*, 2020 WL

12048989, at \*1 (C.D. Cal. 2020) (holding that redacted documents could be clawed back

because "[t]his is a major case with massive document discovery and production" and "there are

but 10 documents in issue"); *In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, 2014

WL 4827945, at \*1 (S.D.N.Y. 2014) (while recognizing that redactions "could be said to cut

against the inadvertence finding . . . [g]iven the fact that this was one of 71,000 redacted

documents and the realities of document review in cases like this one, which often involve

hundreds of thousands or even millions of documents," finding no waiver); *In re Zetia Antitrust

Litig.*, 2019 WL 6122012, at \*8 (E.D. Va. 2019) (finding no waiver when one document was

produced in partially redacted form given "the high volume of material produced . . . and the

relatively small number of disputed documents").

Amazon biased its review in favor of redacting documents whenever possible.  Holding

that waiver results as a matter of law every time a previously-withheld document is produced

with redactions would create a strong incentive to over-withhold documents, even though

redactions are preferable or more appropriate.  Such a holding would have the negative

consequences of faulting parties for good-faith attempts to redact documents wherever possible,

and would cast doubt on the parties' ability to rely on Rule 502(d) orders.

### 2.     Amazon Took Reasonable Steps to Prevent Disclosure

It is not clear whether Plaintiffs assert that Amazon did not take reasonable steps to

prevent disclosure of privileged documents; regardless, any such argument would be baseless.

As this Court previously held, "courts look at the overall context of production when

determining whether the disclosing party took reasonable steps to prevent disclosure." *FTC*

Order at \*7 ("Inadvertent production of a relatively low proportion of documents in a large

production under a short timetable due to mistake should be and usually is excused.") (quoting

MOTION TO CLAW BACK PRIVILEGED MATERIAL
(2:21-CV-00693-JHC, 2:20-cv-00424-JHC, 2:22-CV-00965-JHC) - 11

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1  *Datel Holdings Ltd.*, 2011 WL 866993, at *4).  Amazon engaged specialized e-discovery

2  counsel, harnessed the efforts of dozens of lawyers, and conducted multiple layers of review for

3  privilege.  Under these circumstances, and in view of the millions of documents at issue,

4  Amazon took reasonable steps to prevent disclosure.  *See Arnett* v. *Bank of Am., N.A.*, 2013 WL

5  12321485, at *4 (D. Or. 2013) ("The inadvertent production of a few dozen documents amongst

6  millions of pages does not render Defendants' attempts to preserve privilege documents

7  unreasonable.").

8          **3.**      **Amazon Took Prompt Action to Rectify the Error**

9         FRE 502(b)(3) requires the party asserting privilege to "promptly take reasonable steps to

10  rectify the error."  As this Court previously held in conducting this analysis, courts "d[o] not

11  consider the time period in a vacuum, and instead consider the circumstances surrounding the

12  time it takes a party to claw back a document, including whether the other party has relied on the

13  document when making its case."  *FTC* Order at *8 (citation omitted).  The relevant time period

14  runs not from production, but from when Amazon learned that the documents were inadvertently

15  produced.  *Aramony* v. *United Way of Am.*, 969 F. Supp. 226, 237 (S.D.N.Y. 1997).

16         Here, Plaintiffs filed their 42-page Class Certification Motion, with 101 exhibits, under

17  seal on February 20, 2025.  After reviewing the brief and the exhibits, and investigating the

18  circumstances of the production of those exhibits, Amazon sent its claw back request one week

19  later, on February 27, 2025.  This is sufficiently prompt to foreclose waiver.  *E.g.*, *Njenga* v. *San

20  Mateo County Superintendent of Schools*, 2010 WL 1261493, at *17 (N.D. Cal. 2010)

21  ("Defendants also took prompt and reasonable steps to rectify the error by sending a letter one

22  week after it discovered the inadvertent disclosure"); *Kan. City Power & Light Co.* v. *Pittsburg*

23  *& Midway Coal Min. Co.*, 133 F.R.D. 171, 172 (D. Kan. 1989) (considering two weeks'

24  notification sufficiently prompt); *United States* v. *Mallinckrodt, Inc.*, 227 F.R.D. 295, 298-99

25  (E.D. Mo. 2005) (finding email sent on January 5 after learning of disclosure in mid-December

26  sufficiently prompt).

27

MOTION TO CLAW BACK PRIVILEGED MATERIAL
(2:21-CV-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC) - 12

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**IV.    CONCLUSION**

For the reasons set forth above, the Court should order Plaintiffs to return and/or destroy Exhibits 68, 69 and 94, and strike all references thereto from the Class Certification Motion.

DATED:  March 17, 2025

DAVIS WRIGHT TREMAINE LLP

*/s/ John A. Goldmark*
John A. Goldmark, WSBA #40980
MaryAnn Almeida, WSBA #49086
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Telephone: (206) 757-8136
Fax: (206) 757-7136
Email: JohnGoldmark@dwt.com
Email: MaryAnnAlmeida@dwt.com


PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

*/s/ Karen L. Dunn*
Karen L. Dunn (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Amy J. Mauser (*pro hac vice*)
Kyle Smith (*pro hac vice*)
2001 K Street, NW
Washington, D.C.
Telephone: (202) 223-7300
Fax: (202) 223-7420
E-mail:  kdunn@paulweiss.com
E-mail:  wisaacson@paulweiss.com
E-mail:  amauser@paulweiss.com
E-mail:  ksmith@paulweiss.com

Meredith Dearborn
535 Mission Street, 24th Floor
San Francisco, CA  94105
Telephone: (628) 432-5100
Fax: (628) 232-3101
E-mail:  mdearborn@paulweiss.com

*Attorneys for Amazon.com, Inc.*

*I certify that this memorandum contains 4,185 words, in compliance with the Local Civil Rules.*

MOTION TO CLAW BACK PRIVILEGED MATERIAL
(2:21-CV-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC) - 13

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

A-59

1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6

7  ELIZABETH DE COSTER *et al.*, on behalf of
themselves and all others similarly situated,

8                              Plaintiffs,

9          v.

10

11 AMAZON.COM, INC., a Delaware
corporation,

12                              Defendant.

13

14 DEBORAH FRAME-WILSON *et al.*, on behalf
of themselves and all others similarly situated,

15                              Plaintiffs,

16

17         v.

18 AMAZON.COM, INC., a Delaware
corporation,

19

20                              Defendant.

21 CHRISTOPHER BROWN, *et al.*, on behalf of
themselves and all others similarly situated,

22

23                              Plaintiffs,

24                                    v.

25

26 AMAZON.COM, INC., a Delaware
corporation,

27                              Defendant.

28

Case No. 2:21-cv-00693-JHC

Case No. 2:20-cv-00424-JHC

ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFFS'
MOTION TO COMPEL PRODUCTION
OF DOCUMENTS FROM AMAZON'S
PRIVILEGE LOGS AND FOR
APPOINTMENT OF A SPECIAL
MASTER

Case No. 2:22-cv-00965-JHC

ORDER GRANTING IN PART & DENYING IN
PART PLAINTIFFS' MOTION TO COMPEL
Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC

These matters come before the Court on Plaintiffs' Motion to Compel Production of Documents from Amazon's Privilege Logs and for Appointment of a Special Master.  Case No. 21-693, Dkt. # 189; Case No. 20-424, Dkt. # 186; Case No. 22-965, Dkt. # 89.  The Court has considered the materials filed in support of and in opposition to the motion, the rest of the files in these matters, the governing law, and the Parties' argument at the hearing on January 31, 2025.

Being fully advised, the Court GRANTS the motion in part and DENIES it in part as follows:

(1)    Plaintiffs' request for a bad-faith finding and for focused discovery regarding Amazon's practices relating to marking materials as privileged is DENIED.

(2)    By February 25, 2025, Amazon shall complete its review of every document withheld in these actions and produce any and all for which it cannot make a clear showing that a primary purpose of the communication was to request or provide legal advice.  Documents sent to attorneys may not be withheld simply because attorneys received them or because an attorney was asked to "advise" or provide "guidance" on a business, operational, technical, strategic or public relations issues.  Nor can documents be withheld based on an attorney's active participation in a communication if the communication does not involve the provision of legal advice.  Documents must be produced with narrowly tailored redactions.

(3)    By February 25, 2025, Amazon must produce a final privilege log.

(4)    Within 10 days of Amazon's production of documents and a revised privilege log, Plaintiffs shall identify up to 100 documents for in camera review.  Amazon shall then provide the identified documents to the Court within 3 business days.

(5)    After the Court reviews the *in camera* sample and issues any resulting order, Plaintiffs may submit briefing on fees and costs.

/

/

/

/

ORDER GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL- 1
Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC

1     DATED:  February 3, 2025.

2

3

4                      John H. Chun
                   United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   ORDER GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL- 2
     Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC

A-62

1

The Honorable John H. Chun

2

3

4                              UNITED STATES DISTRICT COURT
                               WESTERN DISTRICT OF WASHINGTON
5                                        AT SEATTLE

6

7    ELIZABETH DE COSTER *et al.*, on behalf of         Case No. 2:21-cv-00693-JHC
     themselves and all others similarly situated,

8                                                       **JOINT STATUS REPORT**
                                 Plaintiffs,            **REGARDING PLAINTIFFS'**
                                                        **MOTION TO COMPEL PRODUCTION**
9                                                       **OF DOCUMENTS FROM AMAZON'S**
             v.                                         **PRIVILEGE LOGS AND FOR**
10                                                      **APPOINTMENT OF A SPECIAL**
     AMAZON.COM, INC., a Delaware                       **MASTER**
11   corporation,

12                               Defendant.

13                                                      Case No. 2:20-cv-00424-JHC

14   DEBORAH FRAME-WILSON *et al.*, on behalf
     of themselves and all others similarly situated.

15

16                               Plaintiffs,

17           v.

18   AMAZON.COM, INC., a Delaware
     corporation,

19

20                               Defendant.

21   CHRISTOPHER BROWN, *et al.*,                       Case No. 2:22-cv-00965-JHC

22

23                               Plaintiffs,

24           v.

25   AMAZON.COM, INC., a Delaware
     corporation,

26

27                               Defendant.

28

JOINT STATUS REPORT REGARDING PLAINTIFFS' MOTION TO COMPEL
Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC

A-63

In advance of the hearing on Plaintiffs' Renewed Motion to Compel Production of Documents from Amazon's Privilege Log and for Appointment for a Special Master, the Parties submit this brief joint update on the scope and status of Amazon's privilege re-review since the Parties' last filings on December 9, 2024.

Since the Parties' filings on December 9, 2024, the Parties have meet and conferred twice and have regularly conferred via letter and email in an effort to narrow disputes.

A.  Status of Amazon's Re-Review, Productions, and Revised Privilege Log

As discussed in the Parties' prior submissions, Amazon has undertaken a re-review of certain of its privilege claims. Earlier today, Amazon produced to Plaintiffs a Consolidated Privilege Log (the "1/30 Log") that represents the results of Amazon's re-review process to date. The Parties provide the following update regarding the status of Amazon's re-review process based on the information contained in the 1/30 Log and Amazon's representations to Plaintiffs about the results of its re-review:[1]

1. Amazon's privilege logs initially included 132,655 claims of privilege—90,877 from the logs initially prepared for the FTC investigation (the "FTC Logs") (later reduced to 84,432 "unique" entries), and 48,223 from the logs initially prepared in Amazon's ongoing litigation with the California Attorney General and subsequently provided to Plaintiffs (the "CA AG Logs").

2. Amazon has downgraded and produced (in full or in part) at least 61,000 documents since it began its re-review. Amazon has not yet re-reviewed 23,097 partially privileged entries from the FTC Logs. Amazon has produced in full 25,607 documents from its FTC Logs and 18,217 documents from the CA AG Logs.

3. Amazon has represented to Plaintiffs that it has redacted and produced 17,670 documents as part of its re-review (14,941 fully withheld documents that Amazon

---

[1] Amazon's metrics differ in some respects from Plaintiffs' own calculations of the metrics, but for purposes of this submission, Plaintiffs will rely on Amazon's representations regarding the metrics at issue, where available.

JOINT STATUS REPORT REGARDING PLAINTIFFS' MOTION TO COMPEL-1
Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC

1    produced with redactions, and an estimated 2,729 partially withheld documents that

2    Amazon produced with modified redactions).

3    4.    To date, Amazon has downgraded around 53.4% of documents that have been

4    subject to Amazon's re-review process (which does not include 23,097 partially

5    privileged documents from the FTC Logs).

6    5.    Earlier today, Amazon produced to Plaintiffs the 1/30 Log. In the 1/30 Log,

7    Amazon continues to assert privilege (in whole or in part) over 94,427 documents:

8    21,967 documents from the FTC Logs that Amazon withholds in full; 13,818

9    documents from the FTC Logs that Amazon withholds in part; 23,097 documents

10   from the FTC Logs that Amazon previously withheld in part and which Amazon

11   has not yet re-reviewed; 14,419 documents from the CA AG Logs that Amazon

12   withholds in full; and 21,126 documents from the CA AG Logs that Amazon

13   withholds in part.

14   6.    As referenced above, the 1/30 Log includes 23,097 entries for redacted documents

15   that have not yet been re-reviewed by Amazon. The Parties disagree about whether

16   Amazon had committed to re-reviewing those 23,097 entries before the upcoming

17   hearing. Plaintiffs' position is that Amazon agreed in October 2024 to review these

18   entries and documents—along with all other privilege claims—before January 20,

19   2025. *See De Coster* Dkt. 254 at 1 ("Amazon has also voluntarily agreed to re-

20   review every withheld document and log entry in an extensive process that exceeds

21   requirements under the Federal Rules of Civil Procedure.").

22   7.    The 1/30 Log does not include privilege descriptions for partially privileged

23   documents from the FTC Logs. Plaintiffs have requested that Amazon provide

24   complete privilege log entries for redacted documents. Amazon will not provide

25   descriptions unless Plaintiffs identify only specific entries requiring such

26   descriptions.

27

28   JOINT STATUS REPORT REGARDING PLAINTIFFS' MOTION TO COMPEL-2
     Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC

8.  Plaintiffs have begun reviewing the 1/30 Log and new document productions in detail, and will continue to do so. Plaintiffs are prepared to discuss during tomorrow's hearing specific entries from the 1/30 Log that are likely not privileged.

9.  Amazon has indicated it will continue to produce additional documents over the coming days.

10. Amazon will re-review the 23,097 redacted documents from the FTC Logs by February 25, 2025.

B.  Resolved Issue

On January 9, Amazon provided Plaintiffs with historical job title information for the 174 attorneys who appear on Amazon's logs at least twenty times. Plaintiffs believe that their request for Amazon to provide historical job information for counsel is resolved, but reserve all rights.

C.  Plaintiffs' Unresolved Issues

Based on their review of the 1/30 Log received earlier today, Plaintiffs continue to have concerns that Amazon is improperly withholding documents in whole or in part on the basis of privilege. Plaintiffs are prepared to discuss their concerns with Amazon during the meet and confer tomorrow before the hearing.

Plaintiffs have requested that Amazon provide full privilege log entries for all redacted documents, *i.e.*, entries that include the basis for Amazon's privilege claim.  Amazon has not agreed to do so.

Plaintiffs have sought leave to make a submission seeking costs and fees.  Amazon does not agree to Plaintiffs' request.

Because Plaintiffs understood that this Joint Status Report would not be an argumentative submission, Plaintiffs will respond to the arguments Amazon has included below at the appropriate times tomorrow.

D.  Amazon's Response to Plaintiffs' Unresolved Issues

1.  Response to Plaintiffs' Unresolved Issue #1 – Plaintiffs "concerns"

JOINT STATUS REPORT REGARDING PLAINTIFFS' MOTION TO COMPEL-3
Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC

As of this status report, Amazon has addressed every single one of the challenges Plaintiffs have made to Amazon's privilege log entries. Plaintiffs are now in receipt of a consolidated, amended log that they were told in November (prior to the filing of their supplemental motion) would be forthcoming in January, months before any deposition of an Amazon witness in this case will be taken. The parties have not yet met and conferred on the consolidated, amended log and Plaintiffs have not identified any specific entries on the amended log that they challenge.

In light of the foregoing, Amazon believes it would be more efficient and more respectful of the Court's time for the parties to work to resolve through the proper meet and confer process any specific challenges Plaintiffs will have to the amended log, rather than come before the Court prematurely tomorrow. Amazon believes that, if the usual process is followed, there may be no need for Court intervention at all. Therefore, in lieu of a hearing, Amazon proposes that the Court direct the parties to meet and confer and impose a deadline to reach resolution.

2. <u>Response to Unresolved Issue #2 ("full privilege log for redacted entries")</u>

The agreed-upon ESI Protocols entered in these cases do not require Amazon to provide log entries for redacted documents. For most redacted documents, only a small portion (for example a line or two) or a section labeled "Legal Analysis" has been redacted. It is clear on the face of most documents why the redaction was made. Amazon is now in the midst of re-reviewing its redactions from the FTC CID production to determine if any can be narrowed—the last category of documents Amazon is re-reviewing.

Amazon has expressed a willingness to prepare full log entries for a reasonable number of documents for which Plaintiffs contend they cannot assess the basis for the claim of privilege by evaluating the document. Requiring Amazon to prepare log entries for all, when the basis for the

JOINT STATUS REPORT REGARDING PLAINTIFFS' MOTION TO COMPEL-4
Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC

1    privilege claim is clear on the face of the document or the document has no relevance, or only

2    marginal relevance to Plaintiffs' claims, is not proportional to the needs of these cases.

3            3.    Response to Unresolved Issue #3 (Plaintiffs' request for leave to make a submission

4                   seeking costs and fees)

5

6            Amazon has worked tirelessly to address every question or challenge that Plaintiffs have

7    raised and reach resolution. Amazon voluntarily agreed to undertake a re-review of *every* log entry

8    that has been reproduced in these cases, as well as the underlying documents, re-reviewing close

9    to 140,000 log entries and documents. Amazon engaged expert e-discovery counsel to oversee the

10   re-review process, with up to 80 attorneys spending over 14,000 hours conducting the re-review

11   and addressing all of Plaintiffs' questions and challenges. Amazon has completed its re-review of

12   the log entries produced to date.[2]

13

14           Re-review of logs of this size is a significant undertaking. The logs at issue were bespoke,

15   prepared for different cases with different agreements between the parties. Moreover, it is not just

16   a question of reviewing a document, making a privilege determination, and turning to the next

17   document. For many documents, the review team needed to obtain more information surrounding

18   the context of a document's creation, to better evaluate whether it contained a request for or the

19   provision of legal advice. And, once a determination as to that particular document was made, the

20   review team then evaluated other documents to ensure that they reflected a consistent approach.

21   In addition, because Amazon produced documents with redactions, rather than withholding them

22   in their entirety wherever feasible, it was necessary for the review team to review documents word-

23

24

25

26   _____

27   [2] There is one category of documents that fell outside the scope of Amazon's agreed-to re-review—redacted
     documents from the FTC investigation, but Amazon is reviewing those as well and is on track to complete its review
     of those documents by the third week of February.

28   JOINT STATUS REPORT REGARDING PLAINTIFFS' MOTION TO COMPEL-5
     Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC

for-word, sometimes voluminous documents, to redact legal advice or requests for legal advice and to produce the remainder of the document.

As it agreed it would do in early November, Amazon this week also provided Plaintiffs a consolidated amended log reflecting its re-review and QC; the log addresses every challenge that Plaintiffs have raised. Amazon also sent letters addressing each of Plaintiffs' challenges. Amazon has repeatedly expressed a willingness to discuss with Plaintiffs any open questions they have, and to work with them to resolve them.

While Amazon has tried to work cooperatively to reach resolution, it has become clear that Plaintiffs have sought to strategically frustrate Amazon's privilege logging process presumably in the hope that Amazon will falter and Plaintiffs can seek an order or sanctions from the Court. Plaintiffs have done all of the following:

*Launched piecemeal and chaotic challenges.* For months, Plaintiffs sent separate letters challenging the same entries—sometimes for different reasons, and other times for the same reason, which meant that Amazon re-reviewed the same entries multiple times to ensure that their response was addressing each particular issue Plaintiffs raised. This inefficiency was exacerbated by Plaintiffs' insistence on diverging from typical practice by challenging vague and broad categories, requiring Amazon to hunt for log entries that may arguably fit within those categories.

*Rejected Amazon's request for an orderly challenge process.* On April 11, 2024, Amazon proposed that Plaintiffs provide a date by which they would complete review of the then existing privilege logs, and that the parties schedule a meet and confer a reasonable time thereafter to address Plaintiffs' challenges, so that Plaintiffs' challenges could be resolved most efficiently. Plaintiffs first ignored Amazon's request; then ignored each of Amazon's subsequent four requests for an efficient process—and then only after the passage of over three months, they rejected

JOINT STATUS REPORT REGARDING PLAINTIFFS' MOTION TO COMPEL-6
Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC

A-69

Amazon's proposal and presented no alternate proposal.  (July 16, 2024 letter from J. Beringer to A. Mauser).

*Reneged on negotiated agreements.*  While Amazon was in the midst of re-reviewing a population of documents in June, Amazon proposed that it complete that phase of re-review, and then the parties could discuss the next phase of re-review.  On June 21, 2024, Plaintiffs agreed to that timing, then, even though nothing had changed, on July 22, 2024 Plaintiffs reneged on that agreement, informing Amazon that it intended to file a motion to compel.  (June 21, 2024 Letter from J. Beringer to A. Mauser; July 22, 2024 Letter from J. Beringer to A. Mauser).  Similarly, following the decisions in *Garner* and *Prime*, and this Court's denial of Plaintiffs' initial motion to compel on October 16, 2024, Amazon proposed that the parties discuss a schedule for the additional re-review that Amazon agreed to undertake.  The parties had multiple calls to discuss the schedule, and exchanged multiple drafts of the schedule, agreeing to most of the operative deadlines, but then in a court filing Plaintiffs took the position that there was never any agreement by the parties. (October 26, 2024 email from J. Beringer to R. Keeling; November 2, 2024 email from R. Keeling to J. Beringer).

*Short-circuited regular processes to prematurely rush to Court.*  The Court ruled that Plaintiffs filed their first motion prematurely.  Similarly, Plaintiffs filed their renewed motion knowing that Amazon was in the midst of re-review and QC, planning to deliver a consolidated amended log in late-January.  As a result, the parties are scheduled for a hearing tomorrow where there have been no meet and confers on the consolidated, amended log, which reflects massive amounts of work by Amazon's review team.

*Misrepresented the content of Amazon's logs and re-review to manufacture their "privilege cloaking" narrative.*  From their very first letter to Amazon, Plaintiffs accused Amazon

JOINT STATUS REPORT REGARDING PLAINTIFFS' MOTION TO COMPEL-7
Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC

of engaging in "privilege cloaking." It is now apparent that their ultimate goal has not been resolution of their privilege log challenges, but rather to make these allegations, which has infected their approach to engaging with Amazon and the Court. For example, Plaintiffs use Exhibit 55 to their renewed motion to compel to argue that Amazon engaged in "privilege cloaking" because, while Amazon produced the exhibits in Exhibit 55, it withheld the same or similar documents in other portions of its log. This is disingenuous. As an accommodation to Plaintiffs, Amazon provided multiple interim revised logs that reflected the re-review that had been completed as of certain dates, often accompanied by a rolling production of documents. For example, while Amazon may have removed from the log a document in the first 10,000 entries it re-reviewed, the fact that the same document still remained in the second 10,000 entries was not evidence of "privilege cloaking"; it just meant that Amazon had not yet re-reviewed those entries. Plaintiffs ran to Court complaining about inconsistencies even though it knew the QC process was underway to detect and address inconsistencies.

Plaintiffs have not prevailed on any motion and therefore any request for fees and costs is premature. Fed R. Civ. P. 37. Plaintiffs have not—and cannot—identify a single case holding that a defendant should be sanctioned for voluntarily undertaking extensive efforts to re-review and, as appropriate, amend it privilege logs during the fact discovery period—here three months before fact depositions are likely to commence and seven months before the close of fact discovery. Moreover, as explained above, based on their refusal to agree to a reasonable process—and their filing of premature motions when they knew Amazon was in the midst of re-reviewing log entries—Plaintiffs have prolonged the re-review process and attempted to shift the parties' work to the Court.

JOINT STATUS REPORT REGARDING PLAINTIFFS' MOTION TO COMPEL-8
Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC

DATED: January 30, 2025         HAGENS BERMAN SOBOL SHAPIRO LLP

By /s/ *Steve W. Berman*
Steve W. Berman (WSBA No. 12536)
By /s/ *Barbara A. Mahoney*
Barbara A. Mahoney (WSBA No. 31845)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
E-mail: steve@hbsslaw.com
        barbaram@hbsslaw.com

Anne F. Johnson (*pro hac vice*)
594 Dean Street, Suite 24
Brooklyn, NY 11238
Telephone: (718) 916-3520
E-mail: annej@hbsslaw.com

KELLER POSTMAN LLC

Zina G. Bash (*pro hac vice*)
111 Congress Avenue, Suite 500
Austin, TX, 78701
Telephone: (512) 690-0990
E-mail: zina.bash@kellerpostman.com

Jessica Beringer (*pro hac vice*)
Shane Kelly (*pro hac vice*)
Alex Dravillas (*pro hac vice*)
150 North Riverside Plaza, Suite 4100
Chicago, Illinois 60606
Telephone: (312) 741-5220
E-mail: Jessica.Beringer@kellerpostman.com
E-mail: shane.kelly@kellerpostman.com
E-mail: ajd@kellerpostman.com

Roseann R. Romano (*pro hac vice*)
1101 Connecticut Avenue, N.W., Suite 1100
Washington, D.C., 20036
Telephone: 202-918-1123
E-mail: Roseann.Romano@kellerpostman.com

*Interim Co-Lead Counsel for Plaintiffs and the
proposed Class*

JOINT STATUS REPORT REGARDING PLAINTIFFS' MOTION TO COMPEL-9
Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC

1    QUINN EMANUEL URQUHART &
     SULLIVAN, LLP
2

3    By:/s/ *Alicia Cobb*_____
        Alicia Cobb, WSBA # 48685
4    1109 First Avenue, Suite 210
     Seattle, WA 98101
5    Telephone: (206) 905-7000
     Email: aliciacobb@quinnemanuel.com
6

7    Steig D. Olson (*pro hac vice*)
     David D. LeRay (*pro hac vice*)
8    Nic V. Siebert (*pro hac vice*)
     Maxwell P. Deabler-Meadows (*pro hac vice*)
9    Elle Mahdavi (*pro hac vice*)
     51 Madison Avenue, 22nd Floor
10   New York, NY 10010
     Telephone: (212) 849-7000
11   Email: steigolson@quinnemanuel.com
     Email: davidleray@quinnemanuel.com
12   Email: nicolassiebert@quinnemanuel.com
     Email: maxmeadows@quinnemanuel.com
13   Email: ellemahdavi@quinnemanuel.com
14

15   Adam B. Wolfson (*pro hac vice*)
     865 South Figueroa Street, 10th Floor
16   Los Angeles, CA 90017-2543
     Telephone: (213) 443-3000
17   Email: adamwolfson@quinnemanuel.com

18   *Interim Executive Committee for Plaintiffs and the*
     *proposed Class*
19

20

21

22

23

24

25

26

27

28   JOINT STATUS REPORT REGARDING PLAINTIFFS' MOTION TO COMPEL-10
     Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC

1    DATED January 30, 2025        DAVIS WRIGHT TREMAINE LLP

2
                                   */s/ John A. Goldmark*
3                                  John A. Goldmark, WSBA #40980
                                   MaryAnn Almeida, WSBA #49086
4                                  920 Fifth Avenue, Suite 3300
                                   Seattle, WA 98104-1610
5                                  Telephone: (206) 757-8136
                                   Fax: (206) 757-7136
6                                  Email: JohnGoldmark@dwt.com
                                   Email: MaryAnnAlmeida@dwt.com
7

8                                  PAUL, WEISS, RIFKIND, WHARTON & GARRISON
                                   LLP
9
                                   */s/ Karen L. Dunn*
10                                 Karen L. Dunn (*pro hac vice*)
                                   William A. Isaacson (*pro hac vice*)
11                                 Amy J. Mauser (*pro hac vice*)
                                   Kyle Smith (*pro hac vice*)
12                                 Martha L Goodman (*pro hac vice*)
                                   2001 K Street, NW
13                                 Washington, D.C.
                                   Telephone: (202) 223-7300
14                                 Fax: (202) 223-7420
                                   E-mail: kdunn@paulweiss.com
15                                 E-mail: wisaacson@paulweiss.com
                                   E-mail: amauser@paulweiss.com
16                                 E-mail: ksmith@paulweiss.com
                                   E-mail: mgoodman@paulweiss.com
17
                                   Meredith Dearborn
18                                 535 Mission Street, 24th Floor
                                   San Francisco, CA 94105
19                                 Telephone: (628) 432-5100
                                   Fax: (628) 232-3101
20                                 E-mail: mdearborn@paulweiss.com

21                                 Yotam Barkai (*pro hac vice*)
                                   Mark Weiner (*pro hac vice*)
22                                 1285 Avenue of the Americas
                                   New York, NY 10019-6064
23                                 Telephone: (212) 373-3000
                                   E-mail: ybarkai@paulweiss.com
24                                 E-mail: mweiner@paulweiss.com

25

26

27

28    JOINT STATUS REPORT REGARDING PLAINTIFFS' MOTION TO COMPEL-11
      Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC

1

2          REDGRAVE LLP

3          Robert D. Keeling (*pro hac vice*)
           601 Pennsylvania Ave NW, Ste 900
4          Washington, DC 20004
           Telephone: (202) 436-0206
5          E-mail:  rkeeling@redgravellp.com

6          *Attorneys for Amazon.com, Inc.*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    JOINT STATUS REPORT REGARDING PLAINTIFFS' MOTION TO COMPEL-12
      Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC

1

**<u>CERTIFICATE OF SERVICE</u>**

2    I hereby certify that on January 30, 2025, a true and correct copy of the foregoing was

3 filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

4

            _____/s/ *Steve W. Berman*_____

5              Steve W. Berman

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28 JOINT STATUS REPORT REGARDING PLAINTIFFS' MOTION TO COMPEL-13
   Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC

The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEBORAH FRAME-WILSON, CHRISTIAN
SABOL, SAMANTHIA RUSSELL, ARTHUR
SCHAREIN, LIONEL KEROS, NATHAN
CHANEY, CHRIS GULLEY, SHERYL
TAYLOR-HOLLY, ANTHONY COURTNEY,
DAVE WESTROPE, STACY DUTILL,
SARAH ARRINGTON, MARY ELLIOT,
HEATHER GEESEY, STEVE MORTILLARO,
CHAUNDA LEWIS, ADRIAN HENNEN,
GLENDA R. HILL, GAIL MURPHY,
PHYLLIS HUSTER, and GERRY
KOCHENDORFER, on behalf of themselves
and all others similarly situated,

                        Plaintiffs,

        v.

AMAZON.COM, INC., a Delaware corporation,

                        Defendant.

No. 2:20-cv-00424-RAJ

**PROTECTIVE ORDER**

PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 1

A-77

1    **1.    PURPOSES AND LIMITATIONS**

2          Discovery in this action is likely to involve production of confidential, proprietary, or

3    private information for which special protection may be warranted. Accordingly, the parties

4    hereby petition the Court to enter the following Protective Order. The parties acknowledge that

5    this agreement is consistent with LCR 26(c). It does not confer blanket protection on all

6    disclosures or responses to discovery, the protection it affords from public disclosure and use

7    extends only to the limited information or items that are entitled to confidential treatment under

8    the applicable legal principles, and it does not presumptively entitle parties to file confidential

9    information under seal. The availability of protection pursuant to this Protective Order does not

10   preclude a party from withholding information protected by any applicable privilege. Nothing in

11   this Protective Order shall restrict in any way the right of a Producing Party to disclose or make

12   use of its own documents or Discovery Material. Under LCR 26(c)(2), the parties began with the

13   District's Model Protective Order, and have identified departures from the model in a redlined

14   copy, attached as Exhibit 1.

15   **2.    DEFINITIONS**

16          2.1    Challenging Party: A Party or Non-Party that challenges the designation of

17   information or items under this Order.

18          2.2    Counsel (without qualifier): Outside Counsel of Record,  In-House Counsel, and

19   their support staff.

20          2.3    Designating Party: the producing Party or Non-Party designating documents or

21   information as Protected Information under this Order.

22          2.4    Discovery Material: All items or information, regardless of the medium or manner

23   in which it is generated, stored, or maintained (including, among other things, testimony,

24   transcripts, and tangible things), that are produced or generated in disclosures or responses to

25   discovery in this matter.

26          2.5    Expert: A person with specialized knowledge or experience in an area pertinent to

27   the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or

PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 2

1   as a consultant in this action, (2) is not a past or current employee of a Party or of a Party's

2   competitor, and (3) at the time of retention, is not anticipated to become an employee of a Party

3   or of a Party's competitor.

4        2.6    Industry Expert: An Expert whose specialized knowledge or experience derives

5   from personal experience in the industries and markets pertinent to the litigation and who

6   satisfies the other criteria for the definition of Expert.

7        2.7    In-House Counsel: Attorneys (and their support staff, including legal secondees

8   and economists) who are employees or contractors of a Party and whose responsibilities include

9   overseeing, working on, or supporting this action. In-House Counsel does not include Outside

10  Counsel of Record or any other outside counsel.

11       2.8    Non-Party: Any natural person, partnership, corporation, association, or other

12  legal entity not named as a Party to this action.

13       2.9    Outside Counsel of Record: Attorneys who are retained to represent or advise a

14  Party to this action..

15       2.10   Party: Any Party to this action, including all its officers, directors, employees,

16  consultants, retained Experts, and Outside Counsel of Record (and their support staff).

17       2.11   Producing Party: A Party or Non-Party that produces Discovery Material in this

18  action.

19       2.12   Protected Material: Any Discovery Material that is designated as "Confidential"

20  or "Highly Confidential—Attorneys' Eyes Only."

21       2.13   Receiving Party: A Party that receives Discovery Material from a Producing

22  Party.

23  **3.     PROTECTED MATERIAL**

24       3.1    "CONFIDENTIAL" Material: Documents and tangible things that may be

25  produced or otherwise exchanged that 1) the Designating Party reasonably believes contain,

26  describe, or disclose sensitive, non-public, confidential information, such as (a) court records,

27  whether in this District or other courts, currently maintained under seal; (b) information subject

PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 3

1    to a non-disclosure or confidentiality agreement; (c) employee personnel information; (d) a Non-

2    Party's commercially sensitive information, trade secrets, or competitive or strategic initiatives

3    that are not readily ascertainable and for which the Designating Party has taken reasonable steps

4    to maintain confidentiality, and (e) personal identifying information subject to redaction under

5    Local Rule 5.2, or 2) the Designating Party's own commercially sensitive information, such as

6    (a) financial or accounting information; (b) commercially sensitive internal communications or

7    information; and (c) business negotiations, transactions, and dealings with Non-Parties.

8          3.2    "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" Material:

9    Extremely sensitive materials that qualify as "CONFIDENTIAL" and that the Designating Party

10    reasonably believes contain highly sensitive business or personal information, the disclosure of

11    which to another Party or Non-Party would create a risk of competitive or commercial

12    disadvantage to the Designating Party.

13          3.3    This Order does not envision the production of source code or object code. Should

14    the Parties agree to source code discovery, they will enter a separate stipulated source code

15    supplement to this Order.

16    **4.    SCOPE**

17          The protections conferred by this agreement cover not only Protected Material (as

18    defined above), but also (1) any information copied or extracted from Protected Material; (2) all

19    copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony,

20    conversations, or presentations by Parties or their Counsel, Non-Parties, and/or Experts that

21    might reveal Protected Material.

22          However, the protections conferred by this agreement do not cover information that is in

23    the public domain or becomes part of the public domain through trial or otherwise.

24    **5.    ACCESS TO AND USE OF PROTECTED MATERIAL**

25          5.1    Basic Principles. A Receiving Party may use Protected Material that is disclosed

26    or produced by a Producing Party in connection with this case only for prosecuting, defending,

27    or attempting to settle this litigation. Protected Material may be disclosed only to the categories

PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 4

A-80

1    of persons and under the conditions described in this agreement. Protected Material must be

2    stored and maintained by a Receiving Party at a location and in a secure manner that ensures that

3    access is limited to the persons authorized under this agreement.

4        5.2    Disclosure of "CONFIDENTIAL" Material. Unless otherwise ordered by the

5    Court or permitted in writing by the Producing or Designating Party, a Receiving Party may

6    disclose any Confidential Material only to:

7            (a)    the Receiving Party's Outside Counsel of Record in this action, including

8    employees of Outside Counsel of Record to whom it is reasonably necessary to disclose the

9    information for this litigation;

10           (b)    the officers, directors, and employees (including In-House Counsel) of the

11   Receiving Party to whom disclosure is reasonably necessary for this litigation;

12           (c)    Experts, professional jury or trial consultants, and their employees and

13   staff, to whom disclosure is reasonably necessary for this litigation and who have signed the

14   "Acknowledgment and Agreement to Be Bound" (Exhibit A);

15           (d)    the Court, court personnel, and court reporters and their staff;

16           (e)    copy, imaging, document management, and electronic discovery services

17   retained by Counsel to assist in the management of Confidential Material and who execute the

18   "Agreement to Be Bound by Protective Order" attached as Exhibit A, provided that counsel for

19   the Party retaining such services instructs the service not to disclose any Confidential Material to

20   third parties and to immediately return all originals and copies of any Confidential Material;

21           (f)    during their depositions, witnesses in the action to whom disclosure is

22   reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound"

23   (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the Court. Pages of

24   transcribed deposition testimony or exhibits to depositions that reveal Confidential Material must

25   be separately bound by the court reporter and may not be disclosed to anyone except as permitted

26   under this agreement; and

27

PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 5

1  (g)  the author or recipient of a document containing the information or a

2  custodian or other person who otherwise possessed or knew the information.

3  5.3  Disclosure of "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY"

4  Material. Unless otherwise ordered by the Court or permitted in writing by the Designating

5  Party, a Receiving Party may disclose any Highly Confidential—Attorney's Eyes Only Material

6  only to:

7  (a)  the Receiving Party's Outside Counsel of Record in this action, as well as

8  employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the

9  information for this litigation;

10  (b)  Experts, professional jury or trial consultants, and their employees and

11  staff, to whom disclosure is reasonably necessary for this litigation and who have signed the

12  "Acknowledgment and Agreement to Be Bound" (Exhibit A), and, with respect to an Industry

13  Expert, have been subject to the procedure in Paragraph 5.4;

14  (c)  the Court, court personnel, and court reporters and their staff;

15  (d)  the author or recipient of a document containing the information or a

16  custodian or other person who otherwise possessed or knew the information;

17  (e)  employees of the Producing Party to whom disclosure is reasonably

18  necessary for this litigation and who have signed the "Agreement to Be Bound by Protective

19  Order" attached as Exhibit A; and

20  (f)  copy, imaging, document management, and electronic discovery services

21  retained by Counsel to assist in the management of Highly Confidential-Attorney's Eyes Only

22  Material and who execute the "Agreement to Be Bound by Protective Order" attached as Exhibit

23  A, provided that counsel for the Party retaining such services instructs the service not to disclose

24  any Highly Confidential Material to third parties and to immediately return all originals and copies

25  of any Highly Confidential Material; and

26  (g) to assist in Amazon's defense of this litigation, no more than four (4) In-

27  House Counsel who exercise no competitive decision-making, including:

PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 6

A-82

1       1. Amy Posner

2       2. Cristina Fernandez

3       3. Omid Bañuelos.

4  In the event that Amazon's designated in-house counsel is no longer eligible to serve as a

5  designee under this Protective Order, due to a change in role or otherwise, Amazon may

6  designate a replacement in-house counsel who meets the criteria set forth herein.

7      5.4   Procedures for Approving or Objecting to Disclosure to Expert of Materials

8  Designated "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY."

9        (a)    Unless otherwise ordered by the Court or agreed to in writing by the

10  Designating Party, a Party that seeks to disclose to an Industry Expert any material that has been

11  designated "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" first must make a

12  written disclosure to the Designating Party that (1) identifies the general categories of "HIGHLY

13  CONFIDENTIAL—ATTORNEYS' EYES ONLY" information that the Receiving Party seeks

14  permission to disclose to the Industry Expert, (2) sets forth the full name of the Industry Expert

15  and the city and state of his or her primary residence, (3) attaches a copy of the Industry Expert's

16  current resume, (4) identifies the Industry Expert's current employer(s), (5) identifies each

17  person or entity from whom the Industry Expert has received compensation or funding for work

18  in his or her areas of expertise or to whom the Industry Expert has provided professional

19  services, including in connection with a litigation, at any time during the preceding four years,

20  and (6) identifies (by name and number of the case, filing date, and location of court) any

21  litigation in connection with which the Industry Expert has offered expert testimony, including

22  through a declaration, report, or testimony at a deposition or trial, during the preceding four

23  years. If the Industry Expert believes that any of the information sought through part (6) of this

24  disclosure is subject to a confidentiality obligation to a third party, then the Expert should

25  indicate the confidential matters with as much detail as possible.

26        (b)    A Party that makes a written disclosure and provides the information specified in

27  the preceding respective paragraphs may disclose the subject "HIGHLY CONFIDENTIAL—

PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 7

A-83

1    ATTORNEYS' EYES ONLY" Material to the identified Industry Expert unless, within seven

2    days of delivering the request, the Party receives a written objection from the Designating Party.

3          (c)      A Party that receives a timely written objection must meet and confer with the

4    Designating Party to try to resolve the matter by agreement within three days of the written

5    objection. If no agreement is reached, the Party seeking to make the disclosure to the Industry

6    Expert may file a motion as provided in Local Civil Rule 7 seeking permission from the Court to

7    do so, or may use the expedited joint motion procedure set forth in Local Civil Rule 37(a)(2).

8    Any such motion must describe the circumstances with specificity, set forth in detail the reasons

9    why the disclosure to the Industry Expert is reasonably necessary, assess the risk of harm that the

10   disclosure would entail, and suggest any additional means that could be used to reduce that risk.

11   In addition, any such motion must be accompanied by a competent declaration describing the

12   Parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet

13   and confer discussions) and setting forth the reasons advanced by the Designating Party for its

14   refusal to approve the disclosure.

15          In any such proceeding, the Party opposing disclosure to the Industry Expert shall bear

16   the burden of proving that the risk of harm that the disclosure would entail (under the safeguards

17   proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Industry

18   Expert.

19          (d)      Nothing in this Section modifies the ordinary deadlines for expert disclosures

20   under the Federal Rules and this Court's orders.  Testifying experts not receiving HIGHLY

21   CONFIDENTIAL—ATTORNEYS' EYES ONLY materials shall be disclosed by the deadline

22   established by the Court.  Testifying Industry Experts receiving HIGHLY CONFIDENTIAL—

23   ATTORNEYS' EYES ONLY materials shall be disclosed consistent with this Section.

24   Consulting Industry Experts receiving HIGHLY CONFIDENTIAL—ATTORNEYS' EYES

25   ONLY materials are not required to be disclosed prior to any applicable deadlines contained

26   within the Federal Rules.

27

PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 8

1    5.5    Filing Protected Material. Before filing Protected Material or discussing or

2    referencing such material in court filings, the filing Party shall confer with the Designating Party,

3    in accordance with Local Civil Rule 5(g). Any motion to seal filed by the Receiving Party, where

4    a Designating Party must make the showing required by Local Civil Rule 5(g)(3)(B) in response

5    to the motion, must be noted for consideration no earlier than the fourth Friday after filing. A

6    Party who seeks to maintain the designation must satisfy the requirements of Local Civil Rule

7    5(g)(3)(B), even if it is not the Party filing the motion to seal. Failure to satisfy this requirement

8    will result in the motion to seal being denied, in accordance with the strong presumption of

9    public access to the Court's files.

10    5.6    Disclosure of Protected Material at Hearings or Trial: Any person receiving

11    Protected Material shall not reveal or discuss such information at any pre-trial hearing or hearing

12    open to individuals not otherwise authorized to receive Protected Material except as follows: In

13    the event a person receiving Protected Material intends to use Protected Material in any

14    proceeding open to individuals not entitled to receive Protected Materials, such person shall, at

15    least 14 days in advance, move to seal the proceeding or give the person that produced the

16    Protected Material written notice. In the latter case, the Parties shall thereafter meet and confer to

17    determine whether the Protected Material can be so used. If they cannot reach agreement, the

18    person who produced the Protected Material may file a motion to seal the proceeding.  If,

19    however, the party that seeks to use the Protected Material at a hearing for which it had fewer

20    than 21 days' advance notice, the parties will meet and confer within a reasonable time before

21    the hearing.

22   **6.    DESIGNATING PROTECTED MATERIAL**

23    6.1    Exercise of Restraint and Care in Designating Material for Protection. Each Party

24    or Non-Party that designates information or items for protection under this agreement must take

25    care to limit any such designation to specific material that qualifies under the appropriate

26    standards. The Designating Party must designate for protection only those parts of material,

27    documents, items, or oral or written communications that qualify, so that other portions of the

PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 9

1  material, documents, items, or communications for which protection is not warranted are not

2  swept unjustifiably within the ambit of this agreement.

3        Mass, indiscriminate, or routinized designations are prohibited. Designations that are

4  shown to be clearly unjustified or that have been made for an improper purpose (*e.g.*, to

5  unnecessarily encumber or delay the case development process or to impose unnecessary

6  expenses and burdens on other parties) expose the Designating Party to sanctions.

7        If it comes to a Designating Party's attention that information or items that it designated

8  for protection do not qualify for protection, the Designating Party must promptly notify all other

9  parties that it is withdrawing the mistaken designation.

10        6.2  <u>Manner and Timing of Designations</u>. Except as provided in section 6.2 (a) below,

11  or as otherwise stipulated or ordered, Discovery Material that qualifies for protection under this

12  agreement must be clearly so designated before or when the material is disclosed or produced.

13        (a)  <u>Information in documentary form</u>: (*e.g.*, paper or electronic documents

14  and deposition exhibits, but excluding transcripts of depositions or other pretrial or trial

15  proceedings), the Designating Party must affix the word(s) "CONFIDENTIAL" or "HIGHLY

16  CONFIDENTIAL—ATTORNEY'S EYES ONLY" to each page that contains Protected

17  Material. If only a portion or portions of the material on a page qualifies for protection, the

18  Producing Party also must clearly identify the protected portion(s) (*e.g.*, by making appropriate

19  markings in the margins). With respect to documents containing Protected Material produced in

20  native format, the Designating Party shall include the appropriate designation  in the manner

21  agreed to pursuant to the Parties' ESI protocol.

22        (b)  <u>Testimony given in deposition or in other pretrial or trial proceedings</u>: The

23  Parties and any participating Non-Parties must identify on the record, during the deposition,

24  hearing, or other proceeding, all protected testimony, without prejudice to their right to so

25  designate other testimony after reviewing the transcript. Any Party or Non-Party may, within 30

26  days after receiving the transcript of the deposition or other pretrial proceeding, designate

27  portions of the transcript, or exhibits thereto, as confidential. Transcripts containing Protected

PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 10

1   Material shall have an obvious legend on the title page that the transcript contains Protected

2   Material and the title page shall be followed by a list of all pages (including line numbers as

3   appropriate) that have been designated as Protected Material and the level of protection being

4   asserted by the Designating Party. The Designating Party shall inform the court reporter of these

5   requirements. Until the expiration of the 30-day period for designation, any deposition transcript

6   shall be treated as if it had been designated "HIGHLY CONFIDENTIAL—ATTORNEY'S

7   EYES ONLY" in its entirety, unless otherwise agreed. However, upon a showing of good cause

8   by the Party seeking to rely on the transcript, e.g., for use in a scheduled filing with the Court,

9   the Parties agree to shorten the designation period to 15 days or in appropriate circumstances

10  fewer.

11          If a Party or Non-Party desires to protect confidential information at trial, the

12  issue should be addressed during the pre-trial conference.

13          (c)   Other tangible items: The Producing Party must affix in a prominent place

14  on the exterior of the container or containers in which the information or item is stored the words

15  "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY."  If only

16  a portion or portions of the information or item warrant protection, the Producing Party, to the

17  extent practicable, shall identify the protected portion(s).

18      6.3   Inadvertent Failures to Designate. If timely corrected, an inadvertent failure to

19  designate qualified information or items does not, standing alone, waive the Designating Party's

20  right to secure protection under this agreement for such material. Upon timely correction of a

21  designation, the Receiving Party must make reasonable efforts to ensure that the material is

22  treated in accordance with the provisions of this agreement.

23  7.    **CHALLENGING CONFIDENTIALITY DESIGNATIONS**

24      7.1   Timing of Challenges. Any Party or Non-Party may challenge a designation of

25  confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality

26  designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic

27  burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to

PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 11

1  challenge a confidentiality designation by electing not to mount a challenge promptly after the
2  original designation is disclosed. A Party challenging a designation must provide the Bates
3  number or otherwise clearly and unmistakably identify each item (if a Bates number is
4  unavailable) of Protected Material being challenged.

5       7.2   <u>Meet and Confer</u>. The Parties must make every attempt to resolve any dispute
6  regarding confidential designations without Court involvement. Any motion regarding
7  confidential designations or for a protective order must include a certification, in the motion or in
8  a declaration or affidavit, that the movant has engaged in a good faith meet and confer
9  conference with other affected Parties in an effort to resolve the dispute without court action. The
10 certification must list the date, manner, and participants to the conference. A good faith effort to
11 confer requires a face-to-face meeting or a telephone conference.

12      7.3   <u>Judicial Intervention</u>. If the Parties cannot resolve a challenge without Court
13 intervention, the Designating Party may file and serve a motion to retain confidentiality under
14 Local Civil Rule 7(b) and in compliance with Local Civil Rule 5(g), if applicable, or may request
15 that the Parties follow the expedited joint motion procedure set forth in Local Civil Rule
16 37(a)(2). The burden of persuasion in any such motion shall be on the Designating Party.
17 Frivolous challenges, and those made for an improper purpose (*e.g.*, to harass or impose
18 unnecessary expenses and burdens on other parties) may expose the challenging Party to
19 sanctions. All Parties shall continue to maintain the material in question as confidential until the
20 court rules on the challenge.

21 **8.**    **PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN**
22 **OTHER LITIGATION**

23      If a Party is served with a subpoena or a court order issued in other litigation that compels
24 disclosure of any information or items designated in this action as "CONFIDENTIAL" or
25 "HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY," that Party must:

26      (a)   promptly notify the Designating Party in writing and include a copy of the
27 subpoena or court order;

PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 12

1         (b)     promptly notify in writing the Party who caused the subpoena or order to

2 issue in the other litigation that some or all of the material covered by the subpoena or order is

3 subject to this agreement. Such notification shall include a copy of this agreement; and

4         (c)     cooperate with respect to all reasonable procedures sought to be pursued

5 by the Designating Party whose Protected Material may be affected.

6      If the Designating Party timely seeks a protective order from the court from which the

7 subpoena or order issued, the Party served with the subpoena or court order shall not produce

8 any information designated in this action as "CONFIDENTIAL" or "HIGHLY

9 CONFIDENTIAL—ATTORNEYS' EYES ONLY" before a determination by the court from

10 which the subpoena or order issued, unless the Party has obtained the Designating Party's

11 permission. The Designating Party shall bear the burden and expense of seeking protection in

12 that court of its Protected Material, and nothing in these provisions should be construed as

13 authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from

14 another court.

15 **9.**    **UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL**

16      If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected

17 Material to any person or in any circumstance not authorized under this agreement, the

18 Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized

19 access or disclosure, (b) investigate and report to Designating Party the scope of and

20 circumstances of the unauthorized access or disclosure, (c) take immediate and reasonable steps

21 to rectify the unauthorized access or disclosure, including using its best efforts to retrieve all

22 unauthorized copies of the Protected Material and instituting additional security to prevent any

23 further access or disclosure, (d) comply with all obligations under applicable laws relating to

24 unauthorized access or disclosure, including security breach notification laws and other

25 applicable laws, (e) inform the person or persons to whom unauthorized disclosures were made

26 of all the terms of this Order, and (f) request that such person or persons execute the

27 "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 13

10.   **INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL**

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order or agreement that provides for production without prior privilege review. This Order invokes the protections afforded by Fed. R. Evid. 502(b).  As provided under Fed. R. Evid. 502(b) and 502(d) and subject to the limitations in Fed. R. Evid. 502(a), the disclosure of privileged material in connection with this litigation does not operate as a waiver in this action or any other action by the Producing Party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law.

11.   **NON-TERMINATION AND RETURN OF DOCUMENTS**

Unless otherwise ordered or agreed in writing, within 60 days after the termination of this action, including all appeals, each Receiving Party must destroy all Protected Material, including all copies, extracts, and summaries thereof.

The Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60-day deadline that affirms that the Receiving Party has used reasonable efforts to destroy copies, abstracts, compilations, summaries, or any other format reproducing or capturing any of the Protected Material.

Notwithstanding this provision, Counsel are entitled to retain one archival copy of all documents filed with the Court, trial, deposition, and hearing transcripts, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order.

1    Even after final disposition of this litigation, the confidentiality obligations imposed by

2   this agreement shall remain in effect until a Designating Party agrees otherwise in writing or a

3   court orders otherwise.

4

5        IT IS SO ORDERED.

6

7   DATED: _FEB 27, 2023_                    _____
                                              Hon. Richard A. Jones
8                                             United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 15

A-91

1  **EXHIBIT A**

2  <u>ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND</u>

3       I, _____ [print or type full name], of

4  _____ [print or type full address], declare under penalty of

5  perjury that I have read in its entirety and understand the Protective Order that was issued by the

6  United States District Court for the Western District of Washington on [date] in the case of *Frame-*

7  *Wilson, et al.* v. *Amazon.com, Inc.*, Case No. 2:20-CV-00424-RAJ. I agree to comply with and to

8  be bound by all the terms of this Protective Order and I understand and acknowledge that failure

9  to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly

10  promise that I will not disclose in any manner any information or item that is subject to this

11  Protective Order to any person or entity except in strict compliance with the provisions of this

12  Order.

13       I further agree to submit to the jurisdiction of the United States District Court for the

14  Western District of Washington for the purpose of enforcing the terms of this Protective Order,

15  even if such enforcement proceedings occur after termination of this action.

16  Date: _____

17  City and State where sworn and signed: _____

18  Printed name: _____

19  Signature: _____

20

21

22

23

24

25

26

27

PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 16

A-92

The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEBORAH FRAME-WILSON, CHRISTIAN
SABOL, SAMANTHIA RUSSELL, ARTHUR
SCHAREIN, LIONEL KEROS, NATHAN
CHANEY, CHRIS GULLEY, SHERYL
TAYLOR-HOLLY, ANTHONY COURTNEY,
DAVE WESTROPE, STACY DUTILL,
SARAH ARRINGTON, MARY ELLIOT,
HEATHER GEESEY, STEVE MORTILLARO,
CHAUNDA LEWIS, ADRIAN HENNEN,
GLENDA R. HILL, GAIL MURPHY,
PHYLLIS HUSTER, and GERRY
KOCHENDORFER, on behalf of themselves
and all others similarly situated,

Plaintiffs,

v.

AMAZON.COM, INC., a Delaware corporation,

Defendant.

No. 2:20-cv-00424-RAJ

**JOINT STATEMENT OF DISPUTES
REGARDING DISCOVERY
PROTOCOLS**



A-93

**TABLE OF CONTENTS**

                                                                          **Page**

I.     INTRODUCTION ...................................................................................1

II.    PROTECTIVE ORDER .........................................................................1

       A.     Plaintiffs' Statement...................................................................3

       B.     Defendant's Statement ...............................................................5

III.   ESI PROTOCOLS ...................................................................................7

       A.     General Principles ......................................................................7

              1.     Plaintiffs' Statement........................................................8

              2.     Defendant's Statement.....................................................8

       B.     Timing of Disclosures................................................................9

              1.     Plaintiffs' Statement........................................................9

              2.     Defendant's Statement...................................................10

       C.     Number of Custodians .............................................................10

              1.     Plaintiffs' Statement......................................................10

              2.     Defendant's Statement...................................................12

       D.     Search methodology.................................................................13

              1.     Plaintiffs' Statement......................................................13

              2.     Defendant's Statement...................................................13

       E.     Presumptively Overbroad Search Results.................................14

              1.     Plaintiffs' Statement......................................................14

              2.     Defendant's Statement...................................................15

       F.     Supplemental Disclosures ........................................................16

              1.     Plaintiffs' Statement......................................................16

              2.     Defendant's Statement...................................................16

       G.     Privilege...................................................................................17

              1.     Plaintiffs' Statement......................................................17



A-94

| | | a. | Timing | 17 |
| | | b. | Required disclosures of a privilege log | 17 |
| | 2. | Defendant's Statement | | 18 |
| | | a. | Timing | 18 |
| | | b. | Privilege log requirements | 18 |
| IV. | CONCLUSION | | | 18 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

A-95

## I.      INTRODUCTION

The Parties worked in good faith to reach agreement on (1) a Protective Order and (2) an Order Regarding Discovery of Electronically Stored Information ("ESI Protocols"). Through ongoing discussion, the Parties substantially narrowed their disputes, but were unable to reach agreement on all aspects of these proposed discovery protocols. The disputed issues, and the Parties' respective positions on each, are set forth below.

## II.      PROTECTIVE ORDER

The Parties' disputes with respect to the Protective Order concern the disclosure of "Highly Confidential—Attorneys' Eyes Only" information to industry experts. Amazon proposes that the Protective Order include a definition of "industry experts" and a provision requiring the disclosure of industry experts before they have access to Highly Confidential information, and Plaintiffs propose that these provisions be excluded.

**Disputed Provisions**:

The first provision defines an "Industry Expert"

2.6      Industry Expert:  "An Expert whose specialized knowledge or experience derives from personal experience in the industries and markets pertinent to the litigation and who satisfies the other criteria for the definition of Expert."  **Exhibit B** at ¶ 2.6.

The second provision addresses pre-disclosure requirements for Industry Experts before they may receive access to "Highly Confidential" information:

5.4      Procedures for Approving or Objecting to Disclosure to Expert of Materials Designated "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY."

(a)      Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Industry Expert any material that has been designated "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" first must make a written disclosure to the Designating Party that (1) identifies the general categories of "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" information that the Receiving Party seeks permission to disclose to the Industry Expert, (2) sets forth the full name of the Industry Expert and the city and state of his or her primary residence, (3) attaches a copy of the Industry Expert's

JOINT STATEMENT OF DISPUTES
REGARDING DISCOVERY PROTOCOLS - 1
Case No. 2:20-cv-00424-RAJ



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

1   current resume, (4) identifies the Industry Expert's current employer(s), (5) identifies each

2   person or entity from whom the Industry Expert has received compensation or funding for work

3   in his or her areas of expertise or to whom the Industry Expert has provided professional

4   services, including in connection with a litigation, at any time during the preceding four years,

5   and (6) identifies (by name and number of the case, filing date, and location of court) any

6   litigation in connection with which the Industry Expert has offered expert testimony, including

7   through a declaration, report, or testimony at a deposition or trial, during the preceding four

8   years. If the Industry Expert believes that any of the information sought through part (6) of this

9   disclosure is subject to a confidentiality obligation to a third party, then the Expert should

10  indicate the confidential matters with as much detail as possible.

11          (b)      A Party that makes a written disclosure and provides the information specified in

12  the preceding respective paragraphs may disclose the subject "HIGHLY CONFIDENTIAL—

13  ATTORNEYS' EYES ONLY" Material to the identified Industry Expert unless, within seven

14  days of delivering the request, the Party receives a written objection from the Designating Party.

15          (c)      A Party that receives a timely written objection must meet and confer with the

16  Designating Party to try to resolve the matter by agreement within three days of the written

17  objection. If no agreement is reached, the Party seeking to make the disclosure to the Industry

18  Expert may file a motion as provided in Local Civil Rule 7 seeking permission from the Court to

19  do so, or may use the expedited joint motion procedure set forth in Local Civil Rule 37(a)(2).

20  Any such motion must describe the circumstances with specificity, set forth in detail the reasons

21  why the disclosure to the Industry Expert is reasonably necessary, assess the risk of harm that the

22  disclosure would entail, and suggest any additional means that could be used to reduce that risk.

23  In addition, any such motion must be accompanied by a competent declaration describing the

24  Parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet

25  and confer discussions) and setting forth the reasons advanced by the Designating Party for its

26  refusal to approve the disclosure.

27          In any such proceeding, the Party opposing disclosure to the Industry Expert shall bear

28  the burden of proving that the risk of harm that the disclosure would entail (under the safeguards



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

A-97

1  proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Industry

2  Expert.  **Exhibit B** at ¶ 5.4.

3       With the exception of these disputed provisions and any references to them, the Parties'

4  proposed Protective Orders (**Exhibits A and B[1]**) are the same.

5  **A.    Plaintiffs' Statement**

6       The disputed provision deviates sharply from this Court's Model Protective Order, which

7  does not require that experts be disclosed, much less approved, before receiving discovery

8  materials. As courts in this district recognize, "[t]he model order is the model for a reason—it

9  was drafted and approved by the judges of this district based on their collective experience

10 managing numerous cases with confidential material." *Kater v. Churchill Downs Inc.*, 2020 WL

11 13490764, at *2 (W.D. Wash. May 5, 2020) (internal quotation omitted). Additional restrictions

12 require a showing of "good cause." *See* Fed. R. Civ. P. 26(c)(1). Amazon cannot make that

13 showing here, where its proposed restrictions are unnecessary and grossly prejudicial to

14 Plaintiffs.

15      *First*, the Protective Order already bars experts from disclosing or utilizing Amazon's

16 protected information outside this litigation. Prior to reviewing *any* Confidential or Highly

17 Confidential—Attorneys' Eyes Only material, experts must acknowledge in writing that they are

18 bound by the Protective Order and "solemnly promise" not to "disclose in any manner any

19 information or item that is subject to this Stipulated Protective Order to any person or entity

20 except in strict compliance with the provisions of this Order." *See* Exs. A & B, at Ex. A. Further,

21 protected material can be used "in connection with this case only for prosecuting, defending, or

22 attempting to settle this litigation." Ex. A at § 5.1. Any expert who fails to abide by these

23 requirements is subject "to sanctions and punishment in the nature of contempt." *Id.* at Ex. A.

24      The additional restrictions Amazon seeks are thus premised on the assumption that

25 experts will violate the Protective Order. This is not an assumption courts entertain. Quite the

26 opposite, courts "presume[] that counsel and expert witnesses will abide by the letter and spirit of

27 _____

28    [1] In compliance with LCR26(c)(2), the parties attach redlines as Exhibit 1 to their proposed protective orders to
   identify departures from the model protective order.

JOINT STATEMENT OF DISPUTES
REGARDING DISCOVERY PROTOCOLS - 3
Case No. 2:20-cv-00424-RAJ



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

1   the Protective Order." *Methodist Health Servs. Corp. v. OSF Healthcare Sys.*, 2014 WL

2   5465401, at *2 (N.D. Ill. Oct. 27, 2014); *Columbia Mach., Inc. v. Besser Co.*, 2011 WL

3   6753927, at *3 (W.D. Wash. Dec. 23, 2011) ("The Court assumes that all parties will comply

4   with the terms of that Order and any inappropriate use of documents produced subject to the

5   Protective Order may subject the offending party to sanctions. This Court has no reason to

6   believe that this would be insufficient to protect defendant's proprietary interests."). Speculation

7   about illicit disclosures, which is all Amazon offers here, does not override the presumption of

8   compliance. *See Nat'l Prod. Inc. v. Innovative Intelligent Prod.*, LLC, 2021 WL 2671874, at *2

9   (W.D. Wash. June 29, 2021) (to enter protective order, "courts have insisted on a particular and

10  specific demonstration of fact, as distinguished from stereotyped and conclusory statements")

11  (internal quotation omitted).

12      *Second*, Amazon is the only party likely to produce "Highly Confidential—Attorneys'

13  Eyes Only" information, and only Amazon is seeking to limit expert access to discovery under

14  that designation. By making its productions potentially unavailable to Plaintiffs' industry experts

15  (or available only after motion practice), Amazon's proposed provisions would give it a tactical

16  advantage by disrupting Plaintiffs' expert work, while allowing its own experts to continue their

17  work uninterrupted. This one-sided burden on Plaintiff is substantial and would impede the fluid

18  exchange of information that is essential for effective expert work. Before sharing any "general

19  category" of "Highly Confidential—Attorneys' Eyes Only" with an industry expert, Plaintiffs

20  would need to disclose the expert and a litany of information regarding his or her prior work.

21  Amazon would then have the unilateral right to bar the disclosure, whereupon Plaintiffs would

22  need to file and prevail on a motion to share the discovery material. *See* Ex. B at § 5.4. This

23  process would take months to resolve for each category of information. During that delay,

24  Plaintiffs' industry experts would be deprived of discovery materials they need to analyze the

25  facts and formulate opinions, whereas Amazon's experts would be unaffected. That is unfair. !

26      *Third*, the disputed provision would require that industry experts be identified many

27  *months* before the Rule 26 disclosure deadline. And again, because Plaintiffs are far less likely to

28  have "Highly Confidential—Attorneys' Eyes Only" information, this becomes a one-sided

JOINT STATEMENT OF DISPUTES
REGARDING DISCOVERY PROTOCOLS - 4
Case No. 2:20-cv-00424-RAJ



HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

1    exchange in which Amazon gets a preview of Plaintiffs' experts, without the need to reciprocate.

2    Additionally, the provision would require Plaintiffs to disclose *consulting* (non-testifying)

3    industry experts, which is not required under the Federal Rules. This is significant because

4    Plaintiffs' ability to retain qualified consulting experts may depend on the confidentiality of the

5    engagement. Amazon is the world's dominant retailer and an active funder of think tank and

6    policy groups. Fearing reprisal or loss of funding, consultants willing to advise Plaintiffs

7    confidentially would have good reasons to decline if the engagement is disclosed. *See In re Pizza*

8    *Time Theatre Secs. Litig.*, 113 F.R.D. 94, 99-100 (N.D. Cal. 1986) (denying request for

9    protective order that would require disclosure of non-testifying experts prior to their receipt of

10   discovery material).

11       For all these reasons, Amazon cannot establish good cause to adopt its additional expert

12   disclosure requirements. The provisions would be deeply prejudicial, and as a practical matter

13   would likely foreclose Plaintiffs from submitting any industry expert testimony. Plaintiffs

14   therefore respectfully request that the Court adopt Plaintiffs' Proposed Protective Order, attached

15   hereto as **Exhibit A**, which adheres to this Court's Model Order with respect to expert

16   disclosures.

17   **B.    Defendant's Statement**

18       This case is likely to involve the production of extremely sensitive business information,

19   the disclosure of which would create a risk of competitive or commercial harm.  It is also likely

20   that one or more Parties might retain experts whose specialized knowledge or experience derives

21   from personal experience in the industries and markets pertinent to the litigation ("Industry

22   Experts").  The Industry Experts, in addition to serving as experts in litigation, may also advise

23   Amazon's competitors in connection with business matters.  The use of Industry Experts creates

24   heightened concerns that the expert will not be able to compartmentalize information learned as

25   an expert in this matter from serving as an advisor for actual or potential Amazon competitors.

26   *Telebuyer, LLC* v. *Amazon.com, Inc.*, 2014 WL 5804334, at *2 (W.D. Wash. 2014) (explaining

27   that "even the most rigorous efforts of the recipient of such information to preserve confidentiality

28   in compliance with the provisions of such a protective order may not prevent inadvertent



A-100

1   compromise" because "it is very difficult for the human mind to compartmentalize and selectively

2   suppress information once learned, no matter how well-intentioned the effort may be to do so").

3   Therefore, Amazon proposes that the Parties be required to make modest disclosures regarding the

4   identity of any Industry Experts before any information that is designated as "HIGHLY

5   CONFIDENTIAL—ATTORNEYS' EYES ONLY" is shared with Industry Experts.  This modest

6   disclosure requirement is necessary to ensure that any concerns of a competitive or commercial

7   disadvantage deriving from the expert's industry participation can be resolved at the outset, before

8   Amazon's highly sensitive and confidential business information is disclosed to an Industry

9   Expert.  This disclosure requirement would apply only to Industry Experts, not all experts.

10         To be clear, Amazon's proposal does not prohibit Plaintiffs from retaining an Industry

11  Expert.   Nor does it prohibit Plaintiffs from sharing "HIGHLY CONFIDENTIAL—

12  ATTORNEYS' EYES ONLY" material with that expert; Amazon only requests that it be afforded

13  seven-days' notice of the Industry Expert's identity before Plaintiffs disclose such information to

14  such experts, with sufficient information to evaluate the risk that its sensitive information could be

15  disclosed to competitors.  Ex. B. ¶ 5.4(a).  And if Amazon believes that the risk of harm that the

16  disclosure would entail would outweigh the Plaintiffs' need to disclose the material to its industry

17  expert, the onus would be on Amazon to lodge a written objection, engage in a meet-and-confer

18  process, and seek relief from the Court if necessary.  Ex. B. ¶ 5.4(b)–(c); *see also Pac. Marine*

19  *Propellers, Inc.* v. *Wartsila Def., Inc.*, 2018 WL 2059512, at *3–4 (S.D. Cal. 2018) (listing factors

20  for court to analyze in addressing the independence of potential expert to avoid divulging

21  confidential information "to place that party at a competitive disadvantage").

22         Courts routinely enter provisions with additional safeguards of this nature where the case

23  reflects a risk that highly sensitive business information produced during discovery could fall into

24  the hands of a competitor as a result of disclosures to industry experts.  *See, e.g.*, *Ibrahim* v. *Dep't*

25  *of Homeland Sec.*, 669 F.3d 983, 999 (9th Cir. 2012) (holding that pre-disclosure requirement

26  provides reasonable method for vetting industry consultant); *CleanCrawl, Inc.* v. *Crawl Space*

27  *Cleaning Pros, Inc.*, 2019 WL 2869169, at *2 (W.D. Wash. 2019) (holding that 10-day disclosure

28  requirement for industry participants retained as consultants was reasonable).  And other recent



**A-101**

1    cases in this District, including before this Court, have used expert pre-disclosure procedures akin

2    to what Amazon proposes here.[2]

3           Plaintiffs do not dispute Amazon's proposal that special care needs to be taken to ensure

4    that Amazon sensitive data does not make its way to the hands of competitors. Ex. A. ¶ 2.5

5    (preventing employees of competitors from serving as experts). But Plaintiffs provide no reasoned

6    explanation for ignoring the heightened risk that disclosure to an Industry Expert necessarily

7    creates. Amazon's proposal is a narrowly-tailored and reasonable way to ensure there is a process

8    for resolving any issues in advance, while allowing Plaintiffs to retain experts who, following the

9    disclosure process and resolution of any disputes, will be permitted to review the Highly

10    Confidential materials in this case. *Pac. Marine Propellers*, 2018 WL 2059512, at \*2 (Protective

11    Order required that the receiving party to "provide the producing party with the name and

12    curriculum vitae of the proposed independent expert" before disclosing "CONFIDENTIAL—FOR

13    COUNSEL ONLY"). Amazon respectfully requests that the Court adopt its Proposed Protective

14    Order, attached as **Exhibit B**.

15                  **III.    ESI PROTOCOLS**

16           The Parties worked in good faith to negotiate a set of ESI protocols and reached

17    agreement on some issues, while others remain, as outlined below. Plaintiffs ask that the Court

18    enter the Proposed ESI Protocols appended as **Exhibit C**, which incorporate Plaintiffs' proposed

19    approach on the disputed issues. Amazon asks that the Court enter the Proposed ESI Protocols

20    appended as **Exhibit D**, which incorporate Amazon's approach.

21    **A.    General Principles**

22           Under the section on general principles, the Model ESI states that "the proportionality

23    standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case," and "[t]o further the

24

25

26

27

28

---

[2] *See, e.g., O'Donnell/Salvatori, Inc.* v. *Microsoft Corp.*, No. 2:20-cv-00882-MLP (W.D. Wash. Nov. 30, 2020), Dkt. 40 ¶ 5.4; *Benson* v. *Double Down Interactive, LLC*, No. 2:18-cv-00525-RBL (W.D. Wash. July 28, 2020), Dkt. 123 ¶ 7; *PTP Oneclick, LLC* v. *Avalara, Inc.*, No. 19-cv-00640-JLR (W.D. Wash. July 8, 2019), Dkt. 49 ¶ 5.4; *Hopjacks, Inc.* v. *Rock Solid Restaurants, LLC*, No. 2:18-cv-00848-RAJ (W.D. Wash. Aug. 8, 2018), Dkt. 60 ¶ 4.4; *Intellicheck Mobilisa, Inc.* v. *Wizz Sys. LLC d/b/a IDScan.net*, No. 2:15-cv-00366-JLR (W.D. Wash. Feb. 9, 2016), Dkt. 53 ¶ 5; *Cousineau* v. *Microsoft Corp.*, No. 2:11-cv-01438-JCC (W.D. Wash. Nov. 9, 2013), Dkt. 53 ¶ 8; *Lane's Gifts and Collectibles, LLC* v. *Microsoft Online, Inc.*, No. 2:12-cv-01181-JCC (W.D. Wash. Feb. 28, 2013), Dkt. 29 & 30 ¶ 4.4.



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

1    application of the proportionality standard in discovery, requests for production of ESI and

2    related responses should be reasonably targeted, clear, and as specific as possible." Both parties

3    have included that statement in their proposed ESI orders. **Exhibits C and D**, *see* General

4    Principles. Amazon also seeks to add the following provision:

> Nothing in this ESI Protocol shall be construed to alter the Producing Party's rights
> arising under Federal Rule of Civil Procedure 26 or otherwise, for example, with
> respect to proportionality, or to be able to withhold production of Documents
> because the source of the Documents is not reasonably accessible or its production
> would be unduly burdensome or duplicative.

9    **1.    Plaintiffs' Statement**

10    Plaintiffs object to this proposed supplemental provision both because it is duplicate of

11    the preceding statement of general principles and because Amazon seeks to interject this

12    provision as a limitation on the provisions of the ESI order that are intended to ensure

13    proportionality, i.e., the parties' duty to preserve and conduct adequate searches of reasonably

14    accessible ESI. As a court in this District recently held: "Of course, Rule 26(b)(1) requires that

15    the Court consider 'whether the burden or expense of the proposed discovery outweighs its likely

16    benefit,'" but that proportionality principle does not relieve the producing party of the

17    obligations to conduct searches in accord with the ESI order. *Benanav v. Healthy Paws Pet Ins.*

18    *LLC*, 2022 WL 3587982, at *4 (W.D. Wash. Aug. 22, 2022) (ruling that burden objections were

19    not a basis to defy the ESI protocol). If a search or a preservation obligation is unduly

20    burdensome under the principles of proportionality, a party may not substitute its own judgment

21    by deviating from the ESI order but is expected to cooperate in good faith with opposing counsel

22    to resolve the impasse. *Id.* at 5. Amazon's proposed addition introduces the Trojan horse that

23    would allow a Party's individual assessment of the relative burdens of production to trump the

24    specific provisions if the ESI order, thereby defeating the order's purpose.

25    **2.    Defendant's Statement**

26    Rule 26(b)(1) of the Federal Rules of Civil Procedure provide that, "Unless otherwise

27    limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding

28    any nonprivileged matter that is relevant to any party's claim or defense and proportional to the

JOINT STATEMENT OF DISPUTES
REGARDING DISCOVERY PROTOCOLS - 8
Case No. 2:20-cv-00424-RAJ



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

A-103

1   needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Amazon's proposed provision makes clear that the

2   ESI Protocol, when issued as an order from this Court, does not disturb the careful balance created

3   by the Federal Rules and caselaw. If disputes arise concerning the meaning of the ESI Protocols,

4   or their application, resolution of such disputes should be guided by the proportionality and other

5   requirements set forth in Rule 26. *E.g.*, *Nichols* v. *Noom Inc.*, 2021 WL 948646, at *2-*3

6   (S.D.N.Y. 2021) (explaining that, where parties disagreed on an issue regarding a court-ordered

7   ESI protocol, the parties' search methodology must be "reasonable" and the court is "guided by

8   proportionality concerns set forth in Rule 26(b)(1)" in evaluating the dispute); *Livingston* v. *City

9   of Chicago*, 2020 WL 5253848, at *3 (N.D. Ill. 2020) (citing Fed. R. Civ. Pro. 26) (finding in a

10  dispute clarifying a court-ordered ESI protocol that the defendant's proposal "satisfies the

11  reasonable inquiry standard and is proportional to the needs of this case under the federal rules").

12       Plaintiffs have already served nearly 100 wide-ranging requests for production seeking

13  broad discovery about more than a decade of Amazon's worldwide operations. Given the massive

14  breadth of the requests Plaintiffs have already served, it is particularly appropriate to make clear

15  that nothing in the ESI Protocol supplants the standards for proportionality, relevance, and burden,

16  set forth in Rule 26 and applicable caselaw.

17  **B.   Timing of Disclosures**

18       **1.   Plaintiffs' Statement**

19       The model ESI order provides that the parties have 30 days to make their necessary

20  disclosures. Amazon seeks 60 days here despite its prior agreement to a 30-day deadline in

21  another class action lawsuit. *Crosby v. Amazon.com, Inc.*, 2022 U.S. Dist. LEXIS 36151, at *2

22  (W.D. Wash. Mar. 1, 2022). Plaintiffs object to the extra month because this case has been

23  pending since March of 2020 and Plaintiffs are eager to engage in discovery. As this Court

24  previously noted, "the case has been pending for over two years and further delay risks the loss

25  of evidence and witnesses." ECF 63 at 4. Providing an extra 30 days to satisfy ESI disclosures

26  would further delay Amazon's search and production of documents responsive to Plaintiffs'

27  discovery requests because Plaintiffs cannot blindly negotiate the list of custodians and non-

28  custodial searches without such basic disclosures. As a sophisticated, high-tech company that

JOINT STATEMENT OF DISPUTES
REGARDING DISCOVERY PROTOCOLS - 9
Case No. 2:20-cv-00424-RAJ



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

specializes in collecting, managing, deciphering, and storing vast sums of data, the task of identifying the custodial and non-custodial sources of potentially relevant information should be child's play for Amazon, even if the sources are numerous. More time is not warranted for this task, especially when entry of this order will be delayed until disputes over this order have been resolved.

### 2.     Defendant's Statement

Amazon proposes a modest increase in the time in which the Parties will be required to make their ESI disclosures, from 30 to 60 days.  Plaintiffs' 30-days proposal is unreasonably short in the context of this case.  As Plaintiffs acknowledge, they assert wide-ranging claims and seek extensive data, including data relating to every third-party seller that has offered a product in Amazon's store and details of each third-party-seller transaction in Amazon's store covering more than a decade.  Even if Plaintiffs significantly narrowed their requests, it would take substantial time and effort to collect and verify the information needed for Amazon's ESI disclosures.  The ESI disclosure timeline will not delay discovery; Plaintiffs have already served nearly 100 wide-ranging Requests for Production, and Amazon has committed to meet and confer with Plaintiffs on those requests the week after serving its responses.  Requiring an unreasonably fast disclosure of Amazon's ESI information imposes a burdensome and unnecessarily short deadline and will draw the Parties' attention away from continuing the progress on discovery that is already underway.

### C.     Number of Custodians

### 1.     Plaintiffs' Statement

In this large and complex case, Amazon contends that it need only identify *ten* potential document custodians. This is an unreasonable limitation. Amazon is the world's largest retailer with more than 1.6 million employees.[3] On its face, 10 custodians is unreasonable in a case involving the core business of the world's largest online retail marketplace. But it is ludicrous in the context of this case. By Amazon's own description, Plaintiffs' antitrust claims are

---

[3] *See* https://www.statista.com/statistics/234488/number-of-amazon-employees/.

JOINT STATEMENT OF DISPUTES
REGARDING DISCOVERY PROTOCOLS - 10
Case No. 2:20-cv-00424-RAJ



HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

1    unprecedented in breadth and scope. By Amazon's own description, Plaintiffs' discovery in this

2    case is necessarily broad. Plaintiffs challenge Amazon's practices of restricting its two million

3    third-party sellers' freedom to set their own prices for the hundreds of millions of distinct

4    products they sell on Amazon's platform and on the many other sites where they sell online. The

5    development, implementation, and monitoring of Amazon's practices and procedures governing

6    such broad-based policies almost certainly involves hundreds of employees and officers.

7        These issues cannot be adequately evaluated with the documents of *just 10* Amazon

8    employees. In comparable complex litigation, it is not uncommon for 100 or more custodians to

9    be identified or searched. *In re Seroquel Prods. Liab. Litig.*, 2008 WL 508391, at *2 (M.D. Fla.

10   Feb. 21, 2008) (defendant produced files from 100 custodians); *Johnson v. Ford Motor Co.*,

11   2015 WL 6758234, at *2 (S.D. W.Va. Nov. 15, 2015) (defendant conducted document searches

12   of over 100 employees across many departments); *John B. v. Goetz*, 879 F. Supp. 2d 787, 836

13   (M.D. Tenn. 2010) (defendant examined the individual computers of the over 150 custodians);

14   *Little Hocking Water Ass'n, Inc. v. E.I. Du Pont De Nemours & Co.*, 2013 WL 608154, at *8

15   (S.D. Ohio Feb. 19, 2013) (defendant disclosed 310 custodians); *In re Intel Corp.*

16   *Microprocessor Antitrust Litigation*, 258 F.R.D. 280, 284 (D. Del. 2008) (defendant disclosed

17   1,023 custodians).

18        The model ESI Protocol provides that the number of custodians depends on the nature of

19   the case. Rather than generically predetermining the number of custodians that may be sufficient,

20   Plaintiffs propose that the parties rely on the requirements of Rule 26 and their good faith

21   assessment of the demands of the case to inform their disclosure obligations. In the

22   aforementioned *Crosby* class action lawsuit, pending before Judge Coughenour, Amazon agreed

23   to an ESI protocol that removed any limit on the number of custodians to be disclosed. *Crosby*,

24   2022 U.S. Dist. LEXIS 36151, at *2. Given the potentially large number of officers and

25   employees involved in the policies and practices that Plaintiffs challenge, Plaintiffs propose the

26   same approach here.

27        Moreover, pursuant to agreed terms of the ESI Protocol, identifying potential custodians

28   will not commit Amazon to gathering documents from all of them. Rather, the ESI Protocols

JOINT STATEMENT OF DISPUTES
REGARDING DISCOVERY PROTOCOLS - 11
Case No. 2:20-cv-00424-RAJ

HB HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

A-106

1  contemplate further negotiations on that issue. *See* Exhibits C and D, at § C.2. If Amazon

2  convinces Plaintiffs, or the Court, that any individuals Amazon discloses as having potentially

3  relevant information are not appropriate document custodians, e.g., because their records are

4  likely to be duplicative of others Amazon has agreed to search, their documents need not be

5  searched. But identification of these custodians will at least allow the parties to have an informed

6  discussion early in the case.

7      **2.      Defendant's Statement**

8      The Model Agreement sets as a default the disclosure of five custodians most likely to possess

9  discoverable ESI. *See* Model § B.1. As a measure of compromise with Plaintiffs, Amazon has offered

10  to double this default amount, whereas Plaintiffs provide no number and no compromise, insisting that

11  Amazon disclose *every* custodian that might have discoverable ESI based on Amazon's "good faith

12  assessment." Plaintiffs' boundless proposal is contrary to the letter and spirit of this Court's Model

13  Protocol, and untenable. The Court should adopt Amazon's proposal.

14      The Model Protocol provides that "[t]his disclosure provision is distinct from the parties'

15  agreement . . . about determining the number of custodians from whom ESI should be gathered." *Id.*

16  For its ESI disclosures, Amazon proposes to disclose the 10 custodians most likely to have discoverable

17  ESI and then, based on Plaintiffs' discovery requests and the subsequent responses, to designate

18  custodians as appropriate. Amazon is prepared to negotiate, in good faith, on the appropriate number

19  and identity of custodians, but it should not be required to list every custodian likely to have

20  discoverable ESI as part of its ESI disclosures, imposing a disproportionate burden on Amazon.

21      If the disclosure of the ten custodians proposed by Amazon turns out to be inadequate for any

22  reason, Plaintiffs are welcome to ask for information on possible additional custodians as document

23  discovery unfolds based on the discovery they receive. The Model Order sets a number for a reason—

24  to limit the burdens on the responding party before the requesting party shows any actual need for

25  broader inquiry. Plaintiffs demonstrate no actual need, at the current posture, to more than double the

26  Model Order's default number of disclosed custodians.

27

28

JOINT STATEMENT OF DISPUTES
REGARDING DISCOVERY PROTOCOLS - 12
Case No. 2:20-cv-00424-RAJ



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

1    **D.**     **Search methodology**

2       **1.**      **Plaintiffs' Statement**

3       The explanation accompanying the model order's provision on search methodology

4 states: "The Court presumes that the use of search terms and queries, file type and date

5 restrictions, and technology-assisted review [TAR] will be reasonably necessary to locate or

6 filter ESI likely to contain discoverable information." The model order provides that parties meet

7 and confer on these matters to determine what is appropriate in the context of the case. Amazon

8 seeks to substitute that entire regime with a presumption that the producing party knows best

9 how to preserve, search, and reviews its own documents. Even among the most cooperative

10 opposing counsel, transparency is vital in an adversarial process. Plaintiffs therefore do not agree

11 that the producing party's individual judgment provides a fair and adequate substitution for the

12 use of negotiated search terms and TAR.

13       **2.**      **Defendant's Statement**

14       Amazon proposes to add language to the ESI Protocol stating:

15       The parties agree that to support a cooperative discovery process, they will each act
reasonably in disclosing their intended processes for search and retrieval, including
16       the use of computer- or technology-aided methodologies.  If the parties determine
that they will utilize search terms, the parties shall timely confer to attempt to reach
17       agreement on appropriate search terms and queries, file type and date restrictions,
and data sources (including custodians).  The parties agree that each producing
18       party will take reasonable steps to identify, review, and produce relevant
documents.  The parties further agree that each producing party is best situated to
19       evaluate and utilize the procedures, methodologies, and technologies appropriate to
identify, review, and produce its own Documents.
20

21 Plaintiffs have objected to this language, taking the position that TAR and search terms are the

22 default search methodologies to be used.  But that issue is not yet ripe: the provision does not say

23 whether TAR and search terms are the only methodologies that may be used or are "default"

24 methodologies.  Instead, the provision provides that the parties shall disclose their selected search-

25 and-retrieval methodologies.

26       Amazon's proposed language is consistent with the applicable case law holding that

27 Amazon, as the producing party, "is best situated to determine its own search and collection

28



A-108

1    methods so long as they are reasonable." *Nichols* v. *Noom Inc.*, 2021 WL 948646, at *2 (S.D.N.Y.

2    2021); *see also Livingston* v. *City of Chicago*, 2020 WL 5253848, at *3 (N.D. Ill. 2020) ("the

3    responding party is best situated to decide how to search and produce emails responsive to

4    plaintiffs' discovery requests"); *Hyles* v. *New York City*, 2016 WL 4077114, at *3 (S.D.N.Y. 2016)

5    (same). The "insistence" that one party "must collaborate" with the other "to establish a review

6    protocol and validation process has no foothold in the federal rules governing discovery," and

7    would serve only to create further friction and disputes down the road. *Livingston*, 2020 WL

8    5253848, at *3; *Hyles*, 2016 WL 4077114, at *1. Amazon will design an efficient and reasonable

9    method based on its knowledge of its own systems and data, and will disclose its search

10   methodology to Plaintiffs. But that methodology should not be dictated by Plaintiffs, who are not

11   in the best position to assess reasonable methods of searching and collecting documents from

12   Amazon's internal systems.

13   **E.    Presumptively Overbroad Search Results**

14            **1.    Plaintiffs' Statement**

15            Amazon's proposed ESI Protocols include an *optional* provision from this Court's Model

16   ESI Protocols, pursuant to which search strings that return data above a set megabyte threshold

17   are presumptively overbroad. While Amazon increased the threshold from 250 to 500

18   megabytes, this remains an unreasonable limitation for a case of this magnitude. For a point of

19   reference, Plaintiffs testing on other ESI databases indicates that *fewer than 400* documents can

20   exceed Amazon's 500-megabyte threshold. That type of threshold may make sense for a small

21   case with limited document discovery. It does not make sense here. A search that yields fewer

22   than 400 documents across Amazon's custodial and non-custodial sources cannot be deemed

23   presumptively overbroad. And indeed in the *Crosby* class action, Amazon did not seek such a

24   limitation, yet it inexplicably seeks to do so here. 2022 U.S. Dist. LEXIS 36151, at *4.

25            Plaintiffs agree, however, that the parties need to work constructively to fashion

26   reasonably targeted searches. And Plaintiffs agree that Amazon should have the ability to object

27   to search strings it deems overbroad. As noted, Plaintiffs' proposed ESI protocol expressly

28   allows for this. *See* Ex. C at § C.2.a.iii (adopting the provision from the Model ESI order: "The



1  producing party may identify each search term or query returning overbroad results

2  demonstrating the overbroad results and a counter proposal correcting the overbroad search or

3  query"). The Parties are represented by experienced counsel who can work through these issues

4  cooperatively and in good faith. There is no need to fix a threshold for overbroad searches, and if

5  any threshold is set, the needs of this case require that it be set far above 500 megabytes.

6        **2.**      **Defendant's Statement**

7        The Model Agreement offers an optional provision providing that, if an additional search

8  term or string proposed by a requesting party returns more than 250 megabytes of data, the term

9  or string "is presumed to be overbroad."  Model § C.2.a.iii.  Amazon has made a number of

10  compromises on the scope of the searches it will conduct.  It agreed to Plaintiffs' ability to propose

11  both pre- and post-production 20 additional search terms or strings—double the presumptive 10

12  terms provided in the Model ESI Protocol.  In addition, Amazon agreed to double the megabyte

13  threshold for what constitutes an overbroad search from 250 to 500 megabytes.  Plaintiffs,

14  however, decline to compromise and insist that no amount of data is presumptively overbroad.

15  Here, the burden of collecting, reviewing, and producing an increased email volume will fall

16  exclusively on Amazon.  Plaintiffs' position is not a reasonable counterproposal—it is an invitation

17  to unbounded inquiry regardless of data volume.  A presumptive overbreadth threshold will

18  incentivize Plaintiffs to craft targeted and proportionate searches.

19        Because Plaintiffs fail to offer a concrete position, the Court should adopt Amazon's 500

20  megabyte limitation.  In any event, the presumptive limit is just that: presumptive.  If Plaintiffs

21  make a reasonable request for additional searches, Amazon will consider the request in good faith.

22  Further, the presumptive limit does not prevent Plaintiffs from seeking relief from the Court if they

23  can show that a particular search is appropriate.  Even if the Court agrees with Plaintiffs that a 500

24  megabytes presumption is insufficient for this case, the Court should still impose *some* specific

25  presumptive limit to force Plaintiffs to be judicious with their search proposals.

26

27

28



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

**A-110**

**F.  Supplemental Disclosures**

    **1.  Plaintiffs' Statement**

Pursuant to Rule 26(e)(1), and this's Model ESI Protocols, parties must supplement their productions "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1); Ex. C at § D.2. Without justification, Amazon's proposed ESI Protocols would eliminate this requirement. Supplementation pursuant to Rule 26(e)(1) is critical to ensure that the record is complete and accurate. There is nothing unique to this case that might eliminate the need for supplementation. The Court should adhere to the federal rules requiring supplementation pursuant to Rule 26(e)(1).

    **2.  Defendant's Statement**

The Model Agreement contains a provision by which parties will supplement their disclosures "with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made . . . ." Model ¶ D.2. Amazon proposes that this provision be revised to read: "The Parties will agree to meet and confer in good faith to identify the categories of information identified in their initial disclosures for which supplementation will be provided in accordance with Fed. R. Civ. P. 26(e)." Ex. D. ¶ D.2

As both Parties acknowledge, the discovery sought in this action is likely to be wide-ranging.  There must be some reasonable parameters on the supplementation of disclosures.  The literal application of the provision, as written in the Model Protocol, would require Amazon to provide continuous supplementation based on each additional transaction in its store.  Application of the provision in that manner takes into account neither proportionality nor burden.  Accordingly, Amazon proposes that the parties meet and confer in good faith to reach a mutual agreement on each other's supplementation obligations consistent with the Federal Rules.



A-111

1   **G.      Privilege**

2         **1.      Plaintiffs' Statement**

3               **a.      Timing**

4         The model rule provides two alternative deadlines for serving the privilege log within 30

5   days of delivering a production or 30 days after productions are complete. Amazon has indicated

6   that it foresees withholding a significant number of documents on privilege grounds and

7   proposes that it not be required to produce its privilege logs until "a reasonable time" after its

8   production is substantially complete. Producing privilege logs late in the discovery period would

9   significantly limit the time and opportunity for Plaintiffs to review Amazon's privilege logs and

10  raise valid challenges. Plaintiffs therefore ask the Court to enter its proposed order, requiring

11  service of the privilege logs within 45 days of delivering the production. Amazon agreed to this

12  term in the *Crosby* class litigation, and it is appropriate here, too.

13              **b.      Required disclosures of a privilege log**

14        Plaintiffs propose specifying the information that must be disclosed in the parties'

15  privilege log and offered the provisions required by the local rule from the SDNY as their

16  proposal. Exhibit B, at § E.1 ("Unless divulgence of such information would cause disclosure of

17  the allegedly privileged information, the following information shall be provided: (i) the type of

18  document, e.g., letter or memorandum; (ii) the general subject matter of the document; (iii) the

19  date of the document; and (iv) the author of the document, the addressees of the document, and

20  any other recipients, and, where not apparent, the relationship of the author, addressees, and

21  recipients to each other."); *see* S.D.N.Y Local Civil Rule 26.2(a)(2)(A). Amazon argues that it

22  has no obligation to identify the relationship of the parties on a communication if not

23  immediately obvious. But the "most basic information required of any privilege log" includes

24  "whether persons other than the attorney and client have had access to the documents at issue[.]"

25  *In re GL Master Inc.*, 2021 Bankr. LEXIS 3515, at *11 (Bankr. C.D. Cal. Dec. 17, 2021). An

26  agreement to provide this information at the outset avoids unnecessary disputes and delays in the

27  process of reviewing and challenging privilege assertions.

28



**2.      Defendant's Statement**

**a.      Timing**

Amazon proposes the service of logs be required to occur within a reasonable time after the final production of documents.  Given the volume of documents Plaintiffs are seeking, interim privilege logs will slow down rolling productions and disrupt, not further, the efficiency and effectiveness of the discovery process.  It is to both Parties' benefit that each side stage discovery in an orderly fashion, with the first step in document production being review and production of documents.  Once that occurs, the Parties can then focus their efforts on the additional burden of preparing privilege logs after the completion of document production, and of course engage in any meet and confer discussions as may be appropriate at that time.  Those discussions will be far more productive and efficient with the context of the full scope of document productions in the case rather than on an *ad hoc* ongoing basis as the various partial productions of documents are made.

**b.      Privilege log requirements**

Plaintiffs attempt to depart from the Model Protocol to increase Amazon's Privilege Log obligations beyond what either the Federal Rules or this District's Model Order provides.  Plaintiffs provide no rationale for this departure other than that it is to "avoid unnecessary disputes."  Instead of creating new burdensome privilege log obligations with no corresponding benefit, Amazon proposes that the parties' privilege logs be prepared in conformity with Fed. R. Civ. P. Rule 26(b)(5).

**IV.      CONCLUSION**

The parties request that the Court enter their respective proposed orders or resolve the disputed provisions so that the parties may jointly submit proposed orders approved by the Court.



A-113

| 1 | DATED: October 14, 2022 | Respectfully submitted, |

2         HAGENS BERMAN SOBOL SHAPIRO LLP

3         By ___*/s/ Steve W. Berman*_____

4            Steve W. Berman (WSBA No. 12536)
By */s/ Barbara A. Mahoney*_____

5            Barbara A. Mahoney (WSBA No. 31845)
1301 Second Avenue, Suite 2000

6         Seattle, WA 98101
Telephone: (206) 623-7292

7         Facsimile: (206) 623-0594
steve@hbsslaw.com

8         barbaram@hbsslaw.com

9         KELLER ROHRBACK L.L.P.

10         By:___*/s/ Derek W. Loeser*_____

11            Derek W. Loeser (WSBA No. 24274)
1201 Third Avenue, Suite 3200

12         Seattle, WA 98101-3052
Telephone: (206) 623-1900

13         Facsimile: (206) 623-3384
Dloeser@kellerrohrback.com

14         KELLER LENKNER LLC

15

16         Zina G. Bash (pro hac vice)
111 Congress Avenue, Suite 500

17         Austin, TX, 78701
Telephone: (512) 690-0990

18         E-mail: zina.bash@kellerlenkner.com

19         Warren D. Postman (pro hac vice)
Albert Y. Pak (pro hac vice)

20         1100 Vermont Avenue, N.W., 12th Floor
Washington DC, 20005

21         Telephone: (202) 918-1123
E-mail: wdp@kellerlenkner.com

22         E-mail: albert.pak@kellerlenkner.com

23

24

25

26

27

28



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX



A-114

1

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

2

3

By:_____/s/ Alicia Cobb_____
     Alicia Cobb, WSBA # 48685

4

1109 First Avenue, Suite 210
Seattle, WA 98101

5

Telephone: (206) 905-7000
Email: aliciacobb@quinnemanuel.com

6

7

Steig D. Olson (pro hac vice)
David D. LeRay (pro hac vice)

8

Nic V. Siebert (pro hac vice)
51 Madison Avenue, 22nd Floor

9

New York, NY 10010
Telephone: (212) 849-7000

10

Email: steigolson@quinnemanuel.com

11

Adam B. Wolfson (pro hac vice)

12

865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

13

Telephone: (213) 443-3000
Email: adamwolfson@quinnemanuel.com

14

15

*Attorneys for Plaintiffs and the Proposed Class*

16

DAVIS WRIGHT TREMAINE LLP

17

By:_____/s/ John Goldmark_____
Stephen M. Rummage, WSBA #11168

18

John A. Goldmark, WSBA # 40980

19

MaryAnn Almeida, WSBA #49086
920 Fifth Avenue, Suite 3300

20

Seattle, WA 98104-1610
Ph: (206) 622-3150; Fax: (206) 757-7700

21

E-mail: SteveRummage@dwt.com

22

E-mail: JohnGoldmark@dwt.com
E-mail: MaryAnnAlmeida@dwt.com

23

24

25

26

27

28

JOINT STATEMENT OF DISPUTES
REGARDING DISCOVERY PROTOCOLS - 20
Case No. 2:20-cv-00424-RAJ


1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

1

2

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

3

4

5

6

7

8

9

10

11

Karen L. Dunn (pro hac vice)
William A. Isaacson (pro hac vice)
Amy J. Mauser (pro hac vice)
Martha L. Goodman (pro hac vice)
Kyle Smith (pro hac vice)
2001 K Street, NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
E-mail: kdunn@paulweiss.com
E-mail: wisaacson@paulweiss.com
E-mail: amauser@paulweiss.com
E-mail: mgoodman@paulweiss.com
E-mail: ksmith@paulweiss.com

*Attorneys for Defendant Amazon.com, Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



1

**<u>CERTIFICATE OF SERVICE</u>**

2

I hereby certify that on October 14, 2022, a true and correct copy of the foregoing was filed

3

electronically by CM/ECF, which caused notice to be sent to all counsel of record.

4

*/s/ Steve W. Berman*
Steve W. Berman

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STATEMENT OF DISPUTES
REGARDING DISCOVERY PROTOCOLS - 22
Case No. 2:20-cv-00424-RAJ



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

A-117

# Exhibit B

The Honorable Richard A. Jones

1

2

3

4

5

6

7               UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF WASHINGTON
8                         AT SEATTLE

9

10 | DEBORAH FRAME-WILSON, CHRISTIAN
   | SABOL, SAMANTHIA RUSSELL, ARTHUR
11 | SCHAREIN, LIONEL KEROS, NATHAN              No. 2:20-cv-00424-RAJ
   | CHANEY, CHRIS GULLEY, SHERYL
12 | TAYLOR-HOLLY, ANTHONY COURTNEY,
   | DAVE WESTROPE, STACY DUTILL,               [AMAZON.COM'S PROPOSED]
13 | SARAH ARRINGTON, MARY ELLIOT,              PROTECTIVE ORDER
   | HEATHER GEESEY, STEVE MORTILLARO,
14 | CHAUNDA LEWIS, ADRIAN HENNEN,
   | GLENDA R. HILL, GAIL MURPHY,
15 | PHYLLIS HUSTER, and GERRY
16 | KOCHENDORFER, on behalf of themselves
   | and all others similarly situated,
17 |
18 |                              Plaintiffs,
   |
19 |          v.
   |
20 | AMAZON.COM, INC., a Delaware corporation,
21 |
   |                              Defendant.
22 |

23

24

25

26

27

[AMAZON'S PROPOSED] PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 1

A-119

1  **1.**   **PURPOSES AND LIMITATIONS**

2         Discovery in this action is likely to involve production of confidential, proprietary, or

3  private information for which special protection may be warranted. Accordingly, the parties

4  hereby petition the Court to enter the following Protective Order. The parties acknowledge that

5  this agreement is consistent with LCR 26(c). It does not confer blanket protection on all

6  disclosures or responses to discovery, the protection it affords from public disclosure and use

7  extends only to the limited information or items that are entitled to confidential treatment under

8  the applicable legal principles, and it does not presumptively entitle parties to file confidential

9  information under seal. The availability of protection pursuant to this Protective Order does not

10 preclude a party from withholding information protected by any applicable privilege. Nothing in

11 this Protective Order shall restrict in any way the right of a Producing Party to disclose or make

12 use of its own documents or Discovery Material. Under LCR 26(c)(2), the parties began with the

13 District's Model Protective Order, and have identified departures from the model in a redlined

14 copy, attached as Exhibit 1.

15 **2.**   **DEFINITIONS**

16        2.1    Challenging Party: A Party or Non-Party that challenges the designation of

17 information or items under this Order.

18        2.2    Counsel (without qualifier): Outside Counsel of Record,  In-House Counsel, and

19 their support staff.

20        2.3    Designating Party: the producing Party or Non-Party designating documents or

21 information as Protected Information under this Order.

22        2.4    Discovery Material: All items or information, regardless of the medium or manner

23 in which it is generated, stored, or maintained (including, among other things, testimony,

24 transcripts, and tangible things), that are produced or generated in disclosures or responses to

25 discovery in this matter.

26        2.5    Expert: A person with specialized knowledge or experience in an area pertinent to

27 the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or

[AMAZON'S PROPOSED] PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 2

as a consultant in this action, (2) is not a past or current employee of a Party or of a Party's competitor, and (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

2.6     Industry Expert: An Expert whose specialized knowledge or experience derives from personal experience in the industries and markets pertinent to the litigation and who satisfies the other criteria for the definition of Expert.

2.7     In-House Counsel: Attorneys (and their support staff, including legal secondees and economists) who are employees or contractors of a Party and whose responsibilities include overseeing, working on, or supporting this action. In-House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.8     Non-Party: Any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.9     Outside Counsel of Record: Attorneys who are retained to represent or advise a Party to this action..

2.10    Party: Any Party to this action, including all its officers, directors, employees, consultants, retained Experts, and Outside Counsel of Record (and their support staff).

2.11    Producing Party: A Party or Non-Party that produces Discovery Material in this action.

2.12    Protected Material: Any Discovery Material that is designated as "Confidential" or "Highly Confidential—Attorneys' Eyes Only."

2.13    Receiving Party: A Party that receives Discovery Material from a Producing Party.

**3.     PROTECTED MATERIAL**

3.1     "CONFIDENTIAL" Material: Documents and tangible things that may be produced or otherwise exchanged that 1) the Designating Party reasonably believes contain, describe, or disclose sensitive, non-public, confidential information, such as (a) court records, whether in this District or other courts, currently maintained under seal; (b) information subject

[AMAZON'S PROPOSED] PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 3

to a non-disclosure or confidentiality agreement; (c) employee personnel information; (d) a Non-Party's commercially sensitive information, trade secrets, or competitive or strategic initiatives that are not readily ascertainable and for which the Designating Party has taken reasonable steps to maintain confidentiality, and (e) personal identifying information subject to redaction under Local Rule 5.2, or 2) the Designating Party's own commercially sensitive information, such as (a) financial or accounting information; (b) commercially sensitive internal communications or information; and (c) business negotiations, transactions, and dealings with Non-Parties.

3.2    "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" Material: Extremely sensitive materials that qualify as "CONFIDENTIAL" and that the Designating Party reasonably believes contain highly sensitive business or personal information, the disclosure of which to another Party or Non-Party would create a risk of competitive or commercial disadvantage to the Designating Party.

3.3    This Order does not envision the production of source code or object code. Should the Parties agree to source code discovery, they will enter a separate stipulated source code supplement to this Order.

4.   **SCOPE**

The protections conferred by this agreement cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel, Non-Parties, and/or Experts that might reveal Protected Material.

However, the protections conferred by this agreement do not cover information that is in the public domain or becomes part of the public domain through trial or otherwise.

5.   **ACCESS TO AND USE OF PROTECTED MATERIAL**

5.1    Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by a Producing Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Protected Material may be disclosed only to the categories

[AMAZON'S PROPOSED] PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 4

of persons and under the conditions described in this agreement. Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this agreement.

5.2     <u>Disclosure of "CONFIDENTIAL" Material</u>. Unless otherwise ordered by the Court or permitted in writing by the Producing or Designating Party, a Receiving Party may disclose any Confidential Material only to:

(a)     the Receiving Party's Outside Counsel of Record in this action, including employees of Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation;

(b)     the officers, directors, and employees (including In-House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this litigation;

(c)     Experts, professional jury or trial consultants, and their employees and staff, to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)     the Court, court personnel, and court reporters and their staff;

(e)     copy, imaging, document management, and electronic discovery services retained by Counsel to assist in the management of Confidential Material and who execute the "Agreement to Be Bound by Protective Order" attached as Exhibit A, provided that counsel for the Party retaining such services instructs the service not to disclose any Confidential Material to third parties and to immediately return all originals and copies of any Confidential Material;

(f)     during their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the Court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Confidential Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this agreement; and

1    (g)    the author or recipient of a document containing the information or a

2    custodian or other person who otherwise possessed or knew the information.

3    5.3    Disclosure of "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY"

4    Material. Unless otherwise ordered by the Court or permitted in writing by the Designating

5    Party, a Receiving Party may disclose any Highly Confidential—Attorney's Eyes Only Material

6    only to:

7    (a)    the Receiving Party's Outside Counsel of Record in this action, as well as

8    employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the

9    information for this litigation;

10    (b)    Experts, professional jury or trial consultants, and their employees and

11    staff, to whom disclosure is reasonably necessary for this litigation and who have signed the

12    "Acknowledgment and Agreement to Be Bound" (Exhibit A), and, with respect to an Industry

13    Expert, have been subject to the procedure in Paragraph 5.4;

14    (c)    the Court, court personnel, and court reporters and their staff;

15    (d)    the author or recipient of a document containing the information or a

16    custodian or other person who otherwise possessed or knew the information;

17    (e)    employees of the Producing Party to whom disclosure is reasonably

18    necessary for this litigation and who have signed the "Agreement to Be Bound by Protective

19    Order" attached as Exhibit A; and

20    (f)    copy, imaging, document management, and electronic discovery services

21    retained by Counsel to assist in the management of Highly Confidential-Attorney's Eyes Only

22    Material and who execute the "Agreement to Be Bound by Protective Order" attached as Exhibit

23    A, provided that counsel for the Party retaining such services instructs the service not to disclose

24    any Highly Confidential Material to third parties and to immediately return all originals and copies

25    of any Highly Confidential Material; and

26    (g) to assist in Amazon's defense of this litigation, no more than four (4) In-

27    House Counsel who exercise no competitive decision-making, including:

1        1.  Amy Posner

2        2.  Cristina Fernandez

3        3.  Omid Bañuelos.

4 In the event that Amazon's designated in-house counsel is no longer eligible to serve as a

5 designee under this Protective Order, due to a change in role or otherwise, Amazon may

6 designate a replacement in-house counsel who meets the criteria set forth herein.

7     5.4    <u>Procedures for Approving or Objecting to Disclosure to Expert of Materials</u>

8 <u>Designated "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY."</u>

9     (a)    Unless otherwise ordered by the Court or agreed to in writing by the

10 Designating Party, a Party that seeks to disclose to an Industry Expert any material that has been

11 designated "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" first must make a

12 written disclosure to the Designating Party that (1) identifies the general categories of "HIGHLY

13 CONFIDENTIAL—ATTORNEYS' EYES ONLY" information that the Receiving Party seeks

14 permission to disclose to the Industry Expert, (2) sets forth the full name of the Industry Expert

15 and the city and state of his or her primary residence, (3) attaches a copy of the Industry Expert's

16 current resume, (4) identifies the Industry Expert's current employer(s), (5) identifies each

17 person or entity from whom the Industry Expert has received compensation or funding for work

18 in his or her areas of expertise or to whom the Industry Expert has provided professional

19 services, including in connection with a litigation, at any time during the preceding four years,

20 and (6) identifies (by name and number of the case, filing date, and location of court) any

21 litigation in connection with which the Industry Expert has offered expert testimony, including

22 through a declaration, report, or testimony at a deposition or trial, during the preceding four

23 years. If the Industry Expert believes that any of the information sought through part (6) of this

24 disclosure is subject to a confidentiality obligation to a third party, then the Expert should

25 indicate the confidential matters with as much detail as possible.

26     (b)    A Party that makes a written disclosure and provides the information specified in

27 the preceding respective paragraphs may disclose the subject "HIGHLY CONFIDENTIAL—

[AMAZON'S PROPOSED] PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 7

A-125

1  ATTORNEYS' EYES ONLY" Material to the identified Industry Expert unless, within seven

2  days of delivering the request, the Party receives a written objection from the Designating Party.

3         (c)     A Party that receives a timely written objection must meet and confer with the

4  Designating Party to try to resolve the matter by agreement within three days of the written

5  objection. If no agreement is reached, the Party seeking to make the disclosure to the Industry

6  Expert may file a motion as provided in Local Civil Rule 7 seeking permission from the Court to

7  do so, or may use the expedited joint motion procedure set forth in Local Civil Rule 37(a)(2).

8  Any such motion must describe the circumstances with specificity, set forth in detail the reasons

9  why the disclosure to the Industry Expert is reasonably necessary, assess the risk of harm that the

10  disclosure would entail, and suggest any additional means that could be used to reduce that risk.

11  In addition, any such motion must be accompanied by a competent declaration describing the

12  Parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet

13  and confer discussions) and setting forth the reasons advanced by the Designating Party for its

14  refusal to approve the disclosure.

15         In any such proceeding, the Party opposing disclosure to the Industry Expert shall bear

16  the burden of proving that the risk of harm that the disclosure would entail (under the safeguards

17  proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Industry

18  Expert.

19         5.5     <u>Filing Protected Material</u>. Before filing Protected Material or discussing or

20  referencing such material in court filings, the filing Party shall confer with the Designating Party,

21  in accordance with Local Civil Rule 5(g). Any motion to seal filed by the Receiving Party, where

22  a Designating Party must make the showing required by Local Civil Rule 5(g)(3)(B) in response

23  to the motion, must be noted for consideration no earlier than the fourth Friday after filing. A

24  Party who seeks to maintain the designation must satisfy the requirements of Local Civil Rule

25  5(g)(3)(B), even if it is not the Party filing the motion to seal. Failure to satisfy this requirement

26  will result in the motion to seal being denied, in accordance with the strong presumption of

27  public access to the Court's files.

[AMAZON'S PROPOSED] PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 8

A-126

5.6      Disclosure of Protected Material at Hearings or Trial: Any person receiving Protected Material shall not reveal or discuss such information at any pre-trial hearing or hearing open to individuals not otherwise authorized to receive Protected Material except as follows: In the event a person receiving Protected Material intends to use Protected Material in any proceeding open to individuals not entitled to receive Protected Materials, such person shall, at least 14 days in advance, move to seal the proceeding or give the person that produced the Protected Material written notice. In the latter case, the Parties shall thereafter meet and confer to determine whether the Protected Material can be so used. If they cannot reach agreement, the person who produced the Protected Material may file a motion to seal the proceeding.  If, however, the party that seeks to use the Protected Material at a hearing for which it had fewer than 21 days' advance notice, the parties will meet and confer within a reasonable time before the hearing.

**6.      DESIGNATING PROTECTED MATERIAL**

6.1      Exercise of Restraint and Care in Designating Material for Protection. Each Party or Non-Party that designates information or items for protection under this agreement must take care to limit any such designation to specific material that qualifies under the appropriate standards. The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify, so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this agreement.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (*e.g.*, to unnecessarily encumber or delay the case development process or to impose unnecessary expenses and burdens on other parties) expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, the Designating Party must promptly notify all other parties that it is withdrawing the mistaken designation.

[AMAZON'S PROPOSED] PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 9

6.2    <u>Manner and Timing of Designations</u>. Except as provided in section 6.2 (a) below, or as otherwise stipulated or ordered, Discovery Material that qualifies for protection under this agreement must be clearly so designated before or when the material is disclosed or produced.

(a)    <u>Information in documentary form</u>: (*e.g.*, paper or electronic documents and deposition exhibits, but excluding transcripts of depositions or other pretrial or trial proceedings), the Designating Party must affix the word(s) "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY" to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (*e.g.*, by making appropriate markings in the margins). With respect to documents containing Protected Material produced in native format, the Designating Party shall include the appropriate designation  in the manner agreed to pursuant to the Parties' ESI protocol.

(b)    <u>Testimony given in deposition or in other pretrial or trial proceedings</u>: The Parties and any participating Non-Parties must identify on the record, during the deposition, hearing, or other proceeding, all protected testimony, without prejudice to their right to so designate other testimony after reviewing the transcript. Any Party or Non-Party may, within 30 days after receiving the transcript of the deposition or other pretrial proceeding, designate portions of the transcript, or exhibits thereto, as confidential. Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as Protected Material and the level of protection being asserted by the Designating Party. The Designating Party shall inform the court reporter of these requirements. Until the expiration of the 30-day period for designation, any deposition transcript shall be treated as if it had been designated "HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY" in its entirety, unless otherwise agreed. However, upon a showing of good cause by the Party seeking to rely on the transcript, e.g., for use in a scheduled filing with the Court,

the Parties agree to shorten the designation period to 15 days or in appropriate circumstances fewer.

If a Party or Non-Party desires to protect confidential information at trial, the issue should be addressed during the pre-trial conference.

(c)     Other tangible items: The Producing Party must affix in a prominent place on the exterior of the container or containers in which the information or item is stored the words "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY."  If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

6.3     Inadvertent Failures to Designate. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this agreement for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to ensure that the material is treated in accordance with the provisions of this agreement.

**7.     CHALLENGING CONFIDENTIALITY DESIGNATIONS**

7.1     Timing of Challenges. Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.  A Party challenging a designation must provide the Bates number or otherwise clearly and unmistakably identify each item (if a Bates number is unavailable) of Protected Material being challenged.

7.2     Meet and Confer. The Parties must make every attempt to resolve any dispute regarding confidential designations without Court involvement. Any motion regarding confidential designations or for a protective order must include a certification, in the motion or in a declaration or affidavit, that the movant has engaged in a good faith meet and confer

[AMAZON'S PROPOSED] PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 11

conference with other affected Parties in an effort to resolve the dispute without court action. The certification must list the date, manner, and participants to the conference. A good faith effort to confer requires a face-to-face meeting or a telephone conference.

7.3   <u>Judicial Intervention</u>. If the Parties cannot resolve a challenge without Court intervention, the Designating Party may file and serve a motion to retain confidentiality under Local Civil Rule 7(b) and in compliance with Local Civil Rule 5(g), if applicable, or may request that the Parties follow the expedited joint motion procedure set forth in Local Civil Rule 37(a)(2). The burden of persuasion in any such motion shall be on the Designating Party. Frivolous challenges, and those made for an improper purpose (*e.g.*, to harass or impose unnecessary expenses and burdens on other parties) may expose the challenging Party to sanctions. All Parties shall continue to maintain the material in question as confidential until the court rules on the challenge.

**8.   PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY," that Party must:

(a)   promptly notify the Designating Party in writing and include a copy of the subpoena or court order;

(b)   promptly notify in writing the Party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this agreement. Such notification shall include a copy of this agreement; and

(c)   cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order from the court from which the subpoena or order issued, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" or "HIGHLY

1    CONFIDENTIAL—ATTORNEYS' EYES ONLY" before a determination by the court from

2    which the subpoena or order issued, unless the Party has obtained the Designating Party's

3    permission. The Designating Party shall bear the burden and expense of seeking protection in

4    that court of its Protected Material, and nothing in these provisions should be construed as

5    authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from

6    another court.

7    **9.    UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL**

8           If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected

9    Material to any person or in any circumstance not authorized under this agreement, the

10   Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized

11   access or disclosure, (b) investigate and report to Designating Party the scope of and

12   circumstances of the unauthorized access or disclosure, (c) take immediate and reasonable steps

13   to rectify the unauthorized access or disclosure, including using its best efforts to retrieve all

14   unauthorized copies of the Protected Material and instituting additional security to prevent any

15   further access or disclosure, (d) comply with all obligations under applicable laws relating to

16   unauthorized access or disclosure, including security breach notification laws and other

17   applicable laws, (e) inform the person or persons to whom unauthorized disclosures were made

18   of all the terms of this Order, and (f) request that such person or persons execute the

19   "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

20   **10.    INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE**

21          **PROTECTED MATERIAL**

22          When a Producing Party gives notice to Receiving Parties that certain inadvertently

23   produced material is subject to a claim of privilege or other protection, the obligations of the

24   Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This

25   provision is not intended to modify whatever procedure may be established in an e-discovery

26   order or agreement that provides for production without prior privilege review. This Order

27   invokes the protections afforded by Fed. R. Evid. 502(b).  As provided under Fed. R. Evid.

[AMAZON'S PROPOSED] PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 13

502(b) and 502(d) and subject to the limitations in Fed. R. Evid. 502(a), the disclosure of privileged material in connection with this litigation does not operate as a waiver in this action or any other action by the Producing Party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law.

**11.   NON-TERMINATION AND RETURN OF DOCUMENTS**

Unless otherwise ordered or agreed in writing, within 60 days after the termination of this action, including all appeals, each Receiving Party must destroy all Protected Material, including all copies, extracts, and summaries thereof.

The Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60-day deadline that affirms that the Receiving Party has used reasonable efforts to destroy copies, abstracts, compilations, summaries, or any other format reproducing or capturing any of the Protected Material.

Notwithstanding this provision, Counsel are entitled to retain one archival copy of all documents filed with the Court, trial, deposition, and hearing transcripts, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order.

Even after final disposition of this litigation, the confidentiality obligations imposed by this agreement shall remain in effect until a Designating Party agrees otherwise in writing or a court orders otherwise.

[AMAZON'S PROPOSED] PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 14

A-132

DATED: October 14, 2022         Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By:    *John A. Goldmark*
Stephen M. Rummage, WSBA #11168
John A. Goldmark, WSBA #40980
MaryAnn Almeida, WSBA #49086
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Ph: (206) 622-3150; Fax: (206) 757-7700
E-mail: SteveRummage@dwt.com
E-mail: JohnGoldmark@dwt.com
E-mail: MaryAnnAlmeida@dwt.com

mailto:
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

Karen L. Dunn (pro hac vice)
William A. Isaacson (pro hac vice)
Amy J. Mauser (pro hac vice)
Martha L. Goodman (pro hac vice)
Kyle Smith (pro hac vice)
2001 K Street, NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7300
Facsimile:  (202) 223-7420
E-mail: kdunn@paulweiss.com
E-mail: wisaacson@paulweiss.com
E-mail: amauser@paulweiss.com
E-mail: mgoodman@paulweiss.com
E-mail: ksmith@paulweiss.com

*Attorneys for Defendant Amazon.com, Inc.*

[AMAZON'S PROPOSED] PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 15

A-133

1

## **ORDER**

2

     IT IS SO ORDERED.

3

4

DATED: _____          _____

5

                                             Hon. Richard A. Jones

6

                                             United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

[AMAZON'S PROPOSED] PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 16

A-134

<u>EXHIBIT A</u>

<u>ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND</u>

I, _____ [print or type full name], of

_____ [print or type full address], declare under penalty of

perjury that I have read in its entirety and understand the Protective Order that was issued by the

United States District Court for the Western District of Washington on [date] in the case of *Frame-*

*Wilson, et al.* v. *Amazon.com, Inc.*, Case No. 2:20-CV-00424-RAJ. I agree to comply with and to

be bound by all the terms of this Protective Order and I understand and acknowledge that failure

to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly

promise that I will not disclose in any manner any information or item that is subject to this

Protective Order to any person or entity except in strict compliance with the provisions of this

Order.

I further agree to submit to the jurisdiction of the United States District Court for the

Western District of Washington for the purpose of enforcing the terms of this Protective Order,

even if such enforcement proceedings occur after termination of this action.

Date: _____

City and State where sworn and signed: _____

Printed name: _____

Signature: _____

[AMAZON'S PROPOSED] PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 17

A-135

# Exhibit 1

The Honorable Richard A. Jones

1

2

3

4

5

6

7        UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
8              AT SEATTLE

9

10   DEBORAH FRAME-WILSON, CHRISTIAN
     SABOL, SAMANTHIA RUSSELL, ARTHUR        No. 2:20-cv-00424-RAJ
11   SCHAREIN, LIONEL KEROS, NATHAN
     CHANEY, CHRIS GULLEY, SHERYL
12   TAYLOR-HOLLY, ANTHONY COURTNEY,
     DAVE WESTROPE, STACY DUTILL, SARAH      CASE NO. [CASE #]
13   ARRINGTON, MARY ELLIOT, HEATHER         [AMAZON.COM'S PROPOSED]
     GEESEY, STEVE MORTILLARO, CHAUNDA       MODEL STIPULATED PROTECTIVE
14   LEWIS, ADRIAN HENNEN, GLENDA R.         ORDER
     HILL, GAIL MURPHY, PHYLLIS HUSTER,
15   and GERRY KOCHENDORFER, on behalf of
     themselves and all others similarly situated,
16   [PLAINTIFF],
17                              PlaintiffPlaintiffs,
18        v.
19   [DEFENDANT],
     AMAZON.COM, INC., a Delaware corporation,
20
21                              Defendant.

22

23

24

25

26

27

[AMAZON'S PROPOSED] PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 1

A-137

**1.**   ~~1.~~   **PURPOSES AND LIMITATIONS**

Discovery in this action is likely to involve production of confidential, proprietary, or private information for which special protection may be warranted. Accordingly, the parties hereby ~~stipulate to and~~ petition the ~~court~~Court to enter the following ~~Stipulated~~ Protective Order. The parties acknowledge that this agreement is consistent with LCR 26(c). It does not confer blanket protection on all disclosures or responses to discovery, the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles, and it does not presumptively entitle parties to file confidential information under seal. The availability of protection pursuant to this Protective Order does not preclude a party from withholding information protected by any applicable privilege. Nothing in this Protective Order shall restrict in any way the right of a Producing Party to disclose or make use of its own documents or Discovery Material. Under LCR 26(c)(2), the parties began with the District's Model Protective Order, and have identified departures from the model in a redlined copy, attached as Exhibit 1.

**2.**   ~~"CONFIDENTIAL" MATERIAL~~**DEFINITIONS**

~~"Confidential" material shall include the following documents and tangible things produced or otherwise exchanged: [The parties must include a list of specific documents such as "company's customer list" or "plaintiff's medical records;" do not list broad categories of documents such as "sensitive business material"].~~

2.1   Challenging Party: A Party or Non-Party that challenges the designation of information or items under this Order.

2.2   Counsel (without qualifier): Outside Counsel of Record,  In-House Counsel, and their support staff.

2.3   Designating Party: the producing Party or Non-Party designating documents or information as Protected Information under this Order.

A-138

2.4     Discovery Material: All items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.5     Expert: A person with specialized knowledge or experience in an area pertinent to the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, (2) is not a past or current employee of a Party or of a Party's competitor, and (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

2.6     Industry Expert: An Expert whose specialized knowledge or experience derives from personal experience in the industries and markets pertinent to the litigation and who satisfies the other criteria for the definition of Expert.

2.7     In-House Counsel: Attorneys (and their support staff, including legal secondees and economists) who are employees or contractors of a Party and whose responsibilities include overseeing, working on, or supporting this action. In-House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.8     Non-Party: Any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.9     Outside Counsel of Record: Attorneys who are retained to represent or advise a Party to this action..

2.10     Party: Any Party to this action, including all its officers, directors, employees, consultants, retained Experts, and Outside Counsel of Record (and their support staff).

2.11     Producing Party: A Party or Non-Party that produces Discovery Material in this action.

2.12     Protected Material: Any Discovery Material that is designated as "Confidential" or "Highly Confidential—Attorneys' Eyes Only."

1    2.13    Receiving Party: A Party that receives Discovery Material from a Producing

2    Party.

3    **3.**    **PROTECTED MATERIAL**

4    3.1    "CONFIDENTIAL" Material: Documents and tangible things that may be

5    produced or otherwise exchanged that 1) the Designating Party reasonably believes contain,

6    describe, or disclose sensitive, non-public, confidential information, such as (a) court records,

7    whether in this District or other courts, currently maintained under seal; (b) information subject

8    to a non-disclosure or confidentiality agreement; (c) employee personnel information; (d) a

9    Non-Party's commercially sensitive information, trade secrets, or competitive or strategic

10   initiatives that are not readily ascertainable and for which the Designating Party has taken

11   reasonable steps to maintain confidentiality, and (e) personal identifying information subject to

12   redaction under Local Rule 5.2, or 2) the Designating Party's own commercially sensitive

13   information, such as (a) financial or accounting information; (b) commercially sensitive internal

14   communications or information; and (c) business negotiations, transactions, and dealings with

15   Non-Parties.

16   3.2    "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" Material:

17   Extremely sensitive materials that qualify as "CONFIDENTIAL" and that the Designating Party

18   reasonably believes contain highly sensitive business or personal information, the disclosure of

19   which to another Party or Non-Party would create a risk of competitive or commercial

20   disadvantage to the Designating Party.

21   3.3    This Order does not envision the production of source code or object code.

22   Should the Parties agree to source code discovery, they will enter a separate stipulated source

23   code supplement to this Order.

24   ~~3~~4.    **SCOPE**

25        The protections conferred by this agreement cover not only ~~confidential~~

26   ~~material~~Protected Material (as defined above), but also (1) any information copied or extracted

27   from ~~confidential material~~Protected Material; (2) all copies, excerpts, summaries, or

[AMAZON'S PROPOSED] PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 4

A-140

1  compilations of ~~confidential material~~Protected Material; and (3) any testimony, conversations, or

2  presentations by ~~parties~~Parties or their ~~counsel~~Counsel, Non-Parties, and/or Experts that might

3  reveal ~~confidential material~~Protected Material.

4      However, the protections conferred by this agreement do not cover information that is in

5  the public domain or becomes part of the public domain through trial or otherwise.

6  **~~4~~5.**   **ACCESS TO AND USE OF ~~CONFIDENTIAL~~PROTECTED MATERIAL**

7      ~~4.1~~5.1  Basic Principles. A ~~receiving party may use confidential material~~Receiving Party

8  may use Protected Material that is disclosed or produced by ~~another party or by a non-party~~a

9  Producing Party in connection with this case only for prosecuting, defending, or attempting to

10  settle this litigation. ~~Confidential material~~Protected Material may be disclosed only to the

11  categories of persons and under the conditions described in this agreement. ~~Confidential~~

12  ~~material~~Protected Material must be stored and maintained by a ~~receiving party~~Receiving Party at

13  a location and in a secure manner that ensures that access is limited to the persons authorized

14  under this agreement.

15      ~~4.2~~5.2  Disclosure of "CONFIDENTIAL" ~~Information or Items~~Material. Unless

16  otherwise ordered by the ~~court~~Court or permitted in writing by the ~~designating party, a receiving~~

17  ~~party~~Producing or Designating Party, a Receiving Party may disclose any ~~confidential~~

18  ~~material~~Confidential Material only to:

19      (a)   the ~~receiving party's counsel of record~~Receiving Party's Outside Counsel

20  of Record in this action, ~~as well as~~including employees of ~~counsel~~Outside Counsel of Record to

21  whom it is reasonably necessary to disclose the information for this litigation;

22      (b)   the officers, directors, and employees (including ~~in house counsel~~In-House

23  Counsel) of the ~~receiving party~~Receiving Party to whom disclosure is reasonably necessary for

24  this litigation~~, unless the parties agree that a particular document or material produced is for~~

25  ~~Attorney's Eyes Only and is so designated~~;

26

27

A-141

(c)     experts andExperts, professional jury or trial consultants, and their employees and staff, to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)     the courtCourt, court personnel, and court reporters and their staff;

(e)     copy or, imaging, document management, and electronic discovery services retained by counselCounsel to assist in the duplication of confidential materialmanagement of Confidential Material and who execute the "Agreement to Be Bound by Protective Order" attached as Exhibit A, provided that counsel for the partyParty retaining the copy or imaging servicesuch services instructs the service not to disclose any confidential materialConfidential Material to third parties and to immediately return all originals and copies of any confidential materialConfidential Material;

(f)     during their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the designating partyDesignating Party or ordered by the courtCourt. Pages of transcribed deposition testimony or exhibits to depositions that reveal confidential materialConfidential Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this agreement; and

(g)     the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

5.3     Disclosure of "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" Material. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any Highly Confidential—Attorney's Eyes Only Material only to:

(a)     the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation;

1        (b)    Experts, professional jury or trial consultants, and their employees and
2   staff, to whom disclosure is reasonably necessary for this litigation and who have signed the
3   "Acknowledgment and Agreement to Be Bound" (Exhibit A), and, with respect to an Industry
4   Expert, have been subject to the procedure in Paragraph 5.4;

5        (c)    the Court, court personnel, and court reporters and their staff;

6        (d)    the author or recipient of a document containing the information or a
7   custodian or other person who otherwise possessed or knew the information;

8        (e)    employees of the Producing Party to whom disclosure is reasonably
9   necessary for this litigation and who have signed the "Agreement to Be Bound by Protective
10  Order" attached as Exhibit A; and

11       (f)    copy, imaging, document management, and electronic discovery services
12  retained by Counsel to assist in the management of Highly Confidential-Attorney's Eyes Only
13  Material and who execute the "Agreement to Be Bound by Protective Order" attached as Exhibit
14  A, provided that counsel for the Party retaining such services instructs the service not to disclose
15  any Highly Confidential Material to third parties and to immediately return all originals and
16  copies of any Highly Confidential Material; and

17       (g) to assist in Amazon's defense of this litigation, no more than four (4)
18  In-House Counsel who exercise no competitive decision-making, including:

19            1.   Amy Posner

20            2.   Cristina Fernandez

21            3.   Omid Bañuelos.

22  In the event that Amazon's designated in-house counsel is no longer eligible to serve as a
23  designee under this Protective Order, due to a change in role or otherwise, Amazon may
24  designate a replacement in-house counsel who meets the criteria set forth herein.

25

26

27

[AMAZON'S PROPOSED] PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 7

5.4      Procedures for Approving or Objecting to Disclosure to Expert of Materials Designated "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY."

         (a)      Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Industry Expert any material that has been designated "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" first must make a written disclosure to the Designating Party that (1) identifies the general categories of "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" information that the Receiving Party seeks permission to disclose to the Industry Expert, (2) sets forth the full name of the Industry Expert and the city and state of his or her primary residence, (3) attaches a copy of the Industry Expert's current resume, (4) identifies the Industry Expert's current employer(s), (5) identifies each person or entity from whom the Industry Expert has received compensation or funding for work in his or her areas of expertise or to whom the Industry Expert has provided professional services, including in connection with a litigation, at any time during the preceding four years, and (6) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Industry Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding four years. If the Industry Expert believes that any of the information sought through part (6) of this disclosure is subject to a confidentiality obligation to a third party, then the Expert should indicate the confidential matters with as much detail as possible.

     (b)    A Party that makes a written disclosure and provides the information specified in the preceding respective paragraphs may disclose the subject "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" Material to the identified Industry Expert unless, within seven days of delivering the request, the Party receives a written objection from the Designating Party.

     (c)    A Party that receives a timely written objection must meet and confer with the Designating Party to try to resolve the matter by agreement within three days of the written objection. If no agreement is reached, the Party seeking to make the disclosure to the Industry

1   Expert may file a motion as provided in Local Civil Rule 7 seeking permission from the Court to

2   do so, or may use the expedited joint motion procedure set forth in Local Civil Rule 37(a)(2).

3   Any such motion must describe the circumstances with specificity, set forth in detail the reasons

4   why the disclosure to the Industry Expert is reasonably necessary, assess the risk of harm that the

5   disclosure would entail, and suggest any additional means that could be used to reduce that risk.

6   In addition, any such motion must be accompanied by a competent declaration describing the

7   Parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet

8   and confer discussions) and setting forth the reasons advanced by the Designating Party for its

9   refusal to approve the disclosure.

10      In any such proceeding, the Party opposing disclosure to the Industry Expert shall bear

11   the burden of proving that the risk of harm that the disclosure would entail (under the safeguards

12   proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Industry

13   Expert.

14      4.35.5  Filing ~~Confidential~~Protected Material. Before filing ~~confidential~~

15   ~~material~~Protected Material or discussing or referencing such material in court filings, the filing

16   ~~party~~Party shall confer with the ~~designating party~~Designating Party, in accordance with Local

17   Civil Rule 5(g)~~(3)(A), to determine whether the designating party will remove the confidential~~

18   ~~designation, whether the document can be redacted, or whether a motion to seal or stipulation~~

19   ~~and proposed order is warranted. During the meet and confer process, the designating party must~~

20   ~~identify the basis for sealing the specific confidential information at issue, and the filing party~~

21   ~~shall include this basis in its motion to seal, along with any objection to sealing the information~~

22   ~~at issue.  Local Civil Rule 5(g) sets forth the procedures that must be followed and the standards~~

23   ~~that will be applied when a party seeks permission from the court to file material under seal.~~ Any

24   motion to seal filed by the Receiving Party, where a Designating Party must make the showing

25   required by Local Civil Rule 5(g)(3)(B) in response to the motion, must be noted for

26   consideration no earlier than the fourth Friday after filing. A ~~party~~Party who seeks to maintain

27   the ~~confidentiality of its information~~designation must satisfy the requirements of Local Civil

A-145

Rule 5(g)(3)(B), even if it is not the ~~party~~Party filing the motion to seal. Failure to satisfy this requirement will result in the motion to seal being denied, in accordance with the strong presumption of public access to the Court's files.

5.6     Disclosure of Protected Material at Hearings or Trial: Any person receiving Protected Material shall not reveal or discuss such information at any pre-trial hearing or hearing open to individuals not otherwise authorized to receive Protected Material except as follows: In the event a person receiving Protected Material intends to use Protected Material in any proceeding open to individuals not entitled to receive Protected Materials, such person shall, at least 14 days in advance, move to seal the proceeding or give the person that produced the Protected Material written notice. In the latter case, the Parties shall thereafter meet and confer to determine whether the Protected Material can be so used. If they cannot reach agreement, the person who produced the Protected Material may file a motion to seal the proceeding.  If, however, the party that seeks to use the Protected Material at a hearing for which it had fewer than 21 days' advance notice, the parties will meet and confer within a reasonable time before the hearing.

~~5~~6.     **DESIGNATING PROTECTED MATERIAL**

~~5.1~~6.1   Exercise of Restraint and Care in Designating Material for Protection. Each ~~party or non-party~~Party or Non-Party that designates information or items for protection under this agreement must take care to limit any such designation to specific material that qualifies under the appropriate standards. The ~~designating party~~Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify, so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this agreement.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (*e.g.*, to unnecessarily encumber or delay the case development process or to impose unnecessary

1  expenses and burdens on other parties) expose the ~~designating party~~Designating Party to

2  sanctions.

3       If it comes to a ~~designating party's~~Designating Party's attention that information or items

4  that it designated for protection do not qualify for protection, the ~~designating party~~Designating

5  Party must promptly notify all other parties that it is withdrawing the mistaken designation.

6       ~~5.2~~6.2  Manner and Timing of Designations. Except as ~~otherwise~~ provided in ~~this~~

7  ~~agreement (see, *e.g.*, second paragraph of~~ section ~~5.2~~6.2 (~~b~~a) below~~)~~, or as otherwise stipulated

8  or ordered, ~~disclosure or discovery material~~Discovery Material that qualifies for protection under

9  this agreement must be clearly so designated before or when the material is disclosed or

10  produced.

11       (a)    Information in documentary form: (*e.g.*, paper or electronic documents and

12  deposition exhibits, but excluding transcripts of depositions or other pretrial or trial

13  proceedings), the ~~designating party~~Designating Party must affix the word(s) "CONFIDENTIAL"

14  or "HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY" to each page that contains

15  ~~confidential material~~Protected Material. If only a portion or portions of the material on a page

16  qualifies for protection, the ~~producing party~~Producing Party also must clearly identify the

17  protected portion(s) (*e.g.*, by making appropriate markings in the margins). With respect to

18  documents containing Protected Material produced in native format, the Designating Party shall

19  include the appropriate designation  in the manner agreed to pursuant to the Parties' ESI

20  protocol.

21       (b)    Testimony given in deposition or in other pretrial or trial proceedings: ~~the~~

22  ~~parties~~The Parties and any participating ~~non-parties~~Non-Parties must identify on the record,

23  during the deposition, hearing, or other ~~pretrial~~ proceeding, all protected testimony, without

24  prejudice to their right to so designate other testimony after reviewing the transcript. Any ~~party~~

25  ~~or non-party~~Party or Non-Party may, within ~~fifteen~~30 days after receiving the transcript of the

26  deposition or other pretrial proceeding, designate portions of the transcript, or exhibits thereto, as

27  confidential. Transcripts containing Protected Material shall have an obvious legend on the title

1   page that the transcript contains Protected Material and the title page shall be followed by a list

2   of all pages (including line numbers as appropriate) that have been designated as Protected

3   Material and the level of protection being asserted by the Designating Party. The Designating

4   Party shall inform the court reporter of these requirements. Until the expiration of the 30-day

5   period for designation, any deposition transcript shall be treated as if it had been designated

6   "HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY" in its entirety, unless otherwise

7   agreed. However, upon a showing of good cause by the Party seeking to rely on the transcript,

8   e.g., for use in a scheduled filing with the Court, the Parties agree to shorten the designation

9   period to 15 days or in appropriate circumstances fewer.

10          If a ~~party or non-party~~Party or Non-Party desires to protect confidential

11  information at trial, the issue should be addressed during the pre-trial conference.

12          (c)     Other tangible items: ~~the producing party~~The Producing Party must affix

13  in a prominent place on the exterior of the container or containers in which the information or

14  item is stored the ~~word~~words "CONFIDENTIAL" or "HIGHLY

15  CONFIDENTIAL—ATTORNEY'S EYES ONLY."  If only a portion or portions of the

16  information or item warrant protection, the ~~producing party~~Producing Party, to the extent

17  practicable, shall identify the protected portion(s).

18  ~~5.3~~6.3   Inadvertent Failures to Designate. If timely corrected, an inadvertent failure to

19  designate qualified information or items does not, standing alone, waive the ~~designating~~

20  ~~party's~~Designating Party's right to secure protection under this agreement for such material.

21  Upon timely correction of a designation, the ~~receiving party~~Receiving Party must make

22  reasonable efforts to ensure that the material is treated in accordance with the provisions of this

23  agreement.

24  ~~6~~7.     **CHALLENGING CONFIDENTIALITY DESIGNATIONS**

25  ~~6.1~~7.1   Timing of Challenges. Any ~~party or non-party~~Party or Non-Party may challenge a

26  designation of confidentiality at any time. Unless a prompt challenge to a ~~designating~~

27  ~~party's~~Designating Party's confidentiality designation is necessary to avoid foreseeable,

1  substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the

2  litigation, a ~~party~~Party does not waive its right to challenge a confidentiality designation by

3  electing not to mount a challenge promptly after the original designation is disclosed.  A Party

4  challenging a designation must provide the Bates number or otherwise clearly and unmistakably

5  identify each item (if a Bates number is unavailable) of Protected Material being challenged.

6      ~~6.2~~7.2  Meet and Confer. The ~~parties~~Parties must make every attempt to resolve any

7  dispute regarding confidential designations without ~~court~~Court involvement. Any motion

8  regarding confidential designations or for a protective order must include a certification, in the

9  motion or in a declaration or affidavit, that the movant has engaged in a good faith meet and

10  confer conference with other affected ~~parties~~Parties in an effort to resolve the dispute without

11  court action. The certification must list the date, manner, and participants to the conference. A

12  good faith effort to confer requires a face-to-face meeting or a telephone conference.

13      ~~6.3~~7.3  Judicial Intervention. If the ~~parties~~Parties cannot resolve a challenge without

14  ~~court~~Court intervention, the ~~designating party~~Designating Party may file and serve a motion to

15  retain confidentiality under Local Civil Rule 7(b) and in compliance with Local Civil Rule 5(g),

16  if applicable, or may request that the Parties follow the expedited joint motion procedure set

17  forth in Local Civil Rule 37(a)(2). The burden of persuasion in any such motion shall be on the

18  ~~designating party~~Designating Party. Frivolous challenges, and those made for an improper

19  purpose (*e.g.*, to harass or impose unnecessary expenses and burdens on other parties) may

20  expose the challenging ~~party~~Party to sanctions. All ~~parties~~Parties shall continue to maintain the

21  material in question as confidential until the court rules on the challenge.

22  ~~7~~8.    **PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN**

23  **OTHER LITIGATION**

24      If a ~~party~~Party is served with a subpoena or a court order issued in other litigation that

25  compels disclosure of any information or items designated in this action as "CONFIDENTIAL~~,"~~

26  ~~that party~~" or "HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY," that Party must:

27

[AMAZON'S PROPOSED] PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 13

1         (a)     promptly notify the ~~designating party~~Designating Party in writing and

2 include a copy of the subpoena or court order;

3         (b)     promptly notify in writing the ~~party~~Party who caused the subpoena or

4 order to issue in the other litigation that some or all of the material covered by the subpoena or

5 order is subject to this agreement. Such notification shall include a copy of this agreement; and

6         (c)     cooperate with respect to all reasonable procedures sought to be pursued

7 by the ~~designating party whose confidential material~~Designating Party whose Protected Material

8 may be affected.

9     If the Designating Party timely seeks a protective order from the court from which the

10 subpoena or order issued, the Party served with the subpoena or court order shall not produce any

11 information designated in this action as "CONFIDENTIAL" or "HIGHLY

12 CONFIDENTIAL—ATTORNEYS' EYES ONLY" before a determination by the court from

13 which the subpoena or order issued, unless the Party has obtained the Designating Party's

14 permission. The Designating Party shall bear the burden and expense of seeking protection in

15 that court of its Protected Material, and nothing in these provisions should be construed as

16 authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from

17 another court.

18 **~~8~~9.**    **UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL**

19     If a ~~receiving party~~Receiving Party learns that, by inadvertence or otherwise, it has

20 disclosed ~~confidential material~~Protected Material to any person or in any circumstance not

21 authorized under this agreement, the ~~receiving party~~Receiving Party must immediately (a) notify

22 in writing the ~~designating party~~Designating Party of the unauthorized ~~disclosures, (b) use~~access

23 or disclosure, (b) investigate and report to Designating Party the scope of and circumstances of

24 the unauthorized access or disclosure, (c) take immediate and reasonable steps to rectify the

25 unauthorized access or disclosure, including using its best efforts to retrieve all unauthorized

26 copies of the ~~protected material, (c~~Protected Material and instituting additional security to

27 prevent any further access or disclosure, (d) comply with all obligations under applicable laws

1  relating to unauthorized access or disclosure, including security breach notification laws and

2  other applicable laws, (e) inform the person or persons to whom unauthorized disclosures were

3  made of all the terms of this agreementOrder, and (df) request that such person or persons

4  execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

5  **910.   INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE**

6  **PROTECTED MATERIAL**

7  When a producing partyProducing Party gives notice to receiving partiesReceiving

8  Parties that certain inadvertently produced material is subject to a claim of privilege or other

9  protection, the obligations of the receiving partiesReceiving Parties are those set forth in Federal

10  Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever

11  procedure may be established in an e-discovery order or agreement that provides for production

12  without prior privilege review. The parties  agree to the entry of a non-waiver orderThis Order

13  invokes the protections afforded by Fed. R. Evid. 502(b).  As provided under Fed. R. Evid.

14  502(b) and 502(d) as set forth herein.and subject to the limitations in Fed. R. Evid. 502(a), the

15  disclosure of privileged material in connection with this litigation does not operate as a waiver in

16  this action or any other action by the Producing Party of any privilege applicable to those

17  documents, including the attorney-client privilege, attorney work-product protection, or any other

18  privilege or protection recognized by law.

19  **1011.   NON TERMINATIONNON-TERMINATION AND RETURN OF DOCUMENTS**

20  WithinUnless otherwise ordered or agreed in writing, within 60 days after the termination

21  of this action, including all appeals, each receiving party must return all confidential material to

22  the producing partyReceiving Party must destroy all Protected Material, including all copies,

23  extracts, and summaries thereof. Alternatively, the parties may agree upon appropriate methods

24  of destruction.

25  The Receiving Party must submit a written certification to the Producing Party (and, if

26  not the same person or entity, to the Designating Party) by the 60-day deadline that affirms that

27

1   the Receiving Party has used reasonable efforts to destroy copies, abstracts, compilations,

2   summaries, or any other format reproducing or capturing any of the Protected Material.

3          Notwithstanding this provision, ~~counsel~~Counsel are entitled to retain one archival copy of

4   all documents filed with the ~~court~~Court, trial, deposition, and hearing transcripts,

5   correspondence, deposition and trial exhibits, expert reports, attorney work product, and

6   consultant and expert work product, even if such materials contain ~~confidential material~~Protected

7   Material. Any such archival copies that contain or constitute Protected Material remain subject to

8   this Protective Order.

9          ~~The~~Even after final disposition of this litigation, the confidentiality obligations imposed

10  by this agreement shall remain in effect until a ~~designating party~~Designating Party agrees

11  otherwise in writing or a court orders otherwise.

12

13          ~~IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.~~
     DATED: October 14, 2022              Respectfully submitted,

14

15                                        DAVIS WRIGHT TREMAINE LLP

16                                        ~~DATED~~By:    *DRAFT*
                                                         ~~Attorneys for Plaintiff~~

17                                         Stephen M. Rummage, WSBA #11168
18                                        John A. Goldmark, WSBA # 40980
                                          MaryAnn Almeida, WSBA #49086
19                                        920 Fifth Avenue, Suite 3300
                                          Seattle, WA 98104-1610
20                                        Ph: (206) 622-3150; Fax: (206) 757-7700
                                          E-mail: SteveRummage@dwt.com
21                                        E-mail: JohnGoldmark@dwt.com
                                          E-mail: MaryAnnAlmeida@dwt.com

22                                        ~~DATED:~~_____
23                                        PAUL, WEISS, RIFKIND, WHARTON &
                                          GARRISON LLP

24                                        Karen L. Dunn (pro hac vice)
25                                        William A. Isaacson (pro hac vice)
                                          Amy J. Mauser (pro hac vice)
                                          Martha L. Goodman (pro hac vice)
26                                        Kyle Smith (pro hac vice)
                                          2001 K Street, NW
27

[AMAZON'S PROPOSED] PROTECTIVE ORDER
Case No. 2:20-CV-00424-RAJ - 16

1

Washington, D.C. 20006-1047
Telephone: (202) 223-7300
Facsimile:  (202) 223-7420
E-mail: kdunn@paulweiss.com
E-mail: wisaacson@paulweiss.com
E-mail: amauser@paulweiss.com
E-mail: mgoodman@paulweiss.com
E-mail: ksmith@paulweiss.com

2

3

4

5

*Attorneys for Defendant Amazon.com, Inc.*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

1

**ORDER**

2

3    ~~PURSUANT TO STIPULATION,~~ IT IS SO ORDERED.

4    ~~IT IS FURTHER ORDERED that pursuant to Fed. R. Evid. 502(d), the production of any~~

5    ~~documents in this proceeding shall not, for the purposes of this proceeding or any other federal~~

6    ~~or state proceeding, constitute a waiver by the producing party of any privilege applicable to~~

7    ~~those documents, including the attorney-client privilege, attorney work-product protection, or~~

8    ~~any other privilege or protection recognized by law.~~

9

10   DATED: _____    _____

11                                    Hon. Richard A. Jones

12                                    ~~[Name of Judge]~~
                                     United States District ~~Court~~ Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

A-154

<u>EXHIBIT A</u>

<u>ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND</u>

I, _____ [print or type full name], of

_____ [print or type full address], declare under penalty of

perjury that I have read in its entirety and understand the ~~Stipulated~~ Protective Order that was

issued by the United States District Court for the Western District of Washington on [date] in the

case of _____ **[insert formal name of the case and the number and initials**

**assigned to it by the court]***Frame-Wilson, et al.* v. *Amazon.com, Inc.*, Case No.

2:20-CV-00424-RAJ. I agree to comply with and to be bound by all the terms of this ~~Stipulated~~

Protective Order and I understand and acknowledge that failure to so comply could expose me to

sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose

in any manner any information or item that is subject to this ~~Stipulated~~ Protective Order to any

person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the

Western District of Washington for the purpose of enforcing the terms of this ~~Stipulated~~

Protective Order, even if such enforcement proceedings occur after termination of this action.

Date: _____

City and State where sworn and signed: _____

Printed name: _____

Signature: _____

A-155

# Exhibit D

The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEBORAH FRAME-WILSON, CHRISTIAN SABOL, SAMANTHIA RUSSELL, ARTHUR SCHAREIN, LIONEL KEROS, NATHAN CHANEY, CHRIS GULLEY, SHERYL TAYLOR-HOLLY, ANTHONY COURTNEY, DAVE WESTROPE, STACY DUTILL,SARAH ARRINGTON, MARY ELLIOT, HEATHER GEESEY, STEVE MORTILLARO, CHAUNDA LEWIS, ADRIAN HENNEN, GLENDA R. HILL, GAIL MURPHY, PHYLLIS HUSTER, and GERRY KOCHENDORFER, on behalf of themselves and all others similarly situated, | CASE NO. 2:20-cv-00424-RAJ **[AMAZON.COM'S PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |
| Plaintiffs, | |
| v. | |
| AMAZON.COM, INC., a Delaware corporation, | |
| Defendant. | |

The parties shall abide by the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A.    General Principles**

1.    An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate

[AMAZON.COM'S PROPOSED] ORDER REGARDING
DISCOVERY OF ELECTRONICALLY STORED INFORMATION
Case No. 2:20-CV-00424-RAJ –1

1    in facilitating and reasonably limiting discovery requests and responses raises litigation costs and

2    contributes to the risk of sanctions.

3        2.      As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P.

4    26(b)(1) must be applied in each case when formulating a discovery plan. To further the

5    application of the proportionality standard in discovery, requests for production of ESI and related

6    responses should be reasonably targeted, clear, and as specific as possible.

7        3.      Nothing in this ESI Protocol shall be construed to alter the Producing Party's rights

8    arising under Federal Rule of Civil Procedure 26 or otherwise, for example, with respect to

9    proportionality, or to be able to withhold production of Documents because the source of the

10   Documents is not reasonably accessible or its production would be unduly burdensome or

11   duplicative.

12       **B.    ESI Disclosures**

13       Within 60 days of entry of this Order, or at a later time if agreed to by the parties, each

14   party shall disclose:

15       1.      Custodians. The ten custodians most likely to have discoverable ESI in their

16   possession, custody, or control. The custodians shall be identified by name, title, connection to

17   the instant litigation, and the type of the information under the custodian's control.

18       2.      Non-custodial Data Sources. A list of non-custodial data sources (*e.g.*, shared

19   drives, servers), if any, likely to contain discoverable ESI.

20       3.      Third-Party Data Sources. A list of third-party data sources, if any, likely to

21   contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud

22   storage) and, for each such source, the extent to which a party is (or is not) able to preserve

23   information stored in the third-party data source.

24

25   [AMAZON.COM'S PROPOSED] ORDER REGARDING
     DISCOVERY OF ELECTRONICALLY STORED INFORMATION
26   Case No. 2:20-CV-00424-RAJ –2

4.      Inaccessible Data. A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

5.      Foreign data privacy laws. Nothing in this Order is intended to prevent either party from complying with the requirements of a foreign country's data privacy laws, *e.g.*, the European Union's General Data Protection Regulation (GDPR) (EU) 2016/679. The parties agree to meet and confer before including custodians or data sources subject to such laws in response to any ESI or other discovery request.

**C.      ESI Discovery Procedures**

1.      On-site inspection of electronic media. Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2.      Search methodology. The parties agree that each producing party will take reasonable steps to identify, review, and produce relevant documents. The parties further agree that each producing party is best situated to evaluate and utilize the procedures, methodologies, and technologies appropriate to identify, review, and produce its own Documents.

3.      The parties agree that to support a cooperative discovery process, they will each act reasonably in disclosing their intended processes for search and retrieval, including the use of computer- or technology-aided methodologies. If the parties determine that they will utilize search terms, the parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, and data sources (including custodians). The parties shall continue to cooperate in revising the appropriateness of the search methodology.

a.      Prior to running searches:

[AMAZON.COM'S PROPOSED] ORDER REGARDING
DISCOVERY OF ELECTRONICALLY STORED INFORMATION
Case No. 2:20-CV-00424-RAJ –3

1        i.      The producing party shall disclose the data sources (including

2  custodians), search terms and queries, any file type and date restrictions, and any other

3  methodology that it proposes to use to locate ESI likely to contain responsive and discoverable

4  information. The producing party may provide unique hit counts for each search query, including

5  hit counts by custodian, provided that it can be done with minimal burden.

6        ii.      The requesting party is entitled to, within 21 days of the producing

7  party's disclosure of hit counts as described in Section 2(a)(i) above, add no more than 20 search

8  terms or queries to those disclosed by the producing party absent a showing of good cause or

9  agreement of the parties. If any additional search term or query produces a disproportionate

10  number of hits, the parties agree to meet and confer in good faith.

11        iii.     The following provisions apply to search terms / queries of the

12  requesting party. Focused terms and queries should be employed; broad terms or queries, such as

13  product and company names, generally should be avoided. A conjunctive combination of multiple

14  words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single

15  search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or

16  "system") broadens the search, and thus each word or phrase shall count as a separate search term

17  unless they are variants of the same word. The producing party may identify each search term or

18  query returning overbroad results demonstrating the overbroad results and a counter proposal

19  correcting the overbroad search or query. A search that returns more than 500 megabytes of data,

20  excluding Microsoft PowerPoint files, audio files, and similarly large file types, is presumed to

21  be overbroad.

22        b.     After production:  Within 45 days of the producing party notifying the

23  receiving party that it has substantially completed the production of documents responsive to a

24

25  [AMAZON.COM'S PROPOSED] ORDER REGARDING
     DISCOVERY OF ELECTRONICALLY STORED INFORMATION

26  Case No. 2:20-CV-00424-RAJ –4

1    Request for Production of Documents, the receiving party may request no more than 20 additional

2    search terms or queries. The immediately preceding section (Section C(2)(a)(iii)) applies.

3              c.       Upon a reasonable request, a party producing data will produce data

4    dictionaries relevant for such data to the extent such dictionaries exist.

5         3.    Format.[1]

6              a.       ESI will be produced to the requesting party with searchable text, in a

7    format set forth in Exhibit A.

8              b.       Unless otherwise agreed to by the parties, files that are not easily converted

9    to image format, such as spreadsheet, database, and drawing files, will be produced in native

10   format.

11             c.       Each document image file shall be named with a unique number (Bates

12   Number). Documents produced in native format will be assigned a Bates Number and be

13   produced with a corresponding load file. File names should not be more than twenty characters

14   long or contain spaces. When a text-searchable image file is produced, the producing party must

15   preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted

16   below) and, where applicable, the revision history.

17             d.       If a document is more than one page, the unitization of the document and

18   any attachments and/or affixed notes shall be maintained as they existed in the original document.

19

20

---

21   [1] Documents that are not produced in the first instance in this litigation, i.e., documents that were
     previously produced in other matters, shall be produced pursuant to the ESI protocols governing
22   the format of document productions in those other matters or the format of document productions
     in those other matters, provided that those re-productions are in a reasonably useful format and
23   provided that the Producing Party informs all other Partiers, prior to or at the time of production,
     that the production will be in a nonconforming format. The Parties reserve the right to object to a
24   nonconforming format.

25   [AMAZON.COM'S PROPOSED] ORDER REGARDING
     DISCOVERY OF ELECTRONICALLY STORED INFORMATION
26   Case No. 2:20-CV-00424-RAJ –5

f.     The full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

4.     <u>De-duplication.</u> The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party, and the duplicate custodian information removed during the de-duplication process tracked in a duplicate/other custodian field in the database load file.  If processing and production is done on a rolling basis, an updated Duplicate Custodians field with additional values shall be provided in an overlay. The producing party shall identify whether the overlay replaces previously produced fields for a file or supplements them.

5.     <u>Email Threading.</u>  The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. Upon reasonable request, the producing party will produce a less inclusive copy or missing metadata, if, for example, a threaded email cuts off to/from/cc/subject line/date information.

6.     <u>Metadata fields.</u>  The parties agree to the metadata fields set forth in Exhibit A.

7.     <u>Hard-Copy Documents.</u> The parties agree to the production of hard copies in the manner set forth in Exhibit A

**D.     Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in

the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1.       Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall take reasonable and proportional steps to preserve all discoverable ESI in their possession, custody, or control.

2.       The parties will agree to meet and confer in good faith to identify the categories of information identified in their initial disclosures for which supplementation will be provide in accordance with Fed. R. Civ. P. 26(e).

3.       The parties agree that only unique, non-duplicative sources of relevant Documents need to be preserved.

4.       Absent a showing of good cause by the requesting party, the categories of ESI that need not be preserved include but are not limited to:

        a.       Deleted, slack, fragmented, or other data only accessible by forensics.

        b.       Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

        c.       On-line access data such as temporary internet files, history, cache, cookies, and the like.

        d.       Interim automatically saved drafts, as opposed to drafts saved by a user.

        e.       Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

        f.       Dynamic fields of databases or log files that are not retained in the usual course of business.

        g.       Back-up data that are duplicative of data that are more accessible elsewhere.

        h.       Server, system or network logs.

        i.       Data remaining from systems no longer in use that is unintelligible on the

[AMAZON.COM'S PROPOSED] ORDER REGARDING
DISCOVERY OF ELECTRONICALLY STORED INFORMATION
Case No. 2:20-CV-00424-RAJ –7

1    systems in use.

2    j.   Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or
3         from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that
         a copy of all such electronic data is automatically saved in real time
4         elsewhere (such as on a server, laptop, desktop computer, or "cloud"
         storage).

5    **E.   Privilege**

6    1.   The parties agree to abide by Fed. R. Civ. P. 26(b)(5) with respect to documents

7    fully withheld from production on the basis of a privilege or other protection, unless otherwise

8    agreed or excepted by this Agreement or Order.  A producing party shall create a privilege log of

9    all documents or categories thereof fully withheld from production on the basis of a privilege or

10   protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall

11   include a unique identification number for each document and the basis for the claim (attorney-

12   client privileged or work-product protection). For ESI, the privilege log may be generated using

13   available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title;

14   and date created. Should the available metadata provide insufficient information for the purpose

15   of evaluating the privilege claim asserted, the producing party shall include such additional

16   information as required by the Federal Rules of Civil Procedure. Privilege logs will be produced

17   within a reasonable time after the final production of documents.

18   2.   Redactions need not be logged so long as the basis for the redaction is clear on the

19   face of the redacted document.

20   3.   With respect to privileged or work-product information generated after the filing

21   of the complaint, parties are not required to include any such information in privilege logs.

22   4.   Activities undertaken in compliance with the duty to preserve information are

23   protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

24

25   [AMAZON.COM'S PROPOSED] ORDER REGARDING
     DISCOVERY OF ELECTRONICALLY STORED INFORMATION
26   Case No. 2:20-CV-00424-RAJ –8

5.     Pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection.

**F.     Non-Party Discovery**

1.     A Party that issues a non-party subpoena (the "Issuing Party") shall include a copy of this ESI Protocol with the subpoena.

2.     The Issuing Party shall be responsible for producing any Documents obtained under a subpoena to all other Parties.

3.     If the Non-Party production is not Bates-stamped, the Issuing Party shall endorse the Non-Party production with unique prefixes and Bates numbers prior to producing them to all other Parties.

## APPENDIX A

### PRODUCTION FORMAT PROTOCOL

### I.     DEFINITIONS

**A.     The following definitions and terms shall apply in this Appendix A:**

1.     "Document" carries its broad meaning consistent with Fed. R. Civ. P. 34 and includes ESI and hard copy/paper material. A draft or non-identical copy is a separate Document within the meaning of this term.

2.     "ESI" means electronically stored information, and carries a broad meaning consistent with Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001.

3.     "Extracted Text" means the text extracted from a Native File, and includes all header, footer, and document body information.

4.     "Load File" means a load utilization file, which is an electronic file containing information identifying a set of paper-scanned images or processed ESI, and containing: (i) an indication of which individual pages or files constitute each Document, including attachments, and links to the Static Images associated with each Document; (ii) links to any Native Files, where native files are being produced, including attachments, associated with each Document; and (iii) data relevant to each individual Document, including extracted and user-created Metadata and coded data.

5.     "Metadata" means: (i) information associated with or embedded in a Native File that does not constitute the primary content region of the file; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

6.     "Native File" or "Native Format" refers to ESI that is produced in the format in which it was maintained (e.g., an Excel document produced in .xls format would be produced in native format).

7.     "OCR" means the optical character recognition file that is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents text searchable using appropriate software.

8.     "Producing Party" means the party producing Documents in response to any request for production of documents pursuant to Fed. R. Civ. P. 34(a) or for any other reason.

9.     "Receiving Party" means the party receiving a production of Documents in response to any request for production of document(s) pursuant to Fed. R. Civ. P. 34(a) or for any other reason.

10.    "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard document review systems. Tagged Image File Format (TIFF) and Portable Document Format (PDF) images are examples of Static Images.

## II.     OVERVIEW

**A.     The production format has four main components.**

1.     A directory containing images of every page of every Document in the production, Bates-numbered sequentially.

2.     A directory containing Native Files for a subset of the Documents, each file named with the Bates number of the first page of the Document it represents and the confidentiality designation being used, with no additional text beyond this, and with the same extension as the original Native File type of the Document.

3.     A directory containing OCR or Extracted Text files, one file per Document, each file named with the Bates number of the first page of the Document it represents with no additional text beyond this, followed by ".txt" suffix.

4.     A Load File containing Bates ranges and Metadata for each Document.

## III.     FORMAT FOR PRODUCTION

**A.     Commencement of Production.**

The production of Documents shall proceed at such time, place, and in such sequence as allowed under the Federal Rules of Civil Procedure, as agreed to by the parties, or permitted by the Court.

**B.     General Format of Production.**

Documents that are produced in these proceedings, whether originally stored in paper or electronic form, shall be produced in electronic image form, in the manner described in Section III.C., below, where reasonably feasible. Notwithstanding the foregoing provisions of this paragraph, the parties reserve the right to request that an alternative format or method of

EXHIBIT A TO [AMAZON.COM'S PROPOSED] ORDER REGARDING
DISCOVERY OF ELECTRONICALLY STORED INFORMATION
Case No. 2:20-CV-00424-RAJ

production be used for certain Documents, if such Documents are not susceptible to production in the format or methods of production addressed herein. In that event, the parties will meet and confer to discuss alternative production requirements, concerns, formats, or methods.

**C.     Production Format.**

All documents shall be produced in the following formats when reasonably feasible:

1.     <u>Electronic Production of Paper Documents</u>. Documents that are maintained in paper format shall be scanned as document level PDF files or black and white images at 300 x 300 dots per inch (DPI) or greater resolution, in single-page Group IV TIFF format, and shall reflect the full and complete information contained in the original Document. Hard copy Documents shall be produced with associated OCR files at the same time that the PDF or TIFF files are produced and with a Load File that includes at least the following Metadata fields: Begin Bates; End Bates; Begin Family; End Family; Pages; TextPath; Placeholder; File Extension; Custodian; All Custodians; Confidentiality; and Redacted, as those fields are described in Section IV, below. When subjecting physical documents to an OCR process, the settings of the OCR software shall maximize text quality over process speed. Any settings such as "auto-skewing" or "auto-rotation," should be turned on when documents are run through the process. Paper Documents that contain fixed notes shall be scanned with the notes affixed, if it can be done so in a manner so as not to obstruct other content on the document. If the content of the Document is obscured by the affixed notes, the Document and notes shall be scanned separately.

2.     <u>Production of Electronically Stored Information (ESI)</u>. Unless otherwise specified, Document images shall be generated from electronic Documents in a set of document level PDF or single page Group IV TIFF images that reflect the full and complete information contained on the original Document. In the event a Document is redacted, the Producing Party shall withhold the redacted text for that Document. The failure to withhold such text for a redacted Document by a Producing Party shall not be deemed a waiver of the privilege associated with that Document.

3.     <u>File Structure</u>. The Producing Party shall produce the following sets of files with each production.

a.     <u>Load File</u>.

(1)     Each production has one load file, in "Concordance" style .DAT format.

(2)     Values must be enclosed by þ (ASCII Decimal 254).

EXHIBIT A TO [AMAZON.COM'S PROPOSED] ORDER REGARDING
DISCOVERY OF ELECTRONICALLY STORED INFORMATION
Case No. 2:20-CV-00424-RAJ

A-168

(3)   Values must be separated by the "Device Control 4" character, ASCII decimal 20.

(4)   (4)   First line must contain the column/field names (set forth in Section IV, below).

(5)   The fields Begin Bates and End Bates must be present, and the first fields listed in the load file.

(6)   The field NativePath must be present if native files are included in the document production.

(7)   Each subsequent row must contain the Metadata for one Document.

(8)   Every row must have the same number of columns/fields (empty values are acceptable).

(9)   Text must be encoded in UTF-8.

(10)  File should be placed in the root directory or a directory labeled "DATA."

b.   <u>OCR and Extracted Text Files (.TXT Files).</u>

(1)   A single text file for each Document containing all the Document's pages, in text.

(2)   Pages separated by form feed character (decimal 12, hex 0xC).

(3)   Filenames should be of the form: <Bates num>.txt, where <Bates num> is the Bates number of the first page of the Document.

(4)   Text must be encoded in UTF-8.

(5)   Files should be placed in a directory labeled "TEXT."

c.   <u>Image Files.</u>

(1)   Document level PDF or Single-page Group IV TIFF images for each Document, containing all images for that document.

(2)   Filenames should be of the form: <Bates num>.<ext>, where <Bates num> is the BATES number of the first page of the document (i.e., the "Begin Bates" number), and <ext> is the appropriate extension for the image format (.pdf or .tiff).

(3)   Files should be placed in the "IMAGES" subdirectory.

EXHIBIT A TO [AMAZON.COM'S PROPOSED] ORDER REGARDING
DISCOVERY OF ELECTRONICALLY STORED INFORMATION
Case No. 2:20-CV-00424-RAJ

A-169

4.   <u>Illegible Documents</u>. Documents that cannot be read because of imaging or formatting problems, or because they are password-protected, shall be promptly identified by the Receiving Party. The Producing Party and the Receiving Party shall meet and confer to attempt to resolve problem(s).

5.   <u>Native Format Documents</u>. The parties recognize that it may be appropriate for certain Documents to be produced in Native Format, such as spreadsheets, engineering drawings, presentations or slides, and audio and video files. In all cases, unless there is no textual content, an OCR or Extracted Text file shall be produced along with the Native File. The Receiving Party may request that the Producing Party produce additional file types of electronic Documents in Native Format where the converted image format distorts or causes the information to be improperly displayed, or for which there is no visual representation, such as audio files. Prior to producing any confidential information as defined in any applicable Protective Order entered herein in Native Format, the Producing Party and the Receiving Party shall meet and confer to establish additional procedures, to the extent necessary, for the protection of information contained in Native Files.

a.   <u>Excel and Access Databases</u>. To the extent that responsive documents exist in Excel or another database program, documents shall be produced in Native Format unless the document needs to be redacted. To the extent that the document format constitutes a database created or maintained in Access or another software program, Documents shall be produced in their Native Format, where reasonably feasible. If a database is based upon proprietary software, the parties shall meet and confer regarding the format of production, which shall be a reasonably feasible format, to enable review by the Receiving Party. An image placeholder shall be provided for each document produced in Native Format. Each placeholder shall contain the phrase "DOCUMENT PRODUCED IN NATIVE FORMAT," or something similar, and shall contain the Bates number corresponding to the native file.

b.   <u>PowerPoint Presentations (PPT)</u>. PPT presentations should be produced in Native Format (*e.g.*, as .PPT files). PPT presentations shall also be produced in full document PDF or single-page TIFF format, along with speaker notes. The linked native file name should also match the Begin Bates field with the appropriate file extension. Any hidden slides or speakers notes should be included in PPT presentations.

c.   <u>Audio and Video Data</u>. Parties should make best efforts to ensure care is taken for collection and production of any responsive audio and/or video data, and to preserve any Metadata that may be associated with those items. These data types may be stored in audio or video recordings, voicemail text messaging, and related/similar technologies.

EXHIBIT A TO [AMAZON.COM'S PROPOSED] ORDER REGARDING
DISCOVERY OF ELECTRONICALLY STORED INFORMATION
Case No. 2:20-CV-00424-RAJ

A-170

d.   Word Documents (or similar). Microsoft Word documents (.DOC, .DOCX, or substantially similar non-Microsoft file formats) should be produced in full document PDF or single-page TIFF format for each Document, containing all images for that document, and should be imaged in a manner that captures tracked changes and comments. To the extent a Receiving Party believes the converted image format distorts, omits, or causes information to be improperly displayed, the Receiving Party may request the Document in Native Format and the Producing Party shall meet and confer to attempt to resolve the problem(s).

e.   To the extent the Producing Party produces a Document in Native Format, the following specifications apply:

(1)   Filenames must be unique in the production, unless the content is identical. Files should be named for the starting Bates number of the associated Document.

(2)   The filename must retain the file extension corresponding to the original Native Format (*e.g.*, an Excel 2003 spreadsheet's extension must be .xls).

6.   Color. For any non-native documents, production will be in color where color is material to the understanding of the document or parts thereof (e.g., pie and bar charts) or documents that need to be produced in color can be produced in native format. Otherwise, non-native document images may be produced in black and white.

7.   Production Media. A Producing Party may produce Documents electronically (via secure FTP, for example), or on an external hard drive, DVD, CD-ROM, or such other readily accessible computer or electronic media as the Producing Party and the Receiving Party may hereafter agree upon (the "Production Media"). Production Media should be labeled on its face with the production date, the production volume, the Bates range contained on the Production Media, and any confidentiality notation that may be required by the Protective Order entered in this case. Where not practicable to label Production Media on its face, a letter or email with the required information should be provided. If the Producing Party encrypts or "locks" the production, the Producing Party shall include, under separate cover, instructions regarding how to decrypt the files, and any necessary passwords.

8.   Document Unitization. When scanning paper documents into Document images as described in Section III.C.1., they shall be unitized in a manner so as to maintain the Document(s) and any attachments as they existed in their original state, as reasonably feasible. Any applicable folder structure information should also be provided. Responsive attachments to e-mails stored shall be produced contemporaneously and sequentially immediately after the parent e-mail.

EXHIBIT A TO [AMAZON.COM'S PROPOSED] ORDER REGARDING
DISCOVERY OF ELECTRONICALLY STORED INFORMATION
Case No. 2:20-CV-00424-RAJ

A-171

9.    <u>Duplicates</u>. A Producing Party who has more than one identical copy of an electronic Document (i.e., the Documents are actual duplicates) need only produce a single copy of that Document. For avoidance of doubt, a Producing Party may de-duplicate actual duplicate documents across custodians, but all custodians should be identified in the All Custodians field.

10.   <u>Bates Numbering</u>. Each Producing Party shall Bates number its production(s) as follows:

    a.    Each Bates number should consist of a unique identifier consisting of a prefix, followed by nine numbers (*e.g.*, ABC000000001). The prefix should be substantially similar for all pages produced by the same Producing Party throughout this litigation. Each page of a Document must have its own Bates number, and Bates numbers should be sequential.

    b.    <u>Document Images</u>. Each page of a produced Document shall have a legible, unique page identifier (Bates number) electronically "burned" onto the image at a location that does not unreasonably obliterate, conceal, or interfere with any information from the source Document. No other legend or stamp should be placed on the document other than a confidentiality designation (where applicable), a privilege designation, or a redaction notification (where applicable). For confidential documents the confidentiality designation shall be "burned" onto each Document's image at a location that does not unreasonably obliterate or obscure any information from the source Document.

    c.    <u>Native Format Documents</u>. In order to preserve the integrity of any Native Format Documents that will be produced, no Bates number, confidentiality legend or redaction information should be added to the content of the Native Format Document. Each native should have an individual Bates number assigned.

If documents cannot be rendered to a readable PDF or TIFF format, and the document needs to be redacted for personally identifiable information or privileged content, the native documents may be redacted by creating a new copy of the native document and inserting "Redacted" or similar language where the protected content is located. In that circumstance, a pristine copy of the original native file will be kept and the party will identify documents redacted in native format in the production cover letter and in the Redacted metadata field.

## IV.    METADATA FIELDS

**A.    For scanned hard copy documents, the Producing Party will provide the Metadata fields below.**

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Begin Bates | The production Bates number associated with the first page of a Document. |
| End Bates | The production Bates number associated with the last page of a Document. |
| BeginFamily | Begin Bates number of first page of the parent Document of family of attachments. |
| EndFamily | End Bates number of the last page of last attachment to a family of Documents. |
| Pages | Total number of pages in the Document. |
| TextPath | Link to text file for the document. |
| Placeholder | Identifies a Document has a placeholder image due to technical difficulties with production. The Parties will negotiate alternative production, or otherwise make available for physical inspection, should one be requested by any of the Parties. If a placeholder image is included for privilege reasons, the Producing Party must appropriately identify which ports of the hard copy document have been withheld for privilege. |
| File Extension | The extension of the file. |
| Custodian | Identification of the custodian(s) from whom the file was sourced. |
| All Custodians | Identification of all custodians of the document. |
| Confidentiality | Confidentiality designation. |
| Redacted | (Y/N) field that identifies whether the document is redacted. |
| Production Volume | Production volume number (*e.g.*, VOL001, VOL002, etc.). |
| Producing Party | Name of party producing the Document. |

**B.    For ESI and documents that were originally stored in electronic format, all fields below should be provided, to the extent reasonably feasible. Unless otherwise agreed by the parties, the field-naming conventions shall be as stated below, and shall be consistently applied across all productions:**

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Begin Bates | The production Bates number associated with the first page of a Document. |

EXHIBIT A TO [AMAZON.COM'S PROPOSED] ORDER REGARDING
DISCOVERY OF ELECTRONICALLY STORED INFORMATION
Case No. 2:20-CV-00424-RAJ

A-173

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| End Bates | The production Bates number associated with the last page of a Document. |
| BeginFamily | Begin Bates number of the first page of parent Document of family of attachments. |
| EndFamily | End Bates number of the last page of last attachment to a family of Documents. |
| AttachCount | Number of document attachments. |
| AttachNames | Native file names of each individual attachment, separated by semicolons. |
| Custodian | Identification of the custodian(s) from whom the file was sourced. |
| All Custodians | Identification of all custodians who the producing party agreed to produce and where a duplicate of the Document was de-duplicated when processing the documents. |
| File Path | The file path from which the document was collected |
| All Paths | Identification of all file paths for duplicate copies. |
| Author | Author field extracted from the Metadata of a Document or other creator identified for the Document. |
| From | From field extracted from the Metadata of an email message. |
| To | To field extracted from the Metadata of an email message. |
| Cc | Cc field extracted from the Metadata of an email message. |
| Bcc | Bcc field extracted from the Metadata of an email message. |
| Pages | Total number of pages in the Document. |
| Date Received | Datetime received (MM/DD/YYYY HH/MM/SS). |
| Date Sent | Datetime sent (MM/DD/YYYY HH/MM/SS). |
| Date Created | Datetime created (MM/DD/YYYY HH/MM/SS). |
| Date Modified | Datetime that a Document was last modified (MM/DD/YYYY HH/MM/SS). |
| Last Modified By | Identification of person(s) who last modified a Document. |
| Message Id | Unique Message Id. |
| In Reply To | Message ID of email that instant email is in reply to. |
| Title | Title field value extracted from the Metadata of the Native File. |
| Subject | Subject line extracted from an email, e-document or e-attachment. |
| Filename | The full name of the Native File. |
| File Extension | The extension of the file. |
| File Size | The size of the file in bytes. |

EXHIBIT A TO [AMAZON.COM'S PROPOSED] ORDER REGARDING
DISCOVERY OF ELECTRONICALLY STORED INFORMATION
Case No. 2:20-CV-00424-RAJ

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| MD5 Hash | The MD5 hash value of a Document. |
| Document Type | Document type. |
| Application | Name of the application used to open the file. |
| NativePath | The relative path to the native file for this Document. |
| TextPath | The relative path to the text file for this Document. |
| Redacted | Whether a Document has redactions (Y/N). |
| Placeholder | Whether a Document has a placeholder image (Y/N). |
| Confidentiality | Level of Confidentiality assigned. |
| Track Changes | Document has track changes (Y/N). |
| Hidden Content | Identifies documents with hidden content (*i.e.*, hidden rows, columns, sheets, or slides). |
| Speaker Notes | Document has speaker notes (Y/N). |
| Has Comments | Indicates there are comments in the document. |
| Production Volume | Production volume number (*e.g.*, V001, V002, etc.). |
| Producing Party | Name of party producing the Document. |

EXHIBIT A TO [AMAZON.COM'S PROPOSED] ORDER REGARDING
DISCOVERY OF ELECTRONICALLY STORED INFORMATION
Case No. 2:20-CV-00424-RAJ

A-175

1  DATED: October 14, 2022          Respectfully submitted,

2                                   DAVIS WRIGHT TREMAINE LLP

3                                   By:___*John A. Goldmark*_____
                                     Stephen M. Rummage, WSBA #11168
4                                    John A. Goldmark, WSBA #40980
                                     MaryAnn Almeida, WSBA #49086
5                                    920 Fifth Avenue, Suite 3300
                                     Seattle, WA 98104-1610
                                     Ph: (206) 622-3150; Fax: (206) 757-7700
6                                    E-mail: SteveRummage@dwt.com
                                     E-mail: JohnGoldmark@dwt.com
7                                    E-mail: MaryAnnAlmeida@dwt.com

8                                    mailto:
                                     PAUL, WEISS, RIFKIND, WHARTON &
9                                    GARRISON LLP

10                                   Karen L. Dunn (pro hac vice)
                                     William A. Isaacson (pro hac vice)
                                     Amy J. Mauser (pro hac vice)
11                                   Martha L. Goodman (pro hac vice)
                                     Kyle Smith (pro hac vice)
12                                   2001 K Street, NW
                                     Washington, D.C. 20006-1047
13                                   Telephone: (202) 223-7300
                                     Facsimile:  (202) 223-7420
14                                   E-mail: kdunn@paulweiss.com
                                     E-mail: wisaacson@paulweiss.com
                                     E-mail: amauser@paulweiss.com
15                                   E-mail: mgoodman@paulweiss.com
                                     E-mail: ksmith@paulweiss.com

16                                   *Attorneys for Defendant Amazon.com, Inc.*

17

18

19

20

21

22

23

24

25  [AMAZON.COM'S PROPOSED] ORDER REGARDING
    DISCOVERY OF ELECTRONICALLY STORED INFORMATION
26  Case No. 2:20-CV-00424-RAJ

A-176

1

**<u>ORDER</u>**

2

IT IS SO ORDERED.

3

4

DATED: _____          _____

5

Hon. Richard A. Jones
United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

[AMAZON.COM'S PROPOSED] ORDER REGARDING
DISCOVERY OF ELECTRONICALLY STORED INFORMATION

26

Case No. 2:20-CV-00424-RAJ

A-177

1                                                                The Honorable Richard A. Jones

2

3

4

5

6
                              UNITED STATES DISTRICT COURT
7                            WESTERN DISTRICT OF WASHINGTON
                                        AT SEATTLE
8
[PLAINTIFF],                                    CASE NO. [CASE #]2:20-cv-00424-RAJ
9    DEBORAH FRAME-WILSON,
     CHRISTIAN SABOL, SAMANTHIA                  [MODEL]
10   RUSSELL, ARTHUR SCHAREIN,                    AGREEMENTAMAZON.COM'S
     LIONEL KEROS, NATHAN CHANEY,                PROPOSED] ORDER REGARDING
11   CHRIS GULLEY, SHERYL                         DISCOVERY OF ELECTRONICALLY
     TAYLOR-HOLLY, ANTHONY                        STORED INFORMATION AND
12   COURTNEY, DAVE WESTROPE,                     [PROPOSED] ORDER
     STACY DUTILL,SARAH ARRINGTON,
     MARY ELLIOT, HEATHER GEESEY,
13   STEVE MORTILLARO, CHAUNDA
     LEWIS, ADRIAN HENNEN, GLENDA R.
14   HILL, GAIL MURPHY, PHYLLIS
     HUSTER, and GERRY
15   KOCHENDORFER, on behalf of
     themselves and all others similarly situated,
16
                              PlaintiffPlaintiffs,
17
              v.
18   [DEFENDANT],
     AMAZON.COM, INC., a Delaware
19   corporation,

20                            Defendant.

21

22

23
     AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
24   STORED INFORMATION AND [[AMAZON.COM'S PROPOSED] ORDER                    PAGE
     REGARDING
25   DISCOVERY OF ELECTRONICALLY STORED INFORMATION
     Case No. 2:20-CV-00424-RAJ – 1
26   (Case No. [CASE #])

                                     A-178

[*The red/italicized portions set forth guidance and instruction to the parties in formulating their agreement and should be deleted from the text of the final agreement. Optional provisions may be useful in cases involving more complicated ESI issues or productions.*]

The parties ~~hereby stipulate to~~ shall abide by the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A.    General Principles**

1.    An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2.    As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

3.    Nothing in this ESI Protocol shall be construed to alter the Producing Party's rights arising under Federal Rule of Civil Procedure 26 or otherwise, for example, with respect to proportionality, or to be able to withhold production of Documents because the source of the Documents is not reasonably accessible or its production would be unduly burdensome or duplicative.

**B.    ESI Disclosures**

Within ~~30~~60 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

~~AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND [~~[AMAZON.COM'S PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION Case No. 2:20-CV-00424-RAJ – 2 ~~(Case No. [CASE #])~~                                                  ~~PAGE~~

1.     Custodians. The ~~five~~ten custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control. [~~Five custodians may be sufficient in certain cases, but not in others.  The parties are expected to~~ ~~meet and confer to establish the appropriate number of custodians to be disclosed based on the~~ ~~complexity, proportionality and nature of the case.  This disclosure provision is distinct from~~ ~~the parties' agreement~~ set forth in Section C below about determining the number of custodians ~~from whom ESI should be gathered.~~]

2.     Non-custodial Data Sources. A list of non-custodial data sources (*e.g.*, shared drives, servers), if any, likely to contain discoverable ESI.  [~~These lists can identify the~~ ~~databases that are likely to contain discoverable structured data.~~]

3.     Third-Party Data Sources. A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4.     Inaccessible Data. A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B). [~~Section (D)(3) below sets forth data sources and ESI which are not required to be~~ ~~preserved by the parties. Those data sources and ESI do not need to be included on this list.~~]

5.     [~~Optional~~]Foreign data privacy laws. Nothing in this Order is intended to prevent either party from complying with the requirements of a foreign country's data privacy

~~AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY~~ ~~STORED INFORMATION AND~~ [[AMAZON.COM'S PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION Case No. 2:20-CV-00424-RAJ – 3 ~~(Case No. [CASE #])~~

~~PAGE~~

A-180

1  laws, *e.g.*, the European Union's General Data Protection Regulation (GDPR) (EU) 2016/679.

2  The parties agree to meet and confer before including custodians or data sources subject to such

3  laws in response to any ESI or other discovery request.

4  **C.    ESI Discovery Procedures**

5       1.    On-site inspection of electronic media. Such an inspection shall not be required

6  absent a demonstration by the requesting party of specific need and good cause or by agreement

7  of the parties.

8       2.    Search methodology. [*The Court presumes that the use of search terms and*

9  *queries, file type and date restrictions, and technology-assisted review will be reasonably*

10 *necessary to locate or filter ESI likely to contain discoverable information.  The timelines and*

11 *search related numbers in this section may be sufficient in certain cases, but not in others.  The*

12 *parties are expected to meet and confer to establish the appropriate timing and numbers based*

13 *on the complexity, proportionality and nature of the case.*] The parties shall timely confer to

14 attempt to reach agreement on appropriate search terms and queries, file type and date

15 restrictions, data sources (including custodians), and other appropriate computer- or

16 technology-aided methodologies, before any such effort is undertaken.  The parties shall

17 continue to cooperate in revising the appropriateness of the search methodology.

18       2.    Search methodology. The parties agree that each producing party will take

19 reasonable steps to identify, review, and produce relevant documents. The parties further agree

20 that each producing party is best situated to evaluate and utilize the procedures, methodologies,

21 and technologies appropriate to identify, review, and produce its own Documents.

22

23

24 AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
   STORED INFORMATION AND [[AMAZON.COM'S PROPOSED] ORDER                    PAGE-
   REGARDING

25 DISCOVERY OF ELECTRONICALLY STORED INFORMATION
   Case No. 2:20-CV-00424-RAJ - 4

26 (Case No. [CASE #])

3.     The parties agree that to support a cooperative discovery process, they will each act reasonably in disclosing their intended processes for search and retrieval, including the use of computer- or technology-aided methodologies. If the parties determine that they will utilize search terms, the parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, and data sources (including custodians). The parties shall continue to cooperate in revising the appropriateness of the search methodology.

a.     Prior to running searches:

i.     The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. The producing party may provide unique hit counts for each search query, including hit counts by custodian, provided that it can be done with minimal burden.

ii.     The requesting party is entitled to, within ~~14~~21 days of the producing party's disclosure of hit counts as described in Section 2(a)(i) above, add no more than ~~10~~20 search terms or queries to those disclosed by the producing party absent a showing of good cause or agreement of the parties. If any additional search term or query produces a disproportionate number of hits, the parties agree to meet and confer in good faith.

iii.     The following provisions apply to search terms / queries of the requesting party. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*,

~~AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND~~ [[AMAZON.COM'S PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION Case No. 2:20-CV-00424-RAJ – 5 ~~(Case No. [CASE #])~~     ~~PAGE -~~

A-182

1    "computer" or "system") broadens the search, and thus each word or phrase shall count as a

2    separate search term unless they are variants of the same word. The producing party may

3    identify each search term or query returning overbroad results demonstrating the overbroad

4    results and a counter proposal correcting the overbroad search or query. [*The following*

5    *provision is optional and includes alternative provisions. The parenthetical numbers given are*

6    *a starting point for the negotiations and are not intended to prejudge the merits of an*

7    *overbreadth challenge.*] [*Optional*] A search that returns more than [*alternative 1*] [(250)500

8    megabytes of data, excluding Microsoft PowerPoint files, audio files, and similarly large file

9    types] [*alternative 2*] [(400) unique documents, excluding families], is presumed to be

10   overbroad.

11           b.      After production:  Within 2145 days of the producing party notifying the

12   receiving party that it has substantially completed the production of documents responsive to a

13   request, the respondingRequest for Production of Documents, the receiving party may request

14   no more than 1020 additional search terms or queries. The immediately preceding section

15   (Section C(2)(a)(iii)) applies.

16           c.      [*Optional*] Upon a reasonable request, a party shall disclose information

17   relating to network design, the types of databases, database dictionaries, the access control list

18   and security access logs and rights of individuals to access the system and specific files and

19   applications, the ESI document retention policy, organizational chart for information systems

20   personnel, or the backup and systems recovery routines, including, but not limited to, tape

21   rotation and destruction/overwrite policy.producing data will produce data dictionaries relevant

22   for such data to the extent such dictionaries exist.

23

24   AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
     STORED INFORMATION AND [[AMAZON.COM'S PROPOSED] ORDER          PAGE
     REGARDING
25   DISCOVERY OF ELECTRONICALLY STORED INFORMATION
     Case No. 2:20-CV-00424-RAJ –6
26   (Case No. [CASE #])

3.      Format.[1]

a.      ESI will be produced to the requesting party with searchable text, in a format ~~to be decided between the parties. Acceptable formats include, but are not limited to, native files, multi-page TIFFs (with a companion OCR or extracted text file), single-page TIFFs (only with load files for e-discovery software that includes metadata fields identifying natural document breaks and also includes companion OCR and/or extracted text files), and searchable PDF.~~ set forth in Exhibit A.

b.      Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, and drawing files, will be produced in native format.

c.      Each document image file shall be named with a unique number (Bates Number). Documents produced in native format will be assigned a Bates Number and be produced with a corresponding load file. File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.

[1] Documents that are not produced in the first instance in this litigation, i.e., documents that were previously produced in other matters, shall be produced pursuant to the ESI protocols governing the format of document productions in those other matters or the format of document productions in those other matters, provided that those re-productions are in a reasonably useful format and provided that the Producing Party informs all other Partiers, prior to or at the time of production, that the production will be in a nonconforming format. The Parties reserve the right to object to a nonconforming format.

d.      If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

e.      [*Optional*] The parties shall produce their information in the following format: single- page images and associated multi-page text files containing extracted text or with appropriate software load files containing all information required by the litigation support system used by the receiving party.

f.      [*Optional*] The full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

4.      <u>De-duplication.</u>  The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party, and the duplicate custodian information removed during the de-duplication process tracked in a duplicate/other custodian field in the database load file.  If processing and production is done on a rolling basis, an updated Duplicate Custodians field with additional values shall be provided in an overlay. The producing party shall identify whether the overlay replaces previously produced fields for a file or supplements them.

5.      <u>Email Threading.</u>   The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. Upon reasonable request, the producing party will produce

1  a less inclusive copy or missing metadata, if, for example, a threaded email cuts off

2  to/from/cc/subject line/date information.

3     6. <u>Metadata fields.</u> ~~If the requesting party seeks metadata, the~~ The parties agree ~~that~~

4  ~~only~~to the ~~following~~ metadata fields ~~need be produced, and only to the extent it is reasonably~~

5  ~~accessible and non-privileged: document type; custodian and duplicate custodians (or storage~~

6  ~~location if no custodian); author/from; recipient/to, cc and bcc; title/subject; email subject; file~~

7  ~~name; file size; file extension; original file path; date and time created, sent, modified and/or~~

8  ~~received; and hash value. The list of metadata type is intended to be flexible and may be~~

9  ~~changed by agreement of the parties, particularly in light of advances and changes in~~

10 ~~technology, vendor, and business practices.~~set forth in Exhibit A.

11    7. *[Optional]* Hard-Copy Documents. ~~If the~~The parties ~~elect to produce hard-copy~~

12 ~~documents in an electronic format,~~agree to the production of ~~hard-copy documents will include~~

13 ~~a cross-reference file that indicates document breaks and sets forth the custodian or~~

14 ~~custodian/location associated with each produced document. Hard-copy documents will be~~

15 ~~scanned using Optical Character Recognition technology and searchable ASCII text files will be~~

16 ~~produced (or Unicode text format if the text is in a foreign language), unless the producing party~~

17 ~~can show that the cost would outweigh the usefulness of scanning (for example, when the~~

18 ~~condition of the paper is not conducive to scanning and will not result in accurate or reasonably~~

19 ~~useable/searchable ESI). Each file will be named with a unique Bates Number (*e.g.*, the unique~~

20 ~~Bates Number of the first page of the corresponding production version of the document~~

21 ~~followed by its file extension).~~hard copies in the manner set forth in Exhibit A

22 **D. Preservation of ESI**

23

24 ~~AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY~~
   ~~STORED INFORMATION AND [~~[AMAZON.COM'S PROPOSED] ORDER REGARDING
                ~~PAGE~~

25 DISCOVERY OF ELECTRONICALLY STORED INFORMATION
   Case No. 2:20-CV-00424-RAJ –9

26 ~~(Case No. [CASE #])~~

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall take reasonable and proportional steps to preserve all discoverable ESI in their possession, custody, or control.

2. The parties will supplement their agree to meet and confer in good faith to identify the categories of information identified in their initial disclosures for which supplementation will be provide in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3. The parties agree that only unique, non-duplicative sources of relevant Documents need to be preserved.

34. Absent a showing of good cause by the requesting party, the following categories of ESI that need not be preserved include but are not limited to:

    a. Deleted, slack, fragmented, or other data only accessible by forensics.
    b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.
    c. On-line access data such as temporary internet files, history, cache, cookies, and the like.
    d. Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).
    e. Interim automatically saved drafts, as opposed to drafts saved by a user.
    f. Dynamic fields of databases or log files that are not retained in the usual course of business.
    g. e. Back-up data that are duplicative of data that are more accessible

A-187

elsewhere.

h.   ~~f.~~ Server, system or network logs.

i.   ~~g.~~ Data remaining from systems no longer in use that is unintelligible on the systems in use.

j.   ~~h.~~ Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

~~[The parties should confer regarding any other categories of ESI that may not need to be preserved, such as text messages and social media data, in light of the General Principles set forth above, and determine whether they can agree that such categories can be added to the non-preservation list above.]~~

**E.   Privilege**

~~[The parties should confer regarding the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any logging requirements and whether alternatives to document-by-document logs can be exchanged.]~~

1.   The parties agree to abide by Fed. R. Civ. P. 26(b)(5) with respect to documents fully withheld from production on the basis of a privilege or other protection, unless otherwise agreed or excepted by this Agreement or Order.  A producing party shall create a privilege log of all documents or categories thereof fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should the available metadata provide insufficient

~~AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND [~~[AMAZON.COM'S PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION Case No. 2:20-CV-00424-RAJ – 11 ~~(Case No. [CASE #])~~           ~~PAGE~~

A-188

1   information for the purpose of evaluating the privilege claim asserted, the producing party shall

2   include such additional information as required by the Federal Rules of Civil Procedure.

3   Privilege logs will be produced ~~to all other~~ ~~parties~~ *[alternative language, choose one of the*

4   *following clauses]* *[alternative 1]* ~~[no later than 30 days after delivering a production]~~

5   *[alternative 2]* ~~[no later than 30 days before the deadline for filing motions related to discovery]~~

6   ~~unless an earlier deadline is agreed to by the parties.~~within a reasonable time after the final

7   production of documents.

8       2.      Redactions need not be logged so long as the basis for the redaction is clear on

9   the face of the redacted document.

10      3.      With respect to privileged or work-product information generated after the filing

11  of the complaint, parties are not required to include any such information in privilege logs.

12      4.      Activities undertaken in compliance with the duty to preserve information are

13  protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

14      5.      Pursuant to Fed. R. Evid. 502(d), the production of any documents in this

15  proceeding shall not, for the purposes of this proceeding or any other federal or state

16  proceeding, constitute a waiver by the producing party of any privilege applicable to those

17  documents, including the attorney-client privilege, attorney work-product protection, or any

18  other privilege or protection recognized by law. Information produced in discovery that is

19  protected as privileged or work product shall be immediately returned to the producing party,

20  and its production shall not constitute a waiver of such protection.

21

22

23

24  ~~AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY~~
    ~~STORED INFORMATION AND~~[[AMAZON.COM'S PROPOSED] ORDER   ~~PAGE~~
    REGARDING
25  DISCOVERY OF ELECTRONICALLY STORED INFORMATION
    Case No. 2:20-CV-00424-RAJ –12
26  ~~(Case No. [CASE #])~~

**F.      Non-Party Discovery**

        1.      A Party that issues a non-party subpoena (the "Issuing Party") shall include a copy of this ESI Protocol with the subpoena.

        2.      The Issuing Party shall be responsible for producing any Documents obtained under a subpoena to all other Parties.

        3.      If the Non-Party production is not Bates-stamped, the Issuing Party shall endorse the Non-Party production with unique prefixes and Bates numbers prior to producing them to all other Parties.

DATED: October 14, 2022          Respectfully submitted,

                                     DAVIS WRIGHT TREMAINE LLP

[Signature blocks]      ~~DATED~~By:   *DRAFT*_____

                                Stephen M. Rummage, WSBA #11168
                               John A. Goldmark, WSBA # 40980
                               MaryAnn Almeida, WSBA #49086
                               920 Fifth Avenue, Suite 3300
                               Seattle, WA 98104-1610
                               Ph: (206) 622-3150; Fax: (206) 757-7700
                               E-mail: SteveRummage@dwt.com
                               E-mail: JohnGoldmark@dwt.com
                               E-mail: MaryAnnAlmeida@dwt.com

                               PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

                               Karen L. Dunn (pro hac vice)
                               William A. Isaacson (pro hac vice)
                               Amy J. Mauser (pro hac vice)
                               Martha L. Goodman (pro hac vice)
                               Kyle Smith (pro hac vice)
                               2001 K Street, NW
                               Washington, D.C. 20006-1047
                               Telephone: (202) 223-7300
                               Facsimile:  (202) 223-7420
                               E-mail: kdunn@paulweiss.com
                               E-mail: wisaacson@paulweiss.com

~~AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND~~ [[AMAZON.COM'S PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION
Case No. 2:20-CV-00424-RAJ – 13          ~~PAGE~~
~~(Case No. [CASE #])~~

A-190

1          E-mail: amauser@paulweiss.com
           E-mail: mgoodman@paulweiss.com
2          E-mail: ksmith@paulweiss.com

3          *Attorneys for Defendant Amazon.com, Inc.*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    ~~AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY~~
      ~~STORED INFORMATION AND [~~[AMAZON.COM'S PROPOSED] ORDER                    ~~PAGE -~~
      REGARDING
25    DISCOVERY OF ELECTRONICALLY STORED INFORMATION
      Case No. 2:20-CV-00424-RAJ – 14
26    ~~(Case No. [CASE #])~~

A-191

1

**ORDER**

2

3       ~~Based on the foregoing,~~ IT IS SO ORDERED.

4

5    DATED: _____     _____

                                        Hon. Richard A. Jones
6                                       United States District Judge

7

                                        ~~The Honorable~~
8                                       ~~UNITED STATES DISTRICT JUDGE~~

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    ~~AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY~~
      ~~STORED INFORMATION AND [~~[AMAZON.COM'S PROPOSED] ORDER                    ~~PAGE~~
      REGARDING
25    DISCOVERY OF ELECTRONICALLY STORED INFORMATION
      Case No. 2:20-CV-00424-RAJ – 15
26    ~~(Case No. [CASE #])~~

A-192

The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEBORAH FRAME-WILSON, CHRISTIAN SABOL, SAMANTHIA RUSSELL, ARTHUR SCHAREIN, LIONEL KEROS, NATHAN CHANEY, CHRIS GULLEY, SHERYL TAYLOR-HOLLY, ANTHONY COURTNEY, DAVE WESTROPE, STACY DUTILL, SARAH ARRINGTON, MARY ELLIOT, HEATHER GEESEY, STEVE MORTILLARO, CHAUNDA LEWIS, ADRIAN HENNEN, GLENDA R. HILL, GAIL MURPHY, PHYLLIS HUSTER, and GERRY KOCHENDORFER, on behalf of themselves and all others similarly situated,<br><br>                                  Plaintiffs,<br><br>       v.<br><br>AMAZON.COM, INC., a Delaware corporation,<br><br>                                  Defendant. | No. 2:20-cv-00424-RAJ<br><br>**JOINT STATUS REPORT AND DISCOVERY PLAN** |

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

A-193

1      Counsel for Plaintiffs and Defendant Amazon.com, Inc. ("Amazon") (collectively

2    "Parties") held a conference as required by LCR 26(f) on August 15, 2022. This Joint Status

3    Report and Discovery Plan is the outcome of that conference and the Parties' subsequent

4    discussions.

5        **1.**      **Statement of the nature and complexity of the case**

6        **Plaintiffs' statement:**

7      Plaintiffs are online shoppers ("ecommerce" consumers) who allege that Amazon

8    imposes an illegal price restraint on the ecommerce retailers that sell on Amazon's online

9    marketplace ("Amazon Marketplace"), and that this price restraint prohibits the ecommerce

10   retailers from competing on price when selling the same products on other ecommerce retail sites

11   that compete with Amazon Marketplace. This price restraint was originally found in section S-4

12   ("Parity with Your Sales Channel") in Amazon's Standard Business Agreement with the

13   ecommerce retailers and is now incorporated by reference in that agreement through Amazon's

14   "fair pricing" provision, to which the ecommerce retailers also agree to adhere. Plaintiffs further

15   allege that by agreeing to Amazon's contractual price constraints, the ecommerce retailers are

16   Amazon's co-conspirators. Amazon and its Co-conspirators' price restraints harm competition

17   and injure Plaintiffs and other consumers by charging them supracompetitive online prices.

18   Plaintiffs further allege that through their price restraints Amazon and its Co-conspirators

19   conspire to create or maintain Amazon Marketplace's monopoly in the relevant U.S. online retail

20   markets, including the ecommerce market, the online retail marketplaces market, and the

21   ecommerce submarkets for various product categories. Alternatively, Plaintiffs allege that

22   Amazon Marketplace is dangerously likely to achieve a monopoly in the relevant markets.

23      This case presents complex legal and factual matters, which require substantial discovery.

24   Plaintiffs assert violations of Sections 1 and 2 of the Sherman Act and the Cartwright Act on

25   behalf of themselves and similarly situated class members. Plaintiffs ask that the Court certify a

26   federal law class on a nationwide basis and a California subclass for purposes of the Cartwright

27   claim.

28



A-194

**Defendant's statement**:

Having a reputation for low prices—and in fact offering low prices—are fundamental business objectives for Amazon. Within the intensely competitive retail environment, customers shop around until they find the best deal. Even a single bad experience in Amazon's store—such as paying an uncompetitive price for a product—can damage customer trust, which is essential to success in retail and can easily be lost. The gravamen of Plaintiffs' Second Amended Complaint is that Amazon's policies encouraging low prices in its store and deterring price gouging constitute an antitrust violation. This proposition—that Amazon should not be allowed to encourage low prices and prohibit price gouging in its store—defies common sense and the fundamental dynamics of retail competition. It also defies the letter and spirit of the antitrust laws, which protect the very type of competition in which Plaintiffs allege Amazon is engaging. If Plaintiffs' claims survive a motion to dismiss, Amazon will establish, based on the factual record, that class certification requirements have not been established and that Plaintiffs' claims fail for multiple reasons, including but not limited to the following:

(1)      Plaintiffs lack antitrust standing because their claims violate the direct purchaser requirement of *Illinois Brick*; and fall outside the co-conspirator exception to *Illinois Brick*, as the prices they paid for goods they purchased outside Amazon's store were not set by any alleged conspiracy;

(2)      Plaintiffs' claimed injury is far too attenuated to satisfy the requirements for antitrust standing set forth in *Associated General Contractors* and violates the rule that antitrust injury must occur at the first step in the causal chain of events of a defendant's alleged anticompetitive conduct;

(3)      Amazon has legitimate, procompetitive business justifications for the pricing policies that Plaintiffs challenge;

(3)      The relevant product markets alleged by Plaintiffs defy how customers shop. The alleged markets are too narrow because they disregard the fact that the vast majority of retail sales take place in brick-and-mortar stores, and at the same time they are overbroad because the



A-195

1  600 million products in Plaintiffs' alleged Online Marketplace market are not reasonably

2  interchangeable and the products do not all face the same competitive conditions;

3      (4)  Amazon lacks market power in a properly defined market;

4      (5)  Plaintiffs cannot establish anticompetitive effects, which requires Plaintiffs to

5  show that each of Amazon's agreements with third-party sellers causes anticompetitive harm.

6  No agreement between Amazon and a third-party seller had a cognizable impact on competition.

7      (6)  Plaintiffs mischaracterize Amazon's Marketplace Fair Pricing Policy as a most-

8  favored nation (MFN) provision.  The provision prohibits only prices "significantly higher" than

9  recent prices on or off Amazon, protecting consumers against price gouging.  Even if the former

10  parity provision constitutes an MFN, the provision has as its purpose providing consumers lower

11  prices, and no case has held that an MFN provision that seeks lower prices for consumers is an

12  antitrust violation;

13      (7)  Plaintiffs cannot establish a conspiracy to monopolize because they will not be

14  able to show that each of Amazon's two million third-party sellers had the specific intent of

15  maintaining or enhancing an Amazon monopoly; and

16      (8)  Plaintiffs cannot establish on a class-wide basis that, as a result of the former

17  parity provision and the Marketplace Fair Pricing Policy, the prices they paid for online

18  purchases of goods outside of Amazon's store were higher than they otherwise would have been.

19      **2.**    **Proposed deadline for joining additional parties**

20      Plaintiffs propose that the Parties join any additional parties within the later of six months

21  from the date of submission of this Joint Status Report and Discovery Plan ("this Report") or 45

22  days after the Court's order on Amazon's pending motion to dismiss (ECF No. 59).

23      Amazon opposes any further amendment by Plaintiffs, given that they have already filed

24  three complaints in this action.  Should Plaintiffs obtain leave of court permitting them to file a

25  further amended complaint, they should be required to do so no later than thirty days from the

26  Court's ruling on the pending motion to dismiss.

27      **3.**    **Consent to a Magistrate**

28      No.



**A-196**

**4.    Discovery plan**

The Parties propose the following schedule of discovery and related deadlines:

| Event | Proposed Deadline or Date |
|---|---|
| Initial Disclosures | September 12, 2022 |
| Class certification motion | October 30, 2023. |
| Completion of non-expert discovery | Within 4 months after the Court's order on class certification |
| Disclosure of merits expert reports (except those that are used to support or oppose a motion for class certification) | Within 5 months after the Court's order on class certification |
| Disclosure of merits rebuttal expert reports (except those that are used to support or oppose a motion for class certification) | Within 7 months after the Court's order on class certification, i.e., within 60 days of merits expert reports |
| Disclosure of expert responses to rebuttal reports (except those that are used to support or oppose a motion for class certification) | Within 9 months after the Court's order on class certification |
| Completion of expert discovery | Within 10 months after the Court's order on class certification |
| Dispositive and *Daubert* motion(s) | Within 12 months after the Court's order on class certification |
| Trial | Date to be determined, but no sooner than 14 months from the Court's order on class certification |

The Parties agree to work together to negotiate a Protective Order and an ESI Protocol that they will present to the Court on or before October 14, 2022. If agreement cannot be reached, the Parties will submit a joint statement by that deadline, outlining the Parties' respective positions on any areas of disagreement. No such disputes are anticipated at this time.

JOINT STATUS REPORT AND DISCOVERY PLAN - 4
Case No. 2:20-cv-00424-RAJ



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

A-197

1         **a.**    **The exchange of initial disclosures**

2     As described in the preceding chart in this section, the Parties will exchange their initial

3 disclosures on September 12, 2022.

4         **b.**    **Subjects, timing, and potential phasing of discovery**

5   1) **Plaintiffs:** Plaintiffs anticipate extensive discovery, including documents and data:

6 - concerning the relevant markets;

7 - identifying Amazon's third-party sellers;

8 - identifying Class Products;

9 - identifying products Amazon sells in competition with Class Products;

10 - identifying the online retail channels third-party sellers use to sell their products
11    when not selling on Amazon Marketplace;

12 - concerning historical and current price information for Class Products and
13    products Amazon sells in competition with Class Products;

14 - concerning third-party sellers' obligations under the Price Parity Provision;

15 - concerning Amazon's withdrawal of the Price Parity Provision in any geographic
16    market;

17 - concerning third-party sellers' obligations under the Fair Pricing Provision;

18 - concerning the enactment and enforcement of Amazon's Price Parity Provision
19    and Fair Pricing Provision;

20 - concerning departments and employees/officers primarily charged with enacting
21    and enforcing these provisions and with tracking and comparing prices for Class
22    Products; and

23 - concerning productions made to the House Judiciary Committee, the DOJ, the
24    FTC, and state attorneys general as they relate to any of the above categories of
25    documents.

26     Additionally, if the class is certified, Plaintiffs will seek class member names and contact
27 information from Amazon for purposes of class notification.

28



HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

A-198

2) **Defendant**: If the Court denies Amazon's motion to dismiss, Amazon likewise anticipates extensive discovery, including seeking documents and data related to some of the topics Plaintiffs outline above, from Plaintiffs and from nonparties.  Amazon reserves all rights to object to the scope of discovery sought by Plaintiffs.  In addition, Amazon anticipates seeking discovery on the following additional topics from Plaintiffs and from nonparties:

- The identities of Amazon's alleged co-conspirators;
- Plaintiffs' (or Plaintiffs' representatives) communications with any third-party seller in Amazon's store;
- Plaintiffs' (or Plaintiffs' representatives) communications with any government regulator or congressional committee concerning the former Parity Provision or the Marketplace Fair Pricing Policy;
- Documents relied on in the Complaint, First Amended Complaint, or Second Amended Complaint;
- Plaintiffs' (or Plaintiffs' representatives') communications with any author or contributor to any public document relied on in the Complaint, the First Amended Complaint, or the Second Amended Complaint;
- Third-party sellers' costs to sell in other online marketplaces or other distribution channels;
- Plaintiffs' purchases of products during the putative Class Period—regardless of where Plaintiffs made each such purchase—i.e., from any retailer, third-party seller, brand, or marketplace, whether online or in a physical store;
- Plaintiffs' shopping habits and practices;
- Competitive conditions for sales of the alleged Class Products, including potential substitutions and the policies of other retailers;
- The prices and terms at which other retailers, third-party sellers, or marketplaces offered products which Plaintiffs purchased at the time of Plaintiffs' purchases; and
- Plaintiffs' document and data preservation practices.

JOINT STATUS REPORT AND DISCOVERY PLAN - 6
Case No. 2:20-cv-00424-RAJ



HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

A-199

1     The Parties agree that discovery should not be bifurcated or phased.

2          **c.**      **Electronically stored information**

3     The Parties agree to work together to propose a protocol addressing the disclosure

4 requirements for electronically stored information ("ESI"), based on the "Model ESI Agreement"

5 referenced in LCR 26(f)(1)(I)(ii). If agreement cannot be reached, the Parties will present to the

6 Court any disputed issues requiring the Court's resolution.

7          **d.**      **Privilege issues**

8     The Parties will promptly negotiate the terms of a proposed protective order containing

9 procedures for handling the inadvertent production of privileged information and other privilege

10 waiver issues pursuant to Rule 502(d) or (e) of the Federal Rules of Evidence, and will submit

11 the proposed order for the Court's consideration. Plaintiffs propose that the Parties file their

12 proposed ESI agreement by September 28, 2022, or, if agreement cannot be reached, submit a

13 joint statement by that deadline, outlining the Parties' respective positions. No such disputes are

14 anticipated at this time.

15         **e.**      **Proposed limitations on discovery**

16     The Parties agree to follow the Federal Rules of Civil Procedure for the exchange of

17 discovery and conducting depositions. Each party reserves the right to seek leave of court at the

18 appropriate time to expand the limitations on the number of depositions in Fed. R. Civ. P.

19 30(a)(2)(A)(i), or the number of interrogatories in Fed. R. Civ. P. 33 (a)(1).

20         **f.**      **The need for any discovery related orders**

21          **1.**  **Plaintiffs' Position**

22     Plaintiffs believe that this action, the largest pending antitrust case in the country, would

23 benefit from status conferences by telephone every two months on dates and at times convenient

24 for the Court. *See* Manual for Complex Litigation, Fourth §11.22 (2004). A complex antitrust

25 class action presents special case management issues, in particular the efficient and timely

26 completion of discovery, and it is common in such cases to hold regular status conferences to

27 address issues likely to arise in the course of litigating this matter. Plaintiffs propose that the

28 Parties jointly file a Status Conference Report 7 calendars days before each scheduled Status

JOINT STATUS REPORT AND DISCOVERY PLAN - 7
Case No. 2:20-cv-00424-RAJ

HB HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

A-200

1   Conference, setting forth what issues, if any, there are for discussion with or resolution by the

2   Court. If there are no issues, the Parties would jointly recommend cancelation of the scheduled

3   Status Conference.

4       Plaintiffs disagree as to the scope of preservation required in this litigation. *See* 5(e)

5   below. Plaintiffs request an order on that issue and propose that the Parties meet and confer and

6   submit a proposed briefing schedule to address it.

7                      **2.    Amazon's Position**

8       Amazon believes there is no reason for regularly scheduled status conferences.  This

9   matter involves experienced counsel on both sides.  The Parties should work together to resolve

10  any areas of disagreement that may arise before seeking the Court's involvement.  Scheduling

11  regular conferences may have the effect of surfacing issues to the Court's attention before

12  counsel have exhausted efforts to resolve them consensually.

13      **5.    Items set forth in Local Civil Rule 26(f)(1)**

14          **a.    Prompt case resolution**

15  The Parties will litigate this case as efficiently as possible.

16          **b.    Alternative dispute resolution ("ADR")**

17  The Parties will review ADR options in this matter as the case develops.

18          **c.    Related cases.**

19  The Parties identify the following related cases:

20  • *De Coster, et al. v. Amazon.com, Inc.*, 2:21-cv-693, Chief Judge Ricardo S.

21     Martinez

22  • *West, et al. v. Amazon.com, Inc.*, 2:21-cv-694, Chief Judge Ricardo S. Martinez

23     (consolidated with *De Coster*)

24  • *Hogan v. Amazon.com, Inc.*, 2:21-cv-00996, Chief Judge Ricardo S. Martinez

25  • *Seberson v. Amazon.com, Inc.*, 2:21-cv-01009, Chief Judge Ricardo S. Martinez

26     (consolidated with *Hogan*)

27

28

JOINT STATUS REPORT AND DISCOVERY PLAN - 8
Case No. 2:20-cv-00424-RAJ



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

A-201

1   The Parties agree to coordinate discovery between this matter and *De Coster* (Plaintiffs'

2   counsel and Amazon's counsel in this matter are also counsel for plaintiffs and for Amazon,

3   respectively, in *De Coster*) to avoid duplication of effort. The Parties further agree to meet and

4   confer with counsel in *Hogan* and *Seberson* to coordinate discovery, as appropriate. The Parties

5   agree that, should *De Coster* and *Hogan/Seberson* proceed beyond the pending and fully briefed

6   motions to dismiss and into discovery, duplicative discovery across the related matters should be

7   avoided. The Parties will meet and confer as necessary to avoid unnecessary and duplicative

8   depositions of the same witnesses.

9   **d.    Phasing motions**

10   Plaintiffs anticipate that their proposed schedule described in No. 4 above represents an

11   efficient phasing of motions. Depending on the information obtained during discovery and the

12   potential level of complexity presented by their calculation of damages, Plaintiffs may choose to

13   satisfy their burden on class certification by presenting evidence of class-wide impact and a

14   common methodology of calculating damages, while deferring an actual calculation of aggregate

15   class damages until the deadline for expert merit reports.

16   Amazon is considering an early motion for partial summary judgment to narrow the

17   issues in the case.

18   **e.    Preservation**

19   Plaintiffs request preservation of all data and documents responsive to their anticipated

20   discovery, as described in No. 4(b)(1) above. Consistent with the claims asserted in this case,

21   Plaintiffs have preserved relevant documents, including their online purchases. Amazon's

22   additional requests that Plaintiffs also preserve "their habits and practices" of purchasing, all

23   manner of purchases of any product from any source, including physical stores, and the "prices

24   and terms at which" such products are sold by any seller anywhere, are unduly burdensome

25   requests and fail to address the disparity in resources and burden placed on individual consumers

26   serving as class representatives.

27   Amazon likewise requests preservation of all data and documents responsive to its

28   anticipated discovery, as described in No. 4(b)(2) above.

JOINT STATUS REPORT AND DISCOVERY PLAN - 9
Case No. 2:20-cv-00424-RAJ



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

**A-202**

   **f.**  **ESI Protocols**

The Parties agree to work together to propose a protocol addressing discovery of electronically stored information ("ESI") based on the "Model ESI Agreement" referenced in LCR 26(f)(1)(I)(ii).

   **6.**  **Discovery deadline**

The Parties agree that discovery shall close 4 months after the Court's order on class certification, as described in No. 4 above.

   **7.**  **Bifurcation**

The Parties are not proposing any bifurcation between class certification and merits or between liability and damages at this time.

   **8.**  **Individualized Trial Program**

The Parties agree that an individualized trial program is not appropriate for this action.

   **9.**  **Other suggestions for shortening or simplifying the case**

The Parties agree to meet and confer as appropriate to propose any issues that can be narrowed by stipulation or by motion, as well as any potential means to expedite the presentation of evidence at trial.

   **10.**  **The date the case will be ready for trial**

Plaintiffs anticipate that their case will be ready for trial 14 months after the Court's order on class certification, as described in No. 4 above.

Assuming the case survives the pending motion to dismiss, Amazon believes trial readiness cannot be assessed until after the Court rules on class certification and/or any early summary judgment motion.

   **11.**  **Trial Type**

Plaintiffs have requested a trial by jury.

   **12.**  **Trial Length**

Plaintiffs currently anticipate it will require 10 days for the presentation of their case.

At this stage of the case, when the exact scope of the issues to be tried is not clear, it is premature to project the length of the trial. Amazon proposes that the Court request the Parties


HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

A-203

1  to estimate the trial length at a later stage, after any ruling on the class certification motion and/or

2  early summary judgment motion.

3  **13.  Names, addresses, and telephone numbers of all trial counsel**

4  Counsel for Plaintiffs

5  Steve W. Berman, WSBA No. 12536S
   Barbara A. Mahoney, WSBA No. 31845
6  HAGENS BERMAN SOBOL SHAPIRO LLP
   1301 Second Avenue, Suite 2000
7  Seattle, WA 98101
   Telephone: (206) 623-7292
8  Facsimile: (206) 623-0594
   E-mail: steve@hbsslaw.com
9  E-mail: barbaram@hbsslaw.com

10
   KELLER POSTMAN, LLC
11
   Zina G. Bash (pro hac vice)
12 111 Congress Avenue, Suite 500
   Austin, TX, 78701
13 Telephone: (512) 690-0990
   E-mail: zina.bash@kellerpostman.com
14
   Warren D. Postman (pro hac vice)
15 Albert Y. Pak (pro hac vice)
   1100 Vermont Avenue, N.W., 12th Floor
16 Washington DC, 20005
   Telephone: (202) 918-1123
17 E-mail: wdp@kellerpostman..com
   E-mail: albert.pak@kellerpostman.com
18
   QUINN EMANUEL URQUHART &
19 SULLIVAN, LLP
   Alicia Cobb, WSBA # 48685
20 1109 First Avenue, Suite 210
   Seattle, WA 98101
21 Telephone: (206) 905-7000
   Email: aliciacobb@quinnemanuel.com
22
   Steig D. Olson (pro hac vice)
23 David D. LeRay (pro hac vice)
   Nic V. Siebert (pro hac vice)
24 51 Madison Avenue, 22nd Floor
   New York, NY 10010
25 Telephone: (212) 849-7000
   Email: steigolson@quinnemanuel.com
26

27

28

JOINT STATUS REPORT AND DISCOVERY PLAN - 11
Case No. 2:20-cv-00424-RAJ



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

A-204

1   Adam B. Wolfson (pro hac vice)
    865 South Figueroa Street, 10th Floor
2   Los Angeles, CA 90017-2543
    Telephone: (213) 443-3000
3   Email: adamwolfson@quinnemanuel.com

4   Derek W. Loeser, WSBA No. 24274
    KELLER ROHRBACK L.L.P.
5   1201 Third Avenue, Suite 3200
    Seattle, WA 98101-3052
6   Telephone: (206) 623-1900
    Facsimile: (206) 623-3384
7   E-mail: Dloeser@kellerrohrback.com

8   Counsel for Amazon

9   Karen L. Dunn (pro hac vice)
    William A. Isaacson (pro hac vice)
10  Amy J. Mauser (pro hac vice)
    Martha L. Goodman (pro hac vice)
11  Kyle Smith (pro hac vice)
12  PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
    2001 K Street, NW
13  Washington, D.C.  20006-1047
    Telephone:  (202) 223-7300
14  Facsimile:   (202) 223-7420
15  E-mail:  kdunn@paulweiss.com
    E-mail:  wisaacson@paulweiss.com
16  E-mail:  amauser@paulweiss.com
    E-mail:  mgoodman@paulweiss.com
17  E-mail:  ksmith@paulweiss.com

18
19  Stephen M. Rummage
    John A. Goldmark
    MaryAnn Almeida
20  DAVIS WRIGHT TREMAINE LLP
    920 Fifth Avenue, Suite 3300
21  Seattle, WA  98104-7136
    Telephone:  (206) 622-3150
22  Facsimile:   (206) 757-7700
23  E-mail:  SteveRummage@dwt.com
    E-mail:  JohnGoldmark@dwt.com
24  E-mail:  MaryAnnAlmeida@dwt.com

25  **14.    Scheduling complications to be considered in setting a trial date**

26      The Parties propose a trial date contingent upon the date of the Court's order on class

27  certification. Because of the contingent nature of this proposal, the Parties are not currently

28



A-205

1   aware of scheduling conflicts in setting a trial date.

2       **15.    Deadline for corporate disclosure statement**

3   All corporate parties have submitted corporate disclosure statements.

4       **16.    Deadline to serve parties, who have not been served**

5   All parties have been served.

6

7   DATED: August 29, 2022            Respectfully submitted,

8                                    HAGENS BERMAN SOBOL SHAPIRO LLP

9                                    By:  __/s/ Steve W. Berman_____
10                                   Steve W. Berman (WSBA No. 12536)
                                     By:  __/s/ Barbara A. Mahoney_____
11                                   Barbara A. Mahoney (WSBA No. 31845)
                                     1301 Second Avenue, Suite 2000
12                                   Seattle, WA 98101
                                     Telephone: (206) 623-7292
13                                   Facsimile: (206) 623-0594
                                     E-mail: steve@hbsslaw.com
14                                   E-mail: barbaram@hbsslaw.com

15                                   KELLER POSTMAN, LLC

16
                                     Zina G. Bash (pro hac vice)
17                                   111 Congress Avenue, Suite 500
                                     Austin, TX, 78701
18                                   Telephone: (512) 690-0990
                                     E-mail: zina.bash@kellerpostman.com
19
                                     Warren D. Postman (pro hac vice)
20                                   Albert Y. Pak (pro hac vice)
21                                   1100 Vermont Avenue, N.W., 12th Floor
                                     Washington DC, 20005
22                                   Telephone: (202) 918-1123
                                     E-mail: wdp@kellerpostman..com
23                                   E-mail: albert.pak@kellerpostman.com

24

25

26

27

28

JOINT STATUS REPORT AND DISCOVERY PLAN - 13
Case No. 2:20-cv-00424-RAJ



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

1

2

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

3

By:    /s/ Alicia Cobb
Alicia Cobb, WSBA # 48685

4

1109 First Avenue, Suite 210
Seattle, WA 98101

5

Telephone: (206) 905-7000
Email: aliciacobb@quinnemanuel.com

6

7

Steig D. Olson (pro hac vice)
David D. LeRay (pro hac vice)

8

Nic V. Siebert (pro hac vice)
51 Madison Avenue, 22nd Floor

9

New York, NY 10010
Telephone: (212) 849-7000

10

Email: steigolson@quinnemanuel.com

11

Adam B. Wolfson (pro hac vice)

12

865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

13

Telephone: (213) 443-3000
Email: adamwolfson@quinnemanuel.com

14

KELLER ROHRBACK L.L.P.

15

16

By:    /s/ Derek W. Loeser
Derek W. Loeser (WSBA No. 24274)

17

1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052

18

Telephone: (206) 623-1900
Facsimile: (206) 623-3384

19

E-mail: Dloeser@kellerrohrback.com

20

*Attorneys for Plaintiffs and the Proposed Class*

21

22

DAVIS WRIGHT TREMAINE LLP

23

By:    /s/ Stephen M. Rummage
Stephen M. Rummage, WSBA #11168

24

John A. Goldmark, WSBA # 40980
MaryAnn Almeida, WSBA #49086

25

920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610

26

Ph: (206) 622-3150; Fax: (206) 757-7700
E-mail:  SteveRummage@dwt.com

27

E-mail:  JohnGoldmark@dwt.com

28

E-mail:  MaryAnnAlmeida@dwt.com

JOINT STATUS REPORT AND DISCOVERY PLAN - 14
Case No. 2:20-cv-00424-RAJ



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

A-207

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

Karen L. Dunn (pro hac vice)
William A. Isaacson (pro hac vice)
Amy J. Mauser (pro hac vice)
Martha L. Goodman (pro hac vice)
Kyle Smith (pro hac vice)
2001 K Street, NW
Washington, D.C.  20006-1047
Telephone:  (202) 223-7300
Facsimile:   (202) 223-7420
E-mail:  kdunn@paulweiss.com
E-mail:  wisaacson@paulweiss.com
E-mail:  amauser@paulweiss.com
E-mail:  mgoodman@paulweiss.com
E-mail:  ksmith@paulweiss.com

*Attorneys for Defendant Amazon.com, Inc.*



A-208

1                                **CERTIFICATE OF SERVICE**

2              I hereby certify that on August 29, 2022, a true and correct copy of the foregoing was

3     filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

4                                              */s/ Steve W. Berman*
                                               Steve W. Berman

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STATUS REPORT AND DISCOVERY PLAN - 16
Case No. 2:20-cv-00424-RAJ



1301 SECOND AVENUE, SUITE 2000, SEATTLE, WA 98101
206.623.7292 206.623.0594 FAX

A-209

# Exhibit B

The Honorable John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRISTOPHER BROWN, *et al.*, on behalf of themselves and all others similarly situated,

                          Plaintiffs,

          v.

AMAZON.COM, INC., a Delaware corporation,

                          Defendant.

Case No. 2:22-cv-00965-JHC

**STIPULATED MOTION AND
[PROPOSED] PROTECTIVE ORDER**

NOTE ON MOTION CALENDAR:
October 12, 2023

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

A-211

Plaintiffs Christopher Brown, Scott Graeber, Laura Loes, Leticia Shaw, and David Atwood and Defendant Amazon.com, Inc. jointly stipulate and agree to the entry of a protective order as described below:

**1.    PURPOSES AND LIMITATIONS**

Discovery in this action is likely to involve production of confidential, proprietary, or private information for which special protection may be warranted. Accordingly, the parties hereby ~~stipulate to and~~ petition the ~~court~~Court to enter the following ~~Stipulated~~ Protective Order. The parties acknowledge that this agreement is consistent with LCR 26(c). It does not confer blanket protection on all disclosures or responses to discovery, the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles, and it does not presumptively entitle parties to file confidential information under seal. The availability of protection pursuant to this Protective Order does not preclude a party from withholding information protected by any applicable privilege. Nothing in this Protective Order shall restrict in any way the right of a Producing Party to disclose or make use of its own documents or Discovery Material. Under LCR 26(c)(2), the parties began with the District's Model Protective Order, and have identified departures from the model in a redlined copy, attached as Exhibit 1.

~~1.    "CONFIDENTIAL" MATERIAL~~

~~2.    "Confidential" material shall include~~ **DEFINITIONS**

2.1    Challenging Party: A Party or Non-Party that challenges the ~~following~~designation of information or items under this Order.

2.2    Counsel (without qualifier): Outside Counsel of Record, In-House Counsel, and their support staff.

2.3    Designating Party: the producing Party or Non-Party designating documents or

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 2

information as Protected Information under this Order.

2.4     Discovery Material: All items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.5     Expert: A person with specialized knowledge or experience in an area pertinent to the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, (2) is not a past or current employee of a Party or of a Party's competitor, and (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

2.6     Industry Expert: An Expert whose specialized knowledge or experience derives from personal experience in the industries and markets pertinent to the litigation and who satisfies the other criteria for the definition of Expert.

2.7     In-House Counsel: Attorneys (and their support staff, including legal secondees and economists) who are employees or contractors of a Party and whose responsibilities include overseeing, working on, or supporting this action. In-House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.8     Non-Party: Any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.9     Outside Counsel of Record: Attorneys who are retained to represent or advise a Party to this action..

2.10    Party: Any Party to this action, including all its officers, directors, employees, consultants, retained Experts, and Outside Counsel of Record (and their support staff).

2.11    Producing Party: A Party or Non-Party that produces Discovery Material in this action.

2.12    Protected Material: Any Discovery Material that is designated as "Confidential"

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 3

or "Highly Confidential—Attorneys' Eyes Only."

2.13    Receiving Party: A Party that receives Discovery Material from a Producing Party.

**3.      PROTECTED MATERIAL**

1.13.1  "CONFIDENTIAL" Material: Documents and tangible things that may be produced or otherwise exchanged: [The parties must include a list of specific documents that 1) the Designating Party reasonably believes contain, describe, or disclose sensitive, non-public, confidential information, such as "company's customer list" or "plaintiff's medical(a) court records;" do not list broad categories of documents, whether in this District or other courts, currently maintained under seal; (b) information subject to a non-disclosure or confidentiality agreement; (c) employee personnel information; (d) a Non-Party's commercially sensitive information, trade secrets, or competitive or strategic initiatives that are not readily ascertainable and for which the Designating Party has taken reasonable steps to maintain confidentiality, and (e) personal identifying information subject to redaction under Local Rule 5.2, or 2) the Designating Party's own commercially sensitive information, such as "sensitive (a) financial or accounting information; (b) commercially sensitive internal communications or information; and (c) business material"].negotiations, transactions, and dealings with Non-Parties.

3.2    "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" Material: Extremely sensitive materials that qualify as "CONFIDENTIAL" and that the Designating Party reasonably believes contain highly sensitive business or personal information, the disclosure of which to another Party or Non-Party would create a risk of competitive or commercial disadvantage to the Designating Party.

3.3    This Order does not envision the production of source code or object code. Should the Parties agree to source code discovery, they will enter a separate stipulated source code supplement to this Order.

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 4

**2.4.    SCOPE**

The protections conferred by this agreement cover not only ~~confidential material~~Protected Material (as defined above), but also (1) any information copied or extracted from ~~confidential material~~Protected Material; (2) all copies, excerpts, summaries, or compilations of ~~confidential material~~Protected Material; and (3) any testimony, conversations, or presentations by ~~parties~~Parties or their ~~counsel~~Counsel, Non-Parties, and/or Experts that might reveal ~~confidential material~~Protected Material.

However, the protections conferred by this agreement do not cover information that is in the public domain or becomes part of the public domain through trial or otherwise.

**3.5.    ACCESS TO AND USE OF ~~CONFIDENTIAL~~PROTECTED MATERIAL**

~~3.1~~5.1  Basic Principles. A ~~receiving party~~Receiving Party may use ~~confidential material~~Protected Material that is disclosed or produced by ~~another party or by~~ a ~~non-party~~Producing Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. ~~Confidential material~~Protected Material may be disclosed only to the categories of persons and under the conditions described in this agreement. ~~Confidential material~~Protected Material must be stored and maintained by a ~~receiving party~~Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this agreement.

~~3.2~~5.2  Disclosure of "CONFIDENTIAL" ~~Information or Items.~~Material. Unless otherwise ordered by the ~~court~~Court or permitted in writing by the ~~designating party~~Producing or Designating Party, a ~~receiving party~~Receiving Party may disclose any ~~confidential material~~Confidential Material only to:

(a)    the ~~receiving party's counsel~~Receiving Party's Outside Counsel of ~~record~~Record in this action, ~~as well as~~including employees of ~~counsel~~Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation;

(b)    the officers, directors, and employees (including ~~in house counsel~~In-House

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 5

A-215

Counsel) of the ~~receiving party~~Receiving Party to whom disclosure is reasonably necessary for

this litigation~~, unless the parties agree that a particular document~~;

        ~~(a)     Experts, professional jury~~ or ~~material produced is for Attorney's Eyes Only~~

~~and is so designated~~;

        ~~(b)~~(c)  ~~experts and~~trial consultants, and their employees and staff, to whom

disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment

and Agreement to Be Bound" (Exhibit A);

        ~~(c)~~(d)  the ~~court~~Court, court personnel, and court reporters and their staff;

        ~~(d)~~(e)  copy ~~or,~~ imaging, document management, and electronic discovery

services retained by ~~counsel~~Counsel to assist in the ~~duplication~~management of ~~confidential~~

~~material~~Confidential Material and who execute the "Agreement to Be Bound by Protective

Order" attached as Exhibit A, provided that counsel for the ~~party~~Party retaining ~~the copy or~~

~~imaging service~~such services instructs the service not to disclose any ~~confidential~~

~~material~~Confidential Material to third parties and to immediately return all originals and copies

of any ~~confidential material~~Confidential Material;

        ~~(e)~~(f)  during their depositions, witnesses in the action to whom disclosure is

reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound"

(Exhibit A), unless otherwise agreed by the ~~designating party~~Designating Party or ordered by the

~~court~~Court. Pages of transcribed deposition testimony or exhibits to depositions that reveal

~~confidential material~~Confidential Material must be separately bound by the court reporter and

may not be disclosed to anyone except as permitted under this agreement; and

        ~~(f)~~(g)  the author or recipient of a document containing the information or a

custodian or other person who otherwise possessed or knew the information.

        5.3  ~~Filing~~Disclosure of "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES

ONLY" Material. Unless otherwise ordered by the Court or permitted in writing by the

Designating Party, a Receiving Party may disclose any Highly Confidential—Attorney's Eyes

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 6

Only Material only to:

      (a)     the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation;

      (b)     Experts, professional jury or trial consultants, and their employees and staff, to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and, with respect to an Industry Expert, have been subject to the procedure in Paragraph 5.4;

      (c)     the Court, court personnel, and court reporters and their staff;

      (d)     the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

      (e)     employees of the Producing Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Agreement to Be Bound by Protective Order" attached as Exhibit A;

      (f)     copy, imaging, document management, and electronic discovery services retained by Counsel to assist in the management of Highly Confidential-Attorney's Eyes Only Material and who execute the "Agreement to Be Bound by Protective Order" attached as Exhibit A, provided that counsel for the Party retaining such services instructs the service not to disclose any Highly Confidential Material to third parties and to immediately return all originals and copies of any Highly Confidential Material; and

      (g)     to assist in Amazon's defense of this litigation, no more than four (4) In-House Counsel who exercise no competitive decision-making, including:

          1.     Amy Posner

          2.     Cristina Fernandez

          3.     Omid Bañuelos

          4.     Caroline Jones.

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 7

In the event that Amazon's designated in-house counsel is no longer eligible to serve as a designee under this Protective Order, due to a change in role or otherwise, Amazon may designate a replacement in-house counsel who meets the criteria set forth herein.

5.4     Procedures for Approving or Objecting to Disclosure to Expert of Materials Designated "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY."

(a)     Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Industry Expert any material that has been designated "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" first must make a written disclosure to the Designating Party that (1) identifies the general categories of "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" information that the Receiving Party seeks permission to disclose to the Industry Expert, (2) sets forth the full name of the Industry Expert and the city and state of his or her primary residence, (3) attaches a copy of the Industry Expert's current resume, (4) identifies the Industry Expert's current employer(s), (5) identifies each person or entity from whom the Industry Expert has received compensation or funding for work in his or her areas of expertise or to whom the Industry Expert has provided professional services, including in connection with a litigation, at any time during the preceding four years, and (6) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Industry Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding four years. If the Industry Expert believes that any of the information sought through part (6) of this disclosure is subject to a confidentiality obligation to a third party, then the Expert should indicate the confidential matters with as much detail as possible.

(b)     A Party that makes a written disclosure and provides the information specified in the preceding respective paragraphs may disclose the subject "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" Material to the identified Industry Expert unless, within seven days of delivering the request, the Party receives a written objection from

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 8

the Designating Party.

(c)     A Party that receives a timely written objection must meet and confer with the Designating Party to try to resolve the matter by agreement within three days of the written objection. If no agreement is reached, the Party seeking to make the disclosure to the Industry Expert may file a motion as provided in Local Civil Rule 7 seeking permission from the Court to do so, or may use the expedited joint motion procedure set forth in Local Civil Rule 37(a)(2). Any such motion must describe the circumstances with specificity, set forth in detail the reasons why the disclosure to the Industry Expert is reasonably necessary, assess the risk of harm that the disclosure would entail, and suggest any additional means that could be used to reduce that risk. In addition, any such motion must be accompanied by a competent declaration describing the Parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer discussions) and setting forth the reasons advanced by the Designating Party for its refusal to approve the disclosure.

In any such proceeding, the Party opposing disclosure to the Industry Expert shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Industry Expert.

(d)     Nothing in this Section modifies the ordinary deadlines for expert disclosures under the Federal Rules and this Court's orders. Testifying experts not receiving HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY materials shall be disclosed by the deadline established by the Court. Testifying Industry Experts receiving HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY materials shall be disclosed consistent with this Section. Consulting Industry Experts receiving HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY materials are not required to be disclosed prior to any applicable deadlines contained within the Federal Rules.

3.35.5  Filing Protected Material. Before filing confidential material Protected Material or

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 9

discussing or referencing such material in court filings, the filing ~~party~~Party shall confer with the ~~designating party~~Designating Party, in accordance with Local Civil Rule 5(g)~~(3)(A), to determine whether the designating party will remove the confidential designation, whether the document can be redacted, or whether a~~). Any motion to seal ~~or stipulation and proposed order is warranted. During the meet and confer process, the designating party must identify the basis for sealing the specific confidential information at issue, and the filing party shall include this basis in its motion to seal, along with any objection to sealing the information at issue. Local Civil Rule 5(g) sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal. A party~~filed by the Receiving Party, where a Designating Party must make the showing required by Local Civil Rule 5(g)(3)(B) in response to the motion, must be noted for consideration no earlier than the fourth Friday after filing. A Party who seeks to maintain the ~~confidentiality of its information~~designation must satisfy the requirements of Local Civil Rule 5(g)(3)(B), even if it is not the ~~party~~Party filing the motion to seal. Failure to satisfy this requirement will result in the motion to seal being denied, in accordance with the strong presumption of public access to the Court's files.

5.6    Disclosure of Protected Material at Hearings or Trial: Any person receiving Protected Material shall not reveal or discuss such information at any pre-trial hearing or hearing open to individuals not otherwise authorized to receive Protected Material except as follows: In the event a person receiving Protected Material intends to use Protected Material in any proceeding open to individuals not entitled to receive Protected Materials, such person shall, at least 14 days in advance, move to seal the proceeding or give the person that produced the Protected Material written notice. In the latter case, the Parties shall thereafter meet and confer to determine whether the Protected Material can be so used. If they cannot reach agreement, the person who produced the Protected Material may file a motion to seal the proceeding. If, however, the party that seeks to use the Protected Material at a hearing for which it had fewer

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 10

than 21 days' advance notice, the parties will meet and confer within a reasonable time before the hearing.

5.7    Use of Protected Material from *Frame-Wilson* and *De Coster*: The Parties agree and stipulate that Protected Material produced by Parties in *Frame-Wilson, et al. v. Amazon.com, Inc.*, 20-cv-00424-RSM (W.D. Wash.), and *De Coster, et al. v. Amazon.com, Inc.*, 21-CV-00693-RSM (W.D. Wash.), may be used by the Parties in this action in accordance with their Designation, and Protected Material produced by the Parties in this matter can be used in the same manner in *Frame-Wilson, et al. v. Amazon.com, Inc.*, 20-cv-00424-RSM (W.D. Wash.), and *De Coster, et al. v. Amazon.com, Inc.*, 21-CV-00693-RSM (W.D. Wash.).

## 4.6.    DESIGNATING PROTECTED MATERIAL

4.16.1  Exercise of Restraint and Care in Designating Material for Protection. Each ~~party~~Party or ~~non-party~~Non-Party that designates information or items for protection under this agreement must take care to limit any such designation to specific material that qualifies under the appropriate standards. The ~~designating party~~Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify, so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this agreement.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (*e.g.*, to unnecessarily encumber or delay the case development process or to impose unnecessary expenses and burdens on other parties) expose the ~~designating party~~Designating Party to sanctions.

If it comes to a ~~designating party's~~Designating Party's attention that information or items that it designated for protection do not qualify for protection, the ~~designating party~~Designating Party must promptly notify all other parties that it is withdrawing the mistaken designation.

4.26.2  Manner and Timing of Designations. Except as ~~otherwise~~ provided in ~~this~~

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 11

agreement (see, *e.g.*, second paragraph of section 56.2(b (a) below),, or as otherwise stipulated or ordered, disclosure or discovery materialDiscovery Material that qualifies for protection under this agreement must be clearly so designated before or when the material is disclosed or produced.

(a)     Information in documentary form: (*e.g.*, paper or electronic documents and deposition exhibits, but excluding transcripts of depositions or other pretrial or trial proceedings), the designating partyDesignating Party must affix the word(s) "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY" to each page that contains confidential material.Protected Material. If only a portion or portions of the material on a page qualifies for protection, the producing partyProducing Party also must clearly identify the protected portion(s) (*e.g.*, by making appropriate markings in the margins). With respect to documents containing Protected Material produced in native format, the Designating Party shall include the appropriate designation in the manner agreed to pursuant to the Parties' ESI protocol.

(b)     Testimony given in deposition or in other pretrial or trial proceedings: the partiesThe Parties and any participating non-partiesNon-Parties must identify on the record, during the deposition, hearing, or other pretrial proceeding, all protected testimony, without prejudice to their right to so designate other testimony after reviewing the transcript. Any partyParty or non-partyNon-Party may, within fifteen30 days after receiving the transcript of the deposition or other pretrial proceeding, designate portions of the transcript, or exhibits thereto, as confidential. Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as Protected Material and the level of protection being asserted by the Designating Party. The Designating Party shall inform the court reporter of these requirements. Until the expiration of the 30-day period for designation, any deposition transcript shall be treated as if it had been designated "HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY" in its entirety, unless otherwise agreed.

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 12

However, upon a showing of good cause by the Party seeking to rely on the transcript, e.g., for use in a scheduled filing with the Court, the Parties agree to shorten the designation period to 15 days or in appropriate circumstances fewer.

If a partyParty or non-partyNon-Party desires to protect confidential information at trial, the issue should be addressed during the pre-trial conference.

(b)(c)   Other tangible items: the producing partyThe Producing Party must affix in a prominent place on the exterior of the container or containers in which the information or item is stored the wordwords "CONFIDENTIAL." or "HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY." If only a portion or portions of the information or item warrant protection, the producing partyProducing Party, to the extent practicable, shall identify the protected portion(s).

4.36.3   Inadvertent Failures to Designate. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the designating party'sDesignating Party's right to secure protection under this agreement for such material. Upon timely correction of a designation, the receiving partyReceiving Party must make reasonable efforts to ensure that the material is treated in accordance with the provisions of this agreement.

**5.7.    CHALLENGING CONFIDENTIALITY DESIGNATIONS**

5.17.1   Timing of Challenges. Any partyParty or non-partyNon-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a designating party'sDesignating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a partyParty does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed. A Party challenging a designation must provide the Bates number or otherwise clearly and unmistakably identify each item (if a Bates number is unavailable) of Protected Material being challenged.

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 13

5.27.2  Meet and Confer. The ~~parties~~Parties must make every attempt to resolve any dispute regarding confidential designations without ~~court~~Court involvement. Any motion regarding confidential designations or for a protective order must include a certification, in the motion or in a declaration or affidavit, that the movant has engaged in a good faith meet and confer conference with other affected ~~parties~~Parties in an effort to resolve the dispute without court action. The certification must list the date, manner, and participants to the conference. A good faith effort to confer requires a face-to-face meeting or a telephone conference.

5.37.3  Judicial Intervention. If the ~~parties~~Parties cannot resolve a challenge without ~~court~~Court intervention, the ~~designating party~~Designating Party may file and serve a motion to retain confidentiality under Local Civil Rule 7 (b) and in compliance with Local Civil Rule 5(g), if applicable~~.~~, or may request that the Parties follow the expedited joint motion procedure set forth in Local Civil Rule 37(a)(2). The burden of persuasion in any such motion shall be on the ~~designating party~~Designating Party. Frivolous challenges, and those made for an improper purpose (*e.g.*, to harass or impose unnecessary expenses and burdens on other parties) may expose the challenging ~~party~~Party to sanctions. All ~~parties~~Parties shall continue to maintain the material in question as confidential until the court rules on the challenge.

## 6.8.  PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

If a ~~party~~Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY," that ~~party~~Party must:

(a)     promptly notify the ~~designating party~~Designating Party in writing and include a copy of the subpoena or court order;

(b)     promptly notify in writing the ~~party~~Party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this agreement. Such notification shall include a copy of this agreement; and

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 14

(c)     cooperate with respect to all reasonable procedures sought to be pursued by the ~~designating party~~Designating Party whose ~~confidential material~~Protected Material may be affected.

If the Designating Party timely seeks a protective order from the court from which the subpoena or order issued, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its Protected Material, and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

Section 8 is superseded in part by Section 5.7, permitting cross-use of Protected Material produced by the Parties in *Frame-Wilson, et al. v. Amazon.com, Inc.*, 20-cv-00424-RSM (W.D. Wash.), and *De Coster, et al. v. Amazon.com, Inc.*, 21-CV-00693-RSM (W.D. Wash.), and vice versa.

**~~7.~~9.     UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL**

If a ~~receiving party~~Receiving Party learns that, by inadvertence or otherwise, it has disclosed ~~confidential material~~Protected Material to any person or in any circumstance not authorized under this agreement, the ~~receiving party~~Receiving Party must immediately (a) ~~~~notify in writing the ~~designating party~~Designating Party of the unauthorized ~~disclosures~~access or disclosure, (b) ~~use~~ investigate and report to Designating Party the scope of and circumstances of the unauthorized access or disclosure, (c) take immediate and reasonable steps to rectify the unauthorized access or disclosure, including using its best efforts to retrieve all unauthorized copies of the ~~protected material, (c)~~ Protected Material and instituting additional security to prevent any further access or disclosure, (d) comply with all obligations under applicable laws

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 15

relating to unauthorized access or disclosure, including security breach notification laws and other applicable laws, (e) inform the person or persons to whom unauthorized disclosures were made of all the terms of this ~~agreement~~Order, and (~~d~~) f) request that such person or persons execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

**8.10.   INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED  MATERIAL**

When a ~~producing party~~Producing Party gives notice to ~~receiving parties~~Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the ~~receiving parties~~Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order or agreement that provides for production without prior privilege review. This Order invokes the protections afforded by Fed. R. Evid. 502(b). As provided under Fed. R. Evid. 502(b) and 502(d) and subject to the limitations in Fed. R. Evid. ~~The parties agree to the entry of a non-waiver order under Fed.~~ 502(a), the disclosure of privileged material in connection with this litigation does not operate as a waiver in this action or any other action by the Producing Party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law~~R. Evid. 502(d) as set forth herein~~.

**9.11.   NON -TERMINATION AND RETURN OF DOCUMENTS**

~~Within~~Unless otherwise ordered or agreed in writing, within 60 days after the termination of this action, including all appeals, each ~~receiving party~~Receiving Party must ~~return~~destroy all ~~confidential material to the producing party~~Protected Material, including all copies, extracts, and summaries thereof. ~~Alternatively,~~

The Receiving Party must submit a written certification to the Producing Party (and, if not the ~~parties may agree upon appropriate methods~~same person or entity, to the Designating Party) by the 60-day deadline that affirms that the Receiving Party has used reasonable efforts to

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 16

destroy copies, abstracts, compilations, summaries, or any other format reproducing or capturing any of destructionthe Protected Material.

Notwithstanding this provision, counselCounsel are entitled to retain one archival copy of all documents filed with the courtCourt, trial, deposition, and hearing transcripts, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain confidential materialProtected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order.

TheEven after final disposition of this litigation, the confidentiality obligations imposed by this agreement shall remain in effect until a designating partyDesignating Party agrees otherwise in writing or a court orders otherwise.

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 17

**12.    MODIFICATION IN CONJUNCTION WITH *FRAME-WILSON* AND *DE COSTER* ACTIONS**

The Parties seek to maintain the same operative terms as the Protective Orders in *Frame-Wilson, et al. v. Amazon.com, Inc.*, 20-cv-00424-RSM (W.D. Wash.), and *De Coster, et al. v. Amazon.com, Inc.*, 21-CV-00693-RSM (W.D. Wash.). Should the Protective Orders in those cases be modified after entry of this Protective Order, the Parties will jointly file a stipulated motion to align the Protective Order in this case.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

DATED: _____          _____
                                                                        Attorneys for Plaintiff

DATED: _____          _____
                                                                        Attorneys for Defendant

PURSUANT TO STIPULATIONDATED: October 12, 2023                 Respectfully submitted,

                                        HAGENS BERMAN SOBOL SHAPIRO LLP

                                        By    /s/ *Steve W. Berman*
                                                  Steve W. Berman (WSBA No. 12536)

                                        By    /s/ *Barbara A. Mahoney*
                                                  Barbara A. Mahoney (WSBA No. 31845)
                                        1301 Second Avenue, Suite 2000
                                        Seattle, WA 98101
                                        Telephone: (206) 623-7292
                                        Facsimile:  (206) 623-0594
                                        Email: steve@hbsslaw.com
                                        Email: barbaram@hbsslaw.com

                                        Anne F. Johnson (*pro hac vice forthcoming*)
                                        68 3rd Street, Suite 249
                                        Brooklyn, NY 11231

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 18

1

Telephone: (718) 916-3520

2

E-mail: annej@hbsslaw.com

3

4

KELLER POSTMAN LLC

5

Zina G. Bash (*pro hac vice*)
111 Congress Avenue, Suite 500

6

Austin, TX 78701
Telephone: (512) 690-0990

7

Email: zina.bash@kellerpostman.com

8

Jessica B. Beringer (*pro hac vice*)

9

150 N. Riverside, Suite 4100
Chicago, IL 60606

10

Telephone: (312)-741-5220
Email: Jessica.beringer@kellerpostman.com

11

12

*Interim Lead Counsel for Plaintiffs*

13

14

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

15

By:    /s/ *Alicia Cobb*

16

Alicia Cobb, WSBA # 48685
1109 First Avenue, Suite 210

17

Seattle, WA 98101
Telephone: (206) 905-7000

18

Email: aliciacobb@quinnemanuel.com

19

Steig D. Olson (*pro hac vice*)

20

David D. LeRay (*pro hac vice*)
Nic V. Siebert (*pro hac vice*)

21

Maxwell P. Deabler-Meadows (*pro hac vice*)
51 Madison Avenue, 22nd Floor

22

New York, NY 10010
Telephone: (212) 849-7000

23

Email: steigolson@quinnemanuel.com
Email: davidleray@quinnemanuel.com

24

Email: nicolassiebert@quinnemanuel.com

25

Email: maxmeadows@quinnemanuel.com

26

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Adam B. Wolfson (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Email: adamwolfson@quinnemanuel.com

*Attorneys for Plaintiffs and the Proposed Class*

DAVIS WRIGHT TREMAINE LLP

By:    /s/ *John A. Goldmark*
         John A. Goldmark, WSBA # 40980
MaryAnn Almeida, WSBA #49086
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: (206) 622-3150
Facsimile:  (206) 757-7700
Email:  JohnGoldmark@dwt.com
Email:  MaryAnnAlmeida@dwt.com

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

Karen L. Dunn (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
William B. Michael (*pro hac vice*)
Amy J. Mauser (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
Kyle Smith (*pro hac vice*)
2001 K Street, NW
Washington, D.C.  20006-1047
Telephone:  (202) 223-7300
Facsimile:   (202) 223-7420
Email:  kdunn@paulweiss.com
Email:  wisaacson@paulweiss.com
Email:  wmichael@paulweiss.com
Email:  amauser@paulweiss.com
Email:  mgoodman@paulweiss.com
Email:  ksmith@paulweiss.com

*Attorneys for Defendant Amazon.com, Inc.*

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 20

1

## ORDER

2    Based on the foregoing, IT IS SO ORDERED.

3    IT IS FURTHER ORDERED that pursuant to Fed. R. Evid. 502(d), the production of any

4    documents, electronically stored information (ESI) or information, whether inadvertent or

5    otherwise, in this proceeding shall not, for the purposes of this proceeding or any other federal or

6    state proceeding, constitute a waiver by the producing party of any privilege applicable to those

7    documents, including the attorney-client privilege, attorney work-product protection, or any

8    other privilege or protection recognized by law. This Order shall be interpreted to provide the

9    maximum protection allowed by Fed. R. Evid. 502(d).  The provisions of Fed. R. Evid. 502(b)

10   do not apply.  Nothing contained herein is intended to or shall serve to limit a party's right to

11   conduct a review of documents, ESI or information (including metadata) for relevance,

12   responsiveness and/or segregation of privileged and/or protected information before production.

13   Information produced in discovery that is protected as privileged or work product shall be

14   immediately returned to the producing party.

15

16   DATED:_____

17   _____

18                                        _____

19                                        [Name of Judge]
                                         United States District Court Judge

20

21

22

23

24

25

26

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Honorable John H. Chun
UNITED STATES DISTRICT COURT JUDGE

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER   1

**EXHIBIT A**

**ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

~~I,~~ _____ ~~I,~~

_____ [print or type full name], of

_____ _____ [print

or type full address], declare under penalty of perjury that I have read in its entirety and

understand the ~~Stipulated~~ Protective Order that was issued by the United States District Court for

the Western District of Washington on [date] in the case of _____ **[insert formal**

**name of the case and the number and initials assigned to it by the court].** _Brown, et al._ v.

_Amazon.com, Inc._, Case No. 2:22-cv-00965-JHC. I agree to comply with and to be bound by all

the terms of this ~~Stipulated~~ Protective Order and I understand and acknowledge that failure to so

comply could expose me to sanctions and punishment in the nature of contempt. I solemnly

promise that I will not disclose in any manner any information or item that is subject to this

~~Stipulated~~ Protective Order to any person or entity except in strict compliance with the

provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the

Western District of Washington for the purpose of enforcing the terms of this ~~Stipulated~~

Protective Order, even if such enforcement proceedings occur after termination of this action.


Date:_____

City and State where sworn and signed:_____

Printed name:_____

Signature:     _____

STIPULATED PROTECTIVE ORDER - 2
CASE NO. 2:22-cv-00965-JHC

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

A-233

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed electronically by

CM/ECF, which caused notice to be sent to all counsel of record.

/s/ Steve W. Berman
Steve W. Berman

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

A-234

1

2                                                          The Honorable Ricardo S. Martinez

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
9                                    AT SEATTLE

10   ELIZABETH DE COSTER *et al.*, on behalf of
     themselves and all others similarly situated,
11
                                                    Case No. 2:21-cv-00693-RSM
12                              Plaintiffs,
                                                    **JOINT STATUS REPORT**
13          v.                                      **AND DISCOVERY PLAN**

14   AMAZON.COM, INC., a Delaware
     corporation,
15
16                              Defendant.

17

18

19

20

21

22

23

24

25

26

27   JOINT STATUS REPORT AND DISCOVERY PLAN
     CASE NO. 2:21-CV-00693-RSM
28

1    Counsel for Plaintiffs and Defendant Amazon.com, Inc. ("Amazon") (collectively
2    "Parties") held a conference as required by LCR 26(f) on March 17, 2023. This Joint Status
3    Report and Discovery Plan is the outcome of that conference and the Parties' subsequent
4    discussions.

5    **1.      Statement of the nature and complexity of the case**

6    **a.      Plaintiffs' statement:**

7    Plaintiffs are consumers and Amazon's retail customers who shop on Amazon's online
8    marketplace ("Amazon Marketplace"). Amazon is the largest online retailer in the United States
9    and operates the largest online retail marketplace, accounting for approximately **70%** of all U.S.
10   online marketplace sales. Amazon operates its marketplace as a platform—an electronic site
11   where third-party merchants list their retail goods alongside, and in competition with, Amazon's
12   own retail listings. Amazon brandishes its colossal market power to keep at supra-competitive
13   levels the fees it imposes on third-party merchants and consumers that utilize its marketplace
14   platform. As a result, Amazon keeps for itself approximately 27 cents of every dollar consumers
15   spend on Amazon's marketplace.

16   In a competitive world, rival marketplace platforms (like eBay and Walmart) would
17   compete by setting lower fees, which would attract third-party merchants and allow them to offer
18   their goods at lower retail prices. Amazon has blocked that pro-consumer price competition
19   through "Most Favored Nation" ("MFN") agreements with its third-party merchants. First
20   through section S-4 ("Parity with Your Sales Channel") in its Standard Business Agreement with
21   its third-party merchants, and now through the "fair pricing" provision of its Seller Code of
22   Conduct, to which all third-party merchants on Amazon Marketplace must also agree to adhere,
23   Amazon prevents its third-party merchants from offering their retail goods at lower prices
24   anywhere else online. By restraining price competition in this way, Amazon can continue to
25   impose supra-competitive fees on merchants and consumers that use its own marketplace. At the
26   same time, Amazon's supra-competitive fees force the prices for third-party merchants' goods
27   higher, which means Amazon faces less price competition for its own goods. As a direct result,
28   Amazon's customers—*i.e.*, Plaintiffs and the proposed Class—pay inflated fees and prices when

JOINT STATUS REPORT AND DISCOVERY PLAN - 1
CASE NO. 2:21-CV-00693-RSM

1    buying goods on Amazon.

2          This case presents complex legal and factual issues, which require substantial discovery.

3    Plaintiffs assert claims on behalf of themselves and similarly situated class members for

4    unreasonable restraints of trade and monopoly abuse in violation of Sections 1 and 2 of the

5    Sherman Act. Plaintiffs ask that the Court certify a national class of direct purchaser consumers

6    who overpaid as a result of Amazon's conduct.

7           **b.**      **Defendant's statement:**

8          Having a reputation for low prices—and in fact offering low prices—are fundamental

9    business objectives for Amazon. Within the intensely competitive retail environment, customers

10    shop around until they find the best deal. Even a single bad experience in Amazon's store—such

11    as paying an uncompetitive price for a product—can damage customer trust, which is essential to

12    success in retail and can easily be lost. Plaintiffs attempt to make an antitrust case out of

13    Amazon's policies encouraging low prices in its store and deterring price gouging. This

14    proposition—that Amazon should not be allowed to encourage low prices and prohibit price

15    gouging in its store—defies common sense and the fundamental dynamics of retail competition.

16    It also defies the letter and spirit of the antitrust laws, which protect the very type of competition

17    in which Plaintiffs allege Amazon is engaging. Amazon will establish, based on the factual

18    record and expert analysis, that class certification requirements have not been established and

19    that Plaintiffs' claims fail for multiple reasons, including but not limited to the following:

20          (1) Plaintiffs' claimed injury is far too attenuated to satisfy the requirements for antitrust

21    standing set forth in *Associated General Contractors* and violates the rule that antitrust injury

22    must occur at the first step in the causal chain of events of a defendant's alleged anticompetitive

23    conduct;

24          (2) Amazon has legitimate, procompetitive business justifications for the pricing policies

25    that Plaintiffs challenge;

26          (3) The relevant product markets alleged by Plaintiffs defy how customers shop. The

27    alleged markets are too narrow because they disregard the fact that the vast majority of retail

28    sales take place in brick-and-mortar stores, and at the same time they are overbroad because the

JOINT STATUS REPORT AND DISCOVERY PLAN - 2
CASE NO. 2:21-CV-00693-RSM

1    hundreds of million products in Plaintiffs' alleged Online Retail Marketplace and Online Retail

2    Sales markets are not reasonably interchangeable and the products do not all face the same

3    competitive conditions;

4         (4) Amazon lacks market power in a properly defined market;

5         (5) Plaintiffs cannot establish anticompetitive effects, which requires Plaintiffs to show

6    that each of Amazon's alleged agreements with third-party sellers causes anticompetitive harm.

7    No agreement between Amazon and a third-party seller had a cognizable impact on competition;

8         (6) Plaintiffs mischaracterize Amazon's Marketplace Fair Pricing Policy as a most

9    favored nation (MFN) provision. The provision prohibits only prices "significantly higher" than

10   recent prices on or off Amazon, protecting consumers against price gouging. Even if the former

11   parity provision constitutes an MFN, the provision has as its purpose providing consumers lower

12   prices, and no case has held that an MFN provision that seeks lower prices for consumers is an

13   antitrust violation;

14        (7) Plaintiffs cannot establish a conspiracy to monopolize because they will not be able to

15   show that each of Amazon's two million third-party sellers had the specific intent of maintaining

16   or enhancing an Amazon monopoly; and

17        (8) Plaintiffs cannot establish on a class-wide basis that, as a result of the former parity

18   provision and the Marketplace Fair Pricing Policy, the prices they paid for online purchases of

19   products in Amazon's store (whether offered by third-party sellers or Amazon itself) were higher

20   than they otherwise would have been.

21        **2.    Proposed deadline for joining additional parties**

22   The Parties propose that joinder may occur only by leave of Court.

23        **3.    Consent to a Magistrate**

24   No.

25        **4.    Discovery plan**

26   The Parties propose the following schedule of discovery and related deadlines, keyed

27   from a ruling on the Court's order on class certification.

28        Amazon proposes the Parties and the Court revisit the case schedule and trial date after a

JOINT STATUS REPORT AND DISCOVERY PLAN - 3
CASE NO. 2:21-CV-00693-RSM

ruling on class certification.

| Event | Proposed Deadline or Date |
|---|---|
| Initial Disclosures | April 14, 2023 (already exchanged) |
| Class certification motion | October 30, 2023 (as set per Dkt. 61) |
| Opposition to class certification motion | January 12, 2024 (as set per Dkt. 61) |
| Reply in further support of class certification motion | March 12, 2024 (as set per Dkt. 61) |
| Hearing on Motion to Certify Class | To be set by the Court after briefing completed (per Dkt. 61) |
| Completion of non-expert discovery | Within 4 months after the Court's order on class certification |
| Disclosure of merits expert reports (except those that are used to support or oppose a motion for class certification) | Within 5 months after the Court's order on class certification |
| Disclosure of merits rebuttal expert reports (except those that are used to support or oppose a motion for class certification) | Within 7 months after the Court's order on class certification, i.e., within 60 days of merits expert reports |
| Disclosure of expert responses to rebuttal reports (except those that are used to support or oppose a motion for class certification) | Within 9 months after the Court's order on class certification |
| Completion of expert discovery | Within 10 months after the Court's order on class certification |
| Dispositive and *Daubert* motion(s) | Within 12 months after the Court's order on class certification |
| Hearing on Dispositive and Daubert motion(s) | To be set by the Court after briefing on motions completed |
| Trial | **Plaintiffs:** Date to be determined, but no sooner than 14 months from the Court's order on class certification |
| | **Amazon:** Date to be determined, but no sooner than 14 months from the Court's order on class certification or summary judgment, whichever is later |

    a.    **The exchange of initial disclosures**

As described in the preceding chart in this section, the Parties exchanged their initial

JOINT STATUS REPORT AND DISCOVERY PLAN - 4
CASE NO. 2:21-CV-00693-RSM

1  disclosures on April 14, 2023.

2                    **b.    Subjects, timing, and potential phasing of discovery**

3        1)    **Plaintiffs**: Plaintiffs anticipate extensive discovery, including documents and data:

4        •  concerning the relevant markets;

5        •  concerning the effect of Prime and Fulfilled by Amazon on Amazon's control
6           over the two-sided market;

7        •  identifying Amazon's third-party sellers;

8        •  identifying Class Products, including products sold by Amazon and Amazon's
9           third-party sellers;

10       •  concerning historical and current price information and transactional data for
11          Class Products;

12       •  concerning third-party sellers' obligations under the Price Parity Provision;

13       •  concerning Amazon's withdrawal of the Price Parity Provision in any
14          geographic market;

15       •  concerning third-party sellers' obligations under the Fair Pricing Provision;

16       •  concerning the enactment and enforcement of Amazon's Price Parity
17          Provision and Fair Pricing Provision;

18       •  concerning Amazon departments and employees/officers primarily charged
19          with enacting and enforcing these provisions and with tracking and comparing
20          prices for Class Products; and

21       •  concerning productions made to the House Judiciary Committee, the DOJ, the
22          FTC, and state attorneys general (including productions made in the parallel
23          action by the California Attorney General) as they relate to any of the above
24          categories of documents.

25              Additionally, if the class is certified, Plaintiffs will seek class member names and contact
26       information from Amazon for purposes of class notification.

27       2)    **Defendant**:  Amazon likewise anticipates extensive discovery, including seeking
28       documents and data related to some of the topics Plaintiffs outline above, from Plaintiffs and

JOINT STATUS REPORT AND DISCOVERY PLAN - 5
CASE NO. 2:21-CV-00693-RSM

from nonparties. Amazon reserves all rights to object to the scope of discovery sought by Plaintiffs. In addition, Amazon anticipates seeking discovery on the following additional topics from Plaintiffs and from nonparties:

- Plaintiffs' (or Plaintiffs' representatives) communications with any third-party seller in Amazon's store;
- Plaintiffs' (or Plaintiffs' representatives) communications with any government regulator or congressional committee concerning the former Parity Provision or the Marketplace Fair Pricing Policy;
- Documents relied on in the Complaint or Consolidated Amended Complaint;
- Plaintiffs' (or Plaintiffs' representatives') communications with any author or contributor to any public document relied on in the Complaint or Consolidated Amended Complaint;
- Third-party sellers' costs to sell in other online marketplaces or other distribution channels;
- Plaintiffs' purchases of products during the putative class period—regardless of where Plaintiffs made each such purchase—i.e., from any retailer, third-party seller, brand, or marketplace, whether online or in a physical store;
- Plaintiffs' shopping habits and practices;
- Competitive conditions for sales of retail products and for which Plaintiffs seek damages, including potential substitutions and the policies of other retailers;
- The prices and terms at which other retailers, third-party sellers, or marketplaces offered products which Plaintiffs purchased at the time of Plaintiffs' purchases; and
- Plaintiffs' document and data preservation practices.

The Parties agree that discovery should not be bifurcated or phased.

      **c.**      **Electronically stored information**

The Court entered the Parties' stipulated ESI Protocol, which addresses preservation,

1    search, and production requirements.

2              **d.      Privilege issues**

3          The Court entered the Parties' stipulated Protective Order, containing procedures for

4    handling the inadvertent production of privileged information and other privilege waiver issues

5    pursuant to Rule 502(d) or (e) of the Federal Rules of Evidence.

6              **e.      Proposed limitations on discovery**

7          The Parties agree to follow the Federal Rules of Civil Procedure for the exchange of

8    written discovery and conducting depositions. Each party reserves the right to seek leave of court

9    at the appropriate time to change the number of depositions in Fed. R. Civ. P. 30(a)(2)(A)(i), or

10   the number of interrogatories in Fed. R. Civ. P. 33 (a)(1).

11             **f.      The need for any discovery related orders**

12         To minimize duplication between this action and the related *Frame-Wilson* action the

13   Parties have met and conferred regarding coordination of depositions of Amazon witness across

14   these related cases to avoid duplicative discovery. The Parties' agreement is reflected in a

15   stipulation and proposed order filed in this case and in *Frame-Wilson.*

16         The Parties have further agreed to treat discovery already served in *Frame-Wilson* as if

17   also served in the *De Coster* action, and that any party's responses and productions made in

18   response to any party's discovery requests served in *Frame-Wilson* may be used in this action

19   (and vice versa). However, to the extent that any Party's prior *Frame-Wilson* requests for

20   production or any Party's prior *Frame-Wilson* discovery responses and objections need revisions

21   specific to this action, the Parties agree to promptly identify those revisions within 20 days of

22   filing this report and to meet and confer as necessary to resolve any disputes. Only if a Party's

23   response to a given request for production if served in *De Coster* would be different than the

24   current response in *Frame-Wilson*, the Party will serve that new response in a formal "responses

25   and objections" for contemporaneous exchange. In other words, a Party would serve a new

26   Responses and Objections only if the Party's position (as expressed in meet and confers and

27   subsequent correspondence in *Frame-Wilson*) would require modification specific to *De Coster.*

28   If any Party's position remains the same between *De Coster* and *Frame-Wilson*, then no

JOINT STATUS REPORT AND DISCOVERY PLAN - 7
CASE NO. 2:21-CV-00693-RSM

1   additional written response and objection is necessary.

2       The Parties further agree that, rather than wholly duplicating the discovery responses and

3   objections and meet and confer record that exists in *Frame-Wilson*, the Parties may also rely on

4   the prior responses and objections raised by Amazon or raised by the plaintiffs in the *Frame-*

5   *Wilson* action and the efforts in that action to narrow the issues in dispute, unless specificially

6   modified for this this action.

7       Plaintiffs filed motions for a protective order and motion to compel on April 6, 2023;

8   Amazon opposed the motion for protective order on April 12, 2023, and the  motion to compel

9   on April 17, 2023.

10      **5.      Items set forth in Local Civil Rule 26(f)(1)**

11           **a.      Prompt case resolution**

12   The Parties will litigate this case as efficiently as possible.

13           **b.      Alternative dispute resolution ("ADR")**

14   The Parties will review ADR options in this matter as the case develops.

15           **c.      Related cases**

16   The Parties identify (or have previously identified) the following related cases:

17       • *Frame-Wilson, et al. v. Amazon.com, Inc*., 20-cv-00424 (W.D. Wash.), Judge

18           Ricardo S. Martinez

19       • *Hogan v. Amazon.com, Inc*., 21-cv-00996 (W.D. Wash.), Judge Ricardo S.

20           Martinez

21       • *Seberson v. Amazon.com, Inc*., 21-cv-01009 (W.D. Wash.), Judge Ricardo S.

22           Martinez (consolidated with *Hogan*)

23       • *West, et al. v. Amazon.com, Inc*., 2:21-cv-694 (W.D. Wash.), Judge Ricardo S.

24           Martinez (consolidated with *De Coster*)

25       • *Mbadiwe, et al. v. Amazon.com, Inc*., 22-cv-09542 (S.D.N.Y.), Judge Vernon

26           S. Broderick

27       • *People of the State of California v. Amazon.com, Inc*., CGC-22-601826 (Cal.

28           Super. Ct. San Francisco), Judge Ethan P. Schulman

JOINT STATUS REPORT AND DISCOVERY PLAN - 8
CASE NO. 2:21-CV-00693-RSM

1    As noted in Section 4.f above, the scope of the Parties' agreement to coordinate

2    depositions of Amazon witnesses in this matter and the *Mbadiwe* and *People of California*

3    actions is defined by their separately-filed stipulated motion.

4    Amazon intends to meet and confer with counsel in other cases in which Amazon is a

5    defendant to coordinate discovery, as appropriate:  *Hogan v. Amazon.com, Inc.*, 2:21-cv-00996

6    (W.D. Wash.), Judge Ricardo S. Martinez; and *Seberson v. Amazon.com, Inc*., 2:21-cv-01009

7    (W.D. Wash.), Judge Ricardo S. Martinez (consolidated with *Hogan*).

8    **d.    Phasing motions**

9    Plaintiffs anticipate that their proposed schedule described in No. 4 above represents an

10   efficient phasing of motions. Depending on the information obtained during discovery and the

11   potential level of complexity presented by their calculation of damages, Plaintiffs may choose to

12   satisfy their burden on class certification by presenting evidence of class-wide impact and a

13   common methodology of calculating damages, while deferring an actual calculation of aggregate

14   class damages until the deadline for expert merit reports.

15   Amazon is considering an early motion for partial summary judgment to narrow the

16   issues in the case.

17   **e.    Preservation**

18   1)    Plaintiffs:

19   Plaintiffs request preservation of all data and documents responsive to their anticipated

20   discovery, as described in No. 4(b)(1) above, and as described in the discovery requests

21   previously served on Amazon. Consistent with the claims asserted in this case, Plaintiffs have

22   preserved relevant documents, including their online purchases. Amazon's additional requests

23   (previously served on the plaintiffs in *Frame-Wilson*, and understood by Plaintiffs to now also be

24   considered served on Plaintiffs in *De Coster*), that Plaintiffs also preserve documents concerning

25   (i) "their habits and practices" of purchasing; (ii) all manner of purchases of any product from

26   any source, including all paper copies of documents relating to all purchases from brick-and-

27   mortar stores on a going-forward basis throughout the pendency of this litigation, and including

28   prescription purchases; and (iii) the "prices and terms at which" such products are sold by any

JOINT STATUS REPORT AND DISCOVERY PLAN - 9
CASE NO. 2:21-CV-00693-RSM

1  seller anywhere, are unduly burdensome requests that fail to address the disparity in resources

2  and burden placed on individual consumers serving as class representatives and are not

3  proportionate to the needs of the case given the minimal relevance of the information sought to

4  be preserved. Plaintiffs have moved for a protective order regarding these requests. ECF No. 71.

5  That motion is fully briefed. ECF Nos. 71, 75, 78.

6         2)     Defendant:

7         Amazon likewise requests preservation of all data and documents responsive to its

8  anticipated discovery, as described in No. 4(b)(2) above.  Amazon has also preserved relevant

9  documents consistent with the claims and defenses in this case.

10         With respect to Plaintiffs' preservation obligations, Amazon's position is that Plaintiffs

11  were obligated to preserve hard-copy documents related to their physical store retail purchases

12  once they reasonably anticipated bringing litigation, and at a minimum when Amazon filed a

13  motion to dismiss in September 2021.  Further, Plaintiffs must preserve relevant documents—

14  documents which are being sought in discovery and which are directly relevant to Amazon's

15  defenses, including relevant market defenses, in this case, and are relevant as to whether

16  Plaintiffs are suitable class representatives.  Amazon has also made proposals to Plaintiffs with

17  respect to minimizing any purported burden in preserving these materials, as set forth in

18  Amazon's opposition to Plaintiffs' motion for a protective order filed on April 12, 2023 in this

19  case as well as in the related case, *Frame-Wilson*.

20         **f.**     **ESI Protocols**

21         The Court entered the Parties' stipulated ESI Protocol, which addresses preservation,

22  search, and production requirements.

23         **6.**     **Discovery deadline**

24         The Parties agree that discovery shall close 4 months after the Court's order on class

25  certification, as described in No. 4 above.

26         **7.**     **Bifurcation**

27         The Parties are not proposing any bifurcation between class certification and merits or

28  between liability and damages at this time.

**8.      Individualized Trial Program**

The Parties agree that an individualized trial program is not appropriate for this action.

**9.      Other suggestions for shortening or simplifying the case**

The Parties agree to meet and confer as appropriate to propose any issues that can be narrowed by stipulation or by motion, as well as any potential means to expedite the presentation of evidence at trial.

**10.     The date the case will be ready for trial**

Plaintiffs anticipate that their case will be ready for trial 14 months after the Court's order on class certification, as described in No. 4 above.

Amazon believes trial readiness cannot be assessed until after the Court rules on class certification and/or any summary judgment motion, and that is why trial should be no sooner than 14 months from a ruling on class certification.  Amazon proposes the Parties and the Court revisit the case schedule and trial date after a ruling on class certification or summary judgment, whichever is later.

**11.     Trial Type**

Plaintiffs have requested a trial by jury.

**12.     Trial Length**

Plaintiffs currently anticipate it will require 10 days for the presentation of their case.

At this stage of the case, when the exact scope of the issues to be tried is not clear, it is premature to project the length of the trial. Amazon proposes that the Court request the Parties to estimate the trial length at a later stage, after any ruling on the class certification motion and/or summary judgment motion.

JOINT STATUS REPORT AND DISCOVERY PLAN - 11
CASE NO. 2:21-CV-00693-RSM

A-246

**13.    Names, addresses, and telephone numbers of all trial counsel**

Counsel for Plaintiffs

HAGENS BERMAN SOBOL SHAPIRO LLP

Steve W. Berman, WSBA No. 12536
Barbara A. Mahoney, WSBA No. 31845
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
E-mail: steve@hbsslaw.com
E-mail: barbaram@hbsslaw.com

Anne F. Johnson (*pro hac vice*)
68 3rd Street, Suite 249
Brooklyn, NY 11231
Telephone: (718) 916-3520
E-mail: annej@hbsslaw.com

KELLER POSTMAN, LLC

Zina G. Bash (*pro hac vice*)
111 Congress Avenue, Suite 500
Austin, TX 78701
Telephone: (512) 690-0990
E-mail: zina.bash@kellerpostman.com

Warren D. Postman (*pro hac vice*)
Albert Y. Pak (*pro hac vice*)
1100 Vermont Avenue, N.W., 12th Floor
Washington DC 20005
Telephone: (202) 918-1123
E-mail: wdp@kellerpostman.com
E-mail: albert.pak@kellerpostman.com

Jessica B. Beringer (*pro hac vice*)
Jason A. Zweig
150 N. Riverside, Suite 4100
Chicago, IL 60606
Telephone: (312) 741-5220
E-mail: jessica.beringer@kellerpostman.com
E-mail: jaz@kellerpostman.com

JOINT STATUS REPORT AND DISCOVERY PLAN - 12
CASE NO. 2:21-CV-00693-RSM

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

Alicia Cobb, WSBA # 48685
1109 First Avenue, Suite 210
Seattle, WA 98101
Telephone: (206) 905-7000
Email: aliciacobb@quinnemanuel.com

Steig D. Olson (*pro hac vice*)
David D. LeRay (*pro hac vice*)
Nic V. Siebert (*pro hac vice*)
Maxwell P. Deabler-Meadows (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Email: steigolson@quinnemanuel.com
Email: davidleray@quinnemanuel.com
Email: nicolassiebert@quinnemanuel.com
Email: maxmeadows@quinnemanuel.com

Adam B. Wolfson (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Email: adamwolfson@quinnemanuel.com

KELLER ROHRBACK L.L.P.

Derek W. Loeser, WSBA No. 24274
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Facsimile:  (206) 623-3384
E-mail:  Dloeser@kellerrohrback.com

A-248

1     <u>Counsel for Amazon</u>

2     PAUL, WEISS, RIFKIND, WHARTON
3     & GARRISON LLP

4     Karen L. Dunn (*pro hac vice*)
    William A. Isaacson (*pro hac vice*)
5     Amy J. Mauser (*pro hac vice*)
    Martha L. Goodman (*pro hac vice*)
6     Kyle Smith (*pro hac vice*)
7     2001 K Street, NW
    Washington, D.C.  20006-1047
8     Telephone:  (202) 223-7300
    Facsimile:   (202) 223-7420
9     E-mail:  kdunn@paulweiss.com
    E-mail:  wisaacson@paulweiss.com
10     E-mail:  amauser@paulweiss.com
    E-mail:  mgoodman@paulweiss.com
11     E-mail:  ksmith@paulweiss.com

12     DAVIS WRIGHT TREMAINE LLP
13

14     John A. Goldmark
    MaryAnn Almeida
15     920 Fifth Avenue, Suite 3300
    Seattle, WA  98104-7136
16     Telephone:  (206) 622-3150
    Facsimile:   (206) 757-7700
17     E-mail:  JohnGoldmark@dwt.com
    E-mail:  MaryAnnAlmeida@dwt.com
18

19     **14.**     **Scheduling complications to be considered in setting a trial date**
20
    The Parties are not currently aware of scheduling conflicts in setting a trial date.
21
    **15.**     **Deadline for corporate disclosure statement**
22
    All corporate parties have submitted corporate disclosure statements.
23
    **16.**     **Deadline to serve parties, who have not been served**
24
    All parties have been served.
25

26

27

28

    JOINT STATUS REPORT AND DISCOVERY PLAN - 14
    CASE NO. 2:21-CV-00693-RSM

DATED: May 18, 2023                    Respectfully submitted,

                                       HAGENS BERMAN SOBOL SHAPIRO LLP

                                       By:   /s/ Steve W. Berman
                                       Steve W. Berman (WSBA No. 12536)
                                       By:   /s/ Barbara A. Mahoney
                                       Barbara A. Mahoney (WSBA No. 31845)
                                       1301 Second Avenue, Suite 2000
                                       Seattle, WA 98101
                                       Telephone: (206) 623-7292
                                       Facsimile:  (206) 623-0594
                                       E-mail: steve@hbsslaw.com
                                       E-mail: barbaram@hbsslaw.com

                                       Anne F. Johnson (*pro hac vice*)
                                       68 3rd Street, Suite 249
                                       Brooklyn, NY 11231
                                       Telephone: (718) 916-3520
                                       E-mail: annej@hbsslaw.com

                                       KELLER POSTMAN, LLC

                                       Zina G. Bash (*pro hac vice*)
                                       111 Congress Avenue, Suite 500
                                       Austin, TX, 78701
                                       Telephone: (512) 690-0990
                                       E-mail: zina.bash@kellerpostman.com

                                       Warren D. Postman (*pro hac vice*)
                                       Albert Y. Pak (*pro hac vice*)
                                       1100 Vermont Avenue, N.W., 12th Floor
                                       Washington DC, 20005
                                       Telephone: (202) 918-1123
                                       E-mail: wdp@kellerpostman.com
                                       E-mail: albert.pak@postman.com

                                       Jessica B. Beringer (*pro hac vice*)
                                       Jason A. Zweig (*pro hac vice*)
                                       150 N. Riverside, Suite 4100
                                       Chicago, IL 60606
                                       Telephone: (312) 741-5220
                                       Email:  Jessica.beringer@kellerpostman.com
                                       Email:  jaz@kellerpostman.com

                                       *Interim Co-Lead Counsel for Plaintiffs and the
                                       proposed Class*

JOINT STATUS REPORT AND DISCOVERY PLAN - 15
CASE NO. 2:21-CV-00693-RSM

A-250

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By:___*/s/ Alicia Cobb*_____
Alicia Cobb, WSBA # 48685
1109 First Avenue, Suite 210
Seattle, WA 98101
Telephone: (206) 905-7000
Email: aliciacobb@quinnemanuel.com

Steig D. Olson (*pro hac vice*)
David D. LeRay (*pro hac vice*)
Nic V. Siebert (*pro hac vice*)
Maxwell P. Deabler-Meadows (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Email: steigolson@quinnemanuel.com
Email: davidleray@quinnemanuel.com
Email: nicolassiebert@quinnemanuel.com
Email: maxmeadows@quinnemanuel.com

Adam B. Wolfson (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Email: adamwolfson@quinnemanuel.com

KELLER ROHRBACK L.L.P.

By:___*/s/ Derek W. Loeser*_____
Derek W. Loeser (WSBA No. 24274)
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Facsimile:  (206) 623-3384
E-mail: Dloeser@kellerrohrback.com

*Interim Executive Committee for Plaintiffs and the
proposed Class*

JOINT STATUS REPORT AND DISCOVERY PLAN - 16
CASE NO. 2:21-CV-00693-RSM

A-251

1                 DAVIS WRIGHT TREMAINE LLP

2                 By:    */s/John A. Goldmark*

3                 John A. Goldmark, WSBA # 40980
                MaryAnn Almeida, WSBA #49086

4                 920 Fifth Avenue, Suite 3300
                Seattle, WA 98104-1610

5                 Telephone: (206) 622-3150
                Facsimile: (206) 757-7700

6                 E-mail: JohnGoldmark@dwt.com
                E-mail: MaryAnnAlmeida@dwt.com

7

8                 PAUL, WEISS, RIFKIND, WHARTON &
                GARRISON LLP

9

10                 By:    */s/ Karen L. Dunn*
                Karen L. Dunn (*pro hac vice*)

11                 William A. Isaacson (*pro hac vice*)
                Amy J. Mauser (*pro hac vice*)

12                 Martha L. Goodman (*pro hac vice*)
                Kyle Smith (*pro hac vice*)

13                 2001 K Street, NW
                Washington, D.C. 20006-1047

14                 Telephone: (202) 223-7300
                Facsimile: (202) 223-7420

15                 E-mail: kdunn@paulweiss.com

16                 E-mail: wisaacson@paulweiss.com
                E-mail: amauser@paulweiss.com

17                 E-mail: mgoodman@paulweiss.com
                E-mail: ksmith@paulweiss.com

18

19                 *Attorneys for Defendant Amazon.com, Inc.*

20

21

22

23

24

25

26

27

28

A-252

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on May 18, 2023, a true and correct copy of the foregoing was filed

3  electronically by CM/ECF, which caused notice to be sent to all counsel of record.

4                                    _____*/s/ Steve W. Berman*_____
                                           Steve W. Berman
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STATUS REPORT AND DISCOVERY PLAN - 18
CASE NO. 2:21-CV-00693-RSM

A-253

# Exhibit 1



The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ELIZABETH DE COSTER, *et al.*, on behalf of themselves and all others similarly situated,

       Plaintiffs,

v.

AMAZON.COM, INC., a Delaware corporation,

       Defendant.

Case No. 2:21-cv-00693-RSM

**STIPULATED MOTION AND [PROPOSED] PROTECTIVE ORDER**

Inserted Cells

STIPULATED PROTECTIVE ORDER
CASE NO. 2:21-cv-00693-RSM
C:\Users\karen\DesktopCOMPARE RESULT - 2023-03-08 - DeCOSTER Stipulated Protective Order to MODEL Order.docx 3/9/2023
10:30:09 AM

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
FAX

1        Plaintiffs Elizabeth De Coster, Maya Gold, John Mariane, Osahon Ojeaga, Megan Smith,

2    Robert Taylor, Kenneth David West, and Emma Zaballos, and Defendant Amazon.com, Inc.

3    jointly stipulate and agree to the entry of a protective order as described below:[1]

4

5    ~~UNITED STATES DISTRICT COURT~~

6    ~~FOR THE WESTERN DISTRICT OF WASHINGTON~~

7    ~~AT _____~~

8    ~~[PLAINTIFF],~~

          ~~Plaintiff,~~          ~~CASE NO.~~

9        ~~v.~~          ~~MODEL STIPULATED PROTECTIVE~~

10   ~~[DEFENDANT],~~        ~~ORDER~~

11         ~~Defendant.~~

12

13   **1.**    **PURPOSES AND LIMITATIONS**

14       Discovery in this action is likely to involve production of confidential, proprietary, or

15   private information for which special protection may be warranted. Accordingly, the parties

16   hereby ~~stipulate to and~~ petition the ~~court~~Court to enter the following ~~Stipulated~~ Protective Order.

17   The parties acknowledge that this agreement is consistent with LCR 26(c). It does not confer

18   blanket protection on all disclosures or responses to discovery, the protection it affords from

19   public disclosure and use extends only to the limited information or items that are entitled to

20   confidential treatment under the applicable legal principles, and it does not presumptively entitle

21   parties to file confidential information under seal. The availability of protection pursuant to this

22   Protective Order does not preclude a party from withholding information protected by any

23   applicable privilege. Nothing in this Protective Order shall restrict in any way the right of a

24

25   _____

26      [1] Judge Jones entered the same terms in the related action, *Frame-Wilson v. Amazon*, Case No. 2:20-cv-00424-RAJ. In compliance with LCR26(c)(2), the parties attach as Exhibit A a redline to the stipulated protective order to identify departures from the model protective order.

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER - 2

Producing Party to disclose or make use of its own documents or Discovery Material. Under
LCR 26(c)(2), the parties began with the District's Model Protective Order, and have identified
departures from the model in a redlined copy, attached as Exhibit 1.

1.    "CONFIDENTIAL" MATERIAL

"Confidential" material shall include 2.    **DEFINITIONS**

    2.1    Challenging Party: A Party or Non-Party that challenges the followingdesignation
of information or items under this Order.

    2.2    Counsel (without qualifier): Outside Counsel of Record, In-House Counsel, and
their support staff.

    2.3    Designating Party: the producing Party or Non-Party designating documents or
information as Protected Information under this Order.

    2.4    Discovery Material: All items or information, regardless of the medium or manner
in which it is generated, stored, or maintained (including, among other things, testimony,
transcripts, and tangible things), that are produced or generated in disclosures or responses to
discovery in this matter.

    2.5    Expert: A person with specialized knowledge or experience in an area pertinent to
the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or
as a consultant in this action, (2) is not a past or current employee of a Party or of a Party's
competitor, and (3) at the time of retention, is not anticipated to become an employee of a Party
or of a Party's competitor.

    2.6    Industry Expert: An Expert whose specialized knowledge or experience derives
from personal experience in the industries and markets pertinent to the litigation and who
satisfies the other criteria for the definition of Expert.

    2.7    In-House Counsel: Attorneys (and their support staff, including legal secondees
and economists) who are employees or contractors of a Party and whose responsibilities include

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 3

overseeing, working on, or supporting this action. In-House Counsel does not include Outside
Counsel of Record or any other outside counsel.

    2.8    Non-Party: Any natural person, partnership, corporation, association, or other
legal entity not named as a Party to this action.

    2.9    Outside Counsel of Record: Attorneys who are retained to represent or advise a
Party to this action..

    2.10    Party: Any Party to this action, including all its officers, directors, employees,
consultants, retained Experts, and Outside Counsel of Record (and their support staff).

    2.11    Producing Party: A Party or Non-Party that produces Discovery Material in this
action.

    2.12    Protected Material: Any Discovery Material that is designated as "Confidential"
or "Highly Confidential—Attorneys' Eyes Only."

    2.13    Receiving Party: A Party that receives Discovery Material from a Producing
Party.

**3.    PROTECTED MATERIAL**

    3.1    "CONFIDENTIAL" Material: Documents and tangible things that may be
produced or otherwise exchanged [The parties must include a list of specific documents that 1)
the Designating Party reasonably believes contain, describe, or disclose sensitive, non-public,
confidential information, such as "company's customer list" or "plaintiff's medical(a) court
records;" do not list broad categories of documents, whether in this District or other courts,
currently maintained under seal; (b) information subject to a non-disclosure or confidentiality
agreement; (c) employee personnel information; (d) a Non-Party's commercially sensitive
information, trade secrets, or competitive or strategic initiatives that are not readily ascertainable
and for which the Designating Party has taken reasonable steps to maintain confidentiality, and
(e) personal identifying information subject to redaction under Local Rule 5.2, or 2) the
Designating Party's own commercially sensitive information, such as "sensitive(a) financial or

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 4

accounting information; (b) commercially sensitive internal communications or information; and (c) business material"]-negotiations, transactions, and dealings with Non-Parties.

3.2     "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" Material: Extremely sensitive materials that qualify as "CONFIDENTIAL" and that the Designating Party reasonably believes contain highly sensitive business or personal information, the disclosure of which to another Party or Non-Party would create a risk of competitive or commercial disadvantage to the Designating Party.

3.3     This Order does not envision the production of source code or object code. Should the Parties agree to source code discovery, they will enter a separate stipulated source code supplement to this Order.

**4.     SCOPE**

The protections conferred by this agreement cover not only ~~confidential material~~Protected Material (as defined above), but also (1) any information copied or extracted from ~~confidential material~~Protected Material; (2) all copies, excerpts, summaries, or compilations of ~~confidential material~~Protected Material; and (3) any testimony, conversations, or presentations by ~~parties~~Parties or their ~~counsel~~Counsel, Non-Parties, and/or Experts that might reveal ~~confidential material~~Protected Material.

However, the protections conferred by this agreement do not cover information that is in the public domain or becomes part of the public domain through trial or otherwise.

**5.     ACCESS TO AND USE OF ~~CONFIDENTIAL~~PROTECTED MATERIAL**

5.1     Basic Principles. A ~~receiving party~~Receiving Party may use ~~confidential material~~Protected Material that is disclosed or produced by ~~another party or by~~ a ~~non-party~~Producing Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. ~~Confidential material~~Protected Material may be disclosed only to the categories of persons and under the conditions described in this agreement. ~~Confidential material~~Protected Material must be stored and maintained by a ~~receiving party~~Receiving Party at

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 5

a location and in a secure manner that ensures that access is limited to the persons authorized under this agreement.

5.2    Disclosure of "CONFIDENTIAL" ~~Information or Items.~~Material. Unless otherwise ordered by the ~~court~~Court or permitted in writing by the ~~designating party~~Producing or Designating Party, a ~~receiving party~~Receiving Party may disclose any ~~confidential material~~Confidential Material only to:

(a)    the ~~receiving party's counsel~~Receiving Party's Outside Counsel of ~~record~~Record in this action, ~~as well as~~including employees of ~~counsel~~Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation;

(b)    the officers, directors, and employees (including ~~in-house counsel~~In-House Counsel) of the ~~receiving party~~Receiving Party to whom disclosure is reasonably necessary for this litigation~~, unless the parties agree that a particular document;~~

~~(a)~~   (c)    Experts, professional jury or ~~material produced is for Attorney's Eyes Only and is so designated;~~ ~~experts and~~trial consultants, and their employees and staff, to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)    the ~~court~~Court, court personnel, and court reporters and their staff;

(e)    copy ~~or,~~ imaging, document management, and electronic discovery services retained by ~~counsel~~Counsel to assist in the ~~duplication~~management of ~~confidential material~~Confidential Material and who execute the "Agreement to Be Bound by Protective Order" attached as Exhibit A, provided that counsel for the ~~party~~Party retaining ~~the copy or imaging service~~such services instructs the service not to disclose any ~~confidential material~~Confidential Material to third parties and to immediately return all originals and copies of any ~~confidential material~~Confidential Material;

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 6

(f)     during their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the ~~designating party~~Designating Party or ordered by the ~~court~~Court. Pages of transcribed deposition testimony or exhibits to depositions that reveal ~~confidential material~~Confidential Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this agreement; and

(g)     the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

~~Filing~~5.3     Disclosure of "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" Material. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any Highly Confidential—Attorney's Eyes Only Material only to:

(a)     the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation;

(b)     Experts, professional jury or trial consultants, and their employees and staff, to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and, with respect to an Industry Expert, have been subject to the procedure in Paragraph 5.4;

(c)     the Court, court personnel, and court reporters and their staff;

(d)     the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

(e)     employees of the Producing Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Agreement to Be Bound by Protective Order" attached as Exhibit A; and

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 7

(f)     copy, imaging, document management, and electronic discovery services retained by Counsel to assist in the management of Highly Confidential-Attorney's Eyes Only Material and who execute the "Agreement to Be Bound by Protective Order" attached as Exhibit A, provided that counsel for the Party retaining such services instructs the service not to disclose any Highly Confidential Material to third parties and to immediately return all originals and copies of any Highly Confidential Material; and

(g)     to assist in Amazon's defense of this litigation, no more than four (4) In-House Counsel who exercise no competitive decision-making, including:

1.     Amy Posner

2.     Cristina Fernandez

3.     Omid Bañuelos.

In the event that Amazon's designated in-house counsel is no longer eligible to serve as a designee under this Protective Order, due to a change in role or otherwise, Amazon may designate a replacement in-house counsel who meets the criteria set forth herein.

5.4     Procedures for Approving or Objecting to Disclosure to Expert of Materials Designated "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY."

(a)     Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Industry Expert any material that has been designated "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" first must make a written disclosure to the Designating Party that (1) identifies the general categories of "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" information that the Receiving Party seeks permission to disclose to the Industry Expert, (2) sets forth the full name of the Industry Expert and the city and state of his or her primary residence, (3) attaches a copy of the Industry Expert's current resume, (4) identifies the Industry Expert's current employer(s), (5) identifies each person or entity from whom the Industry Expert has received compensation or funding for work in his or her areas of expertise or to whom the Industry Expert has provided professional

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 8

services, including in connection with a litigation, at any time during the preceding four years, and (6) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Industry Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding four years. If the Industry Expert believes that any of the information sought through part (6) of this disclosure is subject to a confidentiality obligation to a third party, then the Expert should indicate the confidential matters with as much detail as possible.

(b)     A Party that makes a written disclosure and provides the information specified in the preceding respective paragraphs may disclose the subject "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" Material to the identified Industry Expert unless, within seven days of delivering the request, the Party receives a written objection from the Designating Party.

(c)     A Party that receives a timely written objection must meet and confer with the Designating Party to try to resolve the matter by agreement within three days of the written objection. If no agreement is reached, the Party seeking to make the disclosure to the Industry Expert may file a motion as provided in Local Civil Rule 7 seeking permission from the Court to do so, or may use the expedited joint motion procedure set forth in Local Civil Rule 37(a)(2). Any such motion must describe the circumstances with specificity, set forth in detail the reasons why the disclosure to the Industry Expert is reasonably necessary, assess the risk of harm that the disclosure would entail, and suggest any additional means that could be used to reduce that risk. In addition, any such motion must be accompanied by a competent declaration describing the Parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer discussions) and setting forth the reasons advanced by the Designating Party for its refusal to approve the disclosure.

In any such proceeding, the Party opposing disclosure to the Industry Expert shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 9

proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Industry Expert.

       (d)    Nothing in this Section modifies the ordinary deadlines for expert disclosures under the Federal Rules and this Court's orders.  Testifying experts not receiving HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY materials shall be disclosed by the deadline established by the Court.  Testifying Industry Experts receiving HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY materials shall be disclosed consistent with this Section. Consulting Industry Experts receiving HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY materials are not required to be disclosed prior to any applicable deadlines contained within the Federal Rules.

     5.5   Filing Protected Material. Before filing confidential material Protected Material or discussing or referencing such material in court filings, the filing party Party shall confer with the designating party Designating Party, in accordance with Local Civil Rule 5(g)(3)(A), to determine whether the designating party will remove the confidential designation, whether the document can be redacted, or whether a ). Any motion to seal or stipulation and proposed order is warranted. During the meet and confer process, the designating party must identify the basis for sealing the specific confidential information at issue, and the filing party shall include this basis in its motion to seal, along with any objection to sealing the information at issue. Local Civil Rule 5(g) sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal. A party filed by the Receiving Party, where a Designating Party must make the showing required by Local Civil Rule 5(g)(3)(B) in response to the motion, must be noted for consideration no earlier than the fourth Friday after filing. A Party who seeks to maintain the confidentiality of its information designation must satisfy the requirements of Local Civil Rule 5(g)(3)(B), even if it is not the party Party filing the motion to seal. Failure to satisfy this requirement will result in the

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 10

motion to seal being denied, in accordance with the strong presumption of public access to the Court's files.

    5.6    Disclosure of Protected Material at Hearings or Trial: Any person receiving Protected Material shall not reveal or discuss such information at any pre-trial hearing or hearing open to individuals not otherwise authorized to receive Protected Material except as follows: In the event a person receiving Protected Material intends to use Protected Material in any proceeding open to individuals not entitled to receive Protected Materials, such person shall, at least 14 days in advance, move to seal the proceeding or give the person that produced the Protected Material written notice. In the latter case, the Parties shall thereafter meet and confer to determine whether the Protected Material can be so used. If they cannot reach agreement, the person who produced the Protected Material may file a motion to seal the proceeding.  If, however, the party that seeks to use the Protected Material at a hearing for which it had fewer than 21 days' advance notice, the parties will meet and confer within a reasonable time before the hearing.

**6.**    **DESIGNATING PROTECTED MATERIAL**

    6.1    Exercise of Restraint and Care in Designating Material for Protection. Each ~~party~~Party or ~~non-party~~Non-Party that designates information or items for protection under this agreement must take care to limit any such designation to specific material that qualifies under the appropriate standards. The ~~designating party~~Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify, so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this agreement.

    Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (*e.g.*, to unnecessarily encumber or delay the case development process or to impose unnecessary

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 11

expenses and burdens on other parties) expose the ~~designating party~~Designating Party to

sanctions.

It if comes to a ~~designating party's~~Designating Party's attention that information or items

that it designated for protection do not qualify for protection, the ~~designating party~~Designating

Party must promptly notify all other parties that it is withdrawing the mistaken designation.

6.2    Manner and Timing of Designations. Except as ~~otherwise~~ provided in ~~this

agreement (see, e.g., second paragraph of~~ section ~~5~~6.2(~~b~~ (a) below)~~., or as otherwise stipulated or

ordered, ~~disclosure or discovery material~~Discovery Material that qualifies for protection under

this agreement must be clearly so designated before or when the material is disclosed or

produced.

(a)    Information in documentary form: (e.g., paper or electronic documents

and deposition exhibits, but excluding transcripts of depositions or other pretrial or trial

proceedings), the ~~designating party~~Designating Party must affix the word(s) "CONFIDENTIAL"

or "HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY" to each page that contains

~~confidential material.~~Protected Material. If only a portion or portions of the material on a page

qualifies for protection, the ~~producing party~~Producing Party also must clearly identify the

protected portion(s) (e.g., by making appropriate markings in the margins). With respect to

documents containing Protected Material produced in native format, the Designating Party shall

include the appropriate designation  in the manner agreed to pursuant to the Parties' ESI

protocol.

(b)    Testimony given in deposition or in other pretrial or trial proceedings: ~~the

parties~~The Parties and any participating ~~non-parties~~Non-Parties must identify on the record,

during the deposition, hearing, or other ~~pretrial~~ proceeding, all protected testimony, without

prejudice to their right to so designate other testimony after reviewing the transcript. Any

~~party~~Party or ~~non-party~~Non-Party may, within ~~fifteen~~30 days after receiving the transcript of the

deposition or other pretrial proceeding, designate portions of the transcript, or exhibits thereto, as

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 12

confidential. Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as Protected Material and the level of protection being asserted by the Designating Party. The Designating Party shall inform the court reporter of these requirements. Until the expiration of the 30-day period for designation, any deposition transcript shall be treated as if it had been designated "HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY" in its entirety, unless otherwise agreed. However, upon a showing of good cause by the Party seeking to rely on the transcript, e.g., for use in a scheduled filing with the Court, the Parties agree to shorten the designation period to 15 days or in appropriate circumstances fewer.

If a ~~party~~Party or ~~non-party~~Non-Party desires to protect confidential information at trial, the issue should be addressed during the pre-trial conference.

(c)     Other tangible items: ~~the producing party~~The Producing Party must affix in a prominent place on the exterior of the container or containers in which the information or item is stored the ~~word~~words "CONFIDENTIAL~~."~~" or "HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY."  If only a portion or portions of the information or item warrant protection, the ~~producing party~~Producing Party, to the extent practicable, shall identify the protected portion(s).

6.3    Inadvertent Failures to Designate. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the ~~designating party's~~Designating Party's right to secure protection under this agreement for such material. Upon timely correction of a designation, the ~~receiving party~~Receiving Party must make reasonable efforts to ensure that the material is treated in accordance with the provisions of this agreement.

**7.     CHALLENGING CONFIDENTIALITY DESIGNATIONS**

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 13

7.1    Timing of Challenges. Any ~~party~~Party or ~~non-party~~Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a ~~designating party's~~Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a ~~party~~Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed. A Party challenging a designation must provide the Bates number or otherwise clearly and unmistakably identify each item (if a Bates number is unavailable) of Protected Material being challenged.

7.2    Meet and Confer. The ~~parties~~Parties must make every attempt to resolve any dispute regarding confidential designations without ~~court~~Court involvement. Any motion regarding confidential designations or for a protective order must include a certification, in the motion or in a declaration or affidavit, that the movant has engaged in a good faith meet and confer conference with other affected ~~parties~~Parties in an effort to resolve the dispute without court action. The certification must list the date, manner, and participants to the conference. A good faith effort to confer requires a face-to-face meeting or a telephone conference.

7.3    Judicial Intervention. If the ~~parties~~Parties cannot resolve a challenge without ~~court~~Court intervention, the ~~designating party~~Designating Party may file and serve a motion to retain confidentiality under Local Civil Rule 7 (b) and in compliance with Local Civil Rule 5(g), if applicable, or may request that the Parties follow the expedited joint motion procedure set forth in Local Civil Rule 37(a)(2). The burden of persuasion in any such motion shall be on the ~~designating party~~Designating Party. Frivolous challenges, and those made for an improper purpose (*e.g.*, to harass or impose unnecessary expenses and burdens on other parties) may expose the challenging ~~party~~Party to sanctions. All ~~parties~~Parties shall continue to maintain the material in question as confidential until the court rules on the challenge.

**8.    PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER  LITIGATION**

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 14

If a ~~party~~Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY," that ~~party~~Party must:

(a)    promptly notify the ~~designating party~~Designating Party in writing and include a copy of the subpoena or court order;

(b)    promptly notify in writing the ~~party~~Party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this agreement. Such notification shall include a copy of this agreement; and

(c)    cooperate with respect to all reasonable procedures sought to be pursued by the ~~designating party~~Designating Party whose ~~confidential material~~Protected Material may be affected.

If the Designating Party timely seeks a protective order from the court from which the subpoena or order issued, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its Protected Material, and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

**9.    UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL**

If a ~~receiving party~~Receiving Party learns that, by inadvertence or otherwise, it has disclosed ~~confidential material~~Protected Material to any person or in any circumstance not authorized under this agreement, the ~~receiving party~~Receiving Party must immediately (a) notify in writing the ~~designating party~~Designating Party of the unauthorized ~~disclosures~~access or disclosure, (b) ~~use~~investigate and report to Designating Party the scope of and circumstances of

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 15

the unauthorized access or disclosure, (c) take immediate and reasonable steps to rectify the unauthorized access or disclosure, including using its best efforts to retrieve all unauthorized copies of the ~~protected material, (c~~Protected Material and instituting additional security to prevent any further access or disclosure, (d) comply with all obligations under applicable laws relating to unauthorized access or disclosure, including security breach notification laws and other applicable laws, (e) inform the person or persons to whom unauthorized disclosures were made of all the terms of this ~~agreement~~Order, and (~~d~~f) request that such person or persons execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

**10.    INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED  MATERIAL**

When a ~~producing party~~Producing Party gives notice to ~~receiving parties~~Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the ~~receiving parties~~Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order or agreement that provides for production without prior privilege review. This Order invokes the protections afforded by Fed. R. Evid. 502(b).  As provided under Fed. R. Evid. 502(b) and 502(d) and subject to the limitations in Fed. R. Evid. ~~The parties agree to the entry of a non-waiver order under Fed.~~ 502(a), the disclosure of privileged material in connection with this litigation does not operate as a waiver in this action or any other action by the Producing Party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law~~R. Evid. 502(d) as set forth herein~~.

**11.    NON ~~-~~TERMINATION AND RETURN OF DOCUMENTS**

~~Within~~Unless otherwise ordered or agreed in writing, within 60 days after the termination of this action, including all appeals, each ~~receiving party~~Receiving Party must ~~return~~destroy all

confidential material to the producing party Protected Material, including all copies, extracts, and

summaries thereof. Alternatively,

The Receiving Party must submit a written certification to the Producing Party (and, if

not the parties may agree upon appropriate methods same person or entity, to the Designating

Party) by the 60-day deadline that affirms that the Receiving Party has used reasonable efforts to

destroy copies, abstracts, compilations, summaries, or any other format reproducing or capturing

any of destruction the Protected Material.

Notwithstanding this provision, counsel Counsel are entitled to retain one archival copy of

all documents filed with the court Court, trial, deposition, and hearing transcripts,

correspondence, deposition and trial exhibits, expert reports, attorney work product, and

consultant and expert work product, even if such materials contain confidential material Protected

Material. Any such archival copies that contain or constitute Protected Material remain subject to

this Protective Order.

The Even after final disposition of this litigation, the confidentiality obligations imposed

by this agreement shall remain in effect until a designating party Designating Party agrees

otherwise in writing or a court orders otherwise.

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 17

1

2      IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

3    DATED: _____          _____

4                                               Attorneys for Plaintiff

5    DATED: _____          _____

6                                               Attorneys for Defendant

7

8    PURSUANT TO STIPULATIONDATED: March ___, 2023          Respectfully

9    submitted,

10                                     HAGENS BERMAN SOBOL SHAPIRO LLP

11                                     By     /s/ Steve W. Berman
                                       Steve W. Berman (WSBA No. 12536)
12                                     By    /s/ Barbara A. Mahoney
                                       Barbara A. Mahoney (WSBA No. 31845)
13                                     1301 Second Avenue, Suite 2000
14                                     Seattle, WA 98101
                                       Telephone: (206) 623-7292
15                                     Facsimile: (206) 623-0594
                                       steve@hbsslaw.com
16                                     barbaram@hbsslaw.com

17

18                                     KELLER POSTMAN LLC

19                                     Zina G. Bash (pro hac vice)
                                       111 Congress Avenue, Suite 500
20                                     Austin, TX, 78701
                                       Telephone: (512) 690-0990
21                                     E-mail: zina.bash@kellerpostman.com

22                                     Warren D. Postman (pro hac vice)
23                                     Albert Y. Pak (pro hac vice)
                                       1100 Vermont Avenue, N.W., 12th Floor
24                                     Washington DC, 20005
                                       Telephone: (202) 918-1123
25                                     E-mail: wdp@kellerpostman.com
                                       E-mail: albert.pak@kellerpostman.com
26

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 18

A-272

1          Jessica B. Beringer (pro hac vice)
2          150 N. Riverside, Suite 4100
            Chicago, IL, 60606
3          Telephone: (312)-741-5220
4          Email: Jessica.beringer@kellerpostman.com

5          *Interim Lead Counsel for Plaintiffs*

6          QUINN EMANUEL URQUHART &
            SULLIVAN, LLP
7
            By:    */s/ Alicia Cobb*
8          Alicia Cobb, WSBA # 48685
9          1109 First Avenue, Suite 210
            Seattle, WA 98101
10         Telephone: (206) 905-7000
            Email: aliciacobb@quinnemanuel.com
11
            Steig D. Olson (pro hac vice)
12         David D. LeRay (pro hac vice)
            Nic V. Siebert (pro hac vice)
13         51 Madison Avenue, 22nd Floor
14         New York, NY 10010
            Telephone: (212) 849-7000
15         Email: steigolson@quinnemanuel.com

16         Adam B. Wolfson (pro hac vice)
            865 South Figueroa Street, 10th Floor
17         Los Angeles, CA 90017-2543
18         Telephone: (213) 443-3000
            Email: adamwolfson@quinnemanuel.com
19
            KELLER ROHRBACK L.L.P.
20
            By:    */s/ Derek W. Loeser*
21         Derek W. Loeser (WSBA No. 24274)
            1201 Third Avenue, Suite 3200
22         Seattle, WA 98101-3052
            Telephone: (206) 623-1900
23         Facsimile: (206) 623-3384
            Dloeser@kellerrohrback.com
24
            *Plaintiffs' Executive Committee Members*
25
            DAVIS WRIGHT TREMAINE LLP
26

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 19

1                 By:    /s/ John A. Goldmark

2                 John A. Goldmark, WSBA #40980

3                 MaryAnn Almeida, WSBA #49086
                   920 Fifth Avenue, Suite 3300

4                 Seattle, WA 98104-1610
                   Ph: (206) 622-3150; Fax: (206) 757-7700

5                 E-mail:  JohnGoldmark@dwt.com
                   E-mail:  MaryAnnAlmeida@dwt.com

6

7                 PAUL, WEISS, RIFKIND, WHARTON &
                   GARRISON LLP

8                 Karen L. Dunn (pro hac vice)

9                 William A. Isaacson (pro hac vice)
                   William B. Michael (pro hac vice)

10               Amy J. Mauser (pro hac vice)
                   Martha L. Goodman (pro hac vice)

11               Kyle Smith (pro hac vice)
                   2001 K Street, NW

12               Washington, D.C.  20006-1047

13               Telephone:  (202) 223-7300
                   Facsimile:   (202) 223-7420

14               E-mail:  kdunn@paulweiss.com
                   E-mail:  wisaacson@paulweiss.com

15               E-mail:  wmichael@paulweiss.com
                   E-mail:  amauser@paulweiss.com

16               E-mail:  mgoodman@paulweiss.com

17               E-mail:  ksmith@paulweiss.com

18               *Attorneys for Defendant Amazon.com, Inc.*

19

20

21

22

23

24

25

26

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 20

1
## ORDER

2
Based on the foregoing, IT IS SO ORDERED.

3

4 IT IS FURTHER ORDERED that pursuant to Fed. R. Evid. 502(d), the production of any

5 documents, electronically stored information (ESI) or information, whether inadvertent or

6 otherwise, in this proceeding shall not, for the purposes of this proceeding or any other federal or

7 state proceeding, constitute a waiver by the producing party of any privilege applicable to those

8 documents, including the attorney-client privilege, attorney work-product protection, or any

9 other privilege or protection recognized by law. This Order shall be interpreted to provide the

10 maximum protection allowed by Fed. R. Evid. 502(d).  The provisions of Fed. R. Evid. 502(b)

11 do not apply.  Nothing contained herein is intended to or shall serve to limit a party's right to

12 conduct a review of documents, ESI or information (including metadata) for relevance,

13 responsiveness and/or segregation of privileged and/or protected information before production.

14 Information produced in discovery that is protected as privileged or work product shall be

15 immediately returned to the producing party.

16

17 DATED:

18

19 [Name of Judge]

20 United States District Court Judge

21

22

23

24

25

26

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER  - 21



1   The Honorable Ricardo S. Martinez
    UNITED STATES DISTRICT COURT JUDGE
2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MODEL STIPULATED PROTECTIVE ORDER
CASE NUMBER - 1

**EXHIBIT A**

**ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

I, _____ [print or type full name], of

_____ [print or

type full address], declare under penalty of perjury that I have read in its entirety and understand

the ~~Stipulated~~ Protective Order that was issued by the United States District Court for the Western

District of Washington on [date] in the case of ~~_____ [insert formal name of the~~

~~case and the number and initials assigned to it by the court].~~ *Frame-Wilson, et al. v.*

*Amazon.com, Inc.*, Case No. 2:20-CV-00424-RAJ. I agree to comply with and to be bound by all

the terms of this ~~Stipulated~~ Protective Order and I understand and acknowledge that failure to so

comply could expose me to sanctions and punishment in the nature of contempt. I solemnly

promise that I will not disclose in any manner any information or item that is subject to this

~~Stipulated~~ Protective Order to any person or entity except in strict compliance with the provisions

of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the

Western District of Washington for the purpose of enforcing the terms of this ~~Stipulated~~ Protective

Order, even if such enforcement proceedings occur after termination of this action.

Date: _____

City and State where sworn and signed:

_____

Printed name: _____

Signature: _____

STIPULATED PROTECTIVE ORDER - 2
CASE NO. 2:21-CV-00693-RSM
C:\Users\karen\Desktop\COMPARE RESULT - 2023-03-08 - DeCOSTER Stipulated Protective Order to MODEL Order.docx 3/8/2023
10:30:09 AM

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 • (206) 623-0594 FAX

A-277

1

**CERTIFICATE OF SERVICE**

I hereby certify that on March ___, 2023, a true and correct copy of the foregoing was

2

filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

3

*/s/ Steve W. Berman*

4

Steve W. Berman

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

STIPULATED PROTECTIVE ORDER - 3
CASE NO. 2:21-CV-00693-RSM
C:\Users\karen\DesktopCOMPARE RESULT - 2023-03-08 - DeCOSTER Stipulated Protective Order to MODEL Order.docx 3/9/2023

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 • (206) 623-0594 FAX

10:30:09 AM

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system.

I certify that all participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system

By: /s/ *Steve W. Berman*
       Steve W. Berman