No. 25-3099

---

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
IN RE AMAZON.COM, INC.,

————————

AMAZON.COM, INC., a Delaware corporation,
*Defendant-Petitioner*,

v.

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON,
*Respondent*,

ELIZABETH DE COSTER, *et al.*,
*Real Parties in Interest*,
(No. 2:21-cv-00693-JHC)

DEBORAH FRAME-WILSON, *et al.*,
*Real Parties in Interest*,
(No. 2:20-cv-00424-JHC)

CHRISTOPHER BROWN, *et al.*,
*Real Parties in Interest*.
(No. 2:22-cv-00965-JHC)

————————

ON PETITION FOR A WRIT OF MANDAMUS TO THE UNITED
STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
WASHINGTON, NOS. 2:21-CV-00693-JHC, 2:20-CV-424-JHC, AND
2:22-CV-00965-JHC | HONORABLE JOHN H. CHUN

————————

**MOTION FOR LEAVE TO FILE BRIEF OF LAWYERS FOR
CIVIL JUSTICE AS *AMICUS CURIAE* IN SUPPORT OF
PETITIONER AMAZON.COM, INC.**

---

Respectfully submitted,

*s/ E. Todd Presnell*
E. Todd Presnell
Adam G. Williams
Zachary S. June
Casey L. Miller
Bradley Arant Boult Cummings LLP
1221 Broadway, Suite 2400
Nashville, Tennessee 37203
615.244.2582
tpresnell@bradley.com

*Attorneys for Amicus Curiae*
Lawyers for Civil Justice

Pursuant to Federal Rule of Appellate Procedure 29(a)(3), Lawyers for Civil Justice ("LCJ") hereby moves for leave of Court to file the attached brief as amicus curiae addressing the interpretation of Federal Rule of Evidence 502(d).

LCJ is a national coalition of defense trial lawyer organizations, law firms, and corporations that promotes excellence and fairness in the civil justice system to secure the just, speedy, and inexpensive determination of civil cases. LCJ has specific expertise on the meaning, history, and application of Federal Rule of Evidence 502, drawing on both its own efforts undertaken during the 2006–2007 rulemaking process and the collective experience of its members who are involved in litigation in the federal courts. For this reason, LCJ suggests that the Court would benefit from its experience and expertise.

The proper interpretation and application of Federal Rule of Evidence 502(d)—LCJ's focus here—is important to the disposition of this case. LCJ and its members have an interest in ensuring that courts across the nation correctly and consistently interpret the privilege-waiver protection stated in Rule 502(d). Consistent and proper enforcement of Rule 502(d)'s plain language provides certainty to

corporate entities as they review and evaluate voluminous, putatively privileged electronically stored information during the discovery process. It also furthers Rule 502(d)'s dual purposes—to reduce unnecessary litigation costs and supply a predictable, uniform standard under which parties may assess the consequences of disclosing privileged information.

Courts diverge on whether Rule 502(d)'s plain language requires 502(b)-like preconditions to achieve a non-waiver determination. Rule 502(d) contains no preconditions to its enforcement, and this Court should grant mandamus and determine whether Rule 502(d)'s clear language, and not court-created prerequisites, controls whether a party waives its privilege protections when producing protected information.

The outcome for which LCJ advocates—that Rule 502(d) does not require "concrete directives" or other preconditions for its implementation and enforcement—aligns with the Petitioner's position on this issue. LCJ respectfully requests that the Court grant it leave to file an amicus brief and "specify[] the time within which an opposing party may answer." Fed. R. App. P. 29(a)(6).

LCJ respectfully requests that this Court grant this motion and allow it to file the attached brief as amicus curiae addressing the proper interpretation of Federal Rule of Evidence 502(d).

## <u>CIRCUIT RULE 29-3 CERTIFICATION</u>

LCJ endeavored to obtain the consent of all parties to the filing of the brief before moving the Court for permission to file the proposed brief. Defendant (Petitioner) Amazon.com, Inc. consented to the filing of LCJ's brief.  Plaintiffs (Real Parties in Interest) did not consent.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 4, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system, serving all counsel of record.

DATED: June 4, 2025.

Respectfully submitted,

<u>*s/ E. Todd Presnell*</u>
E. Todd Presnell
Adam G. Williams
Zachary S. June
Casey L. Miller
Bradley Arant Boult Cummings LLP
1221 Broadway, Suite 2400
Nashville, Tennessee 37203
615.244.2582
tpresnell@bradley.com

*Attorneys for Amicus Curiae*
Lawyers for Civil Justice

No. 25-3099

———————————————

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
IN RE AMAZON.COM, INC.,

————————————

AMAZON.COM, INC., a Delaware corporation,
*Defendant-Petitioner*,

v.

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON,
*Respondent*,

ELIZABETH DE COSTER, *et al.*,
*Real Parties in Interest*,
(No. 2:21-cv-00693-JHC)

DEBORAH FRAME-WILSON, *et al.*,
*Real Parties in Interest*,
(No. 2:20-cv-00424-JHC)

CHRISTOPHER BROWN, *et al.*,
*Real Parties in Interest*.
(No. 2:22-cv-00965-JHC)

————————————

ON PETITION FOR A WRIT OF MANDAMUS TO THE UNITED
STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
WASHINGTON, NOS. 2:21-CV-00693-JHC, 2:20-CV-424-JHC, AND
2:22-CV-00965-JHC | HONORABLE JOHN H. CHUN

————————————

**BRIEF OF LAWYERS FOR CIVIL JUSTICE AS *AMICUS
CURIAE* IN SUPPORT OF PETITIONER AMAZON.COM, INC.**

Respectfully submitted,

_s/ E. Todd Presnell_
E. Todd Presnell
Adam G. Williams
Zachary S. June
Casey L. Miller
Bradley Arant Boult Cummings LLP
1221 Broadway, Suite 2400
Nashville, Tennessee 37203
615.244.2582
tpresnell@bradley.com

_Attorneys for Amicus Curiae_
Lawyers for Civil Justice

# <u>TABLE OF CONTENTS</u>

**Page**

STATEMENT OF IDENTIFICATION ...................................................... 1

RULE 29(a)(4)(E) STATEMENT ............................................... 4

SUMMARY OF ARGUMENT .................................................. 5

ARGUMENT ..................................................................... 9

I.  Federal Rule of Evidence 502(d)'s plain language, history, and purpose support predictable and certain privilege protection through an unconditional non-waiver rule ...................................... 9

II.  Rule 502(d) does not require express disavowal of Rule 502(b) or any other prerequisite for its application and enforcement .......... 11

III.  Most courts correctly hold that a Rule 502(d) order completely supplants Rule 502(b) based on Rule 502(d)'s plain language and stated intent. ..................................................... 14

IV.  The unsupportable concept of Rule 502(d) implicitly requiring preconditions arose from inartfully drafted Rule 502(b) claw-back agreements that courts interpreted and later commingled with Rule 502(d), which manifested in the district court's inaccurate eliance on prior authority. ........................................ 21

V.  The attorney-client privilege sustains the public policy of encouraging corporate entitles to obtain optimal legal advice and courts should fulfill this purpose by giving clients and their lawyers predictability as to whether privilege waiver can ever ocur under a Rule 502(d) order. .................................... 27

CONCLUSION ................................................................. 31

CERTIFICATE OF COMPLIANCE ....................................... 32

CERTIFICATE OF SERVICE ............................................... 33

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Devine*,
  262 F. Supp. 3d 1312 (M.D. Fla. 2017)..............................................17

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..........................................................................12

*Arconic Inc. v. Novelis Inc.*,
  17-1434, 2019 WL 911417 (W.D. Pa. Feb. 26, 2019)........................18

*Avendano-Ramirez v. Ashcroft*,
  365 F.3d 813 (9th Cir. 2004)............................................................12

*Brookfield Asset Mgmt., Inc. v. AIG Fin. Prods. Corp.*,
  No. 09 Civ. 8285(PGG)(FM), 2013 WL 142503 (S.D.N.Y.
  Jan. 7, 2013).....................................................................................15

*Brown v. Google*,
  No. 20-cv-03664-YGR (SVK), 2022 WL 12039375, at *5–6
  (N.D. Cal. Oct. 20, 2022)............................................................25, 26

*City of Hartford v. Chase*,
  942 F.2d 130 (2d Cir. 1991) ......................................................13, 15

*Fisher v. United States*,
  425 U.S. 391 (1976)..........................................................................27

*Great-West Life & Annuity Insurance Company v. American
  Economy Insurance Company*,
  No. 2:11-cv-02082-APG-CWH, 2013 WL 5332410 (D. Nev.
  Sept. 23, 2013) ........................................................................ *passim*

*Hopson v. Mayor & Cty. of Baltimore*,
  232 F.R.D. 228 (D. Md. 2005) .........................................................10

ii

*Hubbard v. Google LLC*,
    No. 19-cv-07016-BLF (SVK), 2024 U.S. Dist. LEXIS 4676
    (N.D. Cal. Jan. 9, 2024) ............................................................... 18, 26

*Irth Sols., LLC v. Windstream Comms. LLC*,
    2:16-cv-219, 2017 WL 3276021 (S.D. Ohio Aug. 2, 2017)
    ........................................................................................... 11, 21, 23

*In re Napster, Inc. Copyright Litig.*,
    479 F.3d 1078 (9th Cir. 2007), *abrogated on other grounds*
    *by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009) ............... 27

*Rajala v. McGuire Woods LLP*,
    No. 08-2638-CM-DJW, 2013 WL 50200 (D. Kan. Jan. 3,
    2013) ................................................................................................. 16

*RIPL Corp. v. Google Inc.*,
    2:12-cv-02050-RSM, 2013 WL 6632040 ................................. 14, 16, 17

*In re Sulfuric Acid Antitrust Litig.*,
    235 F.R.D. 407 (N.D. Ill. 2006) ........................................................ 18

*In re Testosterone Replacement Therapy Prods. Liab. Litig.*,
    301 F. Supp. 3d 917 (N.D. Ill. 2018) ............................................ 16, 20

*U.S. Home Corp. v. Settlers Crossing, LLC*,
    No. DKC 08-1863, 2012 WL 3025111 (D. Md. July 23,
    2012) ............................................................................................ 19, 22

*United Physician Grp., LLC v. Leche*,
    742 F. Supp. 3d 1251 (N.D. Ga. 2024) .............................. 14, 16, 17, 21

*United States v. Jicarilla Apache Nation*,
    564 U.S. 162 (2011) .......................................................................... 29

*United States v. Mett*,
    178 F.3d 1058 (9th Cir. 1999) ........................................................... 29

*United States v. Sensient Colors, Inc.*,
    No. 07-1275 (JHR/JS), 2009 WL 2905474 (D.N.J. Sept. 9,
    2009) ....................................................................................... 19, 22, 23

*United States v. United Health Grp., Inc.*,
No. CV 16-8697 FMO, 2020 WL 10731257 (C.D. Cal. Nov.
9, 2020) ................................................................................ 22, 25

*Upjohn Co. v. United States*,
449 U.S. 383 (1981) .......................................... 6, 27, 28, 29

**Statutes**

Rules Enabling Act ................................................................. 1

**Other Authorities**

154 Cong. Rec. 18,016 (2008) ................................................ 10

Advisory Committee on Evidence Rules of the Judicial
Conference of the United States (January 5, 2007),
https://www.uscourts.gov/sites/default/files/fr_import/06-
EV-050.pdf ........................................................ 1, 2, 10

*Commentary on the Effective Use of Federal Rule of Evidence
502(d) Orders*, 23 Sedona Conf. J. 1, at 24 ......................... 13

Fed. R. App. P. 29 ................................................................. 3

Fed. R. Evid. 502 ....................................................... *passim*

Fed. R. Evid. 502(b) .................................................... *passim*

Fed. R. Evid. 502(d) .................................................... *passim*

Fed. R. Evid. 502(e) ............................................................ 13

Hon. Justin R. Walker, *The Kavanaugh Court and the
Schechter-to-Chevron Spectrum*, 95 Ind. L.J. 923, 930
(2020) .................................................................................. 28

Paul W. Grimm, Lisa Yurwit Bergstrom & Matthew P.
Kraeuter, *Federal Rule of Evidence 502: Has It Lived Up
to Its Potential?,* XVII Rich. J.L & Tech. 8, at 63 (2011) ....... 13

S. Rep. No. 110-264 (2008) .................................................. 10

## <u>STATEMENT OF IDENTIFICATION</u>

Lawyers for Civil Justice ("LCJ") is a national coalition of defense trial lawyer organizations, law firms, and corporations that promotes excellence and fairness in the civil justice system to secure the just, speedy, and inexpensive determination of civil cases.  For over 35 years, LCJ has advocated for procedural reforms that (1) promote balance in the civil justice system; (2) reduce the costs and burdens associated with litigation; and (3) advance predictability and efficiency in litigation. Working through the Rules Enabling Act process, LCJ often urges proposals to reform aspects of the Federal Rules of Civil Procedure and Federal Rules of Evidence.

LCJ has specific expertise on the meaning, history, and application of Federal Rule of Evidence 502, drawing on both its own efforts undertaken during the 2006–2007 rulemaking process and the collective experience of its members who are involved in litigation in the federal courts.  LCJ provided extensive comments and original research to the U.S. Judicial Conference Advisory Committee on Evidence Rules regarding the proposed new Federal Rule of Evidence 502.[1]  LCJ's

---

[1] *See* Lawyers for Civil Justice, Proposed Revisions to Rule 502,

1

comments focused on preserving and enhancing privilege protections by adopting limitations on the impact of inadvertent disclosures and allowing courts to enter Rule 502(d) orders respecting privilege and disclosure.[2]

LCJ and its members have an interest in ensuring that courts across the nation correctly and consistently interpret the privilege-waiver protection plainly and clearly provided for in Rule 502(d). Consistent and proper enforcement of the plain language of Rule 502(d) and orders entered under it provides certainty to corporate entities as they review and evaluate voluminous, putatively privileged electronically stored information during the discovery process. It also furthers Rule 502(d)'s dual purposes—to reduce unnecessary litigation costs and supply a predictable, uniform standard under which parties may assess the consequences of disclosing privileged information.

Courts continue to diverge on whether Rule 502(d)'s plain language requires 502(b)-like preconditions in an order entered under it to achieve

---

Comments to the Advisory Committee on Evidence Rules of the Judicial Conference of the United States (January 5, 2007), https://www.uscourts.gov/sites/default/files/fr_import/06-EV-050.pdf.

[2] *Id.* at 24–25.

a non-waiver determination. Rule 502(d) contains no preconditions to enforcement of orders entered under it, and this Court should grant mandamus and rule that the clear language of Rule 502(d) and orders entered under it, and not court-created prerequisites, controls whether a party waives its privilege protections when producing protected information.

Lawyers for Civil Justice files this brief pursuant to Rule 29 of the Federal Rules of Appellate Procedure.

## RULE 29(a)(4)(E) STATEMENT

Counsel certifies that no party's counsel authored this brief in whole or in part, no party or party's counsel contributed money that was intended to fund preparing or submitting this brief, and no person or entity other than the amicus curiae, its members, or its counsel contributed money that was intended to fund preparing or submitting this brief.

## SUMMARY OF ARGUMENT

The rule could not be clearer.  Federal Rule of Evidence 502(d) permits a district court to "order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court." Fed. R. Evid. 502(d).  Rule 502(d) imposes no conditions, requires no special wording, and does not mention or reference either Rule 502(b) or "inadvertent."  Despite Rule 502(d)'s plain text, the district court below refused to apply the non-waiver protection of an order entered under Rule 502(d) because it required the operative order to contain "concrete directives" disavowing Rule 502*(b)*'s standards.  This decision improperly qualifies Rule 502(d)'s plain and simple language, frustrates the Rule's purpose, lacks a statutory-interpretation analysis, and misreads precedent, resulting in the unpredictable loss of undisputed privilege protections.

Federal Rule of Evidence 502 was adopted, in part, to resolve then-existing differences in how federal district courts applied waiver principles to disclosure of protected information during ESI productions by supplying "a predictable, uniform set of standards under which parties can determine the consequences of a disclosure of a communication or

information covered by the attorney-client privilege or work-product protection." Fed. R. Evid. 502 advisory committee's notes. The desire to bestow predictability to the non-privilege-waiver doctrine comports with federal courts' mandate to provide predictability and certainty to establishing and maintaining the attorney-client privilege in the first instance. *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981) ("An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.").

Rule 502(d)'s plain and clear language grants that predictability, so long as the rule is not subject to "widely varying applications by the courts." Most courts apply a proper statutory-interpretation analysis to Rule 502(d), apply the rule's plain and unambiguous text, and hold that a Rule 502(d) order does not require language expressly superseding Rule 502(b)'s inadvertent-disclosure standards or any other prerequisite. Other courts require non-waiver orders or agreements to specifically renounce 502(b)'s standards through so-called "concrete directives." This alternative rule, however, typically appears in cases where the parties submit inartfully drafted or ambiguous claw-back agreements or other

6

agreed orders that leave courts uncertain whether the order is even a Rule 502(d) order in the first place.

Subsequent district courts transferred the "concrete directives" requirement to situations where they had entered orders containing clear Rule 502(d) provisions but did so without conducting a statutory-interpretation analysis or discussing Rule 502(d)'s purpose. This domino effect reached the district court's reasoning here. The court did not mention Rule 502(d)'s purpose or employ a statutory-interpretation review of Rule 502(d) to ascertain whether Rule 502(d) imposes pre-conditions to its enforceability. Instead, it primarily relied upon *Great-West Life & Annuity Insurance Company v. American Economy Insurance Company*, No. 2:11-cv-02082-APG-CWH, 2013 WL 5332410 (D. Nev. Sept. 23, 2013), in holding that Rule 502(b) applies unless the order contains "concrete directives." But this reliance is untenable as the *Great-West* court held the opposite, expressly disagreeing that an order "entered into under Rule 502(d) or (e) requires 'concrete directives.'" *Great-W.*, 2013 WL 5332410, at *12.

This "widely varying application" needs resolution, and Amazon.com, Inc.'s petition presents a rare opportunity for a circuit court

of appeals to provide parties and their lawyers with the privilege and non-privilege-waiver predictability that Rule 502(d) sought to achieve. Lawyers for Civil Justice urges the Court to grant the mandamus petition, reverse the district court's decision, and rule that Federal Rule Evidence 502(d) means what it says—a court's Rule 502(d) order supplies non-waiver protection for any disclosure made within the pending litigation without imposing "concrete directives," disavowal of Rule 502(b)'s standards, or any other prerequisite.

## ARGUMENT

**I. Federal Rule of Evidence 502(d)'s plain language, history, and purpose support predictable and certain privilege protection through an unconditional non-waiver rule.**

1. Rule 502 assures litigants that courts will apply the attorney-client privilege in a predictable and certain manner. *See* Fed. R. Evid. 502. The rule first creates a default non-waiver standard to govern inadvertent disclosures. Under this standard, "disclosure does not operate as a waiver in a federal or state proceeding if: (1) the disclosure is inadvertent; (2) the holder of the privilege took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error." *Id.* 502(b). The rule then authorizes the district court to enter non-waiver orders that supplant this default standard: "A federal court may order that the privilege or protection *is not waived by disclosure* connected with the litigation pending before the court." *Id.* 502(d) (emphasis added). The rule's internal logic is straightforward—it creates a default standard for inadvertent disclosure, yet permits the court to obviate that default standard via an order entered under Rule 502(d) that the attorney-client privilege "is not waived by disclosure" regardless of the circumstances. *Id.*

2. Congress enacted Rule 502 to resolve "longstanding disputes in

9

the courts about the effect of certain disclosures . . . . protected by the attorney-client privilege." Fed. R. Evid. 502 advisory committee's notes; *see also Hopson v. Mayor & Cty. of Baltimore*, 232 F.R.D. 228, 235–36 (D. Md. 2005) (outlining the different standards applied prior to Rule 502's adoption). The rule was specifically designed to "provide a predictable, uniform set of standards under which parties can determine the consequences of disclosure of communications or information covered by the attorney-client privilege or work-product protection." Fed. R. Evid. 502 advisory committee notes; *see* S. Rep. No. 110-264, at 3 (2008) ("The bill . . . . provid[es] a predictable and consistent standard to govern the waiver of privileged information."); 154 Cong. Rec. 18,016 (2008) (remarks of Rep. Jackson Lee) ("Only a uniform rule can bring the certainty needed, and a uniform rule in the area of evidentiary privileges can only be achieved by an act of Congress."). The effect and purpose of Rule 502 is clear; it creates a "predictable set of rules" regarding waiver, while also authorizing "agreements [that] limit the effect of waiver." *See* Lawyers for Civil Justice, Proposed Revisions to Rule 502, Comments to the Advisory Committee on Evidence Rules of the Judicial Conference of the United States (Jan. 5, 2007), https://www.uscourts.gov/sites/default/

10

files/fr_import/06-EV-050.pdf.

## II. Rule 502(d) does not require express disavowal of Rule 502(b) or any other prerequisite for its application and enforcement.

1. Some courts—including the district court below—have imposed rigid, formulistic, and atextual prerequisites on the enforcement of a Rule 502(d) order. In particular, these courts hold that Rule 502(b) remains in effect unless a Rule 502(d) order expressly disavows application of each prong of the default waiver standard. *See e.g.*, Dkt. 329 ("The Protective Order, approved of by this Court, does not 'articulate the desire' to forgo the Rule 502(b) waiver analysis."); *Irth Sols., LLC v. Windstream Comms. LLC*, 2:16-cv-219, 2017 WL 3276021, at *11 (S.D. Ohio Aug. 2, 2017).

2.a. This misguided interpretation of Rule 502 has no basis in the rule's text. Nowhere within Rule 502 does it state—or even come close to suggesting—that a Rule 502(d) order must explicitly disavow application of Rule 502(b). Indeed, the plain language of Rule 502(d) is plain and clear: "A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court." Fed. R. Evid. 502(d). There is nothing in this language that indicates Rule 502(d) orders must contain "magic words" to be effective.

11

To the contrary, it is hard to see how the Rule could be any simpler; if a Rule 502(d) order states that privilege "is not waived by disclosure," then privilege *is not waived by disclosure*. Had Congress intended additional requirements or preconditions then it could have easily included them within Rule 502(d). The decision not to is dispositive. *See Avendano-Ramirez v. Ashcroft*, 365 F.3d 813, 818 (9th Cir. 2004) ("[W]e must presume that Congress said what it meant and meant what it said."); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("[T]he text of a rule . . . limits judicial inventiveness.").

2.b.  But even if that conclusion were in doubt, it is confirmed by the Advisory Committee's Notes to Rule 502(d): "[T]he court order may provide for return of documents without waiver irrespective of the care taken by the disclosing party; the rule contemplates enforcement of 'claw back' . . . arrangements as a way to avoid the excessive costs of pre-production review for privilege." Fed. R. Evid. 502 advisory committee notes. The rule clearly contemplates that courts will enter non-waiver orders pursuant to Rule 502(d), and then interpret and enforce those orders without regard to Rule 502(b). And that makes good sense—it would be illogical to presume that a court would enter a Rule 502(d) order

12

with the intent for Rule 502(b)'s default standard to apply. Indeed, the fact that the court entered a Rule 502(d) order in the first place establishes intent to replace the default waiver standard with a different rule.

3. There is simply no basis for imposing additional prerequisites on Rule 502(d). The Sedona Conference, *Commentary on the Effective Use of Federal Rule of Evidence 502(d) Orders*, 23 Sedona Conf. J. 1, at 24 ("This *Commentary* takes the view that an explicit disclaimer of Rule 502(b) is unnecessary because the language of 502(d) stands on its own."); Paul W. Grimm, Lisa Yurwit Bergstrom & Matthew P. Kraeuter*, Federal Rule of Evidence 502: Has It Lived Up to Its Potential?,* XVII Rich. J.L & Tech. 8, at 63 (2011) ("Although Rule 502(d) and (e) and the accompanying Advisory Committee's Note appear straightforward, some courts have engrafted onto them a 'reasonableness' test that clearly is not contemplated by the rule itself."). Consistent with the text, history, and purpose of Rule 502, courts must instead interpret and enforce Rule 502(d) orders in accord with their plain language and ordinary meaning. *See, e.g.*, *City of Hartford v. Chase*, 942 F.2d 130, 134 (2d Cir. 1991) ("Because the Confidentiality Order was part of a court-approved

agreement, it must be construed according to general principles of contract law.").

### III. Most courts correctly hold that a Rule 502(d) order completely supplants Rule 502(b) based on Rule 502(d)'s plain language and stated intent.

1. Most courts recognize that the plain text of Rule 502(d) "does not contain or support such rigid, formulaic requirements" as a "concrete directive" about each prong of Rule 502(b) in a Rule 502(d) order. *See Great-W. Life & Annuity Ins. Co. v. Am. Econ. Ins. Co.*, No. 2:11-cv-02082-APG-CWH, 2013 WL 5332410, at *12 (D. Nev. Sept. 23, 2013); *see also United Physician Grp., LLC v. Leche*, 742 F. Supp. 3d 1251, 1258 (N.D. Ga. 2024). A Rule 502(d) order therefore need not detail exactly "what constitutes inadvertence, what precautionary measures are required, and what the producing party's postproduction responsibilities are to escape waiver." *See Great-W.*, 2013 WL 5332410, at *12; *see also RIPL Corp. v. Google Inc.*, 2:12-cv-02050-RSM, 2013 WL 6632040, at *4. Courts can, and most do, determine the meaning of a Rule 502(d) order, including whether it displaces Rule 502(b), through ordinary contract-interpretation principles, consistent with Rule 502(d)'s stated purpose of allowing parties to contract around the default rule under Rule 502(b)

14

and the practical reality that parties negotiate most Rule 502(d) orders and then incorporate them into a broad court order. *See* Fed. R. Evid. 502 advisory committee notes ("the rule contemplates enforcement of 'claw-back' and 'quick peek' arrangements"); *see also Chase*, 942 F.2d at 134 ("Because the Confidentiality Order was part of a court-approved agreement, it must be construed according to general principles of contract law."). Under contract-interpretation rules, most courts rule that a Rule 502(d) order does not incorporate Rule 502(b) because Rule 502(b) applies without any Rule 502(d) order, thereby making a Rule 502(d) order that incorporates Rule 502(b) superfluous. *See, e.g., Great-W.*, 2013 WL 5332410, at *14 ("It is not a plausible interpretation for the parties to have negotiated an agreement that Rule 502(b) applies when it applies as a default absent an agreement otherwise."). Moreover, most courts find that a Rule 502(d) order that is silent on one or more of Rule 502(b)'s prongs imposes no requirement on that topic, which is consistent with the general rule that courts should only look within the four corners of the agreement when interpreting the parties' intent. *See Great-W.*, 2013 WL 5332410, at *14; *see also Brookfield Asset Mgmt., Inc. v. AIG Fin. Prods. Corp.*, No. 09 Civ. 8285(PGG)(FM), 2013 WL 142503, at *1

15

(S.D.N.Y. Jan. 7, 2013) ("AIG has the right to claw back [privileged documents], no matter what the circumstances giving rise to their production were."). Indeed, it is common for parties to, for example, negotiate Rule 502(d) orders simply stating that disclosure shall not waive any privilege, which indicate a clear desire by the parties to obviate Rule 502(b)'s requirements, notwithstanding a lack of "concrete directives." *See In re Testosterone Replacement Therapy Prods. Liab. Litig.*, 301 F. Supp. 3d 917, 925 (N.D. Ill. 2018) ("the parties' protective order governs inadvertent disclosures; Rule 502(b) does not"); *Leche*, 742 F. Supp. 3d at 1259 ("The Court agrees with Defendants that the [protective order's] plain terms, unadulterated by FRE 502(b), govern this dispute."); *Great-W.*, 2013 WL 5332410, at *13.

2. Courts that have decided this issue correctly also often focus on Rule 502(d)'s policy objectives. *See RIPL Corp.*, 2013 WL 6632040, at *3; *see also Rajala v. McGuire Woods LLP*, No. 08-2638-CM-DJW, 2013 WL 50200, at *5 (D. Kan. Jan. 3, 2013). These courts recognize that allowing the parties to work out how to handle disclosures of privileged information themselves furthers these objectives by allowing them "to conduct and respond to discovery expeditiously, without the need for

16

exhaustive pre-production privilege reviews, while still preserving each party's right to assert the privilege to preclude use in litigation of information disclosed in such discovery." *See Absolute Activist Value Master Fund Ltd. v. Devine*, 262 F. Supp. 3d 1312, 1321 (M.D. Fla. 2017) (quoting Fed. R. Evid. 502 advisory committee notes). Moreover, to the extent parties agree that disclosure does not waive privilege regardless of the precautions taken to prevent disclosure and/or the steps taken to rectify the disclosure, as parties commonly do, a Rule 502(d) order also avoids disputes over whether such measures were reasonable, thereby conserving both the parties' and courts' resources. *See Leche*, 742 F. Supp. 3d at 1257; *RIPL Corp.*, 2013 WL 6632040, at *3; *Great-W.*, 2013 WL 5332410, at *14.

3.   For these reasons, courts around the country recognize that requiring "concrete directives" or other "magic words" to supplant Rule 502(b) would frustrate the purpose of Rule 502(d)—allowing the parties to create certainty about what happens in the event of a disclosure by contracting around the possibility of a court finding that disclosure was not inadvertent, that a party did not take reasonable precautions, or that the disclosing party did not take reasonable steps to rectify the

17

disclosure. *See, e.g.*, *Hubbard v. Google LLC*, No. 19-cv-07016-BLF (SVK), 2024 U.S. Dist. LEXIS 4676, at *6 (N.D. Cal. Jan. 9, 2024) ("A practical utility of a 502(d) order is to allow timely production of vast volumes of documents by providing a means for retrieving privileged documents outside of the circumstances set forth in 502(b). Requiring that the elements of 502(b), including inadvertence, be satisfied to allow clawback largely undoes this benefit."); *Arconic Inc. v. Novelis Inc.*, 17-1434, 2019 WL 911417, at *3 (W.D. Pa. Feb. 26, 2019) ("This court encourages parties in virtually all civil cases to adopt Rule 502(d) orders because they generally save time and money and reduce disputes."); *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 418 (N.D. Ill. 2006) ("The obvious purpose of the protective order was to avoid the uncertainty that would have existed without it.").

4.a.  To be sure, even courts eschewing "concrete directives" or other preconditions recognize that a Rule 502(d) order "must adequately articulate the desire to supplant analysis under Rule 502(b)." *See Great-W.*, 2013 WL 5332410, at *13. Indeed, the cases declining to apply a Rule 502(d) order in favor of applying Rule 502(b) "generally come[ ] down to poorly drafted claw back agreements" that do not demonstrate that the

parties intended to supplant Rule 502(b). *See Great-W.*, 2013 WL 5332410, at *12. For example, in one of the two cases cited in *Great-W.*, the "court-approved agreement between the parties" said that, if a privilege dispute arises, it "must be judicially resolved pursuant to '[Rule] 502'" without specifying which provision(s) of Rule 502 governs. *See U.S. Home Corp. v. Settlers Crossing, LLC*, No. DKC 08-1863, 2012 WL 3025111, at *2, 6 (D. Md. July 23, 2012). In the other case, the relevant portions of the jointly submitted order at issue did not reference Rule 502 at all. *See United States v. Sensient Colors, Inc.*, No. 07-1275 (JHR/JS), 2009 WL 2905474, at *2 n.4 (D.N.J. Sept. 9, 2009).

4.b. The *Great-W.* court, however, held that the Rule 502(d) order at issue demonstrated the parties' intent to supplant Rule 502(b) because, instead of "speak[ing] in broad generalities regarding waiver," it (1) "expressly states that waiver will not occur" in the event of a disclosure, and (2) "outlines specific action required from the receiving party when it receives information subject to a claim of privilege after" a production, namely, that the privileged documents "shall be immediately returned upon discovery by the recipient." *See Great-W.*, 2013 WL 5332410, at *13. The court therefore found that "the common sense

19

interpretation of the claw back provisions at issue supports the conclusion that the parties had an agreement" that "produced documents subject to a claim of privilege . . . must be returned without waiver to the disclosing party regardless of the care taken by the disclosing party." *See id.* So, while "the inclusion of plain language articulating the parties['] desire to supplant [Rule] 502(b)" may be "advisable" for purposes of ensuring the parties' intent to do so is evident, it is not required as a matter of law—only that the parties intended to supplant Rule 502(b). *See id.* at *12.

5. Here, the ESI Protocol expressly states that "the production of any documents in this proceeding shall not . . . constitute a waiver by the producing party of any privilege" and "[i]nformation produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party." A5. Even the Protective Order that the district court applied states that "the disclosure of privileged material in connection with this litigation does not operate as a waiver . . . of any privilege applicable to those documents," A6, language that courts around the country have had no trouble interpreting in the context of a Rule 502(d) order. *See In re Testosterone Replacement*

20

*Therapy Prods. Liab. Litig.*, 301 F. Supp. 3d at 925; *Leche*, 742 F. Supp. 3d at 1259; *Great-W.*, 2013 WL 5332410, at *13.  It is therefore clear what the parties in this case intended, notwithstanding a purported lack of "concrete directives" on each of Rule 502(b)'s prongs—that disclosure of privileged documents does not waive the privilege.  There is thus no need to require any "concrete directives" or any other "magic words."

**IV.  The unsupportable concept of Rule 502(d) implicitly requiring preconditions arose from inartfully drafted Rule 502(b) claw-back agreements that courts interpreted and later commingled with Rule 502(d), which manifested in the district court's inaccurate reliance on prior authority.**

1.  Courts applying the "concrete directives" approach only find that a Rule 502(d) order supplants Rule 502(b) in its entirety if the Rule 502(d) order explicitly articulates a desire to obviate all three prongs under Rule 502(b).  *See Irth Sols., LLC v. Windstream Commc'ns. LLC*, No. 2:16-cv-219, 2017 WL 3276021, at *12 (S.D. Ohio Aug. 2, 2017).  Under this approach, even expressly disavowing one or two of Rule 502(b)'s three prongs is insufficient to supplant Rule 502(b); if the Rule 502(d) order does not specifically disavow all three prongs, a court will fill the perceived gaps in it with any of Rule 502(b)'s remaining prongs.  *See id.* at *11.

21

2.a.  Courts requiring "concrete directives" do not typically focus on Rule 502(d)'s plain language or clear intent. Instead, courts requiring "concrete directives" appear to be frustrated with, or confused by, inartfully drafted claw-back agreements.  For example, some courts have stated that it was unclear whether the parties intended to supplant Rule 502(b) because the parties did not clearly label a single paragraph in a dense order as a "claw-back provision," did not expressly repudiate Rule 502(b), and/or did not explicitly invoke Rule 502(d).  *See, e.g.*, *Sensient Colors*, 2009 WL 2905474, at \*2; *United States v. United Health Grp., Inc.*, No. CV 16-8697 FMO (SSx), 2020 WL 10731257, at \*3 (C.D. Cal. Nov. 9, 2020); *Settlers Crossing*, 2012 WL 3025111, at \*6.

2.b.  While district courts may wish parties were clearer in the protective orders, ESI orders, or discovery plans, that does not change the fact that Rule 502(d)'s plain language and stated intent do not require any "concrete directives" or other "magic words."  To the extent a court must interpret a Rule 502(d) order that does not explicitly address each of the Rule 502(b) prongs, basic principles of contractual interpretation hold that the parties did not intend to impose any requirement on that topic.  To graft onto Rule 502(d) a requirement of explicitly addressing

22

each prong of Rule 502(b) would frustrate Rule 502(d)'s very purpose—allowing the parties to decide how to handle disclosures.

3.a.  Some cases declining to apply an applicable Rule 502(d) order also prioritize their own concerns over the plain language and stated intent of Rule 502. Some courts appear sensitive to the possibility that Rule 502(d) orders can incentivize "sloppy attorney review and improper disclosure," which in turn incentivizes discovery disputes over claw-back attempts and attorneys being careless with their clients' privileged information. *See Sensient Colors*, 2009 WL 2905474, at *2; *see also Irth Sols.*, 2017 WL 3276021, at *12 ("The Court rejects" the argument that the applicable Rule 502(d) order protected against waiver "irrespective of counsel's actions" in part because "[t]o find otherwise would undermine the lawyer's responsibility to protect the sanctity of the attorney-client privilege").

3.b.  These concerns are not relevant in interpreting the plain language of Rule 502(d).  And the drafters of Rule 502 explicitly rejected these concerns.  Rule 502 "seeks to provide a predictable, uniform set of standards under which *parties can determine the consequences of a disclosure*" in order to "avoid the excessive costs of pre-production review

23

for privilege and work product." Fed. R. Evid. 502 advisory committee note (emphasis added). The Advisory Committee cited a case in which the court held the parties could "forego privilege review altogether in favor of an agreement to return inadvertently produced privileged documents." *Id.* (citing *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 290 (S.D.N.Y. 2003)). Courts requiring "concrete directives" because of concerns of "sloppy attorney review and improper disclosure" are therefore elevating their own concerns—already rejected by the drafters of Rule 502–over the plain language and stated intent of Rule 502(d).

4.a. These erroneous considerations manifested themselves in the district court's orders in this case. Even under the Protective Order that the district court held was the operative Rule 502(d) order, the parties agreed that "the disclosure of privileged material in connection with this litigation does not operate as a waiver . . . of any privilege applicable to those documents." A19. This language almost mirrors Federal Rule of Evidence 502(d). *Compare id. with* Fed. R. Evid. 502(d) ("A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court"). But the district court appears to have been apprehensive of allowing Amazon "to claw

24

back a document under any circumstances" despite the Protective Order's clear language. A20. Therefore, the district court ignored the Protective Order's plain language and rendered it superfluous to hold that, under Rule 502(b), a disclosure could, and in this case did, waive the privilege.

4.b. Moreover, the two cases upon which the district court relied to impose a "concrete directives" requirement do not support that proposition. A20. The first case, *United Health*, cited only one case for its holding that a party may only supplant Rule 502(b) with a protective order that includes "concrete directives"—*Great-West*. *See United Health*, 2020 WL 10731257, at *3. But *Great-West* rejects the notion that Rule 502(d) requires "concrete directives." 2013 WL 5332410, at *12 ("The court respectfully disagrees that an order or agreement entered into under Rule 502(d) or (e) requires 'concrete directives'"). The other case upon which the district court relied, *Brown v. Google LLC*, in turn relies only on the faultily reasoned *United Health* for its "concrete directives" rule. No. 20-cv-03664-YGR (SVK), 2022 WL 12039375, at *5–6 (N.D. Cal. Oct. 20, 2022). Moreover, the facts of *Brown* are inapposite to those here because the disclosing party in *Brown* did not inadvertently disclose the privileged documents—it affirmatively used them in its own filings and

25

then tried to claw them back, meaning that the case turned on the objecting party's use of privileged information rather than their inadvertent disclosure during discovery. *See id.* at \*6; *see also Hubbard* 2024 U.S. Dist. LEXIS 4676, at \*6 (Judge Van Keulen, who also decided *Brown v. Google*, stating that "[a] practical utility of a 502(d) order is to allow timely production of vast volumes of documents by providing a means for retrieving privileged documents outside of the circumstances set forth in 502(b). Requiring that the elements of 502(b), including inadvertence, be satisfied to allow clawback largely undoes this benefit.").

5. At bottom, the district court's application of Rule 502(b) ignores the plain language and stated purpose of Rule 502(d). Most district courts to have considered the issue have correctly held that a Rule 502(d) order need not contain any "magic words" to displace Rule 502(b). Certain district courts' demands of "concrete directives" are legally unfounded and leave parties uncertain whether district courts will properly apply a Rule 502(d) order, defeating the very purpose of Rule 502(d)—allowing the parties to contract around Rule 502(b), providing certainty, and conserving valuable time and resources. Lawyers for Civil

26

Justice therefore respectfully requests that the Court grant mandamus and reverse the district court's order.

## V. The attorney-client privilege sustains the public policy of encouraging corporate entitles to obtain optimal legal advice and courts should fulfill this purpose by giving clients and their lawyers predictability as to whether privilege waiver can ever occur under a Rule 502(d) order.

1.a.  The purpose of the attorney-client privilege "is to encourage full and frank communication" between clients and their lawyers and thereby "promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  A lawyer's sound, optimal legal advice "depends upon the lawyer's being fully informed," *id.*, because, "[a]s a practical matter, if the client knows that damaging information could more readily be obtained from the attorney following disclosure . . . the client would be reluctant to confide in his lawyer and it would be difficult to obtain fully informed legal advice." *Fisher v. United States*, 425 U.S. 391, 403 (1976). Accordingly, the attorney-client privilege is "central to the legal system and the adversary process and thus deserving of unique protection in the court." *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1095 (9th Cir. 2007), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*,

558 U.S. 100 (2009) (internal quotations omitted).

1.b.    Over forty years ago, the United States Supreme Court recognized that corporate entities face a "vast and complicated array of regulatory legislation" and need their lawyers' advice "to find out how to obey the law." *Upjohn*, 449 U.S. at 392.  If corporate entities and their lawyers faced a "vast and complicated array" of legal issues when *Upjohn* was decided, *id.*, then they must confront exponentially greater challenges in today's regulatory environment.  *See* Hon. Justin R. Walker, *The Kavanaugh Court and the Schechter-to-Chevron Spectrum*, 95 Ind. L.J. 923, 930 (2020) (stating that "the ratio of the number of pages of legally binding regulations promulgated in one year by administrative agencies versus the number of pages of legislation passed by Congress . . . is approximately 100:1").  Because of these challenges, corporate clients, "unlike most individuals, constantly go to lawyers to find out how to obey the law . . . particularly since compliance with the law in this area is hardly an instinctive matter." *Upjohn*, 449 U.S. at 392.

2.  If the purpose of the attorney-client privilege is to be served— and, by extension, the "public interests in the observance of law and administration of justice" are to be advanced—then "the attorney and

client must be able to predict with some degree of certainty whether particular discussions will be protected." *Upjohn*, 449 U.S. at 389, 393; *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 183 (2011) ("For the attorney-client privilege to be effective, it must be predictable."). Indeed, "[a]n uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." *Upjohn*, 449 U.S. at 393. That is why this Court has recognized that "where attorney-client privilege is concerned, hard cases should be resolved in favor of the privilege, not in favor of disclosure." *United States v. Mett*, 178 F.3d 1058, 1065 (9th Cir. 1999).

3. Put simply, a certain and predictable non-waiver rule is essential to the continued effectiveness of the attorney-client privilege. That is exactly what the rules committee intended to accomplish when it drafted Rule 502. However, the adoption and application of additional, atextual preconditions on Rule 502(d) has undermined that purpose and reinjected uncertainty into privilege protection. Thus, to ensure that the attorney-client privilege remains viable, Lawyers for Civil Justice urges the Court to grant mandamus and rule that 502(d) means what its plain text says. If a Rule 502(d) order states that privilege "is not waived by

29

disclosure," then the privilege *is not waived by disclosure*. There is simply no requirement that the order contain "concrete directives," express disavowal of Rule 502(b), or any other precondition to be effective.

## **CONCLUSION**

Lawyers for Civil Justice respectfully requests that this Court GRANT mandamus and REVERSE the District Court's order.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 25-3099

I am the attorney or self-represented party.

**This brief contains** | 5,065 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

● is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [                    ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ E. Todd Presnell | **Date** | June 4, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I certify that on June 4, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system, serving all counsel of record.

DATED: June 4, 2025.

Respectfully submitted,

*s/ E. Todd Presnell*
E. Todd Presnell
Adam G. Williams
Zachary S. June
Casey L. Miller
Bradley Arant Boult Cummings LLP
1221 Broadway, Suite 2400
Nashville, Tennessee 37203
615.244.2582
tpresnell@bradley.com

*Attorneys for Amicus Curiae*
Lawyers for Civil Justice

33