## No. 25-3099

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

IN RE AMAZON.COM, INC.,

AMAZON.COM, INC., a Delaware corporation,
*Defendant-Petitioner,*

v.

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON,
*Respondent,*

ELIZABETH DE COSTER, *et al.,*
*Real Parties in Interest,*
(No. 2:21-cv-00693-JHC)

DEBORAH FRAME-WILSON, *et al.,*
*Real Parties in Interest,*
(No. 2:20-cv-00424-JHC)

CHRISTOPHER BROWN, *et al.,*
*Real Parties in Interest.*
(No. 2:22-cv-00965-JHC)

ON PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON, NOS. 2:21-CV-00693-JHC,
2:20-CV-424-JHC, AND 2:22-CV-00965-JHC | HONORABLE JOHN H. CHUN

## REPLY BRIEF FOR PETITIONER

C. Frederick Beckner III
rbeckner@sidley.com
Peter A. Bruland
pbruland@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
(202) 736-8000

Sean A. Commons
scommons@sidley.com
David R. Carpenter
drcarpenter@sidley.com
Collin P. Wedel
  *Counsel of Record*
cwedel@sidley.com
SIDLEY AUSTIN LLP
350 S. Grand Ave.
Los Angeles, CA 90071
(213) 896-6000

*Counsel for Petitioner Amazon.com, Inc.*

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................. ii

INTRODUCTION ..................................................................... 1

ARGUMENT ........................................................................ 3

    I.    IT WAS CLEAR ERROR TO APPLY RULE 502(b). ...... 3

        A.    It was clear error to find that Amazon opted out of Rule 502(d). ................................................. 4

        B.    It was clear error to artificially limit the scope of Rule 502(b)(1). ....................................... 12

            1.  It was clear error to refuse to consider all pertinent facts bearing on inadvertence…..13

            2.  It was clear error to narrow the meaning of "inadvertent"…………………………………15

            3.  Properly analyzed, the Rule 502(b) factors are satisfied…………………………………16

    II.    GRANTING MANDAMUS WILL PROMOTE CONSISTENCY ON RECURRING PRIVILEGE ISSUES. ....................................................... 17

    III.    MANDAMUS IS THE ONLY MEANINGFUL RELIEF AVAILABLE TO AVOID PREJUDICE THAT CANNOT BE CURED ON POST-JUDGMENT APPEAL…………………………… 18

CONCLUSION................................................................ 20

CERTIFICATE OF COMPLIANCE…………………………………21

CERTIFICATE OF SERVICE…………………………………………22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Admiral Ins. Co. v. U.S. Dist. Ct.*,
881 F.2d 1486 (9th Cir. 1989) .................................................... 19

*Am. Nat'l Bank & Tr. Co. of Chicago v.
Equitable Life Assur. Soc'y of U.S.*,
406 F.3d 867 (7th Cir. 2005) .................................................... 16

*Boshears v. PeopleConnect, Inc.*,
748 F. Supp. 3d 1017 (W.D. Wash. 2024) ................................ 10

*Carmody v. Bd. of Trs. of Univ. of Ill.*,
893 F.3d 397 (7th Cir. 2018) .................................................... 15

*Cmty. House, Inc. v. City of Boise*,
490 F.3d 1041 (9th Cir. 2007) .................................................. 14

*In re Copley Press, Inc.*,
518 F.3d 1022 (9th Cir. 2008) .................................................. 19

*In re Grand Jury*,
23 F.4th 1088 (9th Cir. 2021) ................................................... 16

*Great-W. Life & Annuity Ins. Co. v. Am. Econ. Ins. Co.*,
2013 WL 5332410 (N.D. Cal. Sept. 23, 2013) ...................... 9, 10

*Hernandez v. Tanninen*,
604 F.3d 1095 (9th Cir. 2010) .................................................. 19

*JES Farms P'ship v. Indigo Ag Inc.*,
116 F.4th 733 (8th Cir. 2024) .................................................... 8

*United States v. Johnson*,
43 F.3d 1308 (9th Cir. 1995) .................................................... 10

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*,
529 F.3d 371 (7th Cir. 2008) .................................................... 16

*Mohawk Indus., Inc. v. Carpenter,*
    558 U.S. 100 (2009) ...................................................................... 18

*NLRB v. Noel Canning,*
    573 U.S. 513 (2014) ........................................................................ 5

*Roberts v. Sea-Land Servs., Inc.,*
    566 U.S. 93 (2012) ....................................................................... 10

*Schuman v. Microchip Tech. Inc.,*
    2025 WL 1584981 (9th Cir. June 5, 2025) ............................... 13

*Sia Chue Yang v. Schwarzenegger,*
    2010 WL 11587074 (N.D. Cal. May 12, 2010) ........................ 12

*Sleep Number Corp. v. Young,*
    2021 WL 5644322 (D. Minn. Dec. 1, 2021) ............................. 15

*Tahoe Reg'l Plan. Agency v. McKay,*
    769 F.2d 534 (9th Cir. 1985) ..................................................... 10

*Taylor v. Sturgell,*
    553 U.S. 880 (2008) ..................................................................... 20

*In re U.S. Dep't of Educ.,*
    25 F.4th 692 (9th Cir. 2022) ...................................................... 13

*United Physician Grp., LLC v. Leche,*
    742 F. Supp 3d 1251 (N.D. Ga. 2024) ........................................ 9

*United States v. 1.377 Acres of Land,*
    352 F.3d 1259 (9th Cir. 2003) ...................................................... 7

*United States v. Bear,*
    439 F.3d 565 (9th Cir. 2006) ....................................................... 4

*United States v. Mett,*
    178 F.3d 1058 (9th Cir. 1999) ................................................... 12

*Whitman v. Am. Trucking Ass'ns,*
    531 U.S. 457 (2001) ..................................................................... 11

*Wilson v. Clark*,
372 F. App'x 745 (9th Cir. 2010) ................................................... 6

*Wolpert v. Branch Banking Tr. & Co.*,
2023 WL 2731083 (E.D. Tenn. Mar. 30, 2023) ......................... 15

**Rules**

Fed. R. Evid. 502(b) ........................................................................... 8

Fed. R. Evid. 502(d) ........................................................................... 7

**Other Authority**

U.S. Dist. Ct. for the Dist. of N.J., *Model Confidentiality Order*.. 17

# INTRODUCTION

Amazon's petition raises issues of clear legal error on matters of exceptional importance both in this case and in litigation throughout the Circuit. Just as the unfettered provision of legal advice is essential to how businesses operate, so, too, is ensuring that privilege over that advice is stripped only when clearly warranted. Those principles animate the uncontroversial practice of clawbacks in thousands of cases involving the discovery of electronically stored information ("ESI").

The ruling below failed to apply those core principles, adopting a series of tests weighted toward defeating privilege. If left to stand, the ruling threatens standard conventions regarding clawbacks of privileged documents. The logic of the ruling will unreasonably destroy the privilege in this and numerous other disputes. Amazon's petition raises two important and recurring legal issues warranting mandamus review: (1) what standards apply when deciding whether a protective order adequately invokes the protection of Rule 502(d) (*i.e.*, whether special language is required); and (2) whether a human reviewer's misjudgment can categorically preclude a finding of "inadvertence."

Rather than grapple with those clear legal issues, plaintiffs instead push this Court to focus on a series of irrelevant and un-

founded issues, ranging from extra-record (and incomplete) drafting history to (baseless) challenges to Amazon's separate privilege determinations for documents not at issue here. Their efforts to distract this Court confirm they have little to offer on the determinative legal issues.

● As to the protective-order ruling: The district court adopted a new linguistic standard to find the Protective Order insufficient to invoke Rule 502(d)'s anti-waiver provisions, despite the Order unambiguously invoking that rule and stating that disclosure "*does not operate as a waiver*." A79 (emphasis added). Plaintiffs' response boils down to the premise Amazon either purposefully or accidentally "agreed" to give up protections over millions of documents just to end up with a standard that would have applied *absent* any agreement. The first theory defies common sense; the second cannot be squared with express language in the Order and would nullify the core purpose of 502.

● As to the inadvertence portion of the ruling: plaintiffs play semantic games over whether the production was truly a "mistake," but do not meaningfully defend the test adopted below, which categorically *excludes* human error inherent in large productions from Rule 502(b)'s inadvertence standard. The district court's test

2

thus has sweeping implications for this and other cases, and it conflicts with Congress's directives to protect privilege while making e-discovery less burdensome.

Plaintiffs' distractions also do not call into question that these issues warrant mandamus review. This is not just a case about the negotiation of one protective order and the clawback dispute over three documents. Rather, as Amazon and *amici* have emphasized, the petition raises vital questions about privilege and waiver in an e-discovery context that impacts litigants across the Circuit every day, and it challenges a ruling that will continue to harm Amazon in this case and the coordinated cases in ways that cannot be vindicated on appeal. Mandamus is needed.

## ARGUMENT

## I.   IT WAS CLEAR ERROR TO APPLY RULE 502(b).

The district court held the ESI Protocol and Protective Order were intended to do what Rule 502(b) already provides in the absence of any agreements: impose a burdensome "inadvertence" regime for mistakenly produced documents. This implausible result rests on independent and fundamental legal errors. Pet. 16–24. Plaintiffs offer new justifications for these errors, but none withstands scrutiny.

## A.    It was clear error to find that Amazon opted out of Rule 502(d).

Rule 502(b)'s "inadvertence" standard should not control. The district court's ruling below rests on twin errors: (1) misinterpreting the Protective Order to negate the ESI Protocol and (2) reading Rule 502(d) out of the Protective Order altogether. Pet. 16–24.

1.    To start, no deference is owed to an interpretation of a stipulated protective order. *Cf.* Answering Brief ("AB") 19–24. "[I]nterpretation of stipulations is … an issue of law reviewed de novo." *United States v. Bear*, 439 F.3d 565, 571 (9th Cir. 2006).

2.    On the merits, plaintiffs advocate for a clearly erroneous interpretation of the Protective Order that requires concluding that it was intended to nullify—rather than supplement—the ESI Protocol. Plaintiffs' reading depends on two fictions and a logical fallacy.

a.    The first fiction is that the Protective Order's carve-out for an "agreement that provides for production without prior privilege review" somehow limits the parallel carve-out for "e-discovery order[s]" to only those dealing with "production without prior privilege rule." AB 21–23. That is a clear violation of the "last antecedent" principle. Pet. 19–20.

Plaintiffs try to paper over that rule as one that is not iron-clad, insisting it would be "reasonable" in a two-item list to simply

infer that "without prior privilege review" modified both items. *See* AB 22–23. Amazon's reading is more natural. In an effort to *supplement* protections for privileged documents, the parties made sure *not* to modify prior e-discovery orders. Plaintiffs' alternative reading also fails to grapple with its nonsensical result—*i.e.*, that the language carves out an "e-discovery order" that deals only with production *before* review. But no such e-discovery order exists here. Indeed, it is hard to imagine such a narrow e-discovery order being adopted in any case.

b. The second fiction is that Amazon has changed position regarding whether the ESI Protocol or Protective Order governs. AB 13, 24. Amazon has relied on both orders throughout this litigation because *each* contains Rule 502(d) anti-waiver protections and because the Protective Order—properly interpreted—incorporates the ESI Protocol by reference. A79.

c. Apart from the last-antecedent problem, plaintiffs' interpretation suffers from a logical fallacy. *See* Chamber Amicus 17–18. The Protective Order says it is "*not* intended" to modify an "e-discovery order *or* agreement that provides for production without prior privilege review." A79 (emphasis added). Plaintiffs read this to mean the Protective Order *is* intended to modify *all* orders that deal with production *after* privilege review. AB 21–23. That is backwards. A person who does not intend to go to the store on Saturday

is *not* saying they *do* intend to go to the store on any other day of the week, much less *all* of them. *NLRB v. Noel Canning*, 573 U.S. 513, 589 (2014) (Scalia, J., concurring in judgment) ("[Describing] the fallacy of the inverse (otherwise known as denying the antecedent): the incorrect assumption that if P implies Q, then not-P implies not-Q."); *Wilson v. Clark*, 372 F. App'x 745, 747 (9th Cir. 2010) (rejecting "the formal fallacy of denying the antecedent—concluding that because [an] action was not unlawful due to the use of excessive force, the action must have been lawful."). Here, construing the Protective Order as "*not* intended to modify" something doesn't mean it *must* modify anything else, let alone that it was intended to supersede the heavily negotiated ESI Protocol.

3.   Even assuming the Protective Order displaced the ESI Protocol—which it did not—plaintiffs' textual arguments misread the Protective Order. Plaintiffs assert that "no reasonable reading" supports applying 502(d). AB 12. But plaintiffs fail to explain how that is consistent with its plain language given that the Protective Order expressly incorporated Rule 502(d)—*both* by citing the rule *and* by incorporating Rule 502(d)'s substantive non-waiver provisions, A5–A6—which are more than sufficient to invoke the rule, Pet. 22–24.

a.   Echoing the ruling below, plaintiffs contend the Protective Order's express "invo[cation of] the protections afforded by Fed. R. Evid. 502(b)" conclusively establishes the parties wanted clawbacks

governed by Rule 502(b)'s inadvertence standard. AB 18. They ignore the very next sentence of the Order: "As provided under Fed. R. Evid. 502(b) *and 502(d)*, … the disclosure of privileged material in connection with this litigation does *not* operate as a *waiver in this action* or any other action by the Producing Party *of any privilege* applicable to those documents." A5–A6 (emphases added). This adopts the exact protections contemplated by 502(d) against waiver in this case and others. *See* Fed. R. Evid. 502(d) ("A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding.").

To read such language as opting *out* of Rule 502(d) would impermissibly render as surplusage the express reference to Rule 502(d) and the repetition of Rule 502(d)'s essential safeguards, including that there would not be "a waiver in this action" of "any privilege." A79; *see United States v. 1.377 Acres of Land*, 352 F.3d 1259, 1266 (9th Cir. 2003) ("[A] court must give effect to every word or term employed by the parties and reject none as meaningless or surplusage in arriving at the intention of the contracting parties."). It would also contravene the thrust of Rule 502, which is to make it easier, not harder, to facilitate massive document productions without waiving privilege. Chamber Amicus 14–15, 19.

b.  Plaintiffs next argue that applying Rule 502(d) would render the reference to Rule 502(b) "meaningless." AB 20. Not so. The Protective Order "invokes the *protections*" of Rule 502(b), not its conditions. A79 (emphasis added). The only *protection* mentioned by Rule 502(b) is that, "[w]hen made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding." Because Rule 502(b) applies in multiple settings, not just litigation, the reference to 502(b) expands the scope of the anti-waiver protection afforded by the parallel invocation of 502(d), which by its terms applies only to litigation. "[C]ontract interpretation allows for the possibility that parties will use a 'belt and suspenders' approach," *JES Farms P'ship v. Indigo Ag Inc.*, 116 F.4th 733, 737 (8th Cir. 2024), making it entirely understandable to invoke both the 502(b) floor as well as the 502(d) ceiling to avoid any waiver in the event of "inadvertent disclosure."

c.  Plaintiffs also dispute that the decision below applied a "concrete directives" test. AB 18. They are wrong. LCJ Amicus 24–27. After discussing the "concrete directives" test at length, A20, the district court found the Protective Order does not "'articulate the desire' to forgo the Rule 502(b) waiver analysis," quoting and relying on a case that enforced a concrete directives requirement. *Id.* (citing *United States v. United Health Grp., Inc.*, 2020 WL 10731257, at *3 (C.D. Cal. Nov. 9, 2020)).

8

In all events, this dispute is academic; no matter the label, the decision below plainly enacted impermissible linguistic hurdles to applying Rule 502(d) as expressly contemplated by both the ESI Protocol and the Protective Order. *See* LCJ Amicus 24–27. Indeed, in its Answer, the district court implies that it would have upheld the application of 502(d) had the Order stated merely that "[t]he Parties agree to the entry of a non-waiver order under Fed. R. Evid. 502(d) as set forth herein." D.Ct. Ans. 2. That language cannot be materially distinguished from the Protective Order, which explicitly invoked Rule 502(d) and then repeated Rule 502(d)'s protections against waiver. To hold that the former but not the latter suffices to trigger 502(d)'s anti-waiver protections would create a formalistic linguistic requirement wholly unsupported by the text or purpose of Rule 502. "[T]he rule does not contain or support such rigid, formulaic requirements." *Great-W. Life & Annuity Ins. Co. v. Am. Econ. Ins. Co.*, 2013 WL 5332410, at \*12 (N.D. Cal. Sept. 23, 2013); *see also United Physician Grp., LLC v. Leche*, 742 F. Supp 3d 1251, 1258 (N.D. Ga. 2024) ("[T]he requirement cannot be found in the text of the FRE 502 itself ...."). It is clear error to require magic words to give effect to the parties' agreement that 502(d) applies.

d.   Finally, plaintiffs contend the negotiation history proves Amazon *intended* for the Protective Order to opt out of 502(d). AB 23–24. That argument is as baseless as it is procedurally unsound.

The Order must be interpreted on its face, with the plain language controlling. *United States v. Johnson*, 43 F.3d 1308, 1310–11 (9th Cir. 1995) (absent irreconcilable ambiguity, there is no basis for a court to consider parol evidence to clarify the contract terms); *see also Boshears v. PeopleConnect, Inc.*, 748 F. Supp. 3d 1017, 1024 (W.D. Wash. 2024). Drafting history is notoriously inconclusive in all events. *Tahoe Reg'l Plan. Agency v. McKay*, 769 F.2d 534, 538 (9th Cir. 1985) (admonishing that "caution must be exercised in using the rejection by a legislature of proposed amendments as an aid in interpreting measures actually adopted"). And the decision below does not even rely on drafts, nor is it workable to suggest other courts should guess at the potential significance of redlines in the context of Rule 502 orders.

Regardless, Plaintiffs' recitation of the drafting history is fatally incomplete. The final version does not, as plaintiffs assert (AB 20), reflect that Amazon "*delet*[*ed*] the standalone Rule 502(d) order." Rather, the parties replaced the general reference to Rule 502(d) with the *actual* anti-waiver provisions of the Rule. A5–A6. Thus, even if it were relevant, the drafting history only serves to reinforce the plain language of the Protective Order.

Equally important, plaintiffs' focus on the drafting history misses the forest for the trees. "[L]anguage … cannot be construed in a vacuum … [but] must be read in … context." *Roberts v. Sea-*

*Land Servs., Inc.*, 566 U.S. 93, 101 (2012). The reality is that no one negotiates a protective order to reduce existing protections to achieve what would have been the default *without* one. *Great-W.*, 2013 WL 5332410, at *14 ("It is not a plausible interpretation for the parties to have negotiated an agreement that Rule 502(b) applies when it applies as a default absent an agreement otherwise."). That is particularly true here, where the parties have protective orders, ESI protocols, and discovery-sharing agreements across multiple actions in multiple jurisdictions to govern vast productions. Pet. 6, 12–13, 37.

It is also implausible to suggest Amazon *intended* for an amended protective order in these cases to eliminate clawback protections in related cases where document and deposition discovery is coordinated. *Cf. Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) (drafters do not "alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions [by] … hid[ing] elephants in mouseholes"). Plaintiffs do not—and cannot—offer *any* sensible reason why Amazon would want to undo clawback protections affecting millions of documents—which, given the reality of human error, *guarantees* eventual-yet-unpredictable waivers. Pet. 22 (citing authorities).

3.  Even if the competing interpretations of the Protective Order came down to a coin flip, the Order must be construed in favor

of protecting privilege. "[W]here attorney-client privilege is concerned, hard cases should be resolved in favor of the privilege, not in favor of disclosure." *United States v. Mett*, 178 F.3d 1058, 1065 (9th Cir. 1999); *Sia Chue Yang v. Schwarzenegger*, 2010 WL 11587074, at *6 (N.D. Cal. May 12, 2010) ("When the court is in equipoise, a tie should be awarded to the privilege holder." (construing *Mett*)). Yet, presented with multiple opportunities to preserve privilege and avoid waiver, the decision below instead eliminates every protection. That was clear error.

### B. It was clear error to artificially limit the scope of Rule 502(b)(1).

Even if Rule 502(b) is all that applies here, text, history, purpose, and precedent require that "inadvertence" be determined on the basis of a totality-of-the-circumstances inquiry and guard against human error. Pet. 24–30. Plaintiffs scarcely defend the opposite approach. Instead, they cast every dispute about whether a document was "mistakenly" disclosed as a district-court "factual finding" entitled to deference. AB 28–29. But that does not explain *what sort* of mistakes count or *what circumstances* bear on whether a mistake was made. Those are pure legal questions, and the district court clearly erred in answering them.

### 1. It was clear error to refuse to consider all pertinent facts bearing on inadvertence.

As explained in the petition, Rule 502(b)(1) requires courts to consider all of the circumstances surrounding a disclosure. Plaintiffs offer no explanation for why a privilege waiver should be analyzed more narrowly than the waiver of similarly important rights. Pet. 26–27; *see also Schuman v. Microchip Tech., Inc.*, 2025 WL 1584981, at *2 (9th Cir. June 5, 2025) (applying totality-of-circumstances test for ERISA waivers). The district court expressly refused to consider relevant facts when analyzing inadvertence, Pet. 26, and its ruling cannot be squared with Rule 502's "language" or this Court's "similar" waiver precedent. *In re U.S. Dep't of Educ.*, 25 F.4th 692, 698 (9th Cir. 2022). It is thus clear error.

Plaintiffs' attempts to justify that error fall flat. They first insist that Amazon waived its totality-of-the-circumstances argument. AB 26–27. That is wrong. Amazon's clawback motion, supported by a sworn declaration, explained that "the circumstances surrounding the production of each of the three documents" showed "why the production … was inadvertent." Pls. App. 56. It then noted that the "enormous and exceedingly difficult" review, "tight timeframe," and demands of scrutinizing "complex, dense, single-spaced documents day in and day out" all strengthened the inference that the disclosure stemmed from "human error." Pls. App. 55–

13

56. In other words, Amazon advanced the same argument made here: Rule 502(b)(1)'s inadvertence inquiry must account for the circumstances. The district court squarely addressed this point. Pet. 25–26; *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1054 (9th Cir. 2007) ("[W]e generally will not deem [an] issue waived if the district court actually considered it.").

Plaintiffs fare no better on the merits of how courts should assess inadvertence. Plaintiffs chiefly argue that considering all of the circumstances when assessing inadvertence "introduces a reasonableness requirement" into subsection (b)(1) and renders subsections (b)(2) and (b)(3) "superfluous." AB 27. But subsection (b)(1) asks a purely factual question: whether disclosure was inadvertent. Subsections (b)(2) and (b)(3) then ask a different, normative question: whether the disclosing party acted "reasonably." To be sure, evidence relevant to inadvertence might (or might not) also be relevant under subsections (b)(2) or (b)(3). A clawback letter, for example, might persuasively show that a disclosure was "inadvertent" under (b)(1), but was so belated as to be "[un]reasonable" under (b)(3). But the inquiries are still distinct. Nor does the petition rely on (or even mention) "the common-law approach." *Contra* AB 27.

### 2. It was clear error to narrow the meaning of "inadvertent."

Rule 502(b)(1) can apply to disclosures caused by mistaken judgment or other human error. That follows from the ordinary meaning of "inadvertent," as that term was used in historical case law familiar to the drafters. Pet. 28–29. It is how the first courts to apply Rule 502(b)(1) understood the term. *Id.* at 29–30; Chamber Amicus 20–23. And it is consistent with the Rule's purpose: "protect[ing] clients' confidences from their lawyers' human errors." *Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 406 (7th Cir. 2018) (cleaned up); Pet. 30. Yet the district court held otherwise, conclusively equating any disclosure with a "strategic decision" whenever lawyers review documents before production. A11. This guts Rule 502(b), and is clear error, because lawyers almost always review documents before production.

Lacking meaningful responses to Amazon's textual, historical, and purposive arguments, plaintiffs turn to two unpublished magistrate decisions. AB 29–30. Rather than undermine Amazon's position, one *confirms* disclosures can be inadvertent even when documents are "reviewed by counsel specifically for … privilege." *Wolpert v. Branch Banking Tr. & Co.*, 2023 WL 2731083, at *7, *9 (E.D. Tenn. Mar. 30, 2023). The other involves an actual example of strategic disclosure to achieve an advantage—namely, to "avoid

a targeted subpoena"—which clearly falls outside of Rule 502(b)(1). *Sleep Number Corp. v. Young*, 2021 WL 5644322, at *20 (D. Minn. Dec. 1, 2021).

### 3. Properly analyzed, the Rule 502(b) factors are satisfied.

Plaintiffs do not dispute that the disclosures here were "inadvertent" under Amazon's correct reading of Rule 502(b)(1). Nor have they disputed that Amazon satisfies subsections (b)(2) and (b)(3). Pet. 32. Instead, they contend the Court can (i) ignore context so as to leave Amazon with a "total lack of evidence," AB 29, and (ii) assume lawyers never make mistakes when reviewing mountains of "dense, single-spaced memoranda," A59, A61. The opposite is true. "Where discovery is extensive, mistakes are inevitable." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008). Indeed, distinguishing business from legal advice is "generally recognized to be especially difficult," *Am. Nat'l Bank & Tr. Co. of Chicago v. Equitable Life Assur. Soc'y of U.S.*, 406 F.3d 867, 879 (7th Cir. 2005) (cleaned up), and was further complicated here by unclear and evolving law on that point, *see In re Grand Jury*, 23 F.4th 1088, 1094–95 (9th Cir. 2021), *as amended* (2022) ("[l]eav[ing] open" which test applied). In short, this case plainly satisfies Rule 502(b).

16

Unable to show that Amazon's disclosure here was inadvertent under the best reading of Rule 502(b), plaintiffs resort to attacking Amazon's privilege determinations in other instances. *See* AB 7–12. That *ad hominem* attack is factually flawed and wholly irrelevant to the petition. Plaintiffs' accusations of "privilege cloaking" are particularly irrelevant because the district court assumed that the three documents at issue in this petition are privileged, A4 n.2, and plaintiffs do not challenge that assumption here. The accusations are also incorrect: Amazon undertook a massive review, producing millions of documents in these cases, and is withholding fewer than two percent on privilege grounds. The erroneous production of the three privileged documents at issue here speaks not to improper concealment, but to good-faith overcorrection. Tellingly, plaintiffs never even try to connect their mudslinging to anything that actually supports the ruling below.

## II. GRANTING MANDAMUS WILL PROMOTE CONSISTENCY ON RECURRING PRIVILEGE ISSUES.

Questions about how to interpret Rule 502(d) orders *and* how to evaluate "inadvertence" under Rule 502(b) arise frequently, and this petition offers the Court the opportunity to provide guidance on *both* questions, which will benefit courts and parties throughout this Circuit and nationwide. Pet. 32–34.

Plaintiffs unsuccessfully try to pigeonhole this case. On Rule 502(d), plaintiffs insist the decision below concerns "distinct (non-model) language," AB 32, but the Protective Order uses language indistinguishable from protective orders used throughout this Circuit, Pet. 7 n.1. The fact that it mentions both 502(b) and (d) does not make it unique, *see, e.g.*, U.S. Dist. Ct. for the Dist. of N.J., *Model Confidentiality Order* at 5, tinyurl.com/4mum66vr, let alone render guidance by this Court about how to construe Rule 502(d) orders inapplicable. Plaintiffs do not deny troubling inconsistencies among lower courts, Pet. 21–23, quibbling only about where this order falls on that spectrum, AB 32–33.

Similarly, plaintiffs contend the district court's inadvertence analysis is limited to "the particular facts here." AB 32. But the only "fac[t] here" that mattered to the district court was that an attorney reviewed the documents for privilege before production. *See supra* at 14–15. That will be true in the vast majority of clawback disputes under Rule 502(b). This case thus has much "broader application outside this case." *Contra* AB 33.

## III. MANDAMUS IS THE ONLY MEANINGFUL RELIEF AVAILABLE TO AVOID PREJUDICE THAT CANNOT BE CURED ON POST-JUDGMENT APPEAL.

Plaintiffs give short shrift to whether Amazon can obtain meaningful relief without mandamus. They attempt to extract from

*Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009), a blanket rule that post-judgment appeals cure all erroneous privilege rulings. AB 31. *Mohawk* notes post-judgment appeals "generally" suffice, which is exactly why "mandamus" remains available to "facilitate immediate review of some of the more consequential attorney-client privilege rulings." 558 U.S. at 109, 112. This and other Circuits have regularly granted mandamus to review privilege issues post-*Mohawk*. *See* Pet. 14–15 (collecting cases); *Hernandez v. Tanninen*, 604 F.3d 1095, 1102 (9th Cir. 2010) (granting mandamus relief where district court "clearly erred in finding an unlimited waiver of the attorney-client and work product privileges").

Plaintiffs also ask to be rewarded for ensuring "disclosure [has] already happened" because they attached the three documents to a motion without notice to Amazon. AB 32. But "maintenance of the attorney-client privilege up to its proper limits has substantial importance to the administration of justice." *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1491 (9th Cir. 1989); Chamber Brief 11–12; LCJ Brief 28–30. The irreparable harms will only multiply as Amazon now must litigate subsequent clawback disputes under standards weighted toward waiver. Absent this Court's intervention, information disclosed through those rulings "cannot be made secret again." *In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008).

Certainly, plaintiffs offer no explanation as to how parties in other proceedings will be prevented from learning about the contents of privileged documents made available in this case. Pet. 37. As the petition explained (Pet. 37–38)—and plaintiffs do not dispute—once Amazon's privileged documents are in the hands of other plaintiffs in other cases and other jurisdictions, a post-judgment appeal in this case could not fix it. *Taylor v. Sturgell*, 553 U.S. 880, 884 (2008).

## CONCLUSION

The writ should issue.

Dated:  June 11, 2025       Respectfully submitted,

By: */s/ Collin P. Wedel*
    Collin P. Wedel

    Sean A. Commons
    scommons@sidley.com
    David R. Carpenter
    drcarpenter@sidley.com
    Collin P. Wedel
      *Counsel of Record*
    cwedel@sidley.com
    SIDLEY AUSTIN LLP
    350 S. Grand Ave.
    Los Angeles, CA 91107
    (213) 896-6000

    C. Frederick Beckner III
    rbeckner@sidley.com
    Peter A. Bruland
    pbruland@sidley.com
    SIDLEY AUSTIN LLP
    1501 K Street, NW
    Washington, D.C. 20005
    (202) 736-8000

    *Attorneys for Petitioner Amazon.com, Inc.*

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the typeface and typestyle requirements of Rules 32(a)(5)–(6) of the Federal Rules of Appellate Procedure because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font. While neither the Federal Rules nor the Circuit Rules specify a type-volume limit for replies in support of mandamus, Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) limits reply briefs to "half of the type volume" allowed for an opening brief. By analogy to that rule, this reply is compliant. Ninth Circuit Rules 21-2(c) and 32-3(2) limit a petition for mandamus to 8,400 words, and this reply contains 4,189 words, excluding parts exempted by Federal Rule of Appellate Procedure 32(f).

Dated: June 11, 2025                    Respectfully submitted,

                                        By: */s/Collin P. Wedel*
                                        Collin P. Wedel

## <u>CERTIFICATE OF SERVICE</u>

On June 11, 2025, I electronically filed the foregoing reply with the Clerk of Court using the CM/ECF system. Participants in the case are CM/ECF users, and service will be accomplished by the CM/ECF system. The district court will receive a copy of this reply pursuant to Federal Rule of Appellate Procedure 21(a).

Dated: June 11, 2025                    Respectfully submitted,

By: */s/ Collin P. Wedel*
         Collin P. Wedel